# **EXHIBIT 5**

United States Bankruptcy Court
Southern District of Texas
**ENTERED**
October 11, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 23-34815 |
| **GALLERIA 2425 OWNER, LLC,** | § | |
| | § | |
| Debtor. | § | |
| | § | CHAPTER 11 |

## MEMORANDUM ORDER ON FEE APPLICATION

Before the Court is the Application for Approval of Compensation for Services Rendered and Reimbursement of Expenses filed by Baker and Associates ("Baker") (ECF No. 703) and the Objections thereto filed by National Bank of Kuwait, S.A.K.P., New York Branch ("NBK") (ECF No. 744) and Christopher Murray, in his capacity as the Liquidating Trustee ("Trustee") (ECF No. 748). Hearing was held on October 9, 2024, and Baker testified and was cross-examined. For the reasons so stated the Court finds that any amount it may have awarded to Baker would be less than retainer payments he received from non-debtor parties and that he therefore has no claims against the estate for professional fees.

Baker seeks an award of $81,501.00 in professional fees and $228.00 in expenses for a total of $81,729.75[1]. He received non-debtor retainer payments totaling $35,000.00 both pre and post-petition and then received additional post-petition non-debtor payments after a Chapter 11 Trustee was appointed in the case totaling $23,700.00. Baker has therefore received during his representation of the debtor in this case a total of $58,700.00. Baker seeks to bifurcate his retainers as follows: $35,000.00 to his current fee application which runs from the filing date until the appointment of the Chapter 11 Trustee and $23,700.00 for services after the Trustee appointment for which he has not filed a fee application. The fee bifurcation is not supported by any documentary evidence. Baker testified that other than the checks evidencing payment and a retainer agreement with the debtor, he had no other written agreements between his law firm and the non-debtor parties who tendered payments to his firm. No retainer agreement was introduced into evidence and the Court is unaware of its terms or if it even provided for such fee bifurcation.

The Court first notes two conflicts between Baker's Application to Employ (ECF No. 67)[2] and his Final Fee Application.[3] First, in the Application to Employ Baker's failure to disclose any pre-

---

[1] The Application at ECF No. 703, pages 2-3, and 11-12 state that the total amount requested is $81,729.76 and includes expenses of $228.76, but the actual invoices at ECF No. 703-4 state that the expenses are $228.75 making the total requested $81,729.75.

[2] Baker received from Galleria Loop Note Holder, LLC, a non-debtor, the amount of $15,000.00 on November 17, 2023, prior to the filing of the case as a retainer for the Debtor. The Application then states that "Baker applied **$1,738.00 for filing fees** and to the payment of pre-petition fees and other expenses."

[3] Galleria Loop Note Holder, LLC, a non-debtor, deposited with Baker on behalf of the Debtor, the amount of $15,000 on November 17, 2023. Baker applied **$8,257.50 for pre filing fees** and expenses for its case. The remaining amount of $6,742.50 was placed in the IOLTA account of Baker subject to order of the court." 2401 Fountainview Houston, LP, a non-debtor, provided an additional amount of $20,000.00 on December 7, 2023.

filing professional fees or expenses totaling $8,257.50 and second the false statement that Baker paid the filing fee, when he testified he did not. The Court observes that this case was filed on December 5, 2023, by another lawyer James Pope, who the Court assumes paid the filing fee. Baker first filed a notice of appearance on December 6, 2023,[4] a day after case filing and did not file his Application to Employ until December 22, 2023.[5] If he had incurred professional fees and expenses prior to his December 22, 2023 application, he should have known and should have disclosed it to the Court in his Application. He did not make the required disclosure and the Court, given the limited evidence before it cannot conclude that Baker incurred these pre-petition professional fees, there was no evidence at the hearing of any pre-petition work that he performed or that he performed any services of value pre-petition and that the firm should somehow credit these professional fees against the retainers he received. Additionally, the Trustee objects that Baker should credit any fees he seeks by fee application against all of his retainer payments, and not just those he received prior to the appointment of the Chapter 11 Trustee. With the limited or nonexistent evidence before the Court, it agrees with the Chapter 11 Trustee.

The Final Fee Application has time records attached, detailing time and billing. However, as shown by his lengthy [for a fee application] cross examination, those time records often do not match his direct testimony, and his memory of events is often selective. Baker testified that he spoke to or met with individuals or took action that is not reflected in the billing statements. Thus, the Court is conflicted by Baker's testimony which is not supported by adequate billing records. The Court has attempted to match his testimony to his time records and is unable to draw by a preponderance of the evidence that certain events which are integral to the work he claims to have performed occurred. Baker could have been truthful in his testimony, or selective in his testimony and at times he was both. However, the Court holds he was not truthful especially as it relates to his belief that he would be able to confirm a Chapter 11 Plan. The Court holds that as to work he performed and his time records, he has not met his required burden of proof for the vast majority of his billed work.

Part of the objections filed in this case relate to work performed by Baker on two documents, a Disclosure Statement (ECF No. 96) and a Chapter 11 Plan of Reorganization (ECF No. 95) which were filed less than 24 hours prior to a hearing on a Motion to Convert the Chapter 11 case to a Chapter 7. Baker in effect testified that they were filed as a defensive posture to the motion to convert and the Court accepts this as a fact. However, the Disclosure Statement would never have been approved and the Chapter 11 Plan could have never been confirmed. When asked on cross examination how Baker could confirm a plan where the plan terms provided that NBK would have had an unsecured claim of more than 40 million dollars and controlled the unsecured creditor class, Baker effectively had no response. The Court notes that it reviewed both documents before the scheduled hearing on the Motion to Convert and at that time determined that they were "dead on arrival" and were never going to be approved. The Court disallows any time entries[6] that relates to these two documents. They were of no benefit to the estate and as later described filed, in part, to protect the interests of non-estate, non-debtor parties.

---

[4] ECF No. 11.

[5] The time entries reflect that Baker finalized the fee application on December 21, 2023, billing .70 hours (previously billed .40 hours by the paralegal and .60 for his work on the application for a total time of 1.70 hours).

[6] See entries at 12/21/23, 12/28/23, 1/4/24, 1/17/24, 1/26/24, 1/29/24 and 1/30/24.

Representation of closely held Chapter 11 debtors is at times difficult and tricky. Debtor's counsel has a duty to the estate of the debtor, which often does not closely align with the interests of its principals. The majority of courts view an attorney for a debtor-in-possession as a fiduciary of the bankruptcy estate stemming from his fiduciary obligations to the debtor-in-possession and his responsibilities as an officer of the court.[7] The *Food Management* Court also found that in the bankruptcy context, a threshold fiduciary requirement is counsel's duty to establish its qualification as a party with no conflicts of interest and the maintenance of that qualification throughout the case.[8] Further, that Court quoted Judge Drain that "the attorney cannot simply close his or her eyes to matters having an adverse legal and practical consequence for the estate and its creditors."[9] The court may impose sanctions, including disallowing compensation for services and reimbursement of expenses, when previously undisclosed conflicts later come to light. 11 U.S.C. § 328(c).

The debtor in this case is an office building. It has no employees. It is controlled, managed, and partly occupied by the principal of the debtor or entities which the principal controls. The Court holds that prior to the filing of the debtor's First Disclosure Statement and Plan, Baker crossed a very thin line and in effect began to represent interests adverse to the estate.[10] That he did this is perhaps understandable given the facts of this case and the personality of its principal, but it is not permitted and is sanctionable.

In holding that Baker was in part conflicted, the Court need only review the confirmed plan in this case and the Disclosure Statement and Plan filed by Baker. The confirmed plan which called for a market test of the real property, the office building, and an auction is the type of plan the Court would expect in a case such as this with a large first lienholder who is severely under secured. As NBK's notes in its objection '[t]he Debtor's chapter 11 plan inexplicably kept the Debtor's equity in the hands of its irreparably conflicted insiders and did not even subject the Property or the Debtor's equity to market testing." The Plan filed by Baker by his own testimony valued the office building on which NBK held a first lien at just over 18 million dollars with a NBK debt of over 65 million dollars. This was the potentially large unsecured claim that Baker apparently never considered in filing the plan as his testimony indicated.

However, the debtor's and Baker's drafted Disclosure Statement and Plan took great pains to protect the interests not of the estate or the debtor but of its principal and other entities that the principal controlled. The Court recognized the Debtor's conflict of interest and sua sponte appointed a Chapter 11 trustee the day after Baker filed the Disclosure Statement and Plan. As the Court found on the day it appointed the Chapter 11 Trustee:

---

[7] *In re J.T. Thompson, USA*, 2012 WL 4461650 (Bankr. C.D. Cal Sept. 25, 2012*) citing In re Evangeline Ref. Co.*, 890 F.2d 1312, 1523 (5th Cir. 1989) and *In re Food Management Group, LLC*, 380 B.R. 677 (Bankr. S.D.N.Y. 2008).
[8] *In re Food Management Group, LLC, Id.*, citing *In re Angelika Films 57th, Inc*. 227 B.R. 29, 37 (Bankr. S.D.N.Y. 1998).
[9] *Id.*
[10] *Id*. (Counsel is said to represent an interest adverse to the estate when representing an interest that either is in possession of an economic interest that would tend to lessen the value of the estate or create an actual or potential dispute with the estate as a rival counsel or a predisposition of bias against the estate).

3 / 5

> The major problem is I have conflicts of interest in this case. I don't have an independent Debtor. I have management, basically approving payments to itself. Okay? The schedules in this case are inconsistent. There's discrepancies. And what I basically have is creditors of the Debtor running the Debtor, which doesn't work.

The Plan which as earlier discussed was never going to be confirmed, as it was filed specifically to protect, again in part, the *principal* of the debtor and his *related entities*. The terms of that plan included the following language.

1. The current management of the Debtor remains unchanged. The current management of the Debtor is *Galleria 2425 JV, LLC*.
2. The current management of *Galleria 2425 JV, LLC* remains unchanged. The current management of *Galleria 2425 JV, LLC* is *Galleria West Loop Investments II, LLC*.
3. *Ali Choudhri* continues as the person in charge of Galleria 2425 JV and Galleria West Loop Investments II, LLC.
4. *Ali Choudhri* or Dward Darjean are the only authorized persons to sign checks and remove funds from the Account.
5. The Debtor remains in the current chapter 11 case.
6. The current chapter 11 case is not dismissed or converted to another chapter.
7. No chapter 11 trustee is appointed by the court or the U.S. Trustee for the Debtor.
8. There are not any unreasonable restrictions imposed or placed on the Debtor with regard to the leasing of space in the Property.
9. If a plan is confirmed for the Debtor, the plan must be one that is proposed by the Debtor and not another entity.
10. *Jetall Corporation*[11] continues to be the manager for the Property.

NBK claims that "Baker seeks compensation for services rendered up to and shortly after the trustee's appointment, but the inherent conflict renders most of those services unnecessary and unreasonable because they were of no necessity or benefit to the Estate or its creditors – everything that was done was for the benefit of the Debtor's insiders." The Court agrees but only in part, not all work of Baker was conflicted but clearly there was work that was conflicted and is grounds for disallowance of all the work. This holding is further buttressed by Baker's actions post appointment of the Chapter 11 Trustee where he clearly acted to protect the interests of Ali Choudhri and the entities Ali Choudhri controlled. Baker argues that he had no fiduciary duty to the estate post appointment of the Chapter 11 Trustee, and this may be the case, however, the Court sees it as simply a continuation of his representation and protection of non-debtor, non-estate parties pre-trustee appointment. As the Trustee points out in his objection, Baker's firm filed Claim Nos. 20 (Jetall Companies; $3,180,223.30), 21 (Ali Choudhri; $4,176,657.46 [asserted secured claim]), 22 (Ali Choudhri; $1,844,500.45), 23 (Jetall Capital; $1,699,750.00), and 24 (Jetall Capital; $1,699,750.00) in this case.

NBK argues that the efforts of Baker were not a good gamble and that under Section 330 of the U.S. Code the Court may disallow any compensation for services that were not reasonably likely

---

[11] Jetall paid Baker $16,500.00 of his retainer payments of $58,700.00.

4 / 5

to benefit the estate. The Court must apply this on a prospective not retrospective standard.[12] The Court in applying this prospective standard does believe that certain work performed by Baker would be compensable, if not otherwise disallowed. Bankruptcies sometimes do not work. They are often filed on the eve of foreclosure and the preliminary work in this case such as filing of the petition, schedules and first day motions are not only routine but are expected. The Court finds nothing wrong with some of Baker's billing and the fees sought but only to a point. However, Baker is no novice bankruptcy counsel, and it should have at some point become very evident to him that he was dealing with entities and a principal where conflicts of interest would and did arise. The Court must hold that (1) he failed to make such a conflict disclosure when it arose; (2) that his representation in part was directed at protecting non-estate, non-debtor clients (3) and as NBK has claimed, failed as counsel in his "duty of diligence" and in making a "seasoned determination" whether the debtor is capable of achieving successful reorganization."[13] Additionally, the Court finds that if it had approved these fees they would not have exceeded the non-debtor retainers Baker received totaling $58,700.00 so he would not have had a claim against the estate. Still further the Court has already disallowed these fees pursuant to 11 U.S.C. § 328(c).

The Court recognizes that it has not conducted a lodestar analysis[14] or applied the *Johnson* factors[15] to Baker's fee application but it holds that it is not necessary in this case. Such analysis and *Johnson* adjustment would in this case be a folly. Baker has not met his burden as to the majority of his fee application given his cross examination, the Court would disallow any fees related to the filed Disclosure Statement and Plan and importantly disallowed all fees sought pursuant to 11 U.S.C. § 328(c). If the Court allowed any fees, and it declines to do so for the reasons so stated, in any event they would be very much below the amount Baker has received from non-debtor entities as retainers over which this Court has no jurisdiction. Absent further order, Baker is entitled to the $58,700.00, he has collected from non-debtor entities as he appears to have represented these parties' interests. However, he may not be awarded professional fees from this debtor. This is a rough justice approach that the Court has adopted in the past.

**THEREFORE, IT IS ORDERED** that the Application for Approval of Compensation for Services Rendered, and Reimbursement of Expenses Incurred is denied.

SIGNED 10/11/2024

_____
Jeffrey Norman
United States Bankruptcy Judge

---

[12] *In re Woerner*, 783 F.3d 266 (5th Cir. 2015).
[13] *In re DN Assocs.*, 144 B.R. 195, 202 (Bankr. D. Me. 1992), aff'd, 160 B.R. 20 (D. Me. 1993), aff'd, 3 F.3d 512 (1st Cir. 1993) (citing In re Amstar Ambulance Service, Inc., 120 B.R. 391, 396 (Bankr. N.D. W. Va. 1990)). "Attorneys will not be compensated for vain attempts to resuscitate the debtor long after they should have given up the ghost." Id
[14] *In re Pilgrim's Pride Corp.*, 690 F.3d 650, 656 (5th Cir. 2012); In re Cahill, 428 F.3d 536, 539 (5th Cir. 2005).
[15] *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974)