# **EXHIBIT 9**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | Case No. 23-34815 (JPN) |
| GALLERIA 2425 OWNER, LLC | § | |
| | § | Chapter 11 |
| Debtor. | § | |
| 2425 WL, LLC | § | |
| | § | |
| Appellant | § | Civil Action No. 4:24-cv-02590 |
| | § | |
| v. | § | |
| | § | |
| NATIONAL BANK OF KUWAIT, | § | |
| S.A.K.P., NEW YORK BRANCH; | § | |
| CHRISTOPHER R. MURRAY, | § | |
| CHAPTER 11 TRUSTEE | § | |
| | § | |
| Appellees. | § | |

## MOTION TO DISMISS APPEAL

# TABLE OF CONTENTS

Page

Summary of Key Facts and Argument ........................................................................... 1

Background ..................................................................................................................... 3

    A.  2425 WL's Untimely Designation of Record and Statement of Issues for Appeal ............ 3

    B.  The Confirmed Plan Is Effective and Substantially Consummated ................................... 4

    C.  Dismissal is Appropriate Given the Appellate Issues Raised by 2425 WL ...................... 6

The Appeal Should Be Dismissed .................................................................................. 8

    A.  2425 WL's Late Designation of Record and Statement of Issues Compels Dismissal ........................................................................................................ 8

        i.  2425 WL Has Been Obstinately Dilatory .................................................. 9

        ii.  Prejudice to NBK .................................................................................... 10

    B.  2425 WL's Appeal Is Moot ........................................................................11

        i.  The Plan Has Been Substantially Consummated ........................................ 12

        ii.  The Appeal Will Affect the Right of Parties Not Involved In the Appeal and/or the Success of the Plan ........................................................................... 14

Conclusion .................................................................................................................. 15

## TABLE OF AUTHORITIES

Pages(s)

Cases

*In re ASARCO L.L.C.*,
401 F. App'x 914 (5th Cir. 2010) ...........................................................................14

*In re Beverly Mfg. Corp.*,
778 F.2d 666 (11th Cir. 1985) ..........................................................................9, 10

*In re Blast Energy Servs. Inc.*,
593 F.3d 418 (5th Cir. 2010) ..........................................................................14, 15

*In Re Braniff Airways, Inc.*,
774 F.2d 1303 (5th Cir. 1985) .................................................................................9

*In re Hammersmith Development Co.*,
248 F.3d 1142 (5th Cir. 2001) ..............................................................................14

*In re Highland Capital Mgmt., L.P.*,
48 F.4th 419 (5th Cir. 2022) ...............................................................................6, 7

*In re Hilal*,
534 F.3d 498 (5th Cir. 2008) .................................................................................12

*In re Manges*,
29 F.3d 1034 (5th Cir. 1994) ...........................................................................11, 14

*In re Nikolai*,
5 F.3d 1495 (5th Cir. 1993) .....................................................................................9

*In re Pacific Lumber Co.*,
584 F.3d 229 (5th Cir. 2009) ...................................................................12, 14, 15

*In re Pyramid Mobile Homes, Inc.*,
531 F.2d 743 (5th Cir. 1976) ............................................................................9, 10

*In re Scopac*,
624 F.3d 274 (5th Cir. 2010) ...........................................................11, 12, 13, 14

*In re Serra Builders, Inc.*,
970 F.2d 1309 (4th Cir. 1992) ..............................................................................10

*In re Sneed Shipbuilding, Inc.*,
916 F.3d 405 (5th Cir. 2019) ................................................................................11

*In re Superior Offshore Int'l, Inc.*,
   591 F.3d 350 (5th Cir. 2009) ........................................................................15

*In re Texas Grand Prairie Hotel Realty, LLC*,
   710 F.3d 324 (5th Cir. 2013) ........................................................................11

*In re UNR Indus., Inc.*,
   20 F.3d 766 (7th Cir. 1994) ..........................................................................12

<u>Statutes and Codes</u>

United States Code
   Title 11, section 363(m) ...............................................................................11
   Title 11, section 541(a) ..................................................................................2
   Title 11, section 1101(2) ...............................................................................12
   Title 11, section 1103(c) .................................................................................7

<u>Rules and Regulations</u>

Federal Rules of Bankruptcy Procedure
   Rule 3018 .......................................................................................................6
   Rule 8003(a)(2) ..............................................................................................8
   Rule 8009(a)(1) .........................................................................................8, 11
   Rule 8009(a)(1)(B)(i) .....................................................................................8
   Rule 8009(a)(1)(B)(ii) ....................................................................................4
   Rule 8013(a) ...................................................................................................1
   Rule 9006 .......................................................................................................4

Pursuant to Rule 8013(a) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), National Bank of Kuwait, S.A.K.P., New York Branch ("NBK") moves to dismiss the appeal (the "Appeal") filed by 2425 WL, LLC ("2425 WL") - the Debtor's affiliate which like the Debtor is ultimately owned and controlled by Ali Choudhri ("Mr. Choudhri") - of the Bankruptcy Court's unstayed order confirming NBK's plan of liquidation for the Debtor (the "Confirmation Order"), stating as follows:[1]

## SUMMARY OF KEY FACTS AND ARGUMENT

1.   A cursory review of the docket and filings in the Bankruptcy Court leads to the following inescapable conclusions:

> a.   2425 WL, which never sought to stay the Confirmation Order, delayed perfecting the Appeal expecting that its preferred acquiror of the Debtor's real property (the "Property"), QB Loop Property LP ("QB Loop"), would fulfill its purchase obligation as the winning bidder at a Bankruptcy Court approved auction.  In contrast to NBK (which was the stalking horse bidder and only other bidder at the auction), QB Loop had agreed to assume a lease with another Choudhri owned entity and affiliate of 2425 WL and the Debtor, Jetall Companies, Inc. ("Jetall").[2]

> b.   Within three hours of the Chapter 11 trustee's (the "Trustee")[3] notice that QB Loop had failed to close and he instead would be selling the property to NBK as the backup bidder, 2425 WL filed its designation of record and issues for this Appeal nearly three weeks late, without requesting permission to do so or providing any explanation (let alone a justifiable explanation) for its delay, continuing a multi-year pattern of Mr. Choudhri and his affiliates doing almost anything to prevent NBK from exercising its secured creditor rights.

---

[1]   In support of this motion to dismiss, NBK also submits the *Declaration of Charles C. Conrad* ("Conrad Decl.") attached as Exhibit A.

[2]   Although QB Loop and Mr. Choudhri disclaim any ownership interest in QB Loop by Mr. Choudhri, Mr. Choudhri's family members or their trusts are investors in QB Loop.

[3]   The Bankruptcy Court ordered the appointment of a Chapter 11 trustee for the Debtor on January 31, 2024, shortly after the Chapter 11 case was filed.  Christopher R. Murray was confirmed as the Trustee in February 2024.  (*See* Bankruptcy Docket Nos. 99 and 121.)

c. Because the Confirmation Order was not stayed pending appeal and the order approving the sale to NBK is an unstayed final order from which no appeal was taken, among other things: (i) the Trustee and NBK have consummated the sale of the Property to NBK, (ii) NBK's confirmed plan of liquidation (the "Plan") has gone effective and is substantially consummated, (iii) NBK has contributed the amounts it was obligated to pay to the Debtor's estate pursuant to the confirmed Plan, (iv) claims, particularly secured claims of taxing authorities, have been satisfied from money NBK funded because the Debtor's estate lacks the resources or value to do so, (vi) the liquidation trust provided for under the confirmed Plan has been established and funded, and (vi) estate-controlled litigation against NBK has been dismissed with prejudice in reliance on the releases ordered by the unstayed Confirmation Order. [4]

2. Based on the forgoing, even if the Appeal had any merit (which it does not), reversal of the Confirmation Order would require among other things:

a. Unwinding the acquisition of the property by NBK, even though NBK was found to be a good faith purchaser entitled to the protections against a sale being unwound on appeal under section 363(m) of the Bankruptcy Code and no stay of the sale order was sought or obtained and no appeal of the sale order was ever taken.

b. Recovering completed distributions to creditors to reimburse NBK for contributions made pursuant to the confirmed Plan.

c. Voiding resolutions with creditors regarding the amount and treatment of their claims under NBK's confirmed Plan, including lawsuits which have been dismissed in reliance on the unstayed Confirmation Order.

d. Returning the acquired property, with demonstrated value insufficient to satisfy NBK's debt and insufficient revenue to cover its own current expenses, to the estate.

e. Rewarding 2425 WL for failing to comply with the Bankruptcy Rules.

---

[4] References to "estate" mean a debtor's estate that is created upon a bankruptcy filing. *See* 11 U.S.C. § 541(a).

3.     Under these circumstances, the Court must dismiss the Appeal.  First, 2425 WL failed to timely file its designation of the appellate record and the issues on appeal.  It never sought leave to extend the deadline for filing or forgiveness for having ignored it.  It merely changed course when the perceived benefit of a closing with QB Loop for an affiliate under common control evaporated, which is not a valid excuse for non-compliance but is ample justification for dismissal.

4.     Second, the Appeal is moot under any standard.  No stay of the Confirmation Order was sought or obtained, there is no meaningful issue of merit raised by the appeal, and there is no relief that can be crafted for 2425 WL that would not require unwinding completely the substantially consummated confirmed Plan, including NBK's cash contributions under the Plan to fund creditor payments, payments to those creditors and NBK's acquisition of the real property as the backup bidder at the auction.  No subset or alternative or limited relief can be crafted that would not vitiate entirely the bargain made through the confirmed Plan, including the distributions accepted by creditors in reliance on it.

## BACKGROUND

1.     The above-captioned Debtor filed its second chapter 11 bankruptcy under the above-referenced bankruptcy case caption in the United States Bankruptcy Court for the Southern District, Houston Division (the "Bankruptcy Court").

### A.  2425 WL's Untimely Designation of Record and Statement of Issues for Appeal

2.     On July 8, 2024, the Bankruptcy Court entered an order approving the sale of the Debtor's Property located at 2425 West Loop South, Houston, Texas 77027 to QB Loop, as the winning bidder at a Bankruptcy Court supervised auction, under an asset purchase agreement (the "APA") between the Trustee and QB Loop (the "Sale Order").  (*See* Conrad Decl., Ex. 1.)  The Sale Order also authorized the Trustee to sell the Property to NBK under its Stalking Horse Purchase Agreement (the "Stalking Horse Agreement") if QB Loop failed to close the sale by QB

Loop's "Outside Closing Date" of August 8, 2024 under its APA. (*See id.*, Ex. 2.) No one appealed the Sale Order.

3. QB Loop intended to assume a lease with one of Mr. Choudhri's affiliates, Jetall, as a tenant in the Property, and it filed a motion to have that lease assumed and assigned to it. (*See id.*, Ex. 3.) In contrast, NBK's backup bid made clear that it would not assume executory contracts and leases, including the lease with Jetall. (*See id.*, Ex. 4)

4. On August 9, 2024, the Trustee filed a notice that QB Loop failed to close the sale by the Outside Closing Date. (*See id.*, Ex. 5.) Axiomatically, that meant that Jetall's lease would not be assumed.

5. ***Three hours later***, 2425 WL filed its designation of record and statement of issues for its Appeal of the Confirmation Order that had been due three weeks earlier on July 22, 2024. (*See id.*, Ex. 6.) 2425 WL never sought leave to file late, and it has never provided any explanation for missing this deadline. The deadline for filing the designation of record and statement of issues for this Appeal is not only set out clearly in Bankruptcy Rule 8009(a)(1)(B)(ii), but the Bankruptcy Court issued a notice to 2425 WL, among others, that 2425 WL had 14 days from the day it noticed its appeal of the Confirmation Order on July 6, 2024, to file and serve its designation of record and statement of issues. (*See id.*, Ex. 7.) Because 14 days from July 6, 2024 fell on a Saturday, Bankruptcy Rule 9006 automatically extended 2425 WL's deadline to the next business day, Monday, July, 22, 2022.

**B. The Confirmed Plan Is Effective and Substantially Consummated**

6. Although 2425 WL timely filed a notice of appeal of the Confirmation Order, it never sought or obtained a stay of that order. Everyone, therefore, is obliged to perform in accordance with the terms of the Confirmation Order and the Plan it confirmed.

7.     Accordingly, after QB Loop failed to close by its Outside Closing Date, the Trustee and NBK proceeded to consummate the sale of the Property to NBK pursuant to the Sale Order and NBK's Stalking Horse Agreement.

8.     The sale to NBK was consummated on Tuesday, August 20, 2024 (the "Closing"). The Closing triggered the following, among other things:

    a.  The conditions for the Plan going effective were satisfied.  These conditions included, without limitation, that the Closing occur and the Confirmation Order be in effect and not stayed.  (*See* Conrad Decl., Ex. 4, Plan Art. VIII.B.)

    b.  The Plan automatically went effective on August 21, 2024. (*See* Conrad Decl., Ex. 4, Plan Art. VIII.B; Ex. 8.)

    c.  Contemporaneously with the Closing, NBK, in accordance with its obligations under the confirmed Plan, funded $4,510,862.80 in cash for the following:

        i.  Making payments to secured creditors with liens on the Property senior to NBK's liens (mostly governmental tax claims) in agreed amounts with those creditors in accordance with treatment afforded those creditors under the confirmed Plan (*See* Conrad Decl., Ex. 4, Plan Art. I.A(60) and Art. III.B.);

        ii.  Funding estimated amounts for priority unsecured claims of the Debtor (*See id.*, Plan Art. II and Art. III.B(c).);

        iii.  Funding the dollars that will be available for a guaranteed distribution to non-insider general trade creditors of the Debtor under the confirmed Plan (*See id.*, Plan Art. VI.C.);

        iv.  Funding estimated unpaid administrative expenses of the Chapter 11 case (*See id.*); and

        v.  Funding the liquidation trust established pursuant to the confirmed Plan (*See id.*).

9.     Not only were these amounts funded, but distributions were made to secured creditors with senior liens in full satisfaction of their claims as provided for by the confirmed Plan,

and they released their liens on the Property. (*See* Conrad Decl., Ex. 9.). Also, estate claims against NBK have been dismissed with prejudice because claims against NBK have been released by the unstayed Confirmation Order. (*See* Conrad Decl., Ex. 4 ¶ P.; Plan Art. IX.D.)

10. As required by the Confirmation Order, NBK has filed a notice of the effective date and substantial consummation of the Plan. (*See* Conrad Decl., Ex. 8.)

## C. Dismissal is Appropriate Given the Appellate Issues Raised by 2425 WL

11. In its untimely filed statement of issues on appeal, 2425 WL raises legal issues that, if sustained, would require the complete unwinding of the substantially consummated Plan. But those issues lack merit, and thus do not limit this Court's ability to dismiss the Appeal. *See In re Highland Capital Mgmt., L.P.*, 48 F.4th 419, 437-38 (5th Cir. 2022). For example, 2425 WL challenges the Bankruptcy Court's conclusion that an impaired creditor class accepted the Plan which, if sustained, would require the entirety of the Confirmation Order to be vacated and all actions taken based on the unstayed Confirmation Order would have to be unwound. The basis for 2425 WL's challenge was that NBK's vote in favor of the Plan should have been discarded because 2425 WL had objected NBK's claims and NBK's claims had not been estimated pursuant to Bankruptcy Rule 3018. But not once, but twice, prior to issuing the Confirmation Order, the Bankruptcy Court – based on a record established by 2425 WL and Mr. Choudhri at two full evidentiary hearings - found that the objections to NBK's claims lack merit. (*See* Conrad Decl., Exs. 10 and 11)[5] There was no error counting NBK's claim in favor of the Plan.

12. 2425 WL also challenges the classification and treatment of various claims, including its own, which if sustained would alter the basic terms of the bargain under which NBK

---

[5] Indeed, not once but twice since entry of the Confirmation Order, the Bankruptcy Court has confirmed this ruling. It has dismissed lawsuits by both 2425 WL and Mr. Choudhri raising effectively the same objections to NBK's claims that were embodied in 2425 WL's claim objection. (*See* Conrad Decl., Ex. 12 and 13.)

funded the Plan and the treatment of NBK under the Plan, requiring the return of its funding and recovery of distributions already made, again completely unwinding the substantially consummated Plan. But again, this challenge lacks merit. There was ample justification for both classification and treatment. 2425 WL was classified as an unsecured claim because its asserted junior lien on the Property was indisputably out of the money. The classification of all Choudhri related entities was justified because their claims are suspect and subject to unresolved objections, and the affirmative claims for recovery likely to be asserted by the liquidation trust will be asserted against those entities. It makes no sense to give these entities an interest in recoveries from them.

13. Finally, 2425 WL challenges the exculpation and gatekeeping provisions of the Plan, which if overturned would require the unwinding of the Plan as they were integral to the bargain struck and NBK's funding commitment. But again, this challenge lacks merit. Only the Trustee and his counsel are exculpated under the Plan as required by Fifth Circuit precedent. *See Highland Capital*, 48 F.4th at 437-38 (exculpation for non-debtors under a plan may only cover a "creditors' committee and its members for conduct within the scope of their duties, 11 U.S.C. § 1103(c), and the trustees within the scope of their duties."); (*see also* Conrad Decl., Ex. 4 ¶ P. ("[n]otwithstanding any provision in the Plan, including Article IX.C of the Plan and the definition of Exculpated Party contained in Article I.A.39 of the Plan, 'Exculpated Parties' shall mean only the Chapter 11 Trustee and any Related Parties of the Chapter 11 Trustee.")). And the gatekeeping provisions are similarly consistent with applicable law because (a) the releases under the Plan only cover estate claims, not the direct claims of a non-debtor against a non-debtor, and (b) the Bankruptcy Court's role is limited to confirming that a non-debtor is not trying to pursue a colorable claim that is not a released estate claim. *See Highland Capital Mgmt., L.P.*, 48 F.4th at 439 (affirming the "inclusion of the injunction and the gatekeeper provisions in the Plan.").

## THE APPEAL SHOULD BE DISMISSED

14.     This Appeal should be dismissed now, before merits briefing, for two reasons.  First, case law is clear that the failure to timely file a designation of record and statement of issues for appeal by even just a few days is grounds for dismissal, especially where, like here, the only plausible inference is that ignoring the deadline was intentional.

15.     Second, because the issues on Appeal lack merit, the Appeal is moot.  2425 WL never obtained a stay of the Confirmation Order.  The sale to NBK has closed.  The Plan is effective and substantially consummated and parties have changed their positions, made payments, made and accepted distributions, released liens on the Property and released claims against released parties based on the unstayed Confirmation Order.  Any relief now would require everything done in reliance on the unstayed Confirmation Order to be undone, and that relief would necessarily affect the rights of parties not before the Court.  Equitable mootness, thus, compels dismissal to uphold the finality of the confirmed Plan and safeguard all parties who relied on the unstayed Confirmation Order.

### A.  2425 WL's Late Designation of Record and Statement of Issues Compels Dismissal

16.     2425 WL did not comply with Bankruptcy Rule 8009(a)(1).  The rule requires that an appellant file and serve a designation of items to be included in the record on appeal and a statement of the issues to be presented within 14 days after filing its notice of appeal.  *See* Fed. R. Bankr. P. 8009(a)(1)(B)(i).  Although complying with this time limit is not jurisdictional, "[a]n appellant's failure to take any step other than the timely filing of a notice of appeal" is grounds for the district court to dismiss the appeal.  Fed. R. Bankr. P. 8003(a)(2).  The deadline for filing a designation of record and statement of issues is designed to encourage prompt prosecution of appeals.  This is especially true for bankruptcy cases "because of the inherent prejudice to creditors when the estate of a bankrupt is subject to dissipation by expenses incurred each additional day"

and therefore "some device is necessary to insure that appeals taken are diligently prosecuted." *In re Pyramid Mobile Homes, Inc.*, 531 F.2d 743, 745 (5th Cir. 1976) (per curiam).

17.     While courts in some Circuits are required to find bad faith, negligence, or indifference before dismissing an appeal for failure to comply with non-jurisdictional deadlines, in this Circuit, no such finding is required. *See In re Nikolai*, 5 F.3d 1495, at *3 (5th Cir. 1993). *Compare In re Beverly Mfg. Corp.*, 778 F.2d 666, 667 (11th Cir. 1985) (requiring courts to find bad faith, negligence, or indifference prior to dismissing an appeal for failure to timely file a brief).

18.     That said, when deciding to dismiss an appeal because the appellant has missed a deadline, the "[a]ppellant's good faith alone" is not enough to prevent dismissal. *Nikolai*, 5 F.3d at *2. Even an "honest oversight of an appellant's attorney" can be grounds to dismiss an appeal if the designation of record and statement of issues are not filed in a timely manner. *Id.* Additionally, "because 'time is of the essence' in bankruptcy proceedings" delays are "almost invariably . . . prejudicial to an appellee in such circumstances." *Id.* at *2 (quoting *In Re Braniff Airways, Inc.*, 774 F.2d 1303, 1305 (5th Cir. 1985)). Thus, the Fifth Circuit has "decline[d] to be a party to further prejudice" by overturning a court's dismissal of an appeal when the appellant has displayed "obstinately dilatory conduct." *See Pyramid Mobile*, 531 F.2d at 746.

### i.     2425 WL Has Been Obstinately Dilatory

19.     Although 2425 WL has not offered any explanation as to why it missed the deadline for filing its designation of record and statement of issues - it did not seek relief from the deadline before or after it passed – the rationale inference is that it missed the deadline intentionally.

20.     2425 WL had hoped that QB Loop would close and assume the Jetall lease, and 2425 WL only filed the designation of record and statement of issues after the deadline because

that benefit had evaporated.[6]  It simply cannot be a coincidence that 2425 WL delayed 18 days beyond a clear deadline it has known about or complied with in other appeals before this Court to file its designation of record and statement of issues (and of which it received notice from the Bankruptcy Court), and then filed *three hours* after the Trustee filed the August 9 notice of QB Loop's failure to close making clear his intent to close with NBK as the backup bidder and not extend the time for QB Loop to close.

21.     On these facts, even applying the higher standard applied in the Eleventh Circuit in *Beverly* and other circuits, the Appeal should be dismissed.  There was no mistake here, much less an "honest" one.  Indeed, courts have not hesitated to dismiss an appeal after an appellant filed its designation of record 15 days' late without a decent excuse.  *See, e.g.*, *In re Serra Builders, Inc.*, 970 F.2d 1309, 1311 (4th Cir. 1992) (affirming the dismissal of a bankruptcy appeal because the appellant filed its designation of the record on appeal fifteen days late and did not request an extension until after the deadline had passed; noting that the only explanation offered was that the appellant's attorney was out of the country).

**ii.     Prejudice to NBK**

22.     2425 WL's late designation of record and statement of issues also has prejudiced NBK.  The Fifth Circuit has stressed that "in virtually any bankruptcy proceeding, time is the essence of prejudice" and thus the efficient resolution of appeals is necessary to ensure the bankruptcy estate can be administered efficiently.  *See Pyramid Mobile*, 531 F.2d at 746.  However,

---

[6]  In addition, family members and trusts related to Mr. Choudhri are investors in QB Loop.  QB Loop's failure to close by the "Outside Closing Date," to put it mildly, puts at risk an approximately $2.1 million earnest money deposit by QB Loop.  This possibility only highlights that the decision by 2425 WL to ignore the deadline while that money was not at risk was intentional, and to file the designation of record and statement of issues late once that money was at risk, was in response to the money being at substantial risk because QB Loop did not close.

the Appeal does the opposite by aiming to disrupt the transfer of the Property to NBK and unwind actions taken in reliance on the unstayed Confirmation Order and finality of the confirmed Plan.

23.     Additionally, the late filings threaten to collaterally attack the Bankruptcy Court's unstayed *and* unappealed Sale Order by unwinding the sale to NBK and eliminating the good-faith purchaser protections granted to NBK under section 363(m) of the Bankruptcy Code.  That result is prejudicial to NBK, other parties and the integrity of the bankruptcy process.

24.     For the foregoing reasons, the Appeal should be dismissed for 2425 WL's failure to timely comply with Bankruptcy Rule 8009(a)(1).

**B.  2425 WL's Appeal Is Moot**

25.     The equitable mootness doctrine "allows courts to abstain from appeals of plan confirmation orders, allowing the interrelated web of parties to rely on a final decision."  *In re Sneed Shipbuilding, Inc.*, 916 F.3d 405, 408 (5th Cir. 2019).  The doctrine is "unique to bankruptcy proceedings, responsive to the reality that 'there is a point beyond which a court cannot order fundamental changes in reorganization actions.'"  *In re Texas Grand Prairie Hotel Realty, LLC*, 710 F.3d 324, 327 (5th Cir. 2013) (quoting *In re Scopac*, 624 F.3d 274, 281 (5th Cir. 2010)).

26.     For years, the Fifth Circuit has held that the doctrine is intended to "strik[e] the proper balance between the equitable considerations of finality and good faith reliance on a judgment and competing interests that underlie the right of a party to seek review of a bankruptcy order adversely affecting him."  *In re Manges*, 29 F.3d 1034, 1039 (5th Cir. 1994).  In striking this balance, there must be a "plan that is at least 'substantially consummated.' . . . . That end stage of the Chapter 11 process must be reached because the concern of equitable mootness is that appellate reversal might undermine the plan and the parties' reliance on it."  *Sneed Shipbuilding*, 916 F.3d

at 409 (quoting *In re Pacific Lumber Co.*, 584 F.3d 229, 240 (5th Cir. 2009); *In re Hilal*, 534 F.3d 498, 500 (5th Cir. 2008)) (citations omitted). [7]

27.     A bankruptcy appeal is therefore equitably moot when (i) a plan and confirmation order has not been stayed, (ii) the plan has been substantially consummated, and (iii) the appellant's appeal would "affect either the rights of parties not before the court or the success of the plan." *Scopac*, 624 F.3d at 281.

28.     Only the last two factors apply here because the Plan has not been stayed. [8] Applying these two factors, the end stage has been reached because the Plan has been substantially consummated and the Appeal will affect the rights of parties not before the Court and who relied on the unstayed Confirmation Order to implement the Plan after QB Loop failed to close the sale of the Property.

### i.     The Plan Has Been Substantially Consummated

29.     A plan is substantially consummated under the Bankruptcy Code when it goes effective and all or substantially all property covered by the plan has been transferred, the successor to the debtor has assumed all or substantially all property dealt with by the plan, and distributions under the plan have commenced.  *See* 11 U.S.C. § 1101(2).

30.     This Plan became effective on August 21, 2024, the first business day after the following conditions were all satisfied:  (i) the Confirmation Order was entered and had not been stayed or vacated; (ii) all conditions precedent to any asset purchase agreement for the Property were satisfied; (iii) the transactions contemplated under the purchase agreement were consummated; (iv) the Liquidation Trustee was appointed and the Liquidation Trust received

---

[7]  Other circuits explain that balance as "recogniz[ing] that a plan of reorganization, once implemented, should be disturbed only for compelling reasons."  *In re UNR Indus., Inc.*, 20 F.3d 766, 769 (7th Cir. 1994).

[8]   As explained above, there are no issues raised by 2425 WL that require appellate review.

funding contemplated under the Plan; and (v) there was no order restraining NBK from consummating the Plan or taking title to the Property as the successful bidder for the Property. (*See* Conrad Decl., Ex. 4, Plan Art. VIII.B.)[9]

31.     The Plan also has been substantially consummated.  Not only does the Confirmation Order provide that the Plan will be deemed substantially consummated when it goes effective (*see id.*), contemporaneous with the occurrence of the Effective Date, all the Debtor's property, the Property, and funding from NBK if it became the successful bidder, was dealt with.  The Property was sold to NBK, the conditions to close the sale under the Stalking Horse Agreement were satisfied and the transactions (*i.e.*, the sale to NBK) contemplated under the sale agreement were consummated.  The Liquidation Trustee was appointed to administer the Liquidation Trust.

32.     NBK funded its obligations under the unstayed Confirmation Order and as a result, secured real estate tax claims have been paid in full in agreed-upon amounts, funding has been provided to pay other secured claims and priority claims in full, NBK's claim for its tax liens claims has been waived, funding has been provided to make a minimum aggregate payment to general unsecured trade creditors and the Liquidation Trust has been funded to reconcile claims against the estate, prosecute retained actions for the trust's non-insider beneficiaries, and make distributions in accordance with the confirmed Plan.  In addition, all cash and remaining assets have been transferred to the Liquidation Trust and estate claims against NBK (if any) have been released.

33.     Thus, the second *Scopac* factor for equitable mootness is satisfied.

---

[9] Capitalized terms used but not defined herein have the meaning ascribed to them in the Plan. (*See* Conrad Decl., Ex. 4).

### ii. The Appeal Will Affect the Right of Parties Not Involved In the Appeal and/or the Success of the Plan

34.     The third *Scopac* factor likewise weighs in favor of equitable mootness. This factor asks whether "the relief requested would affect either the rights of parties not before the court or the success of the plan." *Pac. Lumber*, 584 F.3d at 240 (quoting *Manges*, 29 F.3d at 1039); *In re Hammersmith Development Co.*, 248 F.3d 1142 (5th Cir. 2001). The analysis asks whether, for "each individual claim," "the relief that a party requests will likely unravel the plan," *In re Blast Energy Servs. Inc.*, 593 F.3d 418, 425 (5th Cir. 2010), such that the "potential impact on the reorganization scheme as a whole" militates against granting the relief. *Pac. Lumber*, 584 F.3d at 241. Thus, "if no stay has been obtained and the plan has been substantially consummated [both of which are true in this case], the more likely the third prong indicates equitable mootness." *Blast Energy*, 593 F.3d at 424-25; *see also In re ASARCO L.L.C.*, 401 F. App'x 914, 916 (5th Cir. 2010).

35.     Reversal of the Confirmation Order would affect the rights of parties not before the Court and/or the success of the confirmed Plan. The Trustee has diligently worked to manage the estate and preserve its value and relied on the unstayed order to sell the Property to NBK after QB Loop failed to close and receive funding for the Liquidation Trust in amounts necessary to pay administrative expense and priority claims in full and fund an aggregate amount for distribution to non-insider unsecured trade claimants, and to make distributions to secured tax claimants for unpaid property taxes (other than NBK's waived claims for certain tax liens). It would be unfairly prejudicial to require these parties to return the payments if the Confirmation Order is set aside.

36.     Moreover, reversal would be value-destructive and likely doom the success of the confirmed Plan that provides many out of the money non-insider creditors with some cash recovery or an interest in litigation recoveries against the Debtor's insiders and affiliates. The Trustee would be required to void the Stalking Horse Agreement and incur more administrative expenses trying

to re-sell the Property and recover payments made under the confirmed Plan, without any funding or agreement for the estate to use NBK's cash collateral, or any reasonable expectation that NBK would again proceed with a chapter 11 plan of liquidation or process that provides for any recovery to even a subset of out-of-the money creditors through its sharing of its collateral value. Also, if the case converts to a Chapter 7 liquidation, only NBK and secured creditors will receive a recovery, assuming a sale of the Property, leaving all other non-insider creditors with an economic stake under the confirmed Plan with nothing.

37.     In sum, nothing can be done in response to 2425 WL's Appeal "without interfering with the finality" of the Plan and actions taken in reliance on the unstayed Confirmation Order including by third parties not before the Court. *In re Superior Offshore Int'l, Inc.*, 591 F.3d 350, 353 (5th Cir. 2009). The relief requested by 2425 WL will "likely unravel the plan; it is "impracticable and inappropriate for" this Court "to grant such relief"; and instead the Court must "abstain[] from reviewing the appeal." *Blast Energy*, 593 F.3d at 425 (5th Cir. 2010) (citing *Pac. Lumber Co.*, 584 F.3d at 240).

<u>CONCLUSION</u>

For the foregoing reasons, the Court should enter the proposed order attached as <u>Exhibit B</u> dismissing the Appeal.

DATED: August 23, 2024 **PILLSBURY WINTHROP SHAW PITTMAN LLP**

*/s/ Charles C. Conrad*
Charles C. Conrad
Texas State Bar No. 24040721
Ryan Steinbrunner
Texas State Bar No. 24093201
609 Main Street Suite 2000
Houston, TX 77002
Telephone: (713) 276-7600
Facsimile: (713) 276-7634
charles.conrad@pillsburylaw.com
ryan.steinbrunner@pillsburylaw.com

- *and* -

Andrew M. Troop (Bar No. MA547179)
Patrick E. Fitzmaurice*
Kwame O. Akuffo*
31 West 52nd Street
New York, NY 10019-6131
Telephone: (212) 858-1000
Facsimile: (212) 858-1500
andrew.troop@pillsburylaw.com
patrick.fitzmaurice@pillsburylaw.com
kwame.akuffo@pillsburylaw.com

*Admitted *pro hac vice*

**Counsel for National Bank of Kuwait, S.A.K.P., New York Branch**

## CERTIFICATE OF SERVICE

      I hereby certify that, on August 23, 2024, a true and correct copy of forgoing motion was served via the Court's CM/ECF system on the Chapter 11 Trustee, 2425 WL, LLC's counsel of record and all others who are deemed to have consented to ECF electronic service in this Appeal, and also by mailing a copy of the motion, first class, postage prepaid, to each of the parties on the attached service list.

                                */s/ Charles C. Conrad*
                                  Charles C. Conrad

## CERTIFICATE OF CONFERENCE SERVICE

      On August 22, 2024, the undersigned hereby certifies that he emailed Appellant's counsel regarding the motion in compliance with the meet and confer requirement in Local Civil Rule 7.1 and the Court's procedures. The undersigned and Counsel for Appellant also spoke on August 22, 2024 and August 23, 2024.  Counsel for Appellant responded indicating that he was not yet able to report whether the Appellant would oppose the relief sought in the motion.

                                  */s/ Andrew M. Troop*
                                  Andrew M. Troop

**<u>Service List</u>**

**<u>Appellant's Counsel:</u>**
H. Gray Burks, IV
Burks Baker, PLLC
950 Echo Lane Ste 300
Houston, TX 77024

**<u>Chapter 11 Trustee:</u>**
Christopher R. Murray
602 Sawyer Street Ste 400
Houston, TX 77007

**<u>Chapter 11 Trustee's Counsel:</u>**
R. J. Shannon
Shannon & Lee LLP
2100 Travis Street Ste 1525
Houston, TX 77002

**<u>U.S. Trustee:</u>**
Office of United States Trustee
Attn: Jana Smith Whitworth
515 Rusk Street Suite 3516
Houston, TX 77002

**<u>Exhibit A</u>**

Declaration of Charles C. Conrad

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | Case No. 23-34815 (JPN) |
| GALLERIA 2425 OWNER, LLC | § | |
| | § | Chapter 11 |
| Debtor. | § | |
| 2425 WL, LLC | § | |
| | § | |
| Appellant | § | Civil Action No. 4:24-cv-02590 |
| | § | |
| v. | § | |
| | § | |
| NATIONAL BANK OF KUWAIT, | § | |
| S.A.K.P., NEW YORK BRANCH; | § | |
| CHRISTOPHER R. MURRAY, | § | |
| CHAPTER 11 TRUSTEE | § | |
| | § | |
| Appellees. | § | |

---

**DECLARATION OF CHARLES C. CONRAD IN SUPPORT OF NATIONAL BANK OF
KUWAIT, S.A.K.P, NEW YORK BRANCH'S MOTION TO DISMISS APPEAL**

---

Pursuant to 28 U.S.C. § 1746, I, Charles C. Conrad, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct:

1.     I am a partner at the law firm of Pillsbury Winthrop Shaw Pittman LLP, counsel to National Bank of Kuwait, S.A.K.P. New York Branch, as administrative agent and secured lender.

2.     I am duly admitted to practice before the United States Court of Appeals for the Fifth Circuit, United States District Court for the Northern District of Texas, United States District Court for the Southern District of Texas, United States District Court for the Western District of Texas, and the United States District Court for the Eastern District of Texas.

3.     I submit this declaration in support of the *National Bank of Kuwait, S.A.K.P. New York Branch's Motion to Dismiss Appeal*.

4.      Attached as <u>Exhibit 1</u> is a true and correct copy of the Order Approving the Sale of the Property to QB Loop.[1]

5.      Attached as <u>Exhibit 2</u> is a true and correct copy of the Stalking Horse Asset Purchase Agreement between the Trustee and NBK.

6.      Attached as <u>Exhibit 3</u> is a true and correct copy of QB Loop's *Motion for Entry of an Order Approving the Assumption and Assignment of Additional Leases Pursuant to the Sale Order*.

7.      Attached as <u>Exhibit 4</u> is a true and correct copy of the Order Confirming NBK's Chapter 11 Plan of Liquidation.

8.      Attached as <u>Exhibit 5</u> is a true and correct copy of the *Notice of Failure to Close Under Successful Bid*.

9.      Attached as <u>Exhibit 6</u> is a true and correct copy of 2425 WL's Designation of Record and Statement of Issues for Appeal.

10.     Attached as <u>Exhibit 7</u> is a true and correct copy of the Bankruptcy Court's *Notice of Filing of an Appeal*.

11.     Attached as <u>Exhibit 8</u> is a true and correct copy of the *Notice of Confirmation and Effective Date of Chapter 11 Plan of Liquidation of the Debtor*.

12.     Attached as <u>Exhibit 9</u> is a true and correct copy of the *Trustee's Report of Sale*.

13.     Attached as <u>Exhibit 10</u> is a true and correct copy of the Order Denying 2425 WL's Motion to Prohibit NBK from Credit Bidding.

14.     Attached as <u>Exhibit 11</u> is a true and correct copy of the Bankruptcy Court's Memorandum of Opinion Confirming NBK's Chapter 11 Plan of Liquidation.

---

[1]  Capitalized terms used but not defined herein have the meaning ascribed to them in the motion to dismiss, and the attached exhibits reflect all filings in the Bankruptcy Court.

15.     Attached as <u>Exhibit 12</u> is a true and correct copy of 2425 WL's Response to Defendant National Bank of Kuwait S.A.K.P., New York Branch's Amended Motion to Dismiss Complaint for Equitable Subordination and Damages.

16.     Attached as <u>Exhibit 13</u> is a true and correct copy of Plaintiff's Response to Defendant's Motion to Dismiss Third Amended Complaint.

Dated: August 23, 2023                                                         */s/ Charles C. Conrad*
Houston, Texas                                                                 Charles C. Conrad

# EXHIBIT 1

United States Bankruptcy Court
Southern District of Texas

**ENTERED**

July 08, 2024

Nathan Ochsner, Clerk

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| GALLERIA 2425 OWNER, LLC, | ) |  |
|  | ) | Case No. 23-34815 |
| Debtor. | ) |  |
|  | ) |  |

**ORDER (A) APPROVING ASSET PURCHASE AGREEMENT BETWEEN THE TRUSTEE AND QB LOOP PROPERTY LP; (B) APPROVING THE SALE OF THE PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (C) APPROVING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND LEASES; (D) DETERMINING THE AMOUNTS NECESSARY TO CURE SUCH EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (E) GRANTING RELATED RELIEF**

(Relating to ECF Nos. 188, 254, 266, 561)

The Court having considered the *Chapter 11 Trustee's Motion for Entry of an Order: (I) Approving Procedures for the Sale of the Property Free and Clear of All Liens, Claims and Encumbrances; (II) Scheduling an Auction; (III) Authorizing Entry into the Stalking Horse Purchase Agreement; (IV) Approving Assumption and Assignment Procedures; (V) Approving Form of Notice; and (VI) Granting Related Relief* [ECF No. 188] (the "Motion"),[1] filed by Christopher R. Murray, the chapter 11 trustee (the "Trustee") in the above-captioned case (the "Chapter 11 Case"), seeking, among other related relief, (i) approval of a procedures (the "Bid Procedures") for the conduct of a competitive auction (the "Auction") of property of the Debtor's estate free and clear of all liens, claims, interests, and encumbrances, except for assumed liabilities expressly retained by a successful bidder after the Auction, (ii) authorizing and approving the assumption and assignment of proposed assumed executory contracts and unexpired leases subject

---

[1] Capitalized terms used but not described in this Order have the meanings ascribed to them in the Motion.

to the procedures set forth therein (the "Assumption and Assignment Procedures"), and (iii) setting a hearing regarding a sale pursuant to such Auction and procedures; and the Court having entered this Court's prior order, dated April 5, 2024 [ECF No. 254] (the "Bid Procedures Order"), and QB Loop Property LP, a Texas limited partnership (the "Buyer") having submitted the highest or otherwise best bid for the property located at 2425 West Loop South, Houston, Texas (the "Property") and related assets, as reflected in the Asset Purchase Agreement (as defined below); and a hearing having been held on July 8, 2024 (the "Sale Hearing") to consider approval of the Asset Purchase Agreement and the transaction with the Buyer (the "Sale Transaction"); and the Court having considered (i) the Motion and the exhibits thereto, (ii) the Asset Purchase Agreement, dated as of July 2, 2024, by and between the Buyer and the Trustee (the "Asset Purchase Agreement"), a copy of which is attached hereto as **Exhibit A**, whereby the Trustee has agreed, subject to Court approval, among other things, to sell the property indicated therein (the "Purchased Assets") to the Buyer, including, without limitation, the Designated Assigned Contracts (as defined herein) that will be assumed and assigned to the Buyer on the terms and conditions set forth in the Asset Purchase Agreement and set forth herein, and (iii) the record of all proceedings in the Chapter 11 Case; and it appearing that due and sufficient notice of the Motion, the Asset Purchase Agreement, the Bid Procedures Order, and the form of this order (the "Sale Order") have been provided; and, except as otherwise provided for herein, all objections to the Sale Transaction having been withdrawn, resolved, or overruled; and, after due deliberation and for the reasons set forth on the record of the Sale Hearing, it appearing that the relief granted herein is in the best interests of the Debtor's estate; and good and sufficient cause appearing therefor;

**IT HEREBY IS FOUND AND DETERMINED THAT**:

A.        **Fed. R. Bankr. P. 7052**. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such. The Court's findings shall also include any oral findings of fact and conclusions of law made by the Court during or at the conclusion of the Sale Hearing.

B.        **Jurisdiction and Venue**. This Court has jurisdiction over the Motion, the Sale Transaction, and over the property of the Debtor's bankruptcy estate, including the Purchased Assets, pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b), and the General Order 2012-6 of the U.S. District Court for Southern District of Texas. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and other legal predicates for the relief sought in the Motion and granted herein include sections 105, 362, 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9008, and 9014.

C.        **Final Order**. This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). The Trustee has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the Sale Transaction as contemplated by the Asset Purchase Agreement. In the absence of a stay pending appeal, the Buyer, being a good faith purchaser under section 363(m) of the Bankruptcy Code, may close the sale contemplated by the Asset Purchase Agreement at any time after entry of this Sale Order, subject to the provisions of the Asset Purchase Agreement, and

shall not be subject to any applicable stay, including any stay under Bankruptcy Rules 6004(h) and 6006(d).

D.  **Notice and Opportunity to Object**. As evidenced by the certificates of service on file with the Court, due, proper, timely, adequate, and sufficient notice and a reasonable opportunity to object or be heard with respect to the Motion, the Sale Hearing, the Sale Transaction, the Asset Purchase Agreement, the potential assumption and assignment of the Potential Assigned Contracts (as defined below) and proposed Cure Amounts, and the identification or means of identification of the particular Designated Assigned Contracts (as defined below) has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Bid Procedures Order.

E.  **Property of Estate**. The Purchased Assets to be sold and assigned by the Trustee to the Buyer pursuant to the Asset Purchase Agreement are property of the Debtor's estate and title thereto is vested in the Debtor's estate.

F.  **Marketing Process**. (i) The Trustee and his advisors engaged in a marketing and sale process pursuant to the Bid Procedures Order and the Bid Procedures that was sufficient under the circumstances; (ii) the Trustee and his advisors conducted a fair and open sale process; (iii) the sale process and the Bid Procedures were non-collusive and duly noticed and provided a full, fair and reasonable opportunity for any entity to make an offer to purchase the Purchased Assets; and (iv) the process conducted by the Trustee pursuant to the Bid Procedures Order and the Bid Procedures was reasonably calculated to obtain the highest or otherwise best value for the Purchased Assets obtainable under the circumstances.

G.  **Auction**. The Auction occurred on June 21, 2024, in accordance with the Bid Procedures Order.   The Auction was properly conducted in a manner designed to result in the

highest or otherwise best offer for the Purchased Assets. At the Auction, the Trustee agreed in an exercise of his business judgment, in consultation with his professionals and advisors, to enter and consummate the Asset Purchase Agreement. At the conclusion of the Auction, the Trustee announced that he had determined that the offer submitted by the Buyer was the highest and best offer, and that the Buyer was the Successful Bidder in accordance with the Bid Procedures Order.

H.     **Corporate Authority**. Subject to this Order, the Trustee will have all necessary power and authority to (i) execute and deliver the Asset Purchase Agreement and all other documents contemplated thereby, (ii) consummate the Sale Transaction, and (iii) execute any document necessary or appropriate to effectuate the Sale Transaction. No consents or approvals, other than those expressly provided for in the Asset Purchase Agreement, are required for the Trustee to consummate the Sale Transaction on behalf of the Debtor's bankruptcy estate.

I.     **Business Justification**. The Trustee has demonstrated good, sufficient, and sound business purposes and justifications for approval of and entry into the Asset Purchase Agreement and the other agreements, documents, and instruments deliverable thereunder, pursuant to section 363(b) of the Bankruptcy Code.

J.     **Highest and Otherwise Best Offer**. Pursuant to the Asset Purchase Agreement, the Buyer has offered to purchase the Purchased Assets in exchange for (i) $27,250,000 in cash and (ii) the assumption of all Assumed Liabilities. The consideration to be provided by the Buyer pursuant to the Asset Purchase Agreement: (i) is fair and reasonable; (ii) is the highest and otherwise best offer for the Purchased Assets received at the Auction; and (iii) constitutes reasonably equivalent value and fair consideration for the Purchased Assets. No other person, entity, or group of entities has offered to purchase the Purchased Assets for greater economic value to the Debtor's estate than the Buyer. The Trustee's determination that the Asset Purchase

Agreement constitutes the highest and best offer likely obtainable for the Purchased Assets was a valid, sound, and reasonable exercise of the Trustee's business judgment consistent with his fiduciary duties. The terms and conditions set forth in the Asset Purchase Agreement are fair and reasonable under the circumstances. The Asset Purchase Agreement was not entered into by the Buyer or the Trustee for the purpose of, nor does it have the effect of, hindering, delaying, or defrauding any creditor of the Debtor under any of the foregoing federal or state laws or any other applicable laws.

K. **<u>Good Faith Purchaser</u>**. The Asset Purchase Agreement and the Sale Transaction were proposed, negotiated, and entered into by and among the Trustee and the Buyer without collusion or fraud, in good faith, and at arm's length. The Buyer is a good faith purchaser within the meaning of Bankruptcy Code section 363(m) and is therefore entitled to the full protection of that provision with respect to the Asset Purchase Agreement, the Sale Transaction, each term of the Asset Purchase Agreement (and any ancillary documents executed in connection therewith) and each term of this Sale Order. The protections afforded by Bankruptcy Code section 363(m) are integral to the Sale Transaction and the Buyer would not consummate the Sale Transaction without such protections. There has been no showing that the Trustee or the Buyer have engaged in any action or inaction that would cause or permit the Asset Purchase Agreement or the Sale Transaction to be avoided or any costs or damages to be imposed under Bankruptcy Code section 363(n). Neither the Buyer, nor any of its affiliates, members, controlling partners, officers, directors, principals, or shareholders is an "insider" of the Debtor as that term is defined in Bankruptcy Code section 101(31). No common identity of directors, managers, controlling partners, shareholders, or members exists between the Debtor and the Buyer.

L.        **Validity of the Transfer**. As of the closing of the Sale Transaction (the "Closing"), the transfer of Purchased Assets to the Buyer will be a legal, valid, and effective transfer of such Purchased Assets, and will vest the Buyer with all right, title, and interest of the Debtor and the Debtor's estate in and to the Purchased Assets, free and clear of all liens, claims, encumbrances, and other interests. The consummation of the Sale Transaction is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, sections 105(a), 363(b), 363(f), 363(h), 365(f), and 365(m), and all of the applicable requirements of such sections have been complied with in respect of the Sale Transaction.

M.        **Legal, Valid, and Binding Transfer**. The Asset Purchase Agreement is a valid and binding contract between the Trustee, on behalf of the Debtor's bankruptcy estate, and the Buyer and shall be enforceable pursuant to its terms. The Asset Purchase Agreement, the Sale Transaction, and the consummation thereof shall be specifically enforceable against and binding upon (without posting any bond) the Trustee, any successor trustee appointed, the Debtor, 2425 WL LLC, and Ali Choudhri, and shall not be subject to rejection or avoidance by the foregoing parties or any other person.

N.        **Free and Clear**. The Buyer would not have entered into the Asset Purchase Agreement and would not consummate the Sale Transaction if the transfer of the Purchased Assets to the Buyer and the assumption and assignment of the Designated Assigned Contracts to the Buyer were not free and clear of all liens, claims, encumbrances and other interests, as provided for herein, or if the Buyer would, or in the future could, be liable for any such claims. Subject to the provisions of this Sale Order and except as may be specifically provided in the Asset Purchase Agreement or this Sale Order, the Trustee's sale of the Purchased Assets shall be free and clear of any and all interests, including all liens, claims, and encumbrances, because, in each case, one or

7

more of the standards set forth in sections 363(f)(1) through (5) of the Bankruptcy Code have been satisfied. Each entity with an interest, including any lien, claim, or encumbrance, in the Purchased Assets to be transferred on the Closing Date: (i) has, subject to the terms and conditions of this Sale Order, consented to the Sale Transaction or is deemed to have consented to the extent that they did not object; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such lien, claim, interest, or encumbrance; or (iii) otherwise falls within the provisions of Bankruptcy Code section 363(f). Except to the extent expressly set forth in the Asset Purchase Agreement, this Sale Order is and shall be effective on the date of the Closing (the "Closing Date") as a determination that all liens, claims, encumbrances, and other interests of any kind or nature whatsoever existing as to the Purchased Assets prior to the Closing Date have been unconditionally released, discharged, and terminated, in each case to the fullest extent permitted by law, and that the conveyances described herein have been effected; *provided that* such liens, claims, encumbrances, and other interests shall attach to the proceeds of the Sale Transaction in the order of their priority, with the same validity, force, and effect which they now have against the Purchased Assets. Except to the extent expressly set forth in the Asset Purchase Agreement, the Buyer shall not be responsible for any liens, claims, encumbrances, and other interests, including any derivative, successor, transferee, or vicarious liability as a result of the transactions authorized herein, including liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of Debtor's business or administration of the bankruptcy estate prior to the Closing or by reason of the transactions contemplated by this Sale Order on account of the Sale Transaction. Upon the Closing Date, all persons having liens of any kind or nature whatsoever against the Purchased Assets arising prior to the Closing Date shall be forever barred, estopped, and permanently enjoined from pursuing or

asserting such liens against the Buyer or any of its respective assets, property, affiliates, successors, assigns, or the Purchased Assets.

O.         **Not a *Sub Rosa* Plan**. The Asset Purchase Agreement and Sale Transaction do not constitute an impermissible *sub rosa* chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford. The Asset Purchase Agreement and the Sale Transaction neither impermissibly restructure the rights of the Debtor's creditors nor impermissibly dictate a liquidating plan for the Debtor.

P.         **No Successor, Derivative, or Similar Liability**. The Buyer (i) is not, and shall not be, considered a successor in interest to the Debtor, (ii) has not, *de facto* or otherwise, merged or consolidated with or into the Debtor, (iii) is not a continuation or substantial continuation of the Debtor or any enterprise of the Debtor, and (iv) is not holding itself out to the public as a continuation of the Debtor. There is no continuity or common identity between the Buyer, any of its affiliates, and the Debtor. The sale and transfer of the Purchased Assets to the Buyer, including the assumption by the Trustee and assignment, transfer, and/or sale to the Buyer and the Buyer's occupation and use of the Purchased Assets will not subject the Buyer to any liability (including any successor liability) with respect to the operation of any of the Debtor's business before Closing or by reason of such transfer, except that, upon the Closing, the Buyer shall become liable for the applicable Assumed Liabilities. Buyer shall have no obligations with respect to any liabilities of the Debtor or the Debtor's estate arising out of or related to the Purchased Assets, except as expressly provided in the Asset Purchase Agreement. The Sale Transaction contemplated under the Asset Purchase Agreement does not amount to a consolidation, merger or de facto merger of the Buyer and the Debtor and/or the Debtor's estate. The Buyer would not have acquired the Purchased Assets if it were liable for claims based upon "successor liability" theories.

Q.      **Cure Amounts**. As evidenced by the certificates of service filed with this Court, and in accordance with the provisions of the Bid Procedures Order, the Trustee has served notice upon each non-Debtor counterparty to contracts and leases the Trustee potentially would assume and assign (the "Potential Assigned Contracts") the procedures for determining issues surrounding the assumption and assignment of the Potential Assigned Contracts (the "Notice of Assumption and Assignment Procedures") and the proposed Cure Amounts upon each non-Debtor counterparty to the Contracts and Leases (the "Contract & Cure Schedule"). The service of the Notice of Assumption and Assignment Procedures and Contract & Cure Schedule was timely, good, sufficient, and appropriate under the circumstances and no other or further notice need be given with respect to the Cure Amounts for the assumption and assignment of the Potential Assigned Contracts. All non-debtor parties to the Potential Assigned Contracts have had a reasonable opportunity to object both to the Cure Amounts listed on the Contract & Cure Schedule and to the assumption and assignment of the Potential Assigned Contracts to the Buyer.

R.      **Assumption and Assignment of Assigned Contracts**. The assumption and assignment of the Potential Assigned Contracts designated by the Buyer (including those designated after the entry of this Sale Order, the "Designated Assigned Contracts") is an integral element of the Asset Purchase Agreement, is in the best interests of the Debtor's estate, and represents the reasonable exercise of the Trustee's sound business judgment. No defaults exist in the Debtor or Trustee's performance under the Designated Assigned Contracts as of the date of this Sale Order other than the failure to pay the applicable Cure Amounts, as may be required, or such defaults that are not required to be cured. In addition, the Buyer has provided adequate assurance of its ability to perform its obligations under each of the Assigned Contracts within the meaning of section 365 of the Bankruptcy Code. The assumption and assignment of the Designated

Assigned Contracts, subject to the conditions in the Asset Purchase Agreement, is integral to the Asset Purchase Agreement, is in the best interests of the Debtor's estate and creditors, and represents the valid and reasonable exercise of the Trustee's sound business judgment. Specifically, the assumption and assignment of the Designated Assigned Contracts (i) is necessary to sell the Purchased Assets to the Buyer, (ii) limits the losses suffered by counterparties to the Designated Assigned Contracts, and (iii) maximizes value for all of the stakeholders in the Chapter 11 Case by limiting the amount of claims against the Debtor's estate that would otherwise arise from the rejection of the Designated Assigned Contracts or sale free and clear of such interests. The Trustee has met all applicable requirements of section 365(b) of the Bankruptcy Code and the Bid Procedures Order and all other requirements and conditions under the Bankruptcy Code for the assumption and assignment to the Buyer of the Designated Assigned Contracts. Therefore, the Designated Assigned Contracts may be assumed by the Trustee and assigned to the Buyer. The assumption and assignment of each Designated Assigned Contract is approved notwithstanding any provisions in such Designated Assigned Contract or other restrictions prohibiting its assignment or transfer.

S.   **Prompt Consummation**.   The Sale Transaction must be approved and consummated promptly in order to maximize value for the Debtor's estate. Time is of the essence in consummating the Sale Transaction. The Trustee has demonstrated compelling circumstances and good and sufficient cause for the immediate approval and consummation of the transactions contemplated by the Asset Purchase Agreement, including, without limitation, the Sale Transaction and the assumption and assignment of the Designated Assigned Contracts. Accordingly, there is sufficient cause to waive the stay contemplated by Bankruptcy Rules 6004(h) and 6006(d) with regard to the transactions contemplated by this Sale Order.

T.       **Legal and Factual Bases**. The legal and factual bases set forth in the Motion and herein establish just cause for the relief granted herein.

U.       **Necessity of Sale Order**. The Buyer would not consummate the transactions without all of the relief provided for in this Sale Order.

**THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT**:

1.       The Motion is **GRANTED** as set forth herein.

2.       Any objections, responses, or reservations of rights filed or asserted in response to the Motion and the relief granted herein, to the extent not resolved as set forth herein, settled, or waived as announced to the Court on the record at the Sale Hearing, are hereby overruled on the merits in their entirety.

**Approval of the Asset Purchase Agreement**

3.       The Asset Purchase Agreement with the Buyer, including all of its terms and conditions, all schedules and exhibits, all ancillary documents, and all transactions contemplated therein, including, without limitation, the Sale Transaction, and the assumption and assignment of the Designated Assigned Contracts, are hereby approved in all respects.

4.       Pursuant to sections 105, 363 and 365 of the Bankruptcy Code, the Trustee is authorized and empowered to (i) execute, deliver, perform under, consummate, and implement the Asset Purchase Agreement and the Sale Transaction together with all additional documents as may be reasonably necessary or desirable to implement the Asset Purchase Agreement and the Sale Transaction, (ii) take any and all actions as he deems necessary, appropriate, or advisable for the purpose of assigning, transferring, granting, conveying, and conferring to the Buyer or as may be necessary or appropriate to the performance of the obligations as contemplated by the Asset Purchase Agreement and the Sale Transaction, including, without limitation, any and all actions reasonably requested by the Buyer that are consistent with this Sale Order, the Asset Purchase

Agreement, and the Sale Transaction, and (iii) pay, without further order of this Court, whether before, at or after the Closing Date, any expenses or costs that are required or reasonably contemplated to be paid by the Trustee in order to consummate the transactions contemplated by the Asset Purchase Agreement or perform the obligations under the Asset Purchase Agreement.

**Transfer of the Purchased Assets Free and Clear**

5.       Pursuant to sections 105(a), 363(f), and 365(b) of the Bankruptcy Code, upon the Closing of the Sale Transaction: (i) the transfer of the Purchased Assets to the Buyer pursuant to the Asset Purchase Agreement shall constitute a legal, valid, and effective transfer of the Purchased Assets and shall vest the Buyer with all right, title, and interest in and to the Purchased Assets; and (ii) the Purchased Assets shall be transferred to the Buyer free and clear of any and all interests, including all liens, claims, and encumbrances, except those specifically assumed by the Buyer pursuant to the Asset Purchase Agreement, with any such liens, claims, encumbrances, and other interests of which the Purchased Assets are sold free and clear to attach to the proceeds of the Sale Transaction, in the order of their priority, with the same validity, force, and effect which they had against the Purchased Assets prior to the entry of this Sale Order and the Closing, subject to any rights, claims, and defenses the Debtor, its estate, and all interested parties may possess with respect thereto; and all persons are forever prohibited and enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, against the Buyer or the Purchased Assets with respect to any such liens, claims, encumbrances, and other interests. Accordingly, the Buyer shall not have any derivative, successor, transferee, or vicarious liability as a result of the transactions authorized herein, including liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of the Debtor's business prior to the Closing or by reason of the transactions contemplated by this Sale Order.

6.      In accordance with the Asset Purchase Agreement, any property tax debt or ad valorem tax debt assessed with respect to the Purchased Assets for the taxable period that begins prior to the Closing Date and ends after the Closing Date shall be prorated between the Debtor's estate and the Buyer based on the number of full days in such period that occur before the Closing Date, on the one hand, and the number of days in such period that occur on or after the Closing Date, on the other hand.  As set forth above, the Buyer shall not have any liability for the property tax debt or ad valorem tax debt accrued prior to the Closing Date.

7.      On the Closing Date, this Sale Order shall be construed and shall constitute for any and all purposes a legal, valid, binding, and effective, full, and complete general assignment, conveyance, and transfer of the interests of the Debtor and the Debtor's estate in the Purchased Assets, warranty deed and/or a bill of sale transferring good and marketable title in and to the Purchased Assets.

8.      The Trustee is authorized to execute any documents or instruments on behalf of the Debtor necessary or appropriate to effectuate the Sale Transaction contemplated by this Sale Order.

9.      This Sale Order is and shall be effective as a determination that all liens, claims, encumbrances, and other interests (other than those expressly assumed by the Buyer or permitted to survive under the Asset Purchase Agreement), attributable to any period ending on or before the Closing Date, shall be and are, without further action by any person or entity, unconditionally released, discharged, and terminated with respect to the Purchased Assets as of the Closing Date, except as may otherwise be set forth in the Asset Purchase Agreement or this Sale Order. The provisions of this Sale Order authorizing the sale and assignment of the Purchased Assets free and clear of all liens, claims, encumbrances, and other interests shall be self-executing, and

notwithstanding the failure of the Debtor, the Trustee, the Buyer, or any other party to execute, file, or obtain releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and/or implement the provisions hereof, all liens, claims, encumbrances, and other interests (other than those expressly assumed by the Buyer or permitted to survive under the Asset Purchase Agreement) on or against the Purchased Assets, if any, shall be deemed released, discharged, and terminated.

10.     All persons (and their respective successors and assigns) including all debt security holders, equity security holders, governmental tax and regulatory authorities, lenders, customers, vendors, employees, former employees, litigation claimants, trade creditors, and any other creditors or parties-in-interest who may or do hold claims against the Debtor, the Purchased Assets, the Debtor's business, and/or the Debtor's estate, are hereby forever barred, estopped, and permanently enjoined from asserting or pursuing such claims against the Buyer, its affiliates, successors, assigns, its property, or the Purchased Assets, including taking any of the following actions with respect to any such claims: (i) commencing or continuing in any manner any action, whether at law or in equity, in any judicial, administrative, arbitral, or any other proceeding, against the Buyer, its affiliates, successors, assigns, assets (including the Purchased Assets), or properties; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Buyer, its affiliates, successors, assigns, assets (including the Purchased Assets), or properties; (iii) creating, perfecting, or enforcing any claim against the Buyer, its affiliates, successors, assigns, assets (including the Purchased Assets), or properties; (iv) asserting a claim as a setoff, recoupment, or right of subrogation against any obligation due to the Buyer, its affiliates, or its successors or assigns; or (v) commencing or continuing any action in any manner or place that does not comply, or is inconsistent, with the provisions of this Sale Order or the

agreements or actions contemplated or taken in respect thereof. Following the Closing, no holder of any lien, claim, encumbrance, or other interest shall interfere with the Buyer's title to or use and enjoyment of the Purchased Assets based on or related to any such lien, claim, encumbrance, or other interest or based on any action the Debtor, Trustee, or Buyer may take prior to the Closing.

11. Except as otherwise provided herein or in the Asset Purchase Agreement, on the Closing Date, the Trustee, the Debtor, and the Debtor's creditors are authorized to execute such documents and instruments and to take all other actions as may be reasonably necessary to document and effectuate the release of their liens, claims, encumbrances, and other interests in the Purchased Assets (other than those expressly assumed by the Buyer or permitted to survive under the Asset Purchase Agreement), if any, as such liens, claims, encumbrances, and other interests, may have been recorded or may otherwise exist. If any such creditor fails to execute any such documents or instruments or take any such actions, the Buyer is authorized to execute such documents and instruments and to take such actions on behalf of the creditor so as to document the release of such liens, claims, encumbrances, and other interests.

12. To the maximum extent permitted under applicable law, the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the Debtor (to the extent of the Debtor's right, title and interest therein) with respect to the Purchased Assets, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Buyer with respect to the Purchased Assets as of the Closing Date.

13. No governmental unit (as defined in Bankruptcy Code section 101(27)) or any representative thereof may deny, revoke, suspend or refuse to renew any right, license, copyright, patent, trademark, or other permission or similar grant relating to the operation of the Purchased

Assets on account of the filing or pendency of the Chapter 11 Case or the consummation of the Sale Transaction to the extent that any such action by a governmental unit or any representative thereof would violate Bankruptcy Code section 525.

## Good Faith; Arm's-Length Sale

14.       The consideration provided by the Buyer under the Asset Purchase Agreement constitutes reasonably equivalent value, fair consideration, and fair value for the Purchased Assets under the Asset Purchase Agreement under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, and any other applicable law and may not be avoided under section 363(n) of the Bankruptcy Code or any other applicable law. Neither the Trustee nor the Buyer has engaged in any conduct that would cause or permit the Asset Purchase Agreement or the Sale Transaction to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.  The Asset Purchase Agreement was not entered into, and the Sale Transaction is not being consummated, for the purpose of hindering, delaying or defrauding creditors of the Debtor under the Bankruptcy Code, or any other applicable laws.  Neither the Trustee nor the Buyer has entered into the Asset Purchase Agreement or is consummating the Sale Transaction with any fraudulent or otherwise improper purpose.

15.       The Asset Purchase Agreement and the Sale Transaction are undertaken by the Buyer without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Asset Purchase Agreement and the Sale Transaction shall not affect the validity of the sale of the Purchased Assets to the Buyer, unless this Sale Order is duly stayed pending such appeal. The Buyer is a good faith Buyer of the Purchased Assets and is entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code.

17

## **Assumption and Assignment Procedures**

16.      Pursuant to sections 105(a), 363, and 365, of the Bankruptcy Code, the Trustee is authorized to assume the Designated Assigned Contracts (if any) designated for assumption and assignment in accordance with the Asset Purchase Agreement, pay or cause to be paid the Cure Amount for the Designated Assigned Contracts from the proceeds of the Sale Transaction, and assign the Designated Assigned Contracts to the Buyer, free and clear of all claims, liens, encumbrances, and other interests of any kind or nature whatsoever, *provided that* any contracts with RGN-MCA7387, RGN-MCA7386, 2425 West Loop, LLC, Jetall Companies, Inc. and/or Dayhome River Oaks, LLC shall not be assumed or assigned absent further order of the Court, and notwithstanding the language contained herein, all of the rights of RGN-MCA7387, RGN-MCA7386, and 2425 West Loop, LLC are reserved. The Buyer may designate additional Designated Assigned Contracts or remove any Designated Assigned Contracts up to thirty (30) days after the Closing in cooperation (a) with the Trustee if the Closing occurs prior to the effective date of a plan of reorganization or liquidation and (b) the plan proponent if the Closing occurs on or after the effective date of a plan of reorganization or liquidation. A final schedule of the Designated Assigned Contracts (the "Final Schedule of Contracts/Leases") shall be filed with the Court no later than thirty (30) days after the Closing.

17.      Subject to and conditioned upon the closing of the Sale Transaction, and subject to the designation rights and procedures contained in this Sale Order, the Bid Procedures Order, the Asset Purchase Agreement, and any confirmed plan of reorganization or liquidation, the Trustee shall pay the undisputed portion of the Cure Amounts for the Designated Assigned Contracts within three (3) business days of the filing of the Final Schedule of Contracts/Leases from the proceeds of the Sale Transaction in the amounts determined pursuant to the Assumption and Assignment Procedures, without the need for further order of the Court.

18.     The Buyer has provided adequate assurance of future performance under the Assigned Contracts within the meaning of section 365 of the Bankruptcy Code.

19.     The Designated Assigned Contracts, consistent with the provisions contained herein, shall be transferred to, and remain in full force and effect for the benefit of, the Buyer in accordance with their respective terms, notwithstanding any provision in any such Designated Assigned Contract (including those of the type described in section 365(b)(2) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, effective upon the Closing and the Trustee and the Debtor's estate shall be relieved from any post-Closing liability with respect to the Designated Assigned Contracts after such assignment to the Buyer. No sections or provisions of any Designed Assigned Contract that purport to provide for additional payments, penalties, charges, or other financial accommodations in favor of the non-debtor counterparty to the Designated Assigned Contracts shall have any force or effect with respect to the Sale Transaction and assignments authorized by this Sale Order. Such provisions constitute unenforceable anti-assignment provisions under section 365(f) of the Bankruptcy Code and are otherwise unenforceable under section 365(e) of the Bankruptcy Code. There shall be no accelerations, assignment fees, increases, or any other fees charged to the Buyer, the Trustee, or the Debtor's estate as a result of the assumption or assignment of Designated Assigned Contracts, the Sale Transaction, or the commencement of this Chapter 11 Case. No Designated Assigned Contract may be terminated, or the rights of any party modified in any respect, including pursuant to any "change of control" clause, by any other party thereto, as a result of the transactions contemplated by the Asset Purchase Agreement.

20.     All defaults or other obligations of the Debtor or the Debtor's estate under the Designated Assigned Contracts arising or accruing prior to the Closing (without giving effect to

any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be deemed cured, upon payment of the Cure Amount for the Designated Assigned Contracts, and in no event shall the Buyer, the Trustee, the Debtor, or the Debtor's estate have any liability whatsoever under any Designated Assigned Contract arising from or related to the time period prior to the Closing Date. The non-debtor counterparties to the Designated Assigned Contracts are forever barred and permanently enjoined from asserting against the Trustee, the Debtor, the Debtor's estate, the Buyer, and their respective successors and assigns, any default or unpaid obligation allegedly arising or occurring before the Closing, any pecuniary loss resulting from such default, or any other claim or obligation under the Designated Assigned Contracts arising or incurred prior to the Closing, other than the Cure Amounts for the Designated Assigned Contracts. The Cure Amounts shall not be subject to further dispute or audit, including, without limitation, any audit based on performance prior to the Closing Date, irrespective of whether such Designated Assigned Contract contains an audit clause. After the payment of the applicable Cure Amounts, none of the Debtor, the Debtor's estate, the Trustee, or the Buyer shall have any further liabilities to the counterparties to the Designated Assigned Contracts other than the Buyer's obligations under the Designated Assigned Contracts that accrue and become due and payable on or after the Closing Date.

21.     In the event of a dispute pending as of the Closing regarding the assumption and assignment or cure of any Designated Assigned Contract, any applicable cure payments with respect to such Designated Assigned Contract shall be made following the entry of an order resolving any such dispute (or upon the consensual resolution of such dispute as may be agreed by the Trustee and such non-Debtor counterparty).

22.    The failure of the Debtor, Trustee, or the Buyer to enforce, at any time, one or more terms or conditions of any Designated Assigned Contract shall not be a waiver of such terms or conditions or of the right of the Debtor, the Trustee, or the Buyer, as the case may be, to enforce every term and condition of the Designated Assigned Contracts. The validity of the assumption and assignment of the Designated Assigned Contracts to the Buyer shall not be affected by any existing dispute between the Debtor or the Trustee and any non-debtor counterparty to such Designated Assigned Contract. Any party that may have had the right to consent to the assignment of any Designated Assigned Contract is deemed to have consented for the purposes of section 365 of the Bankruptcy Code and otherwise if such party failed to file a timely objection to the assumption and assignment of such Designated Assigned Contract.

23.    To the extent a non-debtor counterparty to a Potential Assigned Contract failed to timely object to the Cure Amount, (i) such Cure Amount shall be deemed to be finally determined and any such counterparty shall be prohibited from challenging, objecting to, or denying the validity and finality of the Cure Amount at any time, and (ii) such counterparty shall be deemed to have consented to such assignment under section 365(c)(1)(B) of the Bankruptcy Code, and if designated by the Buyer for assumption and assignment, the Buyer shall enjoy all of the Debtor's rights and benefits under each such Designated Assigned Contract as of the applicable date of assumption without the necessity of obtaining such non-debtor party's written consent to the assumption or assignment thereof.

**Ipso Facto Clauses Ineffective**

24.    Except as otherwise specifically provided for by order of this Court, the Designated Assigned Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Buyer in accordance with their respective terms, including all rights of the Buyer as the assignee of the Designated Assigned Contracts, notwithstanding any provision in any such

Designated Assigned Contracts (including, without limitation, those of the type described in sections 365(e)(1) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer. There shall be no, and all non-Debtor parties to any Designated Assigned Contract are forever barred and permanently enjoined from raising or asserting against the Debtor, the Debtor's estate, or the Buyer any defaults, breaches, claims, pecuniary losses, rent accelerations, escalations, assignment fees, increases, or any other fees charged to the Buyer, the Debtor, or the Debtor's estate as a result of the assumption or assignment of the Designated Assigned Contracts.

25.     Except as otherwise specifically provided for by order of this Court, upon the Trustee's assignment of the Designated Assigned Contracts to the Buyer, no default shall exist under any Designated Assigned Contracts, and no counterparty to any Designated Assigned Contracts shall be permitted to declare a default by the Debtor, the Trustee, or the Buyer, or otherwise take action against the Buyer, as a result of the Debtor's financial condition, bankruptcy, or failure to perform any of its obligations under the relevant Designated Assigned Contracts. Any provision in a Designated Assigned Contract that prohibits or conditions the assignment of such Assumed Contract in accordance with the Asset Purchase Agreement (including without limitation, the granting of a lien therein) or allows the counterparty thereto to terminate, recapture, set off, recoup, impose any penalty, condition on renewal or extension, or modify any term or condition upon such assignment or sublease, constitutes an unenforceable anti-assignment provision that is void and of no force and effect, but only in connection with the assignment of such Designated Assigned Contract in connection with the sale to the Buyer approved by this Sale Order. The failure of the Debtor, Trustee, or the Buyer to enforce at any time one or more terms or conditions of any Designated Assigned Contract shall not be a waiver of such terms or

conditions, or of the Trustee's and the Buyer's rights to enforce every term and condition of the Designated Assigned Contract.

### No Successor Liability

26. The Buyer has given substantial consideration under the Asset Purchase Agreement, which consideration shall constitute valid, valuable, and sufficient consideration for the absolution from any potential claims of successor liability of the Buyer to the greatest extent allowed by applicable law and neither the Buyer nor any of its affiliates shall be deemed to: (a) be a legal successor, or otherwise deemed to be a successor, to the Debtor under any theory of law or equity; (b) have, de facto or otherwise, merged with or into the Debtor or its estate; (c) have a common identity or a continuity of enterprise with the Debtor; or (d) be a mere continuation or substantial continuation, or be holding itself out as a mere continuation, of the Debtor or any business, enterprise, or operation of the Debtor. Upon the Closing, to the maximum extent available under applicable law, Buyer's acquisition of the Purchased Assets owned by the Debtor shall be free and clear of any "successor liability" claims and other types of transferee liability of any nature whatsoever, whether known or unknown and whether asserted or unasserted at the time of Closing (other than, to the extent applicable, any Assumed Liabilities). The operations of the Buyer and its affiliates shall not be deemed a continuation of the Debtor's business as a result of the acquisition of the Purchased Assets.

27. Neither the purchase of the Purchased Assets by the Buyer nor the fact that the Buyer is using any of the Purchased Assets previously operated by the Debtor will cause the Buyer to be deemed a successor in any respect to the Debtor's businesses or incur any liability derived therefrom within the meaning of any foreign, federal, state or local revenue, pension, ERISA, tax, labor, employment, environmental, or other law, rule or regulation (including filing requirements

under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtor's liability under such law, rule or regulation or doctrine.

## **Backup Bidder**

28.     If the Buyer fails to timely close the Sale Transaction pursuant to the Asset Purchase Agreement as the result of Buyer's default thereunder, the Trustee is authorized to sell the Assets to the National Bank of Kuwait, S.A.K.P., New York Branch (the "Backup Bidder") for a credit bid amount totaling $27,000,000 and otherwise under the terms of Stalking Horse Agreement and the Chapter 11 Plan of Liquidation of the Debtor by National Bank of Kuwait S.A.K.P., New York Branch [ECF No. 194] (the "Plan"), as modified by the confirmation order [ECF No. 566] (the "Confirmation Order") entered by the Court.

29.     The terms of this Sale Order shall apply in all respects to any sale of the Assets to the Backup Bidder as if the Backup Bidder were the Buyer, except that, notwithstanding anything to the contrary in this Sale Order, (a) the payments to holders of allowed claims shall be made as set out in the Plan and Confirmation Order and (b) the Plan and Confirmation Order shall control in the event of any inconsistency between this Sale Order and the Plan or Confirmation Order.

## **Partial Disbursement of Proceeds**

30.     Within ten (10) days of the Closing of the Sale Transaction to the Successful Bidder pursuant to this Order, the Trustee is authorized and directed to make from the cash proceeds of the Sale Transaction (collectively, the "Directed Payoff Amounts" _**(a)**_ any payments ordered by the Court, including without limitation any order on the Application for Reimbursement of Fees and Expenses Pursuant to 11 U.S.C. § 506(b) and Federal Rule of Bankruptcy Procedure 2016(a) [ECF No. 575] filed by CC2 TX, LLC, and _**(b)**_ the following payments:

| Creditor/Claimant | Claim No. | Amount July 2024 | Amount August 2024 |
|---|---|---|---|
| City of Houston | 1 | $424,633.58 | $427,856.20 |
| Houston I.S.D. | 2 | $781,803.68 | $787,656.62 |
| Houston Comm. Coll. System | 3 | $83,884.08 | $427,856.20 |
| Harris County Taxing Authorities | 4 | $581,890.09 | $587,709.00 |
| CC2 TX, LLC | 12 | $930,176.52 + $325.07 per diem | $937,978.20 + $325.07 per diem |
| National Bank of Kuwait, S.A.K.P., New York Branch | 13 | $1,696,384.85 | $1,696,384.85 |

Payments to creditors as a Directed Payoff Amount shall not (x) limit the rights of any creditor to receive the full amount due under applicable law or (y) preclude any party from pursuing claims against a creditor receiving a Directed Payoff Amount, including any claims of Ali Choudhri against the National Bank of Kuwait.

31.     Subject to the agreement of the National Bank of Kuwait, S.A.K.P., New York Branch, the Trustee is authorized but not directed to pay documented additional amounts necessary to satisfy the secured claims of the creditors receiving the Directed Payoff Amounts, other than the National Bank of Kuwait, comprising interest accrual and costs and expenses incurred prior to Closing that are not reflected in the Directed Payoff Amounts (the "Authorized Payoff Amounts"). The Authorized Payoff Amounts shall include, subject to the agreement of the National Bank of Kuwait, S.A.K.P., late fees of CC2 TX, LLC in the amount of $479.76 per month from the Petition Date.

32.     For the avoidance of doubt, the Trustee may make the Directed Payoff Amounts and Authorized Payoff Amounts simultaneously or contemporaneously with the Closing.

### Injunction Regarding Actions by Insiders Absent Leave of the Court

33.     The Debtor, Mr. Choudhri, any entity owned or controlled directly or indirectly by Mr. Choudhri, and any entity to which Mr. Choudhri is an insider as defined in Bankruptcy

Code section 101(31) are barred and estopped from pursuing or asserting any lawsuit or other action against the Buyer, the Trustee, or the forgoing's professionals involving the Sale Transaction, the Auction, or the sale process with respect to the Purchased Assets without first obtaining leave of this Court.

## Other Related Relief

34.     All persons that are in possession of some or all of the Purchased Assets as of or after the Closing are hereby directed to surrender possession of such Purchased Assets to the Buyer as of the Closing or at such time thereafter as the Buyer may request. All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Trustee to transfer the Purchased Assets to the Buyer. The Trustee agrees to exercise commercially reasonable efforts to assist the Buyer in assuring that all persons that are presently, or on the date of the Closing may be, in possession of some or all of the Purchased Assets in which the Debtor's estate holds an interest will surrender possession of the Purchased Assets either to (i) the Trustee before the Closing Date, or (ii) the Buyer on or after the date of the Closing.

35.     This Sale Order is and shall be binding upon and shall govern acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of fees, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons, who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments that reflect that the Buyer is the assignee and owner of the Purchased Assets free and clear of all liens, claims, encumbrances, and other interests (other than those expressly assumed by the Buyer or permitted to survive under the Asset Purchase Agreement) (all such entities being referred to as the "Recording Officers"). All Recording Officers are authorized to strike recorded liens, claims, interests, and encumbrances

against the Purchased Assets recorded prior to the date of this Sale Order unless the Asset Purchase Agreement expressly provides that the Buyer is acquiring the Purchased Assets subject to such liens, claims, encumbrances, and other interests. A certified copy of this Sale Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any liens and other encumbrances of record, and this Sale Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office. If any person or entity which has filed statements or other documents or agreements evidencing liens on, or other interests in, all or any portion of the Purchased Assets shall not have delivered to the Trustee prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens, and any other documents necessary for the purpose of documenting the release of all liens, claims, encumbrances, or other interests which the person or entity has or may assert with respect to all or any portion of the Purchased Assets, the Trustee and Buyer are hereby authorized, on behalf of the Debtor, the Debtor's estate, and each of the Debtor's creditors, to execute and file such statements, instruments, releases, and other documents on behalf of such person or entity with respect to the Purchased Assets, or take such other appropriate action, including seeking relief in this Court or any other court to compel appropriate parties to execute termination statements, instruments of satisfaction and releases of all such liens, claims, encumbrances, or other interests with respect to the Purchased Assets. Each and every filing agent, filing officer, title agent, recording agency, governmental department, secretary of state, federal, state and local official, and any other person and entity who may be required by operation of law, the duties of its office or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Purchased Assets, is hereby authorized and directed to

accept any and all documents and instruments necessary and appropriate to consummate the Sale Transaction contemplated by the Asset Purchase Agreement and approved by this Sale Order.

36.     Following the Closing, no holder of any liens, claims, encumbrances, or other interests with respect to the Purchased Assets (other than those expressly assumed by the Buyer or permitted to survive under the Asset Purchase Agreement) or other party in interest may interfere with the Buyer's use and enjoyment of the Purchased Assets based on or related to such liens, claims, encumbrances, or other interests, or any actions that the Debtor or the Trustee may take in the Chapter 11 Case, and no party may take any action to prevent, interfere with, or otherwise enjoin consummation of the Sale Transaction.

37.     No "bulk sales," "bulk transfer" or similar laws (including those relating to taxes) of any state or other jurisdiction shall apply in any way to the transactions authorized herein, including the Asset Purchase Agreement and the Sale Transaction.

38.     The Buyer shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Asset Purchase Agreement or any other related document. The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence.

39.     This Sale Order shall be binding in all respects upon the Debtor's estate, all claimants and creditors, all holders of equity interests in the Debtor, any holders of liens, claims, encumbrances, or other interests against or on all or any portion of the Purchased Assets, all counterparties to any executory contract or unexpired lease of the Debtor, the Buyer and its affiliates, successors, and assigns, the Trustee, and any subsequently appointed estate representative or other fiduciary in the Chapter 11 Case. The Asset Purchase Agreement, the Sale Transaction, and this Sale Order shall be enforceable against and binding upon, and shall not be

subject to rejection or avoidance by, any chapter 7 or successor chapter 11 trustee appointed in the Chapter 11 Case. To the extent that anything contained in any plan of reorganization (or liquidation) confirmed in the Chapter 11 Case or any order confirming any plan of reorganization (or liquidation) or any other order entered in these Chapter 11 Case conflicts with or derogates from the provisions of this Sale Order, this Sale Order shall control.

40. The Asset Purchase Agreement and any related agreements, documents, or other instruments contemplated thereby may be waived, modified, amended, or supplemented by the Trustee and the Buyer in a writing signed by such parties without further order of the Court; *provided that* any such waiver, modification, amendment, or supplement does not have a material adverse effect on the Debtor's estate.

41. The failure to include specifically any particular provision of the Asset Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Asset Purchase Agreement be authorized and approved in its entirety.

42. To the extent of any inconsistency between the provisions of this Sale Order, the Asset Purchase Agreement, and any documents executed in connection therewith, the provisions contained in this Sale Order, the Asset Purchase Agreement, and any documents executed in connection therewith shall govern, in that order.

43. Notwithstanding the provisions of Bankruptcy Rule 6004(h) and 6006(d) or any other applicable provision of the Bankruptcy Code or the Bankruptcy Rules that may stay the effectiveness of this Sale Order, this Sale Order shall be effective and enforceable immediately and shall not be stayed.

44.     The Trustee is authorized to take all actions necessary to effectuate the relief granted in this Sale Order.

45.     Without further approval of this Court, the Trustee and Buyer are authorized to execute and deliver, and perform under, one or more amendments, waivers, consents or other modifications to and under the Asset Purchase Agreement and ancillary documents, in each case, in such form as the Trustee and Buyer may agree; <u>provided</u> that such amendment, waiver, consent, or modification does not materially modify, in a manner adverse to the Debtor's estate, the terms of the Asset Purchase Agreement.

46.     This Court retains jurisdiction and power to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order, the Sale Transaction, and the Asset Purchase Agreement, all amendments thereto and any waivers and consents thereunder, and each of the agreements executed in connection therewith and the transactions contemplated thereby.

Signed: July 08, 2024

Jeffrey P. Norman
United States Bankruptcy Judge

Proposed Order Submitted By:

/s/R. J. Shannon
Kyung S. Lee (TBA No. 12128400)
R. J. Shannon (TBA No. 24108062)
SHANNON & LEE LLP
2100 Travis Street, STE 1525
Houston, TX 77002
Telephone: (713) 714-5770
Facsimile: (833) 714-5770
Email: klee@shannonleellp.com
        rshannon@shannonleellp.com

*Counsel to Christopher R. Murray, Chapter 11 Trustee*

# EXHIBIT A

## Asset Purchase Agreement

**ASSET PURCHASE AGREEMENT**

**DATED AS OF JULY 2, 2024, BETWEEN**

**Christopher R. Murray, in his capacity as the duly appointed Chapter 11 Trustee of Galleria 2425 Owner, LLC, as Seller**

**AND**

**QB Loop Property LP, a Texas limited partnership**

# ASSET PURCHASE AGREEMENT

**THIS ASSET PURCHASE AGREEMENT** (this "**Agreement**") is made and entered into as of July 2, 2024 (the "**Effective Date**") by and between Christopher R. Murray in his capacity as the duly appointed Chapter 11 Trustee of Galleria 2425 Owner, LLC, a Delaware limited liability company (the "**Seller**" or the "**Chapter 11 Trustee**") and QB Loop Property LP, a Texas limited partnership ( "**Buyer**" together with Seller, the "**Parties**" and each a "**Party**").

A.   **WHEREAS**, on December 5, 2023 (the "**Petition Date**"), the Galleria 2425 Owner, LLC (the "**Debtor**") filed a voluntary petition under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§101, *et seq.* ("**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "**Bankruptcy Court**"), initiating Case No. 23-34815 (JPN) (the "**Chapter 11 Case**").

B.   **WHEREAS**, the Real Property and Personal Property are property of the bankruptcy estate pursuant to 11 U.S.C. § 541 (the "**Bankruptcy Estate**").

C.   **WHEREAS**, on February 9, 2024, the Bankruptcy Court entered an order appointing Christopher R. Murray as trustee of the Chapter 11 Case.

D.   **WHEREAS**, the Chapter 11 Trustee is the sole representative of the Bankruptcy Estate.

E.   **WHEREAS**, after the Petition Date, the Chapter 11 Trustee sought authorization from the Bankruptcy Court for approval of his entry into this Agreement and certain other matters pertaining to the sale of the Real Property.

F.   **WHEREAS**, notwithstanding any provisions herein to the contrary, Seller and Buyer both acknowledge and agree that this Agreement is subject to the Bankruptcy Court's final authorization and approval, and upon such terms as the parties have agreed and as authorized by the Bankruptcy Court, Seller desires to sell the Real Property, and Buyer desires to purchase the Real Property and assume certain liabilities of the Bankruptcy Estate, in a sale pursuant to sections 105(a), 363, 1123 and/or 1129 of the Bankruptcy Code.

**NOW, THEREFORE**, in consideration of the foregoing premises and the representations, warranties, covenants and agreements contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

## ARTICLE I
## DEFINITIONS

1.   ***Terms and Incorporation of Definitions***. All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Sale and Bid Procedures. Except as otherwise specifically provided herein, the following terms shall have the meanings specified below.

2. **Affiliate(s)** as to any Person means any Persons (x) directly or indirectly controlling, controlled by or under common control with any of the foregoing or (y) as to which any of the foregoing act as trustee or beneficiary. For purposes of this definition, "control" of a person shall mean the power, direct or indirect, to direct or cause the management and policies of such person, whether by ownership of voting securities, by contract or otherwise.

3. **Assigned Contracts** has the meaning set forth in Article II.

4. **Auction** has the meaning set forth in the Sale and Bid Procedures.

5. **Bankruptcy Contingencies** means the occurrence of each of the following: (a) the Sale and Bid Procedures Order shall have become a Final Order, (b) the Sale Order shall become a Final Order, and (c) the Confirmation Order shall become a Final Order.

6. **Business Day** means any day, other than a Saturday, Sunday, or a legal holiday, as defined in Rule 9006(a) of the Federal Rules of Bankruptcy Procedure.

7. **Broker** means Hilco Real Estate, LLC or other real estate broker employed by the Chapter 11 Trustee in the Chapter 11 Case.

8. **Broker Compensation** means the compensation earned by the Broker by a sale pursuant to this Agreement and any attendant expenses.

9. **Cash Consideration** means the cash paid by the Buyer at closing.

10. **Closing** has the meaning set forth in Article V.

11. **Closing Date** has the meaning set forth in Article V.

12. **Confirmation Order** means an order confirming a plan of reorganization in the Chapter 11 Case that implements or incorporates by reference the transaction provided for by this Agreement.

13. **Cure Costs** means, to the extent applicable, all Assumed Liabilities that must be paid and obligations that must be satisfied under Sections 365 of the Bankruptcy Code, in connection with the assumption by Seller and assignment to Buyer of any Assigned Contract. For the avoidance of doubt, notwithstanding anything provided herein to the contrary, no provision herein shall be construed as an admission or wavier as to the amount of any potential cure amount, or as a representation that any assumption, rejection, or assignment within the meaning of Section 365 of the Bankruptcy Code has occurred; such assumptions, rejections, or assignments shall be addressed by order of the Bankruptcy Court accordingly, to the extent applicable.

14. **Deed** means the Special Warranty Deed attached hereto as **Exhibit B**.

15. **Environmental Audit** means an environmental audit, review or testing of the Real Property performed any third party or consultant engaged by Buyer to conduct such study.

16.  **Environmental Law** means any law, statute, ordinance or regulation pertaining to health, industrial hygiene or the environment, including, without limitation, CERCLA (Comprehensive Environmental Response, Compensation and Liability Act of 1980) and RCRA (Resources Conservation and Recovery Act of 1976).

17.  **Exhibits** means the following, each of which is attached hereto and incorporated herein by this reference:

> Exhibit A - Legal Description
> Exhibit B - Form of Deed
> Exhibit C - FIRPTA Affidavit
> Exhibit D - Bill of Sale
> Exhibit E - Assignment and Assumption
> Exhibit F - Schedule of Assigned Contracts

18.  **Final Order** means an order or judgment of the Court as entered on the docket in the Chapter 11 Case, or other court of competent jurisdiction, the operation or effect of which has not been stayed, reversed or amended, and as to which order or judgment (or any reversal, modification or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be filed with respect to such order, shall not cause an order not to be a Final Order.

19.  **FIRPTA Affidavit** means the Transferor's Certificate of Non-Foreign Status set forth on **Exhibit C** attached hereto.

20.  **Governmental Authority** means any federal, state, or local government, governmental authority, or regulatory or administrative authority or any court, tribunal, or judicial body having jurisdiction, including the Bankruptcy Court.

21.  **Hazardous Substance** means any substance, material or waste which is or becomes designated, classified or regulated as being "toxic" or "hazardous" or a "pollutant" or which is or becomes similarly designated, classified or regulated under any Environmental Law.

22.  **Improvements** means all improvements, buildings, fixtures, and structures, if any, owned by Seller and situated on the Real Property, including, without limitation, all apparatus, equipment and appliances used in connection with the operation or occupancy of the Real Property, such as heating and air conditioning systems and facilities used to provide any utility, refrigeration, ventilation, garbage disposal, or other services on the Real Property.

23.  **Knowledge of Seller** means the actual knowledge of the Chapter 11 Trustee or his counsel in the Chapter 11 Case.

24.  **Law(s)** means all applicable federal, state and local statutes, ordinances and codes, including the Bankruptcy Code.

25. **Leases** means all leases, lease amendments, lease guaranties, work letter agreements, subleases, assignments, licenses, concessions and similar agreements granting a real property interest to any Person for the use or occupancy of any portion of the Real Property or the Improvements.

26. **Liability** means any liability, debt, loss, damage, fine, judgment, penalty, or obligation of any kind or nature, whether known or unknown, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, or due or to become due.

27. **Permits** means all building permits, certificates of occupancy, and other certificates, permits, licenses and approvals pertaining to the Real Property.

28. **Person** means any natural person, corporation, general or limited partnership, limited liability company, association, joint venture, trust, estate, Governmental Authority or other legal entity, in each case whether in its own or a representative capacity.

29. **Personal Property** means (i) the equipment, furniture, and other tangible personal property, if any, that are actually owned by Seller, located on the Real Property and used in the operation of the Real Property, (ii) any insurance policies insuring the Real Property and/or Personal Property owned by Seller or the Debtor, and (iii) any claim or cause of action related to any such insurance policy against any insurance company that has insured the Real Property and/or Personal Property.

30. **Plan** means the Chapter 11 Plan of Liquidation of the Debtor filed by the National Bank of Kuwait, S.A.K.P., New York Branch, dated as of April 10, 2024, as such Plan may be amended, supplemented or modified from time to time in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules, together with all addenda, exhibits, schedules, supplements or other attachments thereto.

31. **Property** means, collectively, the (i) Real Property, (ii) Improvements, (iii) Personal Property, (iv) Leases, (v) Service Contracts, and (vi) Permits.

32. **Purchase Price** has the meaning set forth in Article III.

33. **Real Property** means that certain real property located in Harris County, State of Texas and more particularly described in **Exhibit A** attached hereto.

34. **Sale** has the meaning set forth in the Sale and Bid Procedures.

35. **Sale and Bid Procedures** means the Sale and Bid Procedures approved by the Bankruptcy Court and attached as Exhibit 1 to the Sale and Bid Procedures Order.

36. **Sale Procedures Motion** means the Chapter 11 Trustee's motion for entry of an order from the Bankruptcy Court seeking (i) approval of the Sale and Bid Procedures for the sale of the Real Property; (ii) scheduling the Auction; (iii) approving assumption and assignment procedures; (iv) approving the form of notice; and (v) granting related relief.

37. **Sale and Bid Procedures Order** means an order of the Bankruptcy Court granting the Sale and Bid Procedures Motion and approving the Sale and Bid Procedures.

38.    **Sale Order** means an order by the Bankruptcy Court authorizing the sale of the Property to the Buyer free and clear of all liens, claims and encumbrances that are not Assumed Liabilities under sections 363(b) and (f) of the Bankruptcy Code and finding that the Buyer is a good faith purchaser of the Property entitled to the protections of section 363(m) of the Bankruptcy Code. The Sale Order will be a standalone order and will not be dependent on the entry of any confirmation order in the Chapter 11 Case.

39.    **Service Contracts** means all service contracts and other contracts, agreements or instruments relating to the operation of the Property including equipment leases and those set forth on **Exhibit F** attached hereto.

40.    **Tax Lien Claims** means claims secured by ad valorem tax liens under Chapter 32 of the Texas Tax Code, other than any such claims held by the Buyer.

41.    **Title Company** means Fidelity National Title Insurance Company, 1900 West Loop South, Suite 100, Houston, Texas 77027, Attn: Ms. Debbie Barela or the entity selected by the Buyer and Seller to perform the role of title company under this Agreement.

## ARTICLE II
## PURCHASE AND SALE

1.    **Purchased Assets.** Upon the terms and subject to the conditions of this Agreement, Seller shall sell, convey, assign, transfer and deliver to Buyer, and Buyer shall purchase from Seller, free and clear of all claims, liens, encumbrances to the extent allowed by Sections 105(a), 363, 1123 and/or 1129 of the Bankruptcy Code, all of Seller's right, title and interest in and to:

    (a)    the Real Property;

    (b)    all Personal Property;

    (c)    all Improvements;

    (d)    all Permits that may be assigned by Seller to Buyer;

    (e)    to the extent assignable and transferrable and to the extent of any interest of Seller therein, all site plans, architectural renderings, plans and specifications, engineering plans, as-built drawings, floor plans, and other similar plans or diagrams, if any, which relate to the Real Property; and

    (f)    all rights and interests of Seller in and to the Service Contracts and Leases to which Seller is a party in support or furtherance of the operation of the Real Property indicated by the Buyer (collectively, the "**Assigned Contracts**," and each an "**Assigned Contract**"). The items set for in (a)-(f) above, collectively, the "**Purchased Assets.**"

2.    **Retained Assets.**  The Purchased Assets shall not include any Service Contracts and Leases that are not Assigned Contracts (collectively, the "**Excluded Assets**").

3.    **Allocation of Liabilities**. Upon the terms and subject to the conditions of this Agreement, Buyer shall assume and agree to pay, perform and discharge only the Liabilities under

the Assigned Contracts, that pertain to the time period after Closing (collectively, the "**Assumed Liabilities**"). Other than the Assumed Liabilities, Buyer will not assume, expressly disclaims, and will not otherwise be responsible for any other Liabilities of Seller.  For the avoidance of doubt, (a) Buyer shall be responsible for any Liabilities newly arising out of the ownership, operation and use of the Purchased Assets by Buyer after the Closing, and (b) Seller shall be responsible for any Liabilities arising out of the ownership, operation and use of the Real Property on or prior to the Closing that are not an Assumed Liability.

4.     **Designation of Assigned Contracts**. The Buyer will provide the Trustee with a schedule of all Assigned Contracts on or before June 30, 2024.

<center>

**ARTICLE III**
**PURCHASE PRICE AND DEPOSITS**

</center>

1.     **Amount**. The total consideration to be paid by Buyer to Seller for the Property (such amount the "Purchase Price") is:

(a)     $26,250,000.00;

(b)     $1,000,000.00 earmarked for the allowed chapter 11 administrative claims of the Seller's and Debtor's professionals in the Chapter 11 Case;[1] and

(c)     the Assumed Liabilities assumed by the Buyer at Closing pursuant to Article II(3) of this Agreement.

2.     **Allocation**. The Purchase Price shall be allocated among the various Purchased Assets in accordance with Section 1060 of the IRC and the applicable Treasury Regulations promulgated thereunder.

3.     **Deposit**. The Buyer has deposited or will deposit $2,725,000.00 with Chicago Title and Trust Company (the "Deposit"), which Deposit shall be applied towards the Purchase Price at Closing.  Prior to Closing, the Buyer and Seller shall direct Chicago Title and Trust Company to transfer the deposit to the Title Company.

<center>

**ARTICLE IV**
**REPRESENTATIONS AND WARRANTIES**

</center>

1.     **Seller.**  As of the Effective Date and the Closing, Seller represents and warrants to Buyer that Seller:

(a)     has received no written notice of any pending or threatened condemnation or eminent domain proceedings or zoning change proceedings that would affect any party of the Real Property;

(b)     other than as is set forth in this Agreement, Seller has not entered into any contracts for the sale of, and to the Knowledge of Seller, no person or entity has any option, right

---

[1]  To the extent the allowed chapter 11 administrative claims of the Seller's and Debtor's professionals in the Chapter 11 Case are less than $1,000,000.00, the remaining amount shall be added to the $26,250,000.00 portion of the purchase price.

<center>6</center>

of first refusal, right of first offer, or any other rights to purchase, all or any portion of the Real Property;

        (c)     to the Knowledge of Seller, there is no land use or zoning action or proceeding, or general or special assessment action or proceeding, or condemnation or eminent domain action or proceeding pending or threatened with respect to the Real Property;

        (d)     since the date of Seller's appointment as the Chapter 11 Trustee for the Debtor, Seller has received no written notice that Hazardous Substances are now or have been used or stored on or within any portion of the Real Property except those substances which are or have been used or stored on the Real Property in the normal course of use and operation of the Real Property or the conduct of business by the tenants thereof and in compliance with all applicable Environmental Laws;

        (e)     since the date of Seller's appointment as the Chapter 11 Trustee for the Debtor, Seller has received no written notice of federal, state or local enforcement, clean-up, removal, remedial or other governmental or regulatory actions under any Environmental Law instituted or completed affecting the Real Property;

        (f)     since the date of Seller's appointment as the Chapter 11 Trustee for the Debtor, Seller has received no written notice of a claim made by any third party against Seller relating to any Hazardous Substances on or within the Real Property Seller shall not make any material alterations to the Property without Buyer's consent, which shall not be unreasonably withheld or delayed.

      4.     **Joint Representations and Warranties**. In addition to any express agreements of the Parties contained herein and, subject to the occurrence of the Bankruptcy Contingencies, the Parties jointly represent and warrant to each other that:

        (a)     each Party has the legal power, right and authority to enter into this Agreement and the instruments referenced herein, and to consummate this transaction;

        (b)     all requisite action has been taken by each Party in connection with the entering into of this Agreement, the instruments referenced herein, and the consummation of this transaction;

        (c)     no further consent of any partner, shareholder, creditor, investor, judicial or administrative body, Governmental Authority or other party is required in connection with entering into this Agreement;

        (d)     the individuals executing this Agreement and the instruments referenced herein on behalf of each Party have the legal power, right, and actual authority to bind each Party to the terms and conditions of those documents;

        (e)     this Agreement and such other documents now or hereafter to be executed and delivered by either Party under this Agreement, when executed and delivered, and subject to the satisfaction of the Bankruptcy Contingencies, will each constitute the legal, valid and binding obligations of the relevant Party enforceable against such Party in accordance with its terms; and

(f)        except for the Broker, neither Party has dealt with any Person who has acted, directly or indirectly, as a broker, finder, financial adviser or in such other capacity for or on behalf of either Party in connection with the transaction contemplated by this Agreement in any manner which would entitle such Person to any fee or commission in connection with this Agreement or the transaction contemplated in this Agreement.

## ARTICLE V
## CLOSING

1.        **Closing**. The closing (the "**Closing**") of the Sale shall occur remotely via the electronic exchange of documents and signature pages on or within three (3) Business Days after the conditions set forth in Article VI are satisfied or, if legally permissible, are waived (other than those conditions that by their nature are to be satisfied (or validly waived) at the Closing, but subject to such satisfaction or waiver) (or such other date as the Parties may agree in writing), or at such other time or place as Buyer and Seller may agree.  The date on which the Closing occurs is referred to as the ("**Closing Date**"), which shall be on or before August 8, 2024 (the "**Outside Closing Date**").

2.        **Title Insurance**. At the Closing, the Title Company shall agree to issue to Buyer an ALTA Owners Title Insurance Policy (2006) with coverage in an amount equal to the Purchase Price showing title to the Real Property and Improvements vested in Buyer subject only to the Permitted Exceptions and the standard printed exceptions, exclusions and conditions in the policy of title insurance (the "**Title Policy**"). Buyer shall pay the premium for the Title Policy and, if the Closing does not occur, costs related to the issuance of the title commitment. If Buyer elects to obtain any additional endorsements or an extended coverage policy, any additional premiums or costs for the extended coverage policy and endorsements shall be at Buyer's sole cost and expense.

3.        **Recording**.  At the Closing, Seller shall promptly undertake all of the following: (a) cause the Deed to be recorded with the Harris County Clerk's Office, Real Property, in the State of Texas and obtain conformed copies thereof for distribution to Buyer and Seller; and (b) direct the Title Company to issue the Title Policy to Buyer.

## ARTICLE VI
## CLOSING CONDITIONS

1.        **Title Transfer**. At the Closing, fee simple title to the Real Property and the Improvements shall be conveyed to Buyer by Seller by Deed, subject only to the following ("**Permitted Exceptions**"):

(a)        a lien for real property taxes and assessments, water charges, sewer assessments and each other lien or encumbrance of an indefinite or unascertainable amount not then delinquent;

(b)        matters of title described in the preliminary title report;

(c)        matters affecting the condition of title to the Property created by or with the written consent of Buyer;

(d)        any matters which would be shown by an inspection or a survey of the Property; and

8

(e)      rights of parties in possession.

2.      The Parties agree that Seller makes no express or implied warranties regarding the condition of title to the Property, and Buyer shall rely on the Title Policy for protection against any title defects.

3.      **Seller Deliveries to Buyer at Closing**. On or prior to the Closing Date, Seller shall deliver or cause to be delivered through the Title Company to Buyer:

(a)      the Deed duly executed and acknowledged by Seller and in recordable form conveying the Real Property and Improvements to Buyer;

(b)      the FIRPTA Affidavit duly executed by Seller;

(c)      the Bill of Sale duly executed by Seller;

(d)      the Assignment and Assumption Agreement executed by Seller;

(e)      possession of the Property to Buyer upon the Closing, subject to the right of parties in possession, if any; and

(f)      to the extent reasonably practicable, all books and records included in the Purchased Assets.

4.      **Buyer Deliveries to Seller at Closing**. On or prior to the Closing Date, Buyer shall deliver or cause to be delivered through the Title Company to Seller:

(a)      the Purchase Price in immediately available funds via wire transfer to a bank account specified by Seller to the Buyer and the Title Company;

(b)      the Bill of Sale duly executed by Buyer; and

(c)      the Assignment and Assumption Agreement executed by Buyer.

5.      **Conditions Precedent**.

(a)      **Seller**.  The Closing and Seller's obligations with respect to this transaction are subject to the following conditions precedent: (a) the satisfaction of each of the Bankruptcy Contingencies, (b) Buyer's delivery to Seller on or before the Closing Date of the items described in Article VI(4), (c)  Buyer shall have performed and complied with all material agreements and covenants to be performed by Buyer hereunder, and Seller shall not have notified Buyer in writing of any breach and such breach has not been remedied within three (3) days thereafter, and (d) Buyer's representations, warranties and covenants set forth in this Agreement shall be true and correct as of the Closing Date.

(b)      **Buyer**.  The Closing and Buyer's obligations with respect to this transaction are subject to the following conditions precedent: (a) the satisfaction of each of the Bankruptcy Contingencies, (b) Seller's delivery to Buyer on or before the Closing Date of the items described

in Article VI(3), (c) Seller shall have obtained (with the reasonable assistance of Buyer) a Final Order authorizing Seller's assumption of the Assigned Contracts and the assignment of same to Buyer, to the extent not otherwise included within the Sale Order, (d) Seller shall have performed and complied with all material agreements and covenants to be performed by Seller hereunder, and Buyer shall not have notified Seller in writing of any breach and such breach has not been remedied within three (3) days thereafter, (e) Seller's representations and warranties set forth in this Agreement shall be true and correct as of the Closing Date, and (f) the Title Company shall have provided an irrevocable commitment to issue the Title Policy.

(c)     **All Parties**. The obligation of each Party to consummate the Sale on the Closing Date is subject to the fulfillment of the following conditions: (a) the Bankruptcy Court shall have entered the Sale and Bid Procedures Order; (b) the Bankruptcy Court shall have entered the Sale Order and such order has become a Final Order; and (c) there shall not be in effect any Law restraining, enjoining, or prohibiting the consummation of the Sale; provided that, notwithstanding anything to the contrary in this Article VI(5), the Buyer, and only the Buyer, may waive the obligation that any order entered by the Bankruptcy Court become a Final Order as a condition to Closing.

6.     **Frustration**. No Party may rely on the failure of any condition set forth in Article VI (3) and (4) as the case may be, to be satisfied to excuse such party's obligation to effect the Closing if such failure was caused by such Party's breach of this Agreement.

## ARTICLE VII
## COVENANTS

Between the Effective Date and the Closing Date, Seller:

(a)     shall not enter into any new contract or other agreement relating to the Property without Buyer's written consent;

(b)     shall refrain from committing any waste upon the Real Property;

(c)     shall keep all insurance policies covering or relating to the Real Property in full force and effect;

(d)     shall not encumber the Real Property or sell or transfer any interest or option in the Real Property other than in accordance with the Sale and Bid Procedures Order;

(e)     shall not sell, assign, or otherwise transfer any development rights in the Real Property other than in accordance with the Sale and Bid Procedures Order;

(f)     shall not submit any application relating to zoning, rezoning or other land use matter for the Real Property without Buyer's written consent; and

(g)     shall not apply for any new permit, license or certificate relating to the Real Property without Buyer's written consent.

(h)     absent written consent of Buyer, shall not convey any interest in the Property and shall not subject the Property to any additional liens, encumbrances, covenants, conditions, easements, rights of way or similar matters after the date of this Agreement, except as may be provided for in this Agreement, which shall not be eliminated or removed prior to the Closing Date;

(i)     shall maintain the Property in substantially the same condition as at the Effective Date, ordinary wear and tear excepted; and

(j)     shall (i) keep and perform all of the obligations to be performed by Seller under any Leases or Service Contracts, (ii) not enter into any contract or agreement providing for the provision of goods or services to or with respect to the Property or the operation thereof unless such contracts or agreements can be terminated upon not more than thirty (30) days' notice and without payment of penalty, and (iii) not enter into any new Leases for any portion of the Property or extend the terms of any existing Leases without Buyer's written consent, which consent shall not be unreasonably withheld or delayed.

## ARTICLE VIII
## BANKRUPTCY PROVISIONS

1.     **Bankruptcy Court Approval**.  Seller and Buyer acknowledge that this Agreement and the consummation of the transactions contemplated hereby are subject to the Bankruptcy Court's approval. Seller and Buyer acknowledge that (a) each must comply with the Sale and Bid Procedures and Sale and Bid Procedures Order, and (b) Buyer must provide adequate assurance of its future performance within the meaning of section 365(f)(2)(B) of the Bankruptcy Code with respect to the Assigned Contracts. Seller agrees that it will promptly take all actions reasonably required to assist in obtaining a Bankruptcy Court finding that there has been an adequate demonstration of adequate assurance of future performance under the Assigned Contracts, such as furnishing timely requested and factually accurate affidavits, non-confidential financial information, and other documents or information for filing with the Bankruptcy Court and making Buyer's representatives available to testify before the Bankruptcy Court.

## ARTICLE IX
## PRORATIONS

Prorations shall be made as of the Closing Date as if Buyer were in title for the entire Closing Date, and the following shall be prorated and adjusted between Seller and Buyer:

(a)     **Utilities**. Buyer shall notify the utility companies that all utility bills for the period commencing on the Closing Date are to be sent to Buyer. In addition to the Purchase Price, Buyer shall pay to Seller an amount equal to the total of all utility deposits held by utility companies and Seller shall assign to Buyer all of Seller's right, title and interest in any such utility deposits; *provided, however*, Seller reserves the right to receive a return of such utility deposits and in such event, Buyer shall arrange for substitute deposits with the utility companies as may be required. If following the Closing Date either Buyer or Seller receives a bill for utilities or other services provided to the Property for the period on which the Closing Date occurred, then Buyer and Seller shall equitably prorate the bill.

(b)     **Rental Income**. Uncollected rent shall not be prorated at Closing. Buyer

11

shall have the right to collect delinquent rent.

(c) **Service Contracts**. If after the Closing Date, either Seller or Buyer receives a bill for services provided under the Service Contracts for the period after which the Closing Date occurred, Buyer shall be responsible for such bill.

(d) **Other Transaction Costs**. All other fees, costs and expenses not expressly addressed in this Article IX or elsewhere in this Agreement shall be allocated between Seller and Buyer in accordance with applicable local custom for similar transactions.

(e) **Tenant Deposits**. The amount of all cash security and any other cash tenant deposits actually held by Seller, and any interest due thereon (if required by law or contract to be earned thereon) and not already applied to tenant obligations under the Leases, if any, shall be credited to Buyer. Buyer will indemnify, defend, and hold Seller harmless from and against all demands and claims made by tenants with respect to any security deposits transferred or credited to Buyer at Closing and will reimburse Seller for all attorneys' fees incurred or that may be incurred as a result of any such claims or demands.

(f) **Method of Proration**. All prorations shall be made as of the Closing Date based on a 365-day year.

## ARTICLE X
## COSTS AND EXPENSES

Except as otherwise expressly provided in this Agreement, whether or not the transactions contemplated by this Agreement are consummated, the Parties shall bear their own costs and expenses (including all compensation and expenses of counsel, financial advisors, consultants, actuaries, independent accountants, and any mortgage brokers) incurred in connection with this Agreement and any transaction contemplated hereby. All other normal costs and expenses shall be allocated between Buyer and Seller in accordance with the customary practice in the county in which the Real Property is located, provided that Buyer shall pay: (i) all premiums for the Title Policy, any additional cost of an extended coverage title policy and the cost of any endorsements required by Buyer; and document recording charges.

## ARTICLE XI
## "AS IS"

EXCEPT FOR SELLER'S REPRESENTATIONS AND WARRANTIES SET FORTH IN ARTICLE IV ("**SELLER'S WARRANTIES**"), TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, THIS SALE IS MADE AND WILL BE MADE WITHOUT REPRESENTATION, COVENANT, OR WARRANTY OF ANY KIND (WHETHER EXPRESS OR IMPLIED) BY SELLER. AS A MATERIAL PART OF THE CONSIDERATION FOR THIS AGREEMENT, BUYER AGREES TO ACCEPT THE PROPERTY ON AN "AS IS", "WHERE IS", "WITH ALL FAULTS" BASIS, AND WITHOUT ANY REPRESENTATION OR WARRANTY RELATING TO THE PROPERTY, ALL OF WHICH SELLER HEREBY DISCLAIMS EXCEPT FOR SELLER'S WARRANTIES. NONE OF SELLER OR ANY OF ITS SHAREHOLDERS, MEMBERS, PARTNERS, TRUSTEES, DIRECTORS, OFFICERS, MANAGERS, EMPLOYEES, AGENTS (INCLUDING BROKER) OR REPRESENTATIVES, NOR ANY PERSON PURPORTING TO REPRESENT ANY OF THE FOREGOING, HAVE MADE ANY REPRESENTATION, WARRANTY, GUARANTY, PROMISE, PROJECTION OR PREDICTION WHATSOEVER WITH RESPECT TO THE PROPERTY OR ANY

PORTION THEREOF, WRITTEN OR ORAL, EXPRESS OR IMPLIED, ARISING BY OPERATION OF LAW OR OTHERWISE.

EXCEPT FOR SELLER'S WARRANTIES, NO WARRANTY OR REPRESENTATION IS MADE BY SELLER RELATED TO THE PROPERTY OF ANY KIND, INCLUDING WITHOUT LIMITATION ANY WARRANTY AS TO FITNESS FOR ANY PARTICULAR PURPOSE, MERCHANTABILITY, HABITABILITY, DESIGN, QUALITY, CONDITION, OPERATION OR INCOME, COMPLIANCE WITH DRAWINGS OR SPECIFICATIONS, ABSENCE OF DEFECTS, ABSENCE OF HAZARDOUS OR TOXIC, ABSENCE OF FAULTS, FLOODING, OR COMPLIANCE WITH LAWS AND REGULATIONS (INCLUDING LAWS AND REGULATIONS RELATING TO HEALTH, SAFETY, AND THE ENVIRONMENT). SPECIFICALLY, BUT WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, SELLER HEREBY EXPRESSLY DISCLAIMS THE IMPLIED WARRANTY OF HABITABILITY. BUYER ACKNOWLEDGES THAT IT HAS ENTERED INTO THIS AGREEMENT WITH THE INTENTION OF MAKING AND RELYING UPON ITS OWN INVESTIGATION OF THE PHYSICAL, ENVIRONMENTAL, ECONOMIC USE, COMPLIANCE, AND LEGAL CONDITION OF THE PROPERTY AND THAT, EXCEPT FOR SELLER'S WARRANTIES, BUYER IS NOT NOW RELYING, AND WILL NOT LATER RELY, UPON ANY REPRESENTATIONS AND WARRANTIES MADE BY SELLER OR ANYONE ACTING OR CLAIMING TO ACT, BY, THROUGH OR UNDER OR ON SELLER'S BEHALF CONCERNING THE PROPERTY.

The provisions of this Article XI shall survive indefinitely and closing or termination of this Agreement and shall not be merged into the closing documents.

## ARTICLE XII
## CONDEMNATION

Risk of loss resulting from any condemnation or eminent domain proceeding which is commenced or has been threatened before the Closing Date, and risk of loss to the Property due to fire, flood or any other cause before the Closing Date, shall remain with Seller. If before the Closing Date the Property or any portion thereof shall be materially damaged, or if the Property or any material portion thereof shall be subjected to a bona fide threat of condemnation with respect to the taking by eminent domain or condemnation, then Buyer may terminate this Agreement by written notice to Seller given within five (5) days after Seller notifies Buyer of the damage or taking. If the Closing Date is within the aforesaid 5-day period, then the Closing Date shall be extended to the next Business Day following the end of said 5-day period. If no such election is made, and in any if the damage after a casualty is not material or if a non-material portion of the Property is subject to a taking, this Agreement shall remain in full force and effect and the purchase contemplated herein, less any interest taken by eminent domain or condemnation, shall be effected with no further adjustment except as contemplated in this paragraph. If the Property was subject to a taking, at Closing Seller shall assign, transfer and set over to Buyer all of the right, title and interest of Seller in and to any awards that have been or that may thereafter be made for any taking. If the Property was damaged, at Closing Seller shall reduce the Purchase Price by the value reasonably estimated by Seller to repair or restore the damaged portion of the Improvements, less any sums expended by Seller to make emergency repairs to the Improvements or the Property or otherwise protect the physical condition of the Improvements or the Property. In either case, this transaction shall close pursuant to the terms of this Agreement. For the purposes of this paragraph,

13

the phrases "material damage" and "materially damaged" mean damage up to a maximum aggregate amount of $500,000.00.

## ARTICLE XIV
## TERMINATION

1. **Termination**. Notwithstanding anything contained in this Agreement to the contrary, this Agreement shall terminate and the Closing shall not occur if:

    (a) either Party is in material breach or default of its covenants or obligations under this Agreement, which breach or default is not caused by a default by Seller or Buyer, as to which Seller or Buyer has provided written notice to either Party and such Party has not remedied such breach within ten (10) Business Days thereafter;

    (b) Seller has not satisfied any one or more of the conditions precedent set forth in Article VI(3) at or prior to the Outside Closing Date;

    (c) Buyer has not satisfied any one or more of the conditions precedent set forth in Article VI(4) at or prior to the Outside Closing Date;

    (d) if the Bankruptcy Court declines to enter the Sale Order;

    (e) by mutual written consent of Seller and Buyer;

    (f) the Bankruptcy Court enters a Final Order dismissing the Chapter 11 Case or converting it to a case under Chapter 7 of the Bankruptcy Code;

    (g) a Governmental Authority issues a Final Order prohibiting the transactions contemplated hereby where such Final Order was requested, encouraged, or supported by Seller; or

    (h) Buyer is not the Successful Bidder (as defined in the Sale and Bid Procedures) at the Auction and Seller sells the Property pursuant to an agreement with the Successful Bidder (an "**Alternative Transaction**").

2. **Effect of Termination.** In the event of the termination of this Agreement in accordance with this Article XIV, (a) this Agreement shall immediately become void and of no force or effect, except for this Article XIV which shall survive termination of this Agreement, (b) the transactions contemplated by this Agreement shall be abandoned without further action by any Party, (c) if this Agreement is terminated by Buyer because of Seller's breach or default or is terminated for any reason other than Buyer's breach or default, then and in that event, the entire Deposit shall be returned promptly to Buyer, but in any event within five (5) days after the termination of this Agreement, (d) if this Agreement is terminated by Seller because of Buyer's breach or default which breach or default has not been caused by a default by Seller and has not been cured within the time period specified in Article XIV.I (a), then and in that event, the entire Deposit shall be retained by or disbursed to Seller as liquidated damages for Buyer's breach or default of this Agreement, and (e) all rights and obligations of the Parties hereunder (except for this Article XIV) shall terminate without any liability of any Party to any other Party or their Affiliates.

# ARTICLE XV
## MISCELLANEOUS

1.     **Assignment.** This Agreement binds and benefits the Parties and their respective successors and assigns. Neither Party may assign this Agreement nor any right or obligation hereunder without the prior written consent of the other Party; *provided*, *however*, that Buyer may assign this Agreement to an affiliate or any entity that is controlled by or is under common control with Buyer without Seller's prior consent. Any such assignment by either Party shall not relieve the assignor of any obligation under this Agreement without the written consent of the other Party to this Agreement and the assignee shall also be bound by the obligations of the assignor pursuant to this Agreement.

2.     **Counterparts.** This Agreement may be executed in counterparts, by either an original signature or signature transmitted by facsimile transmission or other similar process and each copy so executed shall be deemed to be an original and all copies so executed shall constitute one and the same agreement.

3.     **Severability.** If any term or provision of this Agreement shall be deemed to be invalid or unenforceable to any extent, the remainder of this Agreement shall not be affected thereby, and each remaining term and provision of this Agreement shall be valid and be enforced to the fullest extent permitted by law.

5.     **Waivers; Survival**. No waiver of any breach of any covenant or provision contained herein shall be deemed a waiver of any preceding or succeeding breach thereof, or of any other covenant or provision contained herein. No extension of time for performance of any obligation or act shall be deemed an extension of the time for performance of any other obligation or act except those of the waiving Party, which shall be extended by a period of time equal to the period of the delay. All covenants and agreements contained herein which by their terms are to be performed in whole or in part, or which prohibit actions, subsequent to the Closing shall, solely to the extent such covenants and agreements are to be performed, or prohibit actions, subsequent to the Closing, survive the Closing in accordance with their terms. All other covenants and agreements contained herein, and all representations and warranties contained herein or in any certificated deliveries hereunder, shall not survive the Closing and shall thereupon terminate.

6.     **Successors and Assigns**. This Agreement is binding upon and inures to the benefit of the permitted successors and assigns of the Parties hereto.

7.     **Entire Agreement**. This Agreement, including all Exhibits attached hereto, constitutes the entire contract between the Parties hereto with respect to the subject matter hereof and may not be modified except by an instrument in writing signed by the Party to be charged. Seller and Buyer shall cooperate to create mutually acceptable Exhibits in place of all Exhibits that are not attached hereto as of the Effective Date.

8.     **Time of Essence**. Seller and Buyer acknowledge and agree that time is strictly of the essence with respect to each and every term, condition, obligation and provision hereof.

9.     **Construction**. The Parties acknowledge and agree that this Agreement is the result of arms-length negotiations and shall not be construed for or against any Party by virtue of

draftsmanship. Unless the context requires otherwise, (a) the words "include," "including" and variations thereof mean without limitation; (b) the words "hereof," "hereby," "herein," "hereunder" and similar terms refer to this Agreement as a whole and not any particular section or article in which such words appear; (c) words in the singular include the plural, and words in the plural include the singular; (d) a term defined as one part of speech (such as a noun) shall have a corresponding meaning when used as another part of speech (such as a verb); and (e) currency amounts referenced herein are in U.S. Dollars.

10. **Governing Law; Jurisdiction**. Except to the extent the mandatory provisions of the Bankruptcy Code apply, this Agreement shall be governed by the laws of the State of Texas without regard to principles of conflicts or choice of laws or any other law that would make the laws of any other jurisdiction other than the State of Texas applicable hereto. Without limitation of any Party's right to appeal any order of the Bankruptcy Court, (i) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the transactions contemplated hereby and (ii) any and all claims relating to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the Parties hereby consent and submit to the exclusive jurisdiction and venue of the Bankruptcy Court and irrevocably waive the defense of an inconvenient forum to the maintenance of any such proceeding; *provided*, *however*, that, if the Chapter 11 Case is closed, all proceedings arising out of or relating to this Agreement shall be heard first by the Bankruptcy Court, but if the Bankruptcy Court determines that it lacks subject matter jurisdiction or abstains or otherwise declines to exercise its jurisdiction, then in any other state or federal court of competent jurisdiction situated in Harris County, Texas, and the Parties hereby irrevocably submit to the exclusive jurisdiction and venue of such courts in any such proceeding and irrevocably waive the defense of an inconvenient forum to the maintenance of any such proceeding. The Parties consent to service of process by first class mail at the addresses listed in Article XV(14) or any other manner permitted by law.

11. **Waiver of Jury Trial**. THE PARTIES HEREBY IRREVOCABLY WAIVE ALL RIGHT TO TRIAL BY JURY IN ANY PROCEEDING OR COUNTERCLAIM (WHETHER BASED IN CONTRACT OR IN TORT, OR OTHERWISE) ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE ACTIONS OF SELLER, BUYER, OR THEIR REPRESENTATIVES IN NEGOTIATION OR PERFORMANCE HEREOF.

12. **Integration; Binding Effect; No Third-Party Beneficiaries**. This Agreement constitutes the entire Agreement among the Parties with respect to the subject matter hereof and shall supersede all previous negotiations, commitments and writings. All Exhibits called for by this Agreement and delivered to the Parties shall be considered a part hereof with the same force and effect as if the same had been specifically set forth in this Agreement. This Agreement is solely for the benefit of Buyer and Seller, and their respective successors and permitted assigns. This Agreement shall not be deemed to confer upon or give to any third party, including any past or present directors, officers, employees, or agents of Seller, any remedy, claim, cause of action or other right.

13. **No Recordation**. Buyer agrees not to record a memorandum or other document relating to this Agreement without the prior written consent of Seller.

14. **Notices**. All notices, requests, demands, and other communications to be given under this Agreement shall be in writing and delivered in person, or sent by (i) electronic mail, (ii)

certified mail, postage prepaid, or (iii) nationally recognized overnight courier with a reliable tracking service and properly addressed as follows:

Seller:                     Chapter 11 Trustee c/o Galleria 2425 Owner, LLC
                            Jones Murray LLP
                            602 Sawyer Street, Suite 400
                            Houston, TX 77007
                            Attn.: Christopher R. Murray
                            Email: christopher.murray@jonesmurray.com

                            With a copy to:

                            Shannon & Lee LLP
                            2100 Travis Street, Suite 1525
                            Houston, TX 77002
                            Attn.: R. J. Shannon; Kyung S. Lee
                            Email: rshannon@shannonleellp.com; klee@shannonleellp.com

Buyer:                      QB Loop Property LP
                            c/o QB Loop Property GP, LLC
                            1535 West Loop South, Suite 100
                            Houston, Texas 77027
                            Attn: Anwar-i-Qadeer
                            Email: qadeer@qadeerlaw.com

                            With a copy to:

                            Locke Lord LLP
                            600 Travis Street, Suite 2800
                            Houston, Texas 77002
                            Attn: Simon R. Mayer
                            Phone: 713-226-1507
                            Facsimile: 713-229-2675
                            Email: simon.mayer@lockelord.com

15.     **Environmental Notices**.  From the Effective Date through the Closing Date, Seller shall promptly notify Buyer if to the Knowledge of Seller there are any threatened or pending investigations by any governmental agency under any law, regulation or ordinance pertaining to any Hazardous Substance.

16.     **Further Assurances**. From the Effective Date until the Closing or termination of this Agreement, Seller and Buyer shall use commercially reasonable efforts to take, or cause to be taken, all actions and to do, or cause to be done, all things necessary, proper or advisable to consummate the transaction contemplated in this Agreement, including, without limitation, (a) obtaining all necessary consents, approvals and authorizations required to be obtained from any Governmental Authority, including, without limitation, the Bankruptcy Court, or other Person under this Agreement or applicable law, and (b) effecting all registrations and filings required under this Agreement or applicable law. After the Closing, Seller and Buyer shall use

commercially reasonable efforts (at no cost or expense to such Party, other than any *de minimis* cost or expense or any cost or expense which the requesting Party agrees in writing to reimburse) to further effect the transaction contemplated in this Agreement. This Article XV(16) shall survive the Closing.

**[Signature Page Follows]**

**IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement as of the Effective Date.

**"SELLER"**

Christopher R. Murray as the Chapter 11 Trustee of Galleria 2425 Owner, LLC

By: _____
Name: Christopher R. Murray
Title:   Chapter 11 Trustee

**"BUYER"**

QB Loop Property LP
By Its General Partner:
QB Loop Property GP LLC

By: _____
Name: Anwar-i-Qadeer
Title:   Manager

[Signature Page to Asset Purchase Agreement]

# EXHIBIT A

## LEGAL DESCRIPTION OF PROPERTY

**Tract 1: Fee Tract**

BEING 2.4462 ACRES (106,557 SQUARE FEET) OF LAND OUT OF THE WILLIAM WHITE SURVEY, ABSTRACT NO. 836, HOUSTON, HARRIS COUNTY, TEXAS, BEING THE SAME PROPERTY CONVEYED TO 2425 WEST LOOP, LP UY SPECIAL WARRANTY DEED RECORDED UNDER HARRIS COUNTY CLERK'S FILE NO. 20070732472, SAID TRACT CONVEYED BY DEED TO ONE WEST LOOP PLAZA, LTD. UNDER HCCF' NO. S547896 AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS :

COMMENCING AT A POINT IN THE NORTHERLY RIGHT OF WAY LINE WESTHEIMER ROAD (ROW VARIES) BEING THE SOUTHEAST CORNER OF A 2.3468 ACRE PARCEL CONVEYED BY LINCOLN NATIONAL LIFE INSURANCE COMPANY TO RED LION HOTELS, INC. IN A DEED RECORDED IN HCCF NO. S056346 AND THE SOUTHWEST CORNER OF A 3.4385 ACRE PARCEL CONVEYED BY HARVEY R. HOUCK, JR., TO RESTPROP, LTD IN A OEED RECORDED IN HCCF NO. R228886;

THENCE, NORTHERLY NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, 204.61 FEET ALONG THE COMMON LINE OF THE AFORESAID 2.3468 ACRE PARCEL TO THE WEST AND 3.4385 ACRE PARCEL TO THE EAST, TO A 1/2 INCH IRON ROD FOUND AT THE NORTHEAST CORNER OF THE 2.3468 ACRE PARCEL BEING THE SOUTHEAST CORNER OF THE HEREIN DESCRIBED PARCEL AND THE POINT OF BEGINNING;

THENCE, WESTERLY ALONG TI IE COMMON LINE OF THE 2.3468 ACRE PARCEL TO THE SOUTH AND THE HEREIN DESCRIBED PARCEL TO THE NORTH, SOUTH 87 DEGREES 44 MINUTES 46 SECONDS WEST, 464.50 FEET TO A POINT ON THE EASTERLY RIGHT OF WAY (ROW) LINE OF INTERSTATE 610 WEST LOOP AND THE SOUTHWEST CORNER OF THE HEREIN DESCRIBED PARCEL FROM WHICH A FOUND RAILROAD SPIKE BEARS SOUTH 21 DEGREES 43 MINUTES EAST 2.42 FEET;

THENCE, NORTHERLY ALONG THE EASTERLY RIGHT OF WAY LINE OF INTERSTATE 610 WEST LOOP (ROW 350 FEET} NORTH 10 DEGREES 55 MINUTES 17 SECONDS EAST 251.27 FEET TO AN "X" SET IN CONCRETE BEING THE SOUTHWEST CORNER OF A 7.8998 ACRE PARCEL AS SHOWN ON THE HOUSTON VENTURE PLAT UNRESTRICTED RESERVE "A" FILED IN THE HARRIS COUNTY MAP RECORDS AS FILM CODE NUMBER 356074, AND THE NORTHWEST CORNER OF THE HEREIN DESCRIBED PARCEL;

THENCE, EASTERLY ALONG THE COMMON LINE OF THE ABOVE INDICATED 7.8998 ACRE PARCEL TO THE NORTH AND Tl-IE HEREIN DESCRIBED PARCEL TO THE SOUTH NORTH 87 DEGREES 44 MINUTES 46 SECONDS EAST, 406.61 FEET TO AN "X" FOUND IN THE WESTERLY LINE OF A 3.4385 ACRE PARCEL OF LAND CONVEYED TO RESTPROP, LTD AS RECORDED IN THE HCCF NO. R228886;

A-1

THENCE, SOUTHERLY ALONG A COMMON LINE OF THE ABOVE INDICATED 3.4385 ACRE PARCEL TO THE EAST AND THE HEREIN DESCRIBED PARCEL TO THE WEST, SOUTH 02 DEGREES 23 MINUTES 52 SECONDS EAST, 244.64 FEET TO THE POINT OF BEGINNING CONTAINING 106,557 SQUARE FEET, 2.4462 ACRES MORE OR LESS.

**Tract 2: Easement Tract; 20-Foot Non-Exclusive Roadway and Pedestrian Easement**

A NON-EXCLUSIVE ROADWAY AND PEDESTRIAN EASEMENT OVER AND ACROSS A TRACT OF LAND NORTHERLY OF AND 20 FEET WIDE ALONG THE ENTIRE NORTHERLY BOUNDARY LINE OF TRACT I; SAID EASEMENT CREATED AND GRANTED BY VIVIAN L. SMITH, INDIVIDUALLY AND AS INDEPENDENT EXECUTRIX OF THE ESTATE OF R. E. SMITH, DECEASED IN THAT CERTAIN GENERAL WARRANTY DEED DATED JULY 5, 1977 FILED IN HCCF NO. F216562 AND DESCRIBED IN HCCF NO. G743294, BEING THE SAME EASEMENT CONVEYED TO PCCP FULLER 2425 WEST LOOP, LLC BY SPECIAL WARRANTY DEED WITH VENDOR'S LIEN RECORDED UNDER HARRIS COUNTY CLERK'S FILE NO. 20100450007, AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

COMMENCING AT A POINT IN THE NORTHERLY RIGHT OF WAY LINE OF WESTHEIMER ROAD (ROW VARIES), BEING THE SOUTHEAST CORNER OF A 2.3468 ACRE PARCEL CONVEYED BY LINCOLN NATIONAL LIFE INSURANCE COMPANY TO RED LION HOTELS INC. IN A DEED RECORDED IN HCCF NO. S056346 AND THE SOUTHWEST CORNER OF A 3.4385 ACRE PARCEL CONVEYED BY HARVEY R. HOUCK, JR., TO RESTPROP, LTD IN A DEED RECORDED IN HCCF NO. R228886;

THENCE, NORTHERLY NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, 204.61 FEET ALONG THE COMMON LINE OF THE AFORESAID 2.3468 ACRE PARCEL TO THE WEST AND 3.4385 ACRE PARCEL TO THE EAST TO A 1/2 INCH IRON ROD FOUND FOR THE SOUTHEAST CORNER OF TRACT 1;

THENCE CONTINUING NORTHERLY NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, 244.64 FEET ALONG A COMMON LINE OF A PREVIOUSLY NOTED 3.4385 ACRE PARCEL OF LAND TO THE EAST AND TRACT I TO THE WEST TO AN "X" FOUND FOR THE NORTHEAST CORNER OF TRACT I AND THE POINT OF BEGINNING;

THENCE, WESTERLY SOUTH 87 DEGREES 44 MINUTES 46 SECONDS WEST, 406.61 FEET ALONG THE NORTHERLY LINE OF TRACT I TO AN "X" SET ON THE EASTERLY LINE OF INTERSTATE 610 WEST LOOP (350 FEET WIDE);

THENCE, NORTHERLY NORTH 10 DEGREES 55 MINUTES 17 SECONDS EAST 20.54 FEET ALONG THE EASTERLY LINE OF INTERSTATE 610 WEST LOOP TO A POINT;

THENCE, EASTERLY 20.00 PEET NORTHERLY FROM AND PARALLEL TO THE NORTHERLY LINE OF TRACT I, NORTH 87 DEGREES 44 MINUTES 46 SECONDS EAST, 401.88 FEET TO A POINT;

A-2

THENCE, SOUTHERLY SOUTH 02 DEGREES 23 MINUTES 52 SECONDS EAST 20.00 FEET TO THE POINT OF BEGINNING AND CONTAINING 0.1856 ACRES OR 8,085 SQUARE FEET OF LAND MORE OR LESS.

**Tract 3: Easement Tract; 20-Foot Non-Exclusive Roadway and Pedestrian Easement**

A NON-EXCLUSIVE ROADWAY AND PEDESTRIAN EASEMENT OVER AND ACROSS A TRACT OF LAND SOUTHERLY OF AND 20.00 FEET WIDE ALONG THE ENTIRE SOUTHERN BOUNDARY LINE OF TRACT I, SAID EASEMENT CREATED AND GRANTED ON FEBRUARY 16, 1979, FROM WEST LOOP HOTEL, LIMITED TO FIN PROPERTIES, LIMITED PILED IN HCCF NO. 0041310, BEING THE SAME PROPERTY EASEMENT CONVEYED TO PCCP FULLER 2425 WEST LOOP, LLC BY SPECIAL WARRANTY DEED WITH VENDOR'S LIEN RECORDED UNDER HARRIS COUNTY CLERK'S FILE NO. 20100450007, AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

COMMENCING AT A POINT IN THE NORTHERLY RIGHT OF WAY LINE OF WESTHEIMER ROAD (ROW VARIES), BEING THE SOUTHEAST CORNER OF A 2.3468 ACRE PARCEL CONVEYED BY LINCOLN NATIONAL LIFE INSURANCE COMPANY TO RED LION HOTELS, INC. IN A DEED RECORDED IN HCCF NO. S056346 AND THE SOUTHWEST CORNER OF A 3.4385 ACRE PARCEL CONVEYED RY HARVEY R HOUCK, JR., TO RESTPROP, LTD IN A DEED RECORDED IN HCCF NO. R228886;

THENCE, NORTHERLY NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, 184.61 FEET ALONG THE COMMON LINE OF THE AFORESAID 2.3468 ACRE PARCEL TO THE WEST AND 3.4385 ACRE PARCEL TO THE EAST TO THE POINT OF BEGINNING, WHENCE THE SOUTHEAST CORNER OF TRACT I BEARS NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, 20.02 FEET;

THENCE, WESTERLY 20.00 FEET SOUTHERLY FROM AND PARALLEL TO THE SOUTHERLY LINE OF TRACT I, SOUTH 87 DEGREES 44 MINUTES 46 SECONDS WEST, 469.23 FEET TO A POINT IN THE EASTERLY LINE OF INTERSTATE 610 WEST LOOP;

THENCE, NORTHERLY NORTH 10 DEGREES 55 MINUTES 17 SECONDS EAST, 20.54 FEET ALONG THE EASTERLY LINE OF INTERSTATE 610 WEST LOOP TO THE SOUTHWEST CORNER FOR TRACT I FROM WHICH A FOUND RAILROAD SPIKE BEARS SOUTH 21 DEGREES 43 MINUTES EAST, 2.42 FEET;

THENCE, EAST ERLY NORTH 87 DEGREE S 44 MINUTES 46 SECONDS EAST, 464.50 FEET ALONG THE SOUTHERLY LINE OF TRACT I TO A l/2 INCH IRON ROD FOUND AT THE SOUTHEAST CORNER OF TRACT 1;

THENCE, SOUTHERLY SOUTH 02 DEGREES 23 MINUTES 52 SECONDS EAST, 20.02 FEET ALONG THE A COMMON LINE BETWEEN A PREVIOUSLY DESCRIBED 2.3468 ACRES PARCEL TO THE WEST AND A 3.4385 ACRE PARCEL TO THE EAST TO THE POINT OF BEGINNING AND CONTAINING 0.2144 ACRES OR 9,337 SQUARE FEET OF LAND, MORE OR LESS.

**Tract 4: Easement Tract; 28-Foot Roadway and Pedestrian Easement**

A NON-EXCLUSIVE ROADWAY AND PEDESTRIAN EASEMENT ACROSS EASTERLY 28 FEET OF A 2.3468 ACRE TRACT ADJACENT TO AND SOUTHERLY OF TRACT 1. CREATED AND GRANTED IN THAT CERTAIN ROAD AND PEDESTRIAN EASEMENT DATED FEBRUARY 16, 1979 FROM WEST LOOP HOTEL, LIMITED TO FIN PROPERTIES, LIMITED, FILED IN HCCF NO. G041313, BEING THE SAME PROPERTY EASEMENT CONVEYED TO PCCP FULLER 2425 WEST LOOP, LLC BY SPECIAL WARRANTY DEED WITH VENDOR'S LIEN RECORDED UNDER HARRIS COUNTY CLERK'S FILE NO. 20100450007, AND BEING MORE PARTICULARLY DESCRIBED BY METES AND ROUNDS AS FOLLOWS:

BEGINNING AT A FOUND 5/8 INCH IRON ROD IN TI-IE NORTHERLY RIGHT OF WAY LINE OF WESTHEIMER ROAD (ROW VARIES), BEING THE SOUTHEAST CORNER OF A 2.3468 ACRE PARCEL CONVEYED BY LINCOLN NATIONAL LIFE INSURANCE COMPANY TO RED LION HOTELS, INC. IN A DEED RECORDED IN HCCF NO. S056346 AND THE SOUTHWEST CORNER OF A 3.4385 ACRE PARCEL CONVEYED BY HARVEY R. HOUCK, JR., TO RESTPROP, LTD IN A DEED RECORDED IN HCCF NO. R228886;

THENCE, WESTERLY SOUTH 86 DEGREES 46 MINUTES 52 SECONDS WEST, 28.00 FEET ALONG THE NORTHERLY LINE OF WESTHEIMER ROAD TO A POINT;

THENCE, NORTHERLY 28.00 FEET WESTERLY OF AND PARALLEL TO THE EASTERLY LINE OF SAID 2.3468 ARE TRACT NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, 205.08 FEET TO A POINT ON THE SOUTHERLY LINE OF TRACT 1;

THENCE, EASTERLY NORTH 87 DEGREES 44 MINUTES 46 SECONDS EAST, 28.00 FEET ALONG THE SOUTHERLY LINE OF TRACT I TO A 1/2 INCH IRON ROD FOUND IN THE WESTERLY LINE OF A 3.4385 ACRE PARCEL OF LAND PRESENTLY OWNED BY RESTPROP, LTD AS RECORDED IN THE HCCF NO. R228886;

THENCE, SOUTHERLY SOUTH 02 DEGREES 23 MINUTES 52 SECONDS EAST, 204.61 FEET ALONG A COMMON LINE OF THE ABOVE INDICATED 3.4385 ACRE PARCEL TO THE EAST SAID THE PREVIOUSLY DESCRIBED 2.3468 ACRE PARCEL TO THE WEST, TO THE POINT OF BEGINNING, CONTAINING 0.1317 ACRES OR 5,735 SQUARE FEET (CALLED 5,740) OF LAND MORE OR LESS.

**Tract 5: Easement Tract; 5-Foot Storm Sewer Easement**

A 1,025 SQUARE FOOT TRACT OF LAND, BEING THAT SAME TRACT UN PROPERTIES, LIMITED, RECORDED IN HCCF NUMBER G041311, LOCATED IN THE WILLIAM WHITE SURVEY, ABSTRACT NUMBER 836, CITY OF HOUSTON, HARRIS COUNTY, TEXAS, BEING THE SAME EASEMENT CONVEYED TO PCCP FULLER 2425 WEST LOOP, LLC BY SPECIAL WARRANTY DEED WITH VENDOR'S LIEN RECORDED UNDER HARRIS COUNTY CLERK'S FILE NO. 20100450007, AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

A-4

COMMENCING AT A POINT IN THE NORTHERLY RIGHT OF WAY (ROW) OF WESTHEIMER ROAD (ROW VARIES), BEING THE SOUTHEAST CORNER OF A 2.3468 ACRE PARCEL CONVEYED BY LINCOLN NATIONAL LIFE INSURANCE COMPANY TO RED LION HOTELS, INC. IN A DEED RECORDED IN HCCF NO. 5056346 AND THE SOUTHWEST CORNER OF A 3.4385 ACRE PARCEL CONVEYED BY HARVEY R. HOUCK, JR. TO RESTPROP, LTD IN A DEED RECORDED IN HCCF NO. R228886;

THENCE ALONG THE NORTHERLY RIGHT OF WAY LINE OF WESTHEIMER ROAD, SOUTH 86 DEGREES 46 MINUTES 52 SECONDS WEST, A DISTANCE OF 16.00 FEET TO THE SOUTHEAST CORNER OF SAID EASEMENT AND THE HEREIN DESCRIBED TRACT;

THENCE CONTINUING ALONG THE NORTHERLY LINE OF WESTHEIMER ROAD, SOUTH 86 DEGREES 46 MINUTES 52 SECONDS WEST A DISTANCE OF 5.00 FEET, THE SOUTHWEST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE DEPARTING SAID WESTHEIMER ROAD, NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, A DISTANCE OF 204.96 FEET, TO A POINT IN THE SOUTHERLY LINE OF A 2.4462 ACRE TRACT CONVEYED BY DEED TO HE 2425 WEST LOOP, LP RECORDED UNDER HARRIS COUNTY CLERK'S FILE NO. 20070732472;

THENCE ALONG THE SOUTHERLY LINE OF SAID 2.4462 ACRE TRACT, NORTH 87 DEGREES 44 MINUTES 46 SECONDS EAST A DISTANCE OF 5.00 FEET TO THE NORTHEAST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE DEPARTING THE SOUTHERLY LINE OF SAID 2.4462 ACRE TRACT, SOUTH 02 DEGREES 23 MINUTES 52 SECONDS EAST, A DISTANCE OF 204.88 FEET TO THE POINT OF BEGINNING AND CONTAINING 1,025 SQUARE FEET OF LAND, MORE OR LESS.

**EXHIBIT B**

FORM OF DEED

AFTER RECORDING RETURN TO:

_____
_____
_____

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

**SPECIAL WARRANTY DEED**

| | | |
|---|---|---|
| STATE OF TEXAS | § | |
| | § | KNOW ALL MEN BY THESE PRESENTS: |
| COUNTY OF HARRIS | § | |

That GALLERIA 2425 OWNER, LLC, a Delaware limited liability company ("Grantor"), by and through Christopher R. Murray, the chapter 11 trustee appointed in Case No. 23-34815-JPN in the U.S. Bankruptcy Court for the Southern District of Texas, Houston Division, for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable consideration to it paid by QB LOOP PROPERTY LP, a Texas limited partnership ("Grantee"), the receipt and sufficiency of which are hereby acknowledged and confessed by Grantor, has GRANTED, BARGAINED, SOLD and CONVEYED, and by these presents does hereby GRANT, BARGAIN, SELL and CONVEY unto Grantee the tracts of land lying and being situated in Harris County, Texas, as more particularly described on Exhibit "1" attached hereto and incorporated herein for all purposes (the "Land"), together with (a) all buildings, structures, fixtures and improvements situated on, in or under the Land (the "Improvements"), and (b) all of Grantor's right, title and interest in and to the appurtenances pertaining to the Land (hereinafter collectively referred to as the "Appurtenant Property"), including, but not limited to, all right, title and interest of Grantor in and to adjacent roads, rights-of-way, alleys, drainage facilities, easements and utility facilities and strips and gores between the described Land and abutting properties, if any. The Land, Improvements, and Appurtenant Property are sometimes hereinafter referred to as the "Property".

This conveyance is made and accepted free and clear of all liens, claims, encumbrances, and interests pursuant to that certain "Sale Order" dated _____, 2024, and entered as Docket No. _____ in Case No. 23-34815-JPN in the U.S. Bankruptcy Court for the Southern District of Texas, Houston Division, and is subject to the exceptions set forth on Exhibit "2", attached

hereto and made a part hereof for all purposes (the "<u>Permitted Exceptions</u>").

TO HAVE AND TO HOLD THE PROPERTY, together with all and singular the rights and appurtenances belonging in any way to the Property, subject to the provisions stated herein, to Grantee, Grantee's successors and assigns forever, and Grantor binds itself and its legal representatives and successors TO WARRANT AND FOREVER DEFEND all and singular the Property to Grantee and Grantee's successors and assigns against every person lawfully claiming or to claim all or any part of the Property by, through, or under Grantor, but not otherwise.

**AS A MATERIAL PART OF THE CONSIDERATION FOR THIS DEED, GRANTEE ACKNOWLEDGES AND AGREES THAT: (i) GRANTEE HAS CONDUCTED ITS OWN INDEPENDENT INVESTIGATION AND INSPECTION OF ALL ASPECTS OF THE PROPERTY, (ii) OTHER THAN AS EXPRESSLY SET OUT HEREIN OR IN THAT CERTAIN ASSET PURCHASE AGREEMENT DATED JUNE __, 2024, BY AND BETWEEN GRANTOR AND GRANTEE ("PURCHASE AGREEMENT"), GRANTEE IS NOT RELYING ON ANY REPRESENTATIONS OR STATEMENTS OF GRANTOR OR ITS AGENTS, (iii) GRANTEE IS RELYING ON SUCH INDEPENDENT INVESTIGATION AND INSPECTION AND IS NOT RELYING ON ANY INFORMATION PROVIDED BY GRANTOR, GRANTOR'S ENGINEERS, OR THE BROKERS IN DETERMINING WHETHER TO PURCHASE THE PROPERTY, (iv) CERTAIN INFORMATION PROVIDED BY GRANTOR TO GRANTEE WITH RESPECT TO THE PROPERTY HAS BEEN OBTAINED FROM A VARIETY OF SOURCES AND THAT GRANTOR HAS NOT MADE ANY INDEPENDENT INVESTIGATION OR VERIFICATION OF SUCH INFORMATION, (v) GRANTEE IS FULLY AND COMPLETELY SATISFIED THAT THE PROPERTY IS SATISFACTORY IN ALL RESPECTS FOR GRANTEE'S INTENDED USE AND (vi) GRANTEE HAS NO RECOURSE WHATSOEVER AGAINST GRANTOR OR THE BROKER IN CONNECTION WITH THE PROPERTY OTHER THAN FOR ANY VIOLATIONS AS TO THE WARRANTIES AND COVENANTS OF GRANTOR CONTAINED HEREIN OR IN THE PURCHASE AGREEMENT.**

**AS A MATERIAL PART OF THE CONSIDERATION FOR THIS DEED, GRANTEE ACKNOWLEDGES AND AGREES THAT: (i) EXCEPT FOR THE SPECIAL WARRANTY SET OUT HEREIN OR THE EXPRESS REPRESENTATIONS SET OUT IN THE PURCHASE AGREEMENT, GRANTOR HAS NOT MADE, DOES NOT MAKE, AND SPECIFICALLY DISCLAIMS ANY AND ALL REPRESENTATIONS, WARRANTIES, PROMISES, COVENANTS, AGREEMENTS, OR GUARANTIES OF ANY KIND OR CHARACTER WHATSOEVER, WHETHER EXPRESS OR IMPLIED, ORAL OR WRITTEN, PAST, PRESENT, OR FUTURE, OF, AS TO, CONCERNING OR WITH RESPECT TO THE PROPERTY, INCLUDING BUT NOT LIMITED TO: (A) THE NATURE, QUALITY, OR CONDITION OF THE PROPERTY, (B) THE INCOME TO BE DERIVED FROM THE PROPERTY; (C) THE SUITABILITY OF THE PROPERTY FOR ANY AND ALL ACTIVITIES AND USES WHICH GRANTEE MAY CONDUCT THEREON IN THE FUTURE; (D) THE COMPLIANCE OF OR BY THE PROPERTY OR ITS OPERATION WITH ANY LAWS, RULES, ORDINANCES OR REGULATIONS OF ANY APPLICABLE GOVERNMENTAL AUTHORITY OR BODY, INCLUDING, BUT NOT LIMITED TO, ANY STATE OR FEDERAL ENVIRONMENTAL LAW, RULE OR REGULATION; (E)THE HABITABILITY, MERCHANTABILITY, OR FITNESS OF THE PROPERTY FOR A PARTICULAR PURPOSE; OR (F) ANY OTHER MATTER**

B-3

WITH RESPECT TO THE PROPERTY (COLLECTIVELY, THE "DISCLAIMED MATTERS"). GRANTEE HEREBY WAIVES ANY SUCH OTHER REPRESENTATION, WARRANTY, PROMISES, COVENANTS, AGREEMENTS, OR GUARANTIES.

AS A MATERIAL PART OF THE CONSIDERATION FOR THIS DEED, GRANTEE ACKNOWLEDGES AND AGREES THAT EXCEPT FOR THE SPECIAL WARRANTY CONTAINED HEREIN OR AS EXPRESSLY SET OUT IN THE PURCHASE AGREEMENT, GRANTOR IS CONVEYING THE PROPERTY TO GRANTEE "AS IS", "WHERE IS", AND WITH ALL FAULTS AND SPECIFICALLY AND EXPRESSLY WITHOUT ANY WARRANTIES, REPRESENTATIONS, OR GUARANTEES, EITHER EXPRESS OR IMPLIED, OF ANY KIND, NATURE, OR TYPE WHATSOEVER FROM OR ON BEHALF OF THE GRANTOR.

WITHOUT IN ANY WAY LIMITING ANY PROVISION OF THE FOREGOING, GRANTEE SPECIFICALLY ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES, RELEASES AND DISCHARGES ANY CLAIM IT HAS, MIGHT HAVE HAD OR MAY HAVE AGAINST GRANTOR AND GRANTOR'S PARTNERS, OFFICERS AND AGENTS WITH RESPECT TO (i) THE DISCLAIMED MATTERS, (ii) THE CONDITION OF THE PROPERTY, EITHER PATENT OR LATENT, (iii) THE PAST, PRESENT OR FUTURE CONDITION OR COMPLIANCE OF THE PROPERTY WITH REGARD TO ANY ENVIRONMENTAL PROTECTION, POLLUTION CONTROL OR LAND USE LAWS, RULES, REGULATIONS, ORDERS OR REQUIREMENTS, INCLUDING, WITHOUT LIMITATION, THE COMPREHENSIVE ENVIRONMENTAL RESPONSE, COMPENSATION AND LIABILITY ACT OF 1980 (HEREIN CALLED "CERCLA"), AND (iv) ANY OTHER STATE OF FACTS THAT EXISTS WITH RESPECT TO THE PROPERTY; PROVIDED, HOWEVER, THE FOREGOING WAIVER, RELEASE AND DISCHARGE DOES NOT WAIVE, RELEASE, OR DISCHARGE ANY CLAIM GRANTEE MAY HAVE AGAINST GRANTOR UNDER THE SPECIAL WARRANTY SET FORTH IN THIS DEED OR FOR BREACH OF THE EXPRESS REPRESENTATIONS (DURING THE PERIOD FOR WHICH SUCH EXPRESS REPRESENTATIONS SURVIVE) SET FORTH IN THE PURCHASE AGREEMENT.

Current ad valorem taxes, assessments and fees relating to or pertaining to the Property, having been prorated to the date hereof, the payment thereof is hereby assumed by Grantee.

The mailing address of Grantee is set forth below:

QB Loop Property LP
1535 West Loop South, Suite 100
Houston, Texas 77028
Attn: Mr. Anwar-i-Qadeer

[Signatures Appear on the Following Page]

B-4

IN WITNESS WHEREOF, Grantor has caused this Deed to be executed on this _____ day of _____, 2024.

GRANTOR:

GALLERIA 2425 OWNER, LLC,
a Delaware limited liability company

By: _____
                Christopher R. Murray
                Chapter 11 Trustee

STATE OF TEXAS        §
                           §
COUNTY OF _____  §

The foregoing was acknowledged before me on the _____ day of _____, 2024, by CHRISTOPHER R. MURRAY, Chapter 11 Trustee of Galleria 2425 Owner, LLC, a Delaware limited liability company, on behalf of such company in such capacity.

_____
Notary Public, State of Texas

B-5

EXHIBIT "1"

LEGAL DESCRIPTION


[To Be Inserted]

EXHIBIT "2"

PERMITTED EXCEPTIONS

[To Be Inserted]

## EXHIBIT C

### SELLER'S FIRPTA AFFIDAVIT - CERTIFICATION OF NON-FOREIGN STATUS

Section 1445 of the Internal Revenue Code provides that a transferee of a U.S. real property interest must withhold tax if the transferor is a foreign person. To inform the transferee that withholding of tax is not required upon the disposition of a U.S. real property interest by Christopher R. Murray in his capacity as the duly appointed Chapter 11 Trustee of Galleria 2425 Owner, LLC, a Delaware limited liability company ("**Transferor**"), the undersigned hereby certifies the following on behalf of Transferor:

1.      Transferor is not a foreign corporation, foreign partnership, foreign trust and foreign estate (as those terms are defined in the Internal Revenue Code and Income Tax Regulations);

2.      Transferor's U.S. employer identification number (EIN) is [●]; and

3.      Transferor's office address is:

> [●]
> [●]
> [●]

Transferor understands that this certification may be disclosed to the Internal Revenue Service by transferee and that any false statement contained herein could be punished by fine, imprisonment or both.

Under penalties of perjury I declare that I have examined this certification and to the best of my knowledge and belief it is true, correct and complete, and I further declare that I have authority to sign the document on behalf of the Transferor.

<div style="margin-left:auto;width:50%">

Christopher R. Murray, in his capacity as the
Chapter 11 Trustee of Galleria 2425 Owner, LLC

By:      _____
Name: Christopher R. Murray
Title:   Chapter 11 Trustee

</div>

C-1

## EXHIBIT D

BILL OF SALE

For good and valuable consideration, the receipt of which is hereby acknowledged, Christopher R. Murray in his capacity as the duly appointed Chapter 11 Trustee of Galleria 2425 Owner, LLC, a Delaware limited liability company ("**Seller**"), does hereby sell, transfer, and convey to QB Loop Property LP, a Texas limited partnership ("**Buyer**"): all Personal Property as such term is defined in that certain Asset Purchase Agreement, dated _____, 2024, between the Seller and Buyer, including all personal property of Seller, if any, located on and used in connection with the operation of the improvements on the real property located at 2425 West Loop South, Houston, Texas 77027, as more particularly described on Exhibit A attached hereto.

Buyer accepts such personal property in its "AS-IS," "WHERE-IS" condition and "WITH ALL FAULTS". Seller specifically disclaims all express or implied warranties regarding the existence or condition of, or title to, such personal property, including without limitation the implied warranties of merchantability and suitability for a particular purpose.

This Bill of Sale may be signed in counterparts, each of which shall be deemed to be an original but all of which shall constitute one and the same document. A signed copy or facsimile of this Bill of Sale shall have the same force and effect as that of an original.

Date: _____, 2024

| **SELLER** | **BUYER** |
|---|---|
| Christopher R. Murray as the Chapter 11 Trustee of Galleria 2425 Owner, LLC | QB loop Property LP<br>By Its General Partner:<br>QB Loop Property GP LLC |
| By: _____ | By: _____ |
| Name: Christopher Murray | Name: Anwar-i-Qadeer |
| Title:  Chapter 11 Trustee | Title:   Manager |

D-1

EXHIBIT A TO BILL OF SALE

<u>Personal Property</u>

[To Be Inserted]

## EXHIBIT E

### ASSIGNMENT AND ASSUMPTION

FOR VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, Christopher R. Murray in his capacity as the duly appointed Chapter 11 Trustee of Galleria 2425 Owner, LLC, a Delaware limited liability company (herein referred to as "**Assignor**"), hereby assigns, transfers and conveys to QB Loop Property LP, a Texas limited liability company (herein referred to as "**Assignee**"), all leases (the "**Leases**") described on Schedule 1 attached and all contracts (the "**Contracts**") described on Schedule 2, and the permits (the "Permits") described on Schedule 3 attached affecting that certain real property in the City of Houston, Harris County, State of Texas (the "**Property**"), commonly known as 2425 West Loop South, Houston, Texas 77027 and more particularly described in <u>Exhibit A</u> attached hereto.

Assignee hereby assumes and agrees to keep, perform and fulfill all of Assignor's obligations under the Leases and under the Contracts which are required to be kept, performed and fulfilled by Assignor thereunder, effective from and after the date on which a deed of the Property from Assignor to Assignee is delivered (the "**Closing Date**").

The covenants and warranties contained herein shall survive the closing of the purchase and sale of the Property to which this Assignment relates, and such covenants and warranties shall not be deemed merged in the deed delivered by Assignor to Assignee.

This Assignment And Assumption shall be binding on and inure to the benefit of the parties hereto, their heirs, executors, administrators, successors in interest and assigns. This Assignment And Assumption may be executed in counterparts, each of which shall be deemed to be an original but all of which shall constitute one and the same document. A copy of facsimile of this Assignment And Assumption shall have the same force and effect as that of an original.

IN WITNESS WHEREOF, the undersigned have executed the within instrument as of _____, 2024.

ASSIGNOR:

Christopher R. Murray as the Chapter 11 Trustee of Galleria 2425 Owner, LLC,

By: _____
Name: Christopher R. Murray
Title:  Chapter 11 Trustee

E-1

ASSIGNEE:

QB Loop Property LP
By Its General Partner:
QB Loop Property GP LLC


By: _____
Name: Anwar-i-Qadeer
Its:   Manager

EXHIBIT A TO ASSIGNMENT AND ASSUMPTION

<u>LEGAL DESCRIPTION OF PROPERTY</u>

[To Be Inserted]

## EXHIBIT E – SCHEDULE 1

### LEASES

| No. | Counterparty | Lease Description |
|-----|-------------|-------------------|
| 1 | Bankable Equity, LLC | Commercial Lease |
| 2 | Boho Lounge | Commercial Lease |
| 3 | Eyebrows 4UTX, LLC | Commercial Lease |
| 4 | G3 Global Services, LLC fka G3 Visas & Passports | Commercial Lease |
| 5 | Galloworks LP | Commercial Lease (4th Floor) |
| 6 | Galloworks LP | Commercial Lease (4th Floor) |
| 7 | Immigration Processing Services | Commercial Lease |
| 8 | Kudrath Enterprises, PLLC | Commercial Lease |
| 9 | Nationwide Investigations & Security, Inc. | Commercial Lease |
| 10 | Nichamoff Operating Company, LLC | Commercial Lease |
| 11 | Shah Sloan LLC | Commercial Lease |
| 12 | SIBS International Inc. | Commercial Lease |
| 13 | SprintCom, Inc. | Telecom Lease |
| 14 | St Christopher Holdings, Ltd. | Commercial Lease |
| 15 | St Christopher Holdings GP LLC | Commercial Lease |
| 16 | Texas Ultherapy, LLC | Commercial Lease |
| 17 | Uptown Cosmetic and Implant Dentistry & Dr. Robert Velasco, DDS | Commercial Lease |
| 18 | VFS Global Services | Commercial Lease |

**EXHIBIT E – SCHEDULE 2**

<u>CONTRACTS</u>

| No. | Counterparty | Contract Description |
|-----|-------------|---------------------|
| 1 | CNA Insurance Company | Business Property Insurance |

**EXHIBIT E – SCHEDULE 3**

<u>PERMITS</u>

| No. | Counterparty | Permit Description |
|-----|--------------|--------------------|
|     |              |                    |
|     |              |                    |
|     |              |                    |
|     |              |                    |
|     |              |                    |
|     |              |                    |
|     |              |                    |
|     |              |                    |
|     |              |                    |
|     |              |                    |
|     |              |                    |
|     |              |                    |
|     |              |                    |
|     |              |                    |
|     |              |                    |
|     |              |                    |
|     |              |                    |
|     |              |                    |
|     |              |                    |
|     |              |                    |
|     |              |                    |

# EXHIBIT 2

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| GALLERIA 2425 OWNER, LLC, | ) |  |
|  | ) | Case No. 23-34815 |
| Debtor. | ) |  |
|  | ) |  |

## NOTICE OF PROPOSED STALKING HORSE AGREEMENT

[Re: ECF No. 188]

Christopher R. Murray, the chapter 11 trustee in the above-captioned case (the "Trustee"), hereby provides notice of the following:

1.      On April 5, 2024, the Trustee filed the Chapter 11 Trustee's Motion for Entry of an Order: (I) Approving Procedures for the Sale of Property Free and Clear of All Liens, Claims and Encumbrances; (II) Scheduling an Auction; (III) Authorizing Entry Into the Stalking Horse Purchase Agreement;(IV) Approving Assumption And Assignment Procedures;(V) Approving Form of Notice; and (VI) Granting Related Relief [ECF No. 188] (the "Bid Procedures Motion").

2.      Through the Bid Procedures Motion, the Trustee seeks the entry of an order establishing procedures (the "Bid Procedures") for the marketing and sale of the real property located at 2425 West Loop South, Houston, TX 77027 (the "Property").

3.      The asset purchase agreement attached hereto as **Exhibit A** is the "Stalking Horse Agreement" referenced in the Bid Procedures Motion.

4.      For the avoidance of doubt, any sale of the Property by the Trustee, under the Bidding Procedures or otherwise, will be pursuant to the further order of the U.S. Bankruptcy Court for the Southern District of Texas (the "Court").  The Court has not approved either the contemplated Bid Procedures or a sale of the Property pursuant to the Stalking Horse Agreement.

5.     A copy of the Bid Procedures Motion can be obtained from the Court's CM/ECF system at https://ecf.txsb.uscourts.gov/ or by contacting the undersigned counsel for the Trustee.

Dated: April 10, 2024                 Respectfully submitted,

SHANNON & LEE LLP

/s/R. J. Shannon
Kyung S. Lee (TBA No. 12128400)
R. J. Shannon (TBA No. 24108062)
2100 Travis Street, STE 1525
Houston, TX 77002
Telephone: (713) 714-5770
Email: klee@shannonleellp.com
        rshannon@shannonleellp.com

*Counsel to the Chapter 11 Trustee*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served by (a) the Court's CM/ECF system on all parties registered to receive such service on the date of filing and (b) U.S.P.S. first class mail on the parties indicated on the attached service list within 24 hours of the filing.

/s/ R. J. Shannon

2

Label Matrix for local noticing
0541-4
Case 23-34815
Southern District of Texas
Houston
Wed Apr 10 20:17:35 CDT 2024

2425 WL, LLC
2425 West Loop South 11th floor
Houston, TX 77027-4304

CC2 TX, LLC
c/o Howard Marc Spector
Spector & Cox, PLLC
12770 Coit Road Suite 850
Dallas, TX 75251-1364

City of Houston
Linebarger Goggan Blair & Sampson LLP
c/o Tara L. Grundemeier
PO Box 3064
Houston, TX 77253-3064

Galleria 2425 Owner, LLC
1001 West Loop South 700
Houston, TX 77027-9084

(p)HARRIS COUNTY ATTORNEY'S OFFICE
P O BOX 2928
HOUSTON TX 77252-2928

Houston Community College System
Linebarger Goggan Blair & Sampson LLP
c/o Tara L. Grundemeier
PO Box 3064
Houston, TX 77253-3064

Houston ISD
Linebarger Goggan Blair & Sampson LLP
c/o Tara L. Grundemeier
PO Box 3064
Houston, TX 77253-3064

National Bank of Kuwait, S.A.K.P., New York

4
United States Bankruptcy Court
PO Box 61010
Houston, TX 77208-1010

2425 WL, LLC
13498 Pond Springs Rd.
Austin, TX 78729-4422

2425 West Loop, LLC
2000 Hughes Landing Blvd., Suite 815
The Woodlands, Texas 77380-4142

ADT
PO Box 382109
Pittsburgh, PA 15251-8109

Ali Choudhry
1001 West Loop South 700
Houston, TX 77027-9084

Arin-Air, Inc.
5710 Brittmoore Rd. #13
Houston, TX 77041-5627

Ash Automated Control Systems, LLC
PO Box 1113
Fulshear, TX 77441-2013

CC2 TX, LLC
14800 Landmark Blvd., Suite 400
Dallas, TX 75254-7598

CFI Mechanical, Inc
6109 Brittmoore Rd
Houston, TX 77041-5610

CNA Insurance Co
PO Box 74007619
Chicago, IL 60674-7619

Caz Creek Lending
118 Vintage Park Blvd No. W
Houston, TX 77070-4095

Cirro Electric
PO Box 60004
Dallas, TX 75266

City of Houston
PO Box 1560
Houston, TX 77251-1560

City of Houston
c/o Tara L. Grundemeier
Linebarger Goggan Blair & Sampson LLP
PO Box 3064
Houston, TX 77253-3064

Comcast
PO Box 60533
City of Industry, CA 91716-0533

Datawatch Systems
4520 East West Highway 200
Bethesda, MD 20814-3382

Environmental Coalition Inc
PO Box 1568
Stafford, TX 77497-1568

Ferguson Facilities Supplies
PO Box 200184
San Antonio, TX 78220-0184

Firetron
PO Box 1604
Stafford, TX 77497-1604

(p)FIRST INSURANCE FUNDING
450 SKOKIE BLVD SUITE 1000
NORTHBROOK IL 60062-7917

Gulfstream Legal Group
1300 Texas St
Houston, TX 77002-3509

H.N.B. Construction, LLC
c/o Malcolm D. Dishongh
PO Box 2347
Humble, TX 77347-2347

HNB Construction, LLC
521 Woodhaven
Ingleside, TX 78362-4678

Harris County Tax Assessor
PO Box 4622
Houston, TX 77210-4622


Hayward PLLC
c/o Melissa S. Hayward
10501 N. Central Expy., Ste. 106
Dallas, TX 75231-2203

Houston Community College System
c/o Tara L. Grundemeier
Linebarger Goggan Blair & Sampson LLP
PO Box 3064
Houston, TX 77253-3064

Houston ISD
c/o Tara L. Grundemeier
Linebarger Goggan Blair & Sampson LLP
PO Box 3064
Houston, TX 77253-3064


Jetall Companies, Inc
1001 West Loop South Ste 700
Houston, TX 77027-9033

Kings 111 Emergency Communications
751 Canyon Drive, Suite 100
Coppell, TX 75019-3857

Lexitas
PO Box Box 734298 Dept 2012
Dallas, TX 75373-4298


Lloyd E. Kelley
2726 Bissonnet Suite 240
Houston, TX 77005-1352

Logix Fiber Networks
PO Box 734120
Dallas, TX 75373-4120

MacGeorge Law Firm
2921 E 17th St Blgd D Suite 6
Austin, TX 78702-1572


Mueller Water Treatment
1500 Sherwood Forest Dr.
Houston, TX 77043-3899

Naissance Galleria, LLC
c/o Law Office of Nima Taherian
701 N. Post Oak Rd. Ste 216
Houston, TX 77024-3868

National Bank of Kuwait
299 Park Ave. 17th Floor
New York, NY 10171-0023


Nationwide Security
2425 W Loop S 300
Houston, TX 77027-4205

Nichamoff Law Firm
2444 Times Blvd 270
Houston, TX 77005-3253

Rodney L. Drinnon
2000 West Loop S, Ste. 1850,
Houston, Texas 77027-3744


TKE
3100 Interstate North Cir SE  500
Atlanta, GA 30339-2296

U.S. Trustee's Office
515 Rusk, Suite 3516
Houston, Texas 77002-2604

US Retailers LLC d/b/a Cirro Energy
Attention: Bankruptcy Department
PO Box 3606
Houston, TX 77253-3606


US Trustee
Office of the US Trustee
515 Rusk Ave
Ste 3516
Houston, TX 77002-2604

Waste Management
PO Box 660345
Dallas, TX 75266-0345

Zindler Cleaning Service Co
2450 Fondren 113
Houston, TX 77063-2314


Ali Choudhri
24256 West Loop South
11th Floor
Houston, TX 77027

Christopher R Murray
Jones Murray LLP
602 Sawyer St
Ste 400
Houston, TX 77007-7510

James Q. Pope
The Pope Law Firm
6161 Savoy Drive
Ste 1125
Houston, TX 77036-3343


Reese W Baker
Baker & Associates
950 Echo Lane
Suite 300
Houston, TX 77024-2824

Rodney Drinnon
McCathern Houston
2000 W Loop S
Ste. 1850
Houston, TX 77027-3744

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Harris County, ATTN: Property Tax Division
Harris County Attorney's Office
P.O. Box 2928
Houston, TX 77252-2928 United States

First Insurance Funding
450 Skokie Blvd
Northbrook, IL 60062

(d)Harris County, et al
PO Box 2928
Houston, TX 77252

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)2425 West Loop, LLC

(u)Sonder USA Inc.

(d)Arin-Air, LLC
5710 Brittmoore Rd. #13
Houston, TX 77041-5627

(du)Sonder USA Inc.

(u)Jack Rose

End of Label Matrix
Mailable recipients    58
Bypassed recipients     5
Total                  63

# EXHIBIT A

## PROPOSED STALKING HORSE AGREEMENT

**ASSET PURCHASE AGREEMENT**

**DATED AS OF APRIL 10, 2024**

**BETWEEN**

**Christopher R. Murray, in his capacity as the duly appointed Chapter 11 Trustee of Galleria 2425 Owner, LLC, as Seller**

**AND**

**National Bank of Kuwait, S.A.K.P., New York Branch, as Buyer**

## ASSET PURCHASE AGREEMENT

**THIS ASSET PURCHASE AGREEMENT** (this "**Agreement**") is made and entered into as of April 10, 2024 (the "**Effective Date**") by and between Christopher R. Murray in his capacity as the duly appointed Chapter 11 Trustee of Galleria 2425 Owner, LLC, a Delaware limited liability company (the "**Seller**" or the "**Chapter 11 Trustee**") and National Bank of Kuwait, S.A.K.P., New York Branch, or its designees or assignees ("**NBK**" or "**Buyer**" together with Seller, the "**Parties**" and each a "**Party**").

A. **WHEREAS**, on December 5, 20023 (the "**Petition Date**"), the Galleria 2425 Owner, LLC (the "**Debtor**") filed a voluntary petition for under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§101, *et seq.* ("**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "**Bankruptcy Court**"), initiating Case No. 23-34815 (JPN) (the "**Chapter 11 Case**").

B. **WHEREAS**, the Real Property and Personal Property are property of the bankruptcy estate pursuant to 11 U.S.C. § 541 (the "**Bankruptcy Estate**").

C. **WHEREAS**, on February 9, 2024, the Bankruptcy Court entered an order appointing Christopher R. Murray as trustee of the Chapter 11 Case.

D. **WHEREAS**, the Chapter 11 Trustee is the sole representative of the Bankruptcy Estate.

E. **WHEREAS**, after the Petition Date, the Chapter 11 Trustee sought authorization from the Bankruptcy Court for approval of his entry into this Agreement and certain other matters pertaining to the sale of the Real Property.

F. **WHEREAS**, notwithstanding any provisions herein to the contrary, Seller and Buyer both acknowledge and agree that this Agreement is subject to the Bankruptcy Court's final authorization and approval, and upon such terms as the parties have agreed and as authorized by the Bankruptcy Court, Seller desires to sell the Real Property, and Buyer desires to purchase the Real Property and assume certain liabilities of the Bankruptcy Estate, in a sale pursuant to sections 105(a), 363, 1123 and/or 1129 of the Bankruptcy Code.

**NOW, THEREFORE**, in consideration of the foregoing premises and the representations, warranties, covenants and agreements contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

## ARTICLE I
## DEFINITIONS

1. ***Terms and Incorporation of Definitions***. All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Sale and Bid Procedures. Except as otherwise specifically provided herein, the following terms shall have the meanings specified below

2. ***Affiliate(s)*** as to any Person means any Persons (x) directly or indirectly controlling, controlled by or under common control with any of the foregoing or (y) as to which any of the foregoing act as trustee or beneficiary. For purposes of this definition, "control" of a person shall mean the power, direct or indirect, to direct or cause the management and policies of such person, whether by ownership of voting securities, by contract or otherwise.

3. ***Assigned Contracts*** has the meaning set forth in Article II.

4. ***Auction*** has the meaning set forth in the Sale and Bid Procedures.

5. ***Bankruptcy Contingencies*** means the occurrence of each of the following: (a) the Sale and Bid Procedures Order shall have become a Final Order, (b) the Sale Order shall become a Final Order, and (c) the Confirmation Order shall become a Final Order.

6. ***Business Day*** means any day, other than a Saturday, Sunday, or a legal holiday, as defined in Rule 9006(a) of the Federal Rules of Bankruptcy Procedure.

7. ***Broker*** means Jones Lang LaSalle or other real estate broker employed by the Chapter 11 Trustee in the Chapter 11 Case.

8. ***Broker Compensation*** means the compensation earned by the Broker by a sale pursuant to this Agreement and any attendant expenses.

9. ***Cash Consideration*** means the cash paid by the Buyer at closing.

10. ***Closing*** has the meaning set forth in Article V.

11. ***Closing Date*** has the meaning set forth in Article V.

12. ***Confirmation Order*** means an order confirming a plan of reorganization in the Chapter 11 Case that implements or incorporates by reference the transaction provided for by this Agreement.

13. ***Cure Costs*** means, to the extent applicable, all Assumed Liabilities that must be paid and obligations that must be satisfied under Sections 365 of the Bankruptcy Code, in connection with the assumption by Seller and assignment to Buyer of any Assigned Contract. For the avoidance of doubt, notwithstanding anything provided herein to the contrary, no provision herein shall be construed as an admission or wavier as to the amount of any potential cure amount, or as a representation that any assumption, rejection, or assignment within the meaning of Section 365 of the Bankruptcy Code has occurred; such assumptions, rejections, or assignments shall be addressed by order of the Bankruptcy Court accordingly, to the extent applicable.

14. ***Deed*** means the Special Warranty Deed attached hereto as **Exhibit B**.

15. ***Environmental Audit*** means an environmental audit, review or testing of the Real Property performed any third party or consultant engaged by Buyer to conduct such study.

16.     ***Environmental Law*** means any law, statute, ordinance or regulation pertaining to health, industrial hygiene or the environment, including, without limitation, CERCLA (Comprehensive Environmental Response, Compensation and Liability Act of 1980) and RCRA (Resources Conservation and Recovery Act of 1976).

17.     ***Exhibits*** means the following, each of which is attached hereto and incorporated herein by this reference:

> Exhibit A - Legal Description
> Exhibit B - Form of Deed
> Exhibit C - FIRPTA Affidavit
> Exhibit D - Bill of Sale
> Exhibit E - Assignment and Assumption
> Exhibit F - Schedule of Assigned Contracts

18.     ***Final Order*** means an order or judgment of the Court as entered on the docket in the Chapter 11 Case, or other court of competent jurisdiction, the operation or effect of which has not been stayed, reversed or amended, and as to which order or judgment (or any reversal, modification or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be filed with respect to such order, shall not cause an order not to be a Final Order.

19.     ***FIRPTA Affidavit*** means the Transferor's Certificate of Non-Foreign Status set forth on **Exhibit C** attached hereto.

20.     ***Governmental Authority*** means any federal, state, or local government, governmental authority, or regulatory or administrative authority or any court, tribunal, or judicial body having jurisdiction, including the Bankruptcy Court.

21.     ***Hazardous Substance*** means any substance, material or waste which is or becomes designated, classified or regulated as being "toxic" or "hazardous" or a "pollutant" or which is or becomes similarly designated, classified or regulated under any Environmental Law.

22.     ***Improvements*** means all improvements, buildings, fixtures, and structures, if any, owned by Seller and situated on the Real Property, including, without limitation, all apparatus, equipment and appliances used in connection with the operation or occupancy of the Real Property, such as heating and air conditioning systems and facilities used to provide any utility, refrigeration, ventilation, garbage disposal, or other services on the Real Property.

23.     ***Knowledge of Seller*** means the actual knowledge of the Chapter 11 Trustee or his counsel in the Chapter 11 Case.

24.     ***Law(s)*** means all applicable federal, state and local statutes, ordinances and codes, including the Bankruptcy Code.

25.    ***Leases*** means all leases, lease amendments, lease guaranties, work letter agreements, subleases, assignments, licenses, concessions and similar agreements granting a real property interest to any Person for the use or occupancy of any portion of the Real Property or the Improvements.

26.    ***Liability*** means any liability, debt, loss, damage, fine, judgment, penalty, or obligation of any kind or nature, whether known or unknown, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, or due or to become due.

27.    ***Permits*** means all building permits, certificates of occupancy, and other certificates, permits, licenses and approvals pertaining to the Real Property.

28.    ***Person*** means any natural person, corporation, general or limited partnership, limited liability company, association, joint venture, trust, estate, Governmental Authority or other legal entity, in each case whether in its own or a representative capacity.

29.    ***Personal Property*** means the equipment, furniture, and other tangible personal property, if any, that are actually owned by Seller, located on the Real Property and used in the operation of the Real Property.

30.    ***Plan*** means the Chapter 11 Plan of Liquidation of the Debtor filed by the National Bank of Kuwait, S.A.K.P., New York Branch, dated as of April 10, 2024, as such Plan may be amended, supplemented or modified from time to time in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules, together with all addenda, exhibits, schedules, supplements or other attachments thereto.

31.    ***Property*** means, collectively, the (i) Real Property, (ii) Improvements, (iii) Personal Property, (iv) Leases, (v) Service Contracts, and (vi) Permits.

32.    ***Purchase Price*** has the meaning set forth in Article III.

33.    ***Real Property*** means that certain real property located in Harris County, State of Texas and more particularly described in **Exhibit A** attached hereto.

34.    ***Sale*** has the meaning set forth in the Sale and Bid Procedures.

35.    ***Sale and Bid Procedures*** means the Sale and Bid Procedures approved by the Bankruptcy Court and attached as Exhibit 1 to the Sale and Bid Procedures Order.

36.    ***Sale Procedures Motion*** means the Chapter 11 Trustee's motion for entry of an order from the Bankruptcy Court seeking (i) approval of the Sale and Bid Procedures for the sale of the Real Property; (ii) scheduling the Auction; (iii) approving assumption and assignment procedures; (iv) approving the form of notice; and (v) granting related relief.

37.    ***Sale and Bid Procedures Order*** means an order of the Bankruptcy Court granting the Sale and Bid Procedures Motion and approving the Sale and Bid Procedures.

38. ***Sale Order*** means an order the Bankruptcy Court authorizing the sale of the Property to the Buyer free and clear of all liens, claims and encumbrances that are not Assumed Liabilities under sections 363(b) and (f) of the Bankruptcy Code and finding that the Buyer is a good faith purchaser of the Property entitled to the protections of section 363(m) of the Bankruptcy Code. The Sale Order may be a standalone order or incorporated into a Confirmation Order, in which case the Confirmation Order shall be the Sale Order for purposes of this Agreement.

39. ***Service Contracts*** means all service contracts and other contracts, agreements or instruments relating to the operation of the Property including equipment leases and those set forth on **Exhibit F** attached hereto.

40. ***Tax Lien Claims*** means claims secured by ad valorem tax liens under Chapter 32 of the Texas Tax Code, other than any such claims held by the Buyer.

41. ***Title Company*** means the entity selected by the Buyer and Seller to perform the role of title company under this Agreement.

## ARTICLE II
## PURCHASE AND SALE

1. **Purchased Assets.** Upon the terms and subject to the conditions of this Agreement, Seller shall sell, convey, assign, transfer and deliver to Buyer, and Buyer shall purchase from Seller, free and clear of all claims, liens, encumbrances to the extent allowed by Sections 105(a), 363, 1123 and/or 1129 of the Bankruptcy Code, all of Seller's right, title and interest in and to:

    (a)    the Real Property;

    (b)    all Personal Property;

    (c)    all Improvements;

    (d)    all Permits that may be assigned by Seller to Buyer;

    (e)    to the extent assignable and transferrable and to the extent of any interest of Seller therein, all site plans, architectural renderings, plans and specifications, engineering plans, as-built drawings, floor plans, and other similar plans or diagrams, if any, which relate to the Real Property; and

    (f)    all rights and interests of Seller in and to the Service Contracts and Leases to which Seller is a party in support or furtherance of the operation of the Real Property indicated by the Buyer (collectively, the "**Assigned Contracts**," and each an "**Assigned Contract**"). The items set for in (a)-(f) above, collectively, the "**Purchased Assets.**"

2. **Retained Assets.** The Purchased Assets shall not include any Service Contracts and Leases that are not Assigned Contracts (collectively, the "**Excluded Assets**").

3. **Allocation of Liabilities**. Upon the terms and subject to the conditions of this Agreement, Buyer shall assume and agree to pay, perform and discharge only the Liabilities under

the Assigned Contracts, including the Cure Costs (collectively, the "**Assumed Liabilities**"). Other than the Assumed Liabilities, Buyer will not assume, expressly disclaims, and will not otherwise be responsible for any other Liabilities of Seller.  For the avoidance of doubt, (a) Buyer shall be responsible for any Liabilities newly arising out of the ownership, operation and use of the Purchased Assets by Buyer after the Closing, and (b) Seller shall be responsible for any Liabilities arising out of the ownership, operation and use of the Real Property on or prior to the Closing that are not an Assumed Liability.

4.     **Designation of Assigned Contracts**. The Buyer will provide the Trustee with a schedule of all Assigned Contracts on or before May 31, 2024.

<div align="center">

**ARTICLE III**
**PURCHASE PRICE**

</div>

1.     **Amount**. The total consideration to be paid by Buyer to Seller for the Property (such amount the "<u>Purchase Price</u>") is:

(a)     a credit bid in an aggregate amount of $18,600,000.00 (the "**Credit Bid Amount**"), subject to the Tax Lien Claims to be paid pursuant to funding provided under the Plan;

(b)     the Assumed Liabilities assumed by the Buyer at Closing pursuant to Article II(3) of this Agreement; and

(c)     the Broker Compensation in an amount agreed to by the Broker in an amount not to exceed (i) 1% of the Cash Consideration and Credit Bid Amount plus (ii) expenses of $25,000.00.

2.     **Allocation**. The Purchase Price shall be allocated among the various Purchased Assets in accordance with Section 1060 of the IRC and the applicable Treasury Regulations promulgated thereunder.

<div align="center">

**ARTICLE IV**
**REPRESENTATIONS AND WARRANTIES**

</div>

1.     **Seller.**  As of the Effective Date and the Closing, Seller represents and warrants to Buyer that Seller:

(a)     has received no written notice of any pending or threatened condemnation or eminent domain proceedings or zoning change proceedings that would affect any party of the Real Property;

(b)     other than as is set forth in this Agreement, Seller has not entered into any contracts for the sale of, and to the Knowledge of Seller, no person or entity has any option, right of first refusal, right of first offer, or any other rights to purchase, all or any portion of the Real Property;

(c)     to the Knowledge of Seller, there is no land use or zoning action or proceeding, or general or special assessment action or proceeding, or condemnation or eminent domain action or proceeding pending or threatened with respect to the Real Property;

(d)     since the date of Seller's appointment as the Chapter 11 Trustee for the Debtor, Seller has received no written notice that Hazardous Substances are now or have been used or stored on or within any portion of the Real Property except those substances which are or have been used or stored on the Real Property in the normal course of use and operation of the Real Property or the conduct of business by the tenants thereof and in compliance with all applicable Environmental Laws;

(e)     since the date of Seller's appointment as the Chapter 11 Trustee for the Debtor, Seller has received no written notice of federal, state or local enforcement, clean-up, removal, remedial or other governmental or regulatory actions under any Environmental Law instituted or completed affecting the Real Property;

(f)     since the date of Seller's appointment as the Chapter 11 Trustee for the Debtor, Seller has received no written notice of a claim made by any third party against Seller relating to any Hazardous Substances on or within the Real Property Seller shall not make any material alterations to the Property without Buyer's consent, which shall not be unreasonably withheld or delayed.

3.     **Joint Representations and Warranties**. In addition to any express agreements of the Parties contained herein and, subject to the occurrence of the Bankruptcy Contingencies, the Parties jointly represent and warrant to each other that:

(a)     each Party has the legal power, right and authority to enter into this Agreement and the instruments referenced herein, and to consummate this transaction;

(b)     all requisite action has been taken by each Party in connection with the entering into of this Agreement, the instruments referenced herein, and the consummation of this transaction;

(c)     no further consent of any partner, shareholder, creditor, investor, judicial or administrative body, Governmental Authority or other party is required in connection with entering into this Agreement;

(d)     the individuals executing this Agreement and the instruments referenced herein on behalf of each Party have the legal power, right, and actual authority to bind each Party to the terms and conditions of those documents;

(e)     this Agreement and such other documents now or hereafter to be executed and delivered by either Party under this Agreement, when executed and delivered, and subject to the satisfaction of the Bankruptcy Contingencies, will each constitute the legal, valid and binding obligations of the relevant Party enforceable against such Party in accordance with its terms; and

(f)     except for the Broker, neither Party has dealt with any Person who has acted, directly or indirectly, as a broker, finder, financial adviser or in such other capacity for or on behalf

of either Party in connection with the transaction contemplated by this Agreement in any manner which would entitle such Person to any fee or commission in connection with this Agreement or the transaction contemplated in this Agreement.

# ARTICLE V
# CLOSING

1.  **Closing**. The closing (the "**Closing**") of the Sale shall occur remotely via the electronic exchange of documents and signature pages on or within three (3) Business Days after the conditions set forth in Article VI satisfied or, if legally permissible, are waived (other than those conditions that by their nature are to be satisfied (or validly waived) at the Closing, but subject to such satisfaction or waiver) (or such other date as the Parties may agree in writing), or at such other time or place as Buyer and Seller may agree. The date on which the Closing occurs is referred to as the ("**Closing Date**").

2.  **Title Insurance**. At the Closing, the Title Company shall agree to issue to Buyer an ALTA Owners Title Insurance Policy (2006) with coverage in an amount equal to the Purchase Price showing title to the Real Property and Improvements vested in Buyer subject only to the Permitted Exceptions and the standard printed exceptions, exclusions and conditions in the policy of title insurance (the "**Title Policy**"). Buyer shall pay the premium for the Title Policy and, if the Closing does not occur, costs related to the issuance of the title commitment. If Buyer elects to obtain any additional endorsements or an extended coverage policy, any additional premiums or costs for the extended coverage policy and endorsements shall be at Buyer's sole cost and expense.

3.  **Recording**. At the Closing, Buyer shall promptly undertake all of the following: (a) cause the Deed to be recorded with the Harris County Clerk's Office, Real Property, in the State of Texas and obtain conformed copies thereof for distribution to Buyer and Seller; and (b) request the Seller to direct the Title Company to issue the Title Policy to Buyer.

# ARTICLE VI
# CLOSING CONDITIONS

1.  **Title Transfer**. At the Closing, fee simple title to the Real Property and the Improvements shall be conveyed to Buyer by Seller by Deed, subject only to the following ("**Permitted Exceptions**"):

      (a)      a lien for real property taxes and assessments, water charges, sewer assessments and each other lien or encumbrance of an indefinite or unascertainable amount not then delinquent;

      (b)      matters of title described in the preliminary title report;

      (c)      matters affecting the condition of title to the Property created by or with the written consent of Buyer;

      (d)      any matters which would be shown by an inspection, a survey of the Property or by inquiry of persons in possession of the Property; and

(e)        rights of parties in possession.

2.        The Parties agree that Seller makes no express or implied warranties regarding the condition of title to the Property, and Buyer shall rely on the Title Policy for protection against any title defects.

3.        **Seller Deliveries to Buyer at Closing**. On or prior to the Closing Date, Seller shall deliver or cause to be delivered to Buyer:

(a)        the Deed duly executed and acknowledged by Seller and in recordable form conveying the Real Property and Improvements to Buyer;

(b)        the FIRPTA Affidavit duly executed by Seller;

(c)        the Bill of Sale duly executed by Seller;

(d)        the Assignment and Assumption Agreement executed by Seller;

(e)        possession of the Property to Buyer upon the Closing, subject to the right of parties in possession, if any; and

(f)        to the extent reasonably practicable, all books and records included in the Purchased Assets.

4.        **Buyer Deliveries to Seller at Closing**. On or prior to the Closing Date, Buyer shall deliver or cause to be delivered to Seller:

(a)        to the extent applicable, the Purchase Price in the manner specified in Article III;

(b)        the Bill of Sale duly executed by Buyer; and

(c)        the Assignment and Assumption Agreement executed by Buyer.

5.        **Conditions Precedent**.

(a)        **Seller**.  The Closing and Seller's obligations with respect to this transaction are subject to the following conditions precedent: (a) the satisfaction of each of the Bankruptcy Contingencies, (b) Buyer's delivery to Seller on or before the Closing Date of the items described in Article VI(4), (c)  Buyer shall have performed and complied with all material agreements and covenants to be performed by Buyer hereunder, and Seller shall not have notified Buyer in writing of any breach and such breach has not been remedied within three (3) days thereafter, and (d) Buyer's representations, warranties and covenants set forth in this Agreement shall be true and correct as of the Closing Date.

(b)        **Buyer**.  The Closing and Buyer's obligations with respect to this transaction are subject to the following conditions precedent: (a) the satisfaction of each of the Bankruptcy Contingencies, (b) Seller's delivery to Buyer on or before the Closing Date of the items described

in Article VI(3), (c) Seller shall have obtained (with the reasonable assistance of NBK) a Final Order authorizing Seller's assumption of the Assigned Contracts and the assignment of same to Buyer, to the extent not otherwise included within the Sale Order, (d) Seller shall have performed and complied with all material agreements and covenants to be performed by Seller hereunder, and Buyer shall not have notified Seller in writing of any breach and such breach has not been remedied within three (3) days thereafter, (e) Seller's representations and warranties set forth in this Agreement shall be true and correct as of the Closing Date, and (f) the Title Company shall have provided an irrevocable commitment to issue the Title Policy.

(c)     **All Parties**. The obligation of each Party to consummate the Sale on the Closing Date is subject to the fulfillment of the following conditions: (a) the Bankruptcy Court shall have entered the Sale and Bid Procedures Order; (b) the Bankruptcy Court shall have entered the Sale Order and such order has become a Final Order; and (c) there shall not be in effect any Law restraining, enjoining, or prohibiting the consummation of the Sale; provided that, notwithstanding anything to the contrary in this Article VI(5), the Buyer, and only the Buyer, may waive the obligation that any order entered by the Bankruptcy Court become a Final Order as a condition to Closing.

6.     **Frustration**. No Party may rely on the failure of any condition set forth in Article VI (3) and (4) as the case may be, to be satisfied to excuse such party's obligation to effect the Closing if such failure was caused by such Party's breach of this Agreement.

## ARTICLE VII
## COVENANTS

Between the Effective Date and the Closing Date, Seller:

(a)     shall not enter into any new contract or other agreement relating to the Property without Buyer's written consent;

(b)     shall refrain from committing any waste upon the Real Property;

(c)     shall keep all insurance policies covering or relating to the Real Property in full force and effect;

(d)     shall not encumber the Real Property or sell or transfer any interest or option in the Real Property other than in accordance with the Sale and Bid Procedures Order;

(e)     shall not sell, assign, or otherwise transfer any development rights in the Real Property other than in accordance with the Sale and Bid Procedures Order;

(f)     shall not submit any application relating to zoning, rezoning or other land use matter for the Real Property without Buyer's written consent; and

(g)     shall not apply for any new permit, license or certificate relating to the Real Property without Buyer's written consent.

(h)     absent written consent of Buyer, shall not convey any interest in the Property and shall not subject the Property to any additional liens, encumbrances, covenants, conditions, easements, rights of way or similar matters after the date of this Agreement, except as may be provided for in this Agreement, which shall not be eliminated or removed prior to the Closing Date;

(i)     shall maintain the Property in substantially the same condition as at the Effective Date, ordinary wear and tear excepted; and

(j)     shall (i) keep and perform all of the obligations to be performed by Seller under any Leases or Service Contracts, (ii) not enter into any contract or agreement providing for the provision of goods or services to or with respect to the Property or the operation thereof unless such contracts or agreements can be terminated upon not more than thirty (30) days' notice and without payment of penalty, and (iii) not enter into any new Leases for any portion of the Property or extend the terms of any existing Leases without Buyer's written consent, which consent shall not be unreasonably withheld or delayed.

## ARTICLE VIII
## BANKRUPTCY PROVISIONS

1.     **Sale and Bid Procedures Order**. The Chapter 11 Trustee promptly shall file the Sale and Bid Procedures Motion seeking entry of the Sale and Bid Procedures Order. The Sale and Bid Procedures Order will provide, among other things, (a) all competing bids shall include additional consideration of not less than the sum of (i) the Purchase Price plus (ii) any successive overbids shall be made in increments of not less than $250,000 in excess of the last submitted, highest qualified bid for the Property; (b) deadlines for the submission of competing bids, the selection of a Qualified Bid (as defined in the Sale and Bid Procedures)] and Auction procedures, all consistent with the provisions of the Sale and Bid Procedures; (c) that proposals for competing bids must be in writing and submitted using this Agreement as a form (a "**Competing Agreement**"); (d) that a Competing Agreement must contain substantially all the material terms and conditions contained in this Agreement, and must be marked to show changes from this Agreement; (e) that Buyer, to the extent an Auction occurs pursuant to the Sale and Bid Procedures, may participate in any competitive bidding as it so elects, but without any obligation to do so; and (f) for any person submitting a competing bid to provide a good faith deposit equal to ten percent (5%) of the cash purchase price to be paid in accordance with the Bid Requirements.

2.     **Bankruptcy Court Approval**. Seller and Buyer acknowledge that this Agreement and the consummation of the transactions contemplated hereby are subject to the Bankruptcy Court's approval. Seller and Buyer acknowledge that (a) each must comply with the Sale and Bid Procedures and Sale and Bid Procedures Order, and (b) Buyer must provide adequate assurance of its future performance within the meaning of section 365(f)(2)(B) of the Bankruptcy Code with respect to the Assigned Contracts. Seller agrees that it will promptly take all actions reasonably required to assist in obtaining a Bankruptcy Court finding that there has been an adequate demonstration of adequate assurance of future performance under the Assigned Contracts, such as furnishing timely requested and factually accurate affidavits, non-confidential financial information, and other documents or information for filing with the Bankruptcy Court and making Buyer's representatives available to testify before the Bankruptcy Court.

## ARTICLE IX
## PRORATIONS

Prorations shall be made as of the Closing Date as if Buyer were in title for the entire Closing Date, and the following shall be prorated and adjusted between Seller and Buyer:

(a)     **Utilities**. Buyer shall notify the utility companies that all utility bills for the period commencing on the Closing Date are to be sent to Buyer. In addition to the Purchase Price, Buyer shall pay to Seller an amount equal to the total of all utility deposits held by utility companies and Seller shall assign to Buyer all of Seller's right, title and interest in any such utility deposits; *provided*, *however*, Seller reserves the right to receive a return of such utility deposits and in such event, Buyer shall arrange for substitute deposits with the utility companies as may be required. If following the Closing Date either Buyer or Seller receives a bill for utilities or other services provided to the Property for the period on which the Closing Date occurred, then Buyer and Seller shall equitably prorate the bill.

(b)     **Rental Income**. Other than amounts covered by subsection (b) below, uncollected rent shall not be prorated at Closing. Buyer shall have the right to collect delinquent rent.

(c)     **Service Contracts**. If after the Closing Date, either Seller or Buyer receives a bill for services provided under the Service Contracts for the period after which the Closing Date occurred, Buyer shall be responsible for such bill.

(d)     **Other Transaction Costs**. All other fees, costs and expenses not expressly addressed in this Article VIII or elsewhere in this Agreement shall be allocated between Seller and Buyer in accordance with applicable local custom for similar transactions.

(e)     **Tenant Deposits**. The amount of all cash security and any other cash tenant deposits actually held by Seller, and any interest due thereon (if required by law or contract to be earned thereon) and not already applied to tenant obligations under the Leases, if any, shall be credited to Buyer. Buyer will indemnify, defend, and hold Seller harmless from and against all demands and claims made by tenants with respect to any security deposits transferred or credited to Buyer at Closing and will reimburse Seller for all attorneys' fees incurred or that may be incurred as a result of any such claims or demands.

(f)     **Method of Proration**. All prorations shall be made as of the Closing Date based on a 365-day year.

## ARTICLE X
## COSTS AND EXPENSES

Except as otherwise expressly provided in this Agreement, whether or not the transactions contemplated by this Agreement are consummated, the Parties shall bear their own costs and expenses (including all compensation and expenses of counsel, financial advisors, consultants, actuaries, independent accountants, and any mortgage brokers) incurred in connection with this Agreement and any transaction contemplated hereby. All other normal costs and expenses shall be allocated between Buyer and Seller in accordance with the customary practice in the county in

which the Real Property is located, provided that Buyer shall pay: (i) all premiums for the Title Policy, any additional cost of an extended coverage title policy and the cost of any endorsements required by Buyer; and document recording charges.

## ARTICLE XI
## "AS IS"

EXCEPT FOR SELLER'S REPRESENTATIONS AND WARRANTIES SET FORTH IN ARTICLE IV ("**SELLER'S WARRANTIES**"), TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, THIS SALE IS MADE AND WILL BE MADE WITHOUT REPRESENTATION, COVENANT, OR WARRANTY OF ANY KIND (WHETHER EXPRESS OR IMPLIED) BY SELLER. AS A MATERIAL PART OF THE CONSIDERATION FOR THIS AGREEMENT, BUYER AGREES TO ACCEPT THE PROPERTY ON AN "AS IS", "WHERE IS", "WITH ALL FAULTS" BASIS, AND WITHOUT ANY REPRESENTATION OR WARRANTY RELATING TO THE PROPERTY, ALL OF WHICH SELLER HEREBY DISCLAIMS EXCEPT FOR SELLER'S WARRANTIES. NONE OF SELLER OR ANY OF ITS SHAREHOLDERS, MEMBERS, PARTNERS, TRUSTEES, DIRECTORS, OFFICERS, MANAGERS, EMPLOYEES, AGENTS (INCLUDING BROKER) OR REPRESENTATIVES, NOR ANY PERSON PURPORTING TO REPRESENT ANY OF THE FOREGOING, HAVE MADE ANY REPRESENTATION, WARRANTY, GUARANTY, PROMISE, PROJECTION OR PREDICTION WHATSOEVER WITH RESPECT TO THE PROPERTY OR ANY PORTION THEREOF, WRITTEN OR ORAL, EXPRESS OR IMPLIED, ARISING BY OPERATION OF LAW OR OTHERWISE.

EXCEPT FOR SELLER'S WARRANTIES, NO WARRANTY OR REPRESENTATION IS MADE BY SELLER RELATED TO THE PROPERTY OF ANY KIND, INCLUDING WITHOUT LIMITATION ANY WARRANTY AS TO FITNESS FOR ANY PARTICULAR PURPOSE, MERCHANTABILITY, HABITABILITY, DESIGN, QUALITY, CONDITION, OPERATION OR INCOME, COMPLIANCE WITH DRAWINGS OR SPECIFICATIONS, ABSENCE OF DEFECTS, ABSENCE OF HAZARDOUS OR TOXIC, ABSENCE OF FAULTS, FLOODING, OR COMPLIANCE WITH LAWS AND REGULATIONS (INCLUDING LAWS AND REGULATIONS RELATING TO HEALTH, SAFETY, AND THE ENVIRONMENT). SPECIFICALLY, BUT WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, SELLER HEREBY EXPRESSLY DISCLAIMS THE IMPLIED WARRANTY OF HABITABILITY. BUYER ACKNOWLEDGES THAT IT HAS ENTERED INTO THIS AGREEMENT WITH THE INTENTION OF MAKING AND RELYING UPON ITS OWN INVESTIGATION OF THE PHYSICAL, ENVIRONMENTAL, ECONOMIC USE, COMPLIANCE, AND LEGAL CONDITION OF THE PROPERTY AND THAT, EXCEPT FOR SELLER'S WARRANTIES, BUYER IS NOT NOW RELYING, AND WILL NOT LATER RELY, UPON ANY REPRESENTATIONS AND WARRANTIES MADE BY SELLER OR ANYONE ACTING OR CLAIMING TO ACT, BY, THROUGH OR UNDER OR ON SELLER'S BEHALF CONCERNING THE PROPERTY.

The provisions of this <u>Article XI</u> shall survive indefinitely and closing or termination of this Agreement and shall not be merged into the closing documents.

## ARTICLE XII
## CONDEMNATION

Risk of loss resulting from any condemnation or eminent domain proceeding which is commenced or has been threatened before the Closing Date, and risk of loss to the Property due to fire, flood or any other cause before the Closing Date, shall remain with Seller. If before the Closing Date the Property or any portion thereof shall be materially damaged, or if the Property or any material portion thereof shall be subjected to a <u>bona</u> <u>fide</u> threat of condemnation with respect to the taking by eminent domain or condemnation, then Buyer may terminate this Agreement by written notice to Seller given within five (5) days after Seller notifies Buyer of the damage or taking. If the Closing Date is within the aforesaid 5-day period, then the Closing Date shall be extended to the next Business Day following the end of said 5-day period. If no such election is made, and in any if the damage after a casualty is not material or if a non-material portion of the Property is subject to a taking, this Agreement shall remain in full force and effect and the purchase contemplated herein, less any interest taken by eminent domain or condemnation, shall be effected with no further adjustment except as contemplated in this paragraph. If the Property was subject to a taking, at Closing Seller shall assign, transfer and set over to Buyer all of the right, title and interest of Seller in and to any awards that have been or that may thereafter be made for any taking. If the Property was damaged, at Closing Seller shall reduce the Purchase Price by the value reasonably estimated by Seller to repair or restore the damaged portion of the Improvements, less any sums expended by Seller to make emergency repairs to the Improvements or the Property or otherwise protect the physical condition of the Improvements or the Property. In either case, this transaction shall close pursuant to the terms of this Agreement. For the purposes of this paragraph, the phrases "<u>material damage</u>" and "<u>materially damaged</u>" mean damage up to a maximum aggregate amount of $500,000.00.

## ARTICLE XIV
## TERMINATION

1. **Termination**. Notwithstanding anything contained in this Agreement to the contrary, this Agreement shall terminate and the Closing shall not occur if:

(a) either Party is in material breach or default of its covenants or obligations under this Agreement, which breach or default is not caused by a default by Seller or Buyer, as to which Seller or Buyer has provided written notice to either Party and such Party has not remedied such breach within ten (10) Business Days thereafter;

(b) Seller has not satisfied any one or more the conditions precedent set forth in <u>Article VI(3)</u> at or prior to the Closing Date;

(c) Buyer has not satisfied any one or more the conditions precedent set forth in <u>Article VI(4)</u> at or prior to the Closing Date;

(d) if the Bankruptcy Court declines to enter the Sale Order;

(e) by mutual written consent of Seller and Buyer;

14

(f)    the Bankruptcy Court enters a Final Order dismissing the Chapter 11 Case or converting it to a case under Chapter 7 of the Bankruptcy Code;

(g)    a Governmental Authority issues a Final Order prohibiting the transactions contemplated hereby where such Final Order was requested, encouraged, or supported by Seller; or

(h)    Buyer is not the Successful Bidder (as defined in the Sale and Bid Procedures) at the Auction and Seller sells the Property pursuant to a Competing Agreement (an "**Alternative Transaction**").

2.    **Effect of Termination.** In the event of the termination of this Agreement in accordance with this Article XIV, (a) this Agreement shall immediately become void and of no force or effect, except for this Article XIV which shall survive termination of this Agreement, (b) the transactions contemplated by this Agreement shall be abandoned without further action by any Party, and (c) all rights and obligations of the Parties hereunder (except for this Article XIV) shall terminate without any liability of any Party to any other Party or their Affiliates; *provided*, *however*, no such termination shall relieve any Party from any liability for any fraud prior to such termination.

## ARTICLE XV
## MISCELLANEOUS

1.    **Assignment.** This Agreement binds and benefits the Parties and their respective successors and assigns. Neither Party may assign this Agreement nor any right or obligation hereunder without the prior written consent of the other Party; *provided*, *however*, that Buyer may assign this Agreement to an affiliate or any entity that controls, is controlled by or is under common control with Buyer without Seller's prior consent. Any such assignment by either Party shall not relieve the assignor of any obligation under this Agreement without the written consent of the other Party to this Agreement and the assignee shall also be bound by the obligations of the assignor pursuant to this Agreement.

2.    **Counterparts.** This Agreement may be executed in counterparts, by either an original signature or signature transmitted by facsimile transmission or other similar process and each copy so executed shall be deemed to be an original and all copies so executed shall constitute one and the same agreement.

3.    **Severability.** If any term or provision of this Agreement shall be deemed to be invalid or unenforceable to any extent, the remainder of this Agreement shall not be affected thereby, and each remaining term and provision of this Agreement shall be valid and be enforced to the fullest extent permitted by law.

5.    **Waivers; Survival.** No waiver of any breach of any covenant or provision contained herein shall be deemed a waiver of any preceding or succeeding breach thereof, or of any other covenant or provision contained herein. No extension of time for performance of any obligation or act shall be deemed an extension of the time for performance of any other obligation or act except those of the waiving Party, which shall be extended by a period of time equal to the period of the delay. All covenants and agreements contained herein which by their terms are to be

performed in whole or in part, or which prohibit actions, subsequent to the Closing shall, solely to the extent such covenants and agreements are to be performed, or prohibit actions, subsequent to the Closing, survive the Closing in accordance with their terms. All other covenants and agreements contained herein, and all representations and warranties contained herein or in any certificated deliveries hereunder, shall not survive the Closing and shall thereupon terminate.

6. **Successors and Assigns**. This Agreement is binding upon and inures to the benefit of the permitted successors and assigns of the Parties hereto.

7. **Entire Agreement**. This Agreement, including all Exhibits attached hereto, constitutes the entire contract between the Parties hereto with respect to the subject matter hereof and may not be modified except by an instrument in writing signed by the Party to be charged. Seller and Buyer shall cooperate to create mutually acceptable Exhibits in place of all Exhibits that are not attached hereto as of the Effective Date.

8. **Time of Essence**. Seller and Buyer acknowledge and agree that time is strictly of the essence with respect to each and every term, condition, obligation and provision hereof.

9. **Construction**. The Parties acknowledge and agree that this Agreement is the result of arms-length negotiations and shall not be construed for or against any Party by virtue of draftsmanship. Unless the context requires otherwise, (a) the words "include," "including" and variations thereof mean without limitation; (b) the words "hereof," "hereby," "herein," "hereunder" and similar terms refer to this Agreement as a whole and not any particular section or article in which such words appear; (c) words in the singular include the plural, and words in the plural include the singular; (d) a term defined as one part of speech (such as a noun) shall have a corresponding meaning when used as another part of speech (such as a verb); and (e) currency amounts referenced herein are in U.S. Dollars.

10. **Governing Law; Jurisdiction**. Except to the extent the mandatory provisions of the Bankruptcy Code apply, this Agreement shall be governed by the laws of the State of Texas without regard to principles of conflicts or choice of laws or any other law that would make the laws of any other jurisdiction other than the State of Texas applicable hereto. Without limitation of any Party's right to appeal any order of the Bankruptcy Court, (i) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the transactions contemplated hereby and (ii) any and all claims relating to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the Parties hereby consent and submit to the exclusive jurisdiction and venue of the Bankruptcy Court and irrevocably waive the defense of an inconvenient forum to the maintenance of any such proceeding; *provided*, *however*, that, if the Chapter 11 Case is closed, all proceedings arising out of or relating to this Agreement shall be heard first by the Bankruptcy Court, but if the Bankruptcy Court determines that it lacks subject matter jurisdiction or abstains or otherwise declines to exercise its jurisdiction, then in any other state or federal court of competent jurisdiction situated in Harris County, Texas, and the Parties hereby irrevocably submit to the exclusive jurisdiction and venue of such courts in any such proceeding and irrevocably waive the defense of an inconvenient forum to the maintenance of any such proceeding. The Parties consent to service of

process by first class mail at the addresses listed in Article XV(14) or any other manner permitted by law.

11. **Waiver of Jury Trial**. THE PARTIES HEREBY IRREVOCABLY WAIVE ALL RIGHT TO TRIAL BY JURY IN ANY PROCEEDING OR COUNTERCLAIM (WHETHER BASED IN CONTRACT OR IN TORT, OR OTHERWISE) ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE ACTIONS OF SELLER, BUYER, OR THEIR REPRESENTATIVES IN NEGOTIATION OR PERFORMANCE HEREOF.

12. **Integration; Binding Effect; No Third-Party Beneficiaries**. This Agreement constitutes the entire Agreement among the Parties with respect to the subject matter hereof and shall supersede all previous negotiations, commitments and writings. All Exhibits called for by this Agreement and delivered to the Parties shall be considered a part hereof with the same force and effect as if the same had been specifically set forth in this Agreement. This Agreement is solely for the benefit of Buyer and Seller, and their respective successors and permitted assigns. This Agreement shall not be deemed to confer upon or give to any third party, including any past or present directors, officers, employees, or agents of Seller, any remedy, claim, cause of action or other right.

13. **No Recordation**. Buyer agrees not to record a memorandum or other document relating to this Agreement without the prior written consent of Seller.

14. **Notices**. All notices, requests, demands, and other communications to be given under this Agreement shall be in writing and delivered in person, or sent by (i) electronic mail, (ii) certified mail, postage prepaid, or (iii) nationally recognized overnight courier with a reliable tracking service and properly addressed as follows:

Seller:     Chapter 11 Trustee c/o Galleria 2425 Owner, LLC
        Jones Murray LLP
        602 Sawyer Street, Suite 400
        Houston, TX 77007
        Attn.: Christopher R. Murray
        Email: christopher.murray@jonesmurray.com

        With a copy to:

        Shannon & Lee LLP
        2100 Travis Street, Suite 1525
        Houston, TX 77002
        Attn.: R. J. Shannon; Kyung S. Lee
        Email: rshannon@shannonleellp.com; klee@shannonleellp.com

Buyer:     National Bank of Kuwait, S.A.K.P., New York Branch
        299 Park Avenue
        New York, NY 10171
        Attn.: Marwan Isbaih; Michael C. Carter

With a copy to:

Pillsbury Winthrop Shaw Pittman LLP
609 Main Street Suite 2000
Houston, TX 77002
Attn.: Charles C. Conrad; Ryan Steinbrunner
Phone: (713) 276-7600
Facsimile: (713) 276-7634
Email: charles.conrad@pillsburylaw.com;
ryan.steinbrunner@pillsburylaw.com

- and –

Pillsbury Winthrop Shaw Pittman LLP
31 West 52nd Street
New York, NY 10019-6131
Phone: (212) 858-1000
Facsimile: (212) 858-1500
Attn.: Andrew M. Troop; Patrick E. Fitzmaurice; Kwame O. Akuffo
Email: andrew.troop@pillsburylaw.com;
patrick.fitzmaurice@pillsburylaw.com; kwame.akuffo@pillsburylaw.com

15.     **Environmental Notices**.  From the Effective Date through the Closing Date, Seller shall promptly notify Buyer if to the Knowledge of Seller there are any threatened or pending investigations by any governmental agency under any law, regulation or ordinance pertaining to any Hazardous Substance.

16.     **Further Assurances**. From the Effective Date until the Closing or termination of this Agreement, Seller and Buyer shall use commercially reasonable efforts to take, or cause to be taken, all actions and to do, or cause to be done, all things necessary, proper or advisable to consummate the transaction contemplated in this Agreement, including, without limitation, (a) obtaining all necessary consents, approvals and authorizations required to be obtained from any Governmental Authority, including, without limitation, the Bankruptcy Court, or other Person under this Agreement or applicable law, and (b) effecting all registrations and filings required under this Agreement or applicable law. After the Closing, Seller and Buyer shall use commercially reasonable efforts (at no cost or expense to such Party, other than any *de minimis* cost or expense or any cost or expense which the requesting Party agrees in writing to reimburse) to further effect the transaction contemplated in this Agreement. This Article XV(16) shall survive the Closing.

**[Signature Page Follows]**

**IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement as of the Effective Date.

| "SELLER" | "BUYER" |
|---|---|
| Christopher R. Murray as the Chapter 11 Trustee of Galleria 2425 Owner, LLC | National Bank of Kuwait, S.A.K.P., New York Branch |

"SELLER"

Christopher R. Murray as the Chapter 11
Trustee of Galleria 2425 Owner, LLC

By: _____
Name: Christopher R. Murray
Title:  Chapter 11 Trustee

"BUYER"

National Bank of Kuwait, S.A.K.P., New
York Branch

By: _____
Name: Michael C. Carter
Title:  Vice President

By: _____
Name: Matthew Rickert
Title:  Senior Vice President

[Signature Page to Asset Purchase Agreement]

## EXHIBIT A

LEGAL DESCRIPTION OF PROPERTY

**Tract 1: Fee Tract**

BEING 2.4462 ACRES (106,557 SQUARE FEET) OF LAND OUT OF THE WILLIAM WHITE SURVEY, ABSTRACT NO. 836, HOUSTON, HARRIS COUNTY, TEXAS, BEING THE SAME PROPERTY CONVEYED TO 2425 WEST LOOP, LP UY SPECIAL WARRANTY DEED RECORDED UNDER HARRIS COUNTY CLERK'S FILE NO. 20070732472, SAID TRACT CONVEYED BY DEED TO ONE WEST LOOP PLAZA, LTD. UNDER HCCF' NO. S547896 AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS :

COMMENCING AT A POINT IN THE NORTHERLY RIGHT OF WAY LINE WESTHEIMER ROAD (ROW VARIES) BEING THE SOUTHEAST CORNER OF A 2.3468 ACRE PARCEL CONVEYED BY LINCOLN NATIONAL LIFE INSURANCE COMPANY TO RED LION HOTELS, INC. IN A DEED RECORDED IN HCCF NO. S056346 AND THE SOUTHWEST CORNER OF A 3.4385 ACRE PARCEL CONVEYED BY HARVEY R. HOUCK, JR., TO RESTPROP, LTD IN A OEED RECORDED IN HCCF NO. R228886;

THENCE, NORTHERLY NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, 204.61 FEET ALONG THE COMMON LINE OF THE AFORESAID 2.3468 ACRE PARCEL TO THE WEST AND 3.4385 ACRE PARCEL TO THE EAST, TO A 1/2 INCH IRON ROD FOUND AT THE NORTHEAST CORNER OF THE 2.3468 ACRE PARCEL BEING THE SOUTHEAST CORNER OF THE HEREIN DESCRIBED PARCEL AND THE POINT OF BEGINNING;

THENCE, WESTERLY ALONG TI IE COMMON LINE OF THE 2.3468 ACRE PARCEL TO THE SOUTH AND THE HEREIN DESCRIBED PARCEL TO THE NORTH, SOUTH 87 DEGREES 44 MINUTES 46 SECONDS WEST, 464.50 FEET TO A POINT ON THE EASTERLY RIGHT OF WAY (ROW) LINE OF INTERSTATE 610 WEST LOOP AND THE SOUTHWEST CORNER OF THE HEREIN DESCRIBED PARCEL FROM WHICH A FOUND RAILROAD SPIKE BEARS SOUTH 21 DEGREES 43 MINUTES EAST 2.42 FEET;

THENCE, NORTHERLY ALONG THE EASTERLY RIGHT OF WAY LINE OF INTERSTATE 610 WEST LOOP (ROW 350 FEET} NORTH 10 DEGREES 55 MINUTES 17 SECONDS EAST 251.27 FEET TO AN "X" SET IN CONCRETE BEING THE SOUTHWEST CORNER OF A 7.8998 ACRE PARCEL AS SHOWN ON THE HOUSTON VENTURE PLAT UNRESTRICTED RESERVE "A" FILED IN THE HARRIS COUNTY MAP RECORDS AS FILM CODE NUMBER 356074, AND THE NORTHWEST CORNER OF THE HEREIN DESCRIBED PARCEL;

THENCE, EASTERLY ALONG THE COMMON LINE OF THE ABOVE INDICATED 7.8998 ACRE PARCEL TO THE NORTH AND TI-IE HEREIN DESCRIBED PARCEL TO THE SOUTH NORTH 87 DEGREES 44 MINUTES 46 SECONDS EAST, 406.61 FEET TO AN "X" FOUND IN THE WESTERLY LINE OF A 3.4385 ACRE PARCEL OF LAND CONVEYED TO RESTPROP, LTD AS RECORDED IN THE HCCF NO. R228886;

A-1

THENCE, SOUTHERLY ALONG A COMMON LINE OF THE ABOVE INDICATED 3.4385 ACRE PARCEL TO THE EAST AND THE HEREIN DESCRIBED PARCEL TO THE WEST, SOUTH 02 DEGREES 23 MINUTES 52 SECONDS EAST, 244.64 FEET TO THE POINT OF BEGINNING CONTAINING 106,557 SQUARE FEET, 2.4462 ACRES MORE OR LESS.

**Tract 2: Easement Tract; 20-Foot Non-Exclusive Roadway and Pedestrian Easement**

A NON-EXCLUSIVE ROADWAY AND PEDESTRIAN EASEMENT OVER AND ACROSS A TRACT OF LAND NORTHERLY OF AND 20 FEET WIDE ALONG THE ENTIRE NORTHERLY BOUNDARY LINE OF TRACT I; SAID EASEMENT CREATED AND GRANTED BY VIVIAN L. SMITH, INDIVIDUALLY AND AS INDEPENDENT EXECUTRIX OF THE ESTATE OF R. E. SMITH, DECEASED IN THAT CERTAIN GENERAL WARRANTY DEED DATED JULY 5, 1977 FILED IN HCCF NO. F216562 AND DESCRIBED IN HCCF NO. G743294, BEING THE SAME EASEMENT CONVEYED TO PCCP FULLER 2425 WEST LOOP, LLC BY SPECIAL WARRANTY DEED WITH VENDOR'S LIEN RECORDED UNDER HARRIS COUNTY CLERK'S FILE NO. 20100450007, AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

COMMENCING AT A POINT IN THE NORTHERLY RIGHT OF WAY LINE OF WESTHEIMER ROAD (ROW VARIES), BEING THE SOUTHEAST CORNER OF A 2.3468 ACRE PARCEL CONVEYED BY LINCOLN NATIONAL LIFE INSURANCE COMPANY TO RED LION HOTELS INC. IN A DEED RECORDED IN HCCF NO. S056346 AND THE SOUTHWEST CORNER OF A 3.4385 ACRE PARCEL CONVEYED BY HARVEY R. HOUCK, JR., TO RESTPROP, LTD IN A DEED RECORDED IN HCCF NO. R228886;

THENCE, NORTHERLY NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, 204.61 FEET ALONG THE COMMON LINE OF THE AFORESAID 2.3468 ACRE PARCEL TO THE WEST AND 3.4385 ACRE PARCEL TO THE EAST TO A 1/2 INCH IRON ROD FOUND FOR THE SOUTHEAST CORNER OF TRACT 1;

THENCE CONTINUING NORTHERLY NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, 244.64 FEET ALONG A COMMON LINE OF A PREVIOUSLY NOTED 3.4385 ACRE PARCEL OF LAND TO THE EAST AND TRACT I TO THE WEST TO AN "X" FOUND FOR THE NORTHEAST CORNER OF TRACT I AND THE POINT OF BEGINNING;

THENCE, WESTERLY SOUTH 87 DEGREES 44 MINUTES 46 SECONDS WEST, 406.61 FEET ALONG THE NORTHERLY LINE OF TRACT I TO AN "X" SET ON THE EASTERLY LINE OF INTERSTATE 610 WEST LOOP (350 FEET WIDE);

THENCE, NORTHERLY NORTH 10 DEGREES 55 MINUTES 17 SECONDS EAST 20.54 FEET ALONG THE EASTERLY LINE OF INTERSTATE 610 WEST LOOP TO A POINT;

THENCE, EASTERLY 20.00 PEET NORTHERLY FROM AND PARALLEL TO THE NORTHERLY LINE OF TRACT I, NORTH 87 DEGREES 44 MINUTES 46 SECONDS EAST, 401.88 FEET TO A POINT;

A-2

THENCE, SOUTHERLY SOUTH 02 DEGREES 23 MINUTES 52 SECONDS EAST 20.00 FEET TO THE POINT OF BEGINNING AND CONTAINING 0.1856 ACRES OR 8,085 SQUARE FEET OF LAND MORE OR LESS.

**Tract 3: Easement Tract; 20-Foot Non-Exclusive Roadway and Pedestrian Easement**

A NON-EXCLUSIVE ROADWAY AND PEDESTRIAN EASEMENT OVER AND ACROSS A TRACT OF LAND SOUTHERLY OF AND 20.00 FEET WIDE ALONG THE ENTIRE SOUTHERN BOUNDARY LINE OF TRACT I, SAID EASEMENT CREATED AND GRANTED ON FEBRUARY 16, 1979, FROM WEST LOOP HOTEL, LIMITED TO FIN PROPERTIES, LIMITED PILED IN HCCF NO. 0041310, BEING THE SAME PROPERTY EASEMENT CONVEYED TO PCCP FULLER 2425 WEST LOOP, LLC BY SPECIAL WARRANTY DEED WITH VENDOR'S LIEN RECORDED UNDER HARRIS COUNTY CLERK'S FILE NO. 20100450007, AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

COMMENCING AT A POINT IN THE NORTHERLY RIGHT OF WAY LINE OF WESTHEIMER ROAD (ROW VARIES), BEING THE SOUTHEAST CORNER OF A 2.3468 ACRE PARCEL CONVEYED BY LINCOLN NATIONAL LIFE INSURANCE COMPANY TO RED LION HOTELS, INC. IN A DEED RECORDED IN HCCF NO. S056346 AND THE SOUTHWEST CORNER OF A 3.4385 ACRE PARCEL CONVEYED RY HARVEY R HOUCK, JR., TO RESTPROP, LTD IN A DEED RECORDED IN HCCF NO. R228886;

THENCE, NORTHERLY NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, 184.61 FEET ALONG THE COMMON LINE OF THE AFORESAID 2.3468 ACRE PARCEL TO THE WEST AND 3.4385 ACRE PARCEL TO THE EAST TO THE POINT OF BEGINNING, WHENCE THE SOUTHEAST CORNER OF TRACT I BEARS NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, 20.02 FEET;

THENCE, WESTERLY 20.00 FEET SOUTHERLY FROM AND PARALLEL TO THE SOUTHERLY LINE OF TRACT I, SOUTH 87 DEGREES 44 MINUTES 46 SECONDS WEST, 469.23 FEET TO A POINT IN THE EASTERLY LINE OF INTERSTATE 610 WEST LOOP;

THENCE, NORTHERLY NORTH 10 DEGREES 55 MINUTES 17 SECONDS EAST, 20.54 FEET ALONG THE EASTERLY LINE OF INTERSTATE 610 WEST LOOP TO THE SOUTHWEST CORNER FOR TRACT I FROM WHICH A FOUND RAILROAD SPIKE BEARS SOUTH 21 DEGREES 43 MINUTES EAST, 2.42 FEET;

THENCE, EAST ERLY NORTH 87 DEGREE S 44 MINUTES 46 SECONDS EAST, 464.50 FEET ALONG THE SOUTHERLY LINE OF TRACT I TO A l/2 INCH IRON ROD FOUND AT THE SOUTHEAST CORNER OF TRACT 1;

THENCE, SOUTHERLY SOUTH 02 DEGREES 23 MINUTES 52 SECONDS EAST, 20.02 FEET ALONG THE A COMMON LINE BETWEEN A PREVIOUSLY DESCRIBED 2.3468 ACRES PARCEL TO THE WEST AND A 3.4385 ACRE PARCEL TO THE EAST TO THE POINT OF BEGINNING AND CONTAINING 0.2144 ACRES OR 9,337 SQUARE FEET OF LAND, MORE OR LESS.

**Tract 4: Easement Tract; 28-Foot Roadway and Pedestrian Easement**

A NON-EXCLUSIVE ROADWAY AND PEDESTRIAN EASEMENT ACROSS EASTERLY 28 FEET OF A 2.3468 ACRE TRACT ADJACENT TO AND SOUTHERLY OF TRACT 1. CREATED AND GRANTED IN THAT CERTAIN ROAD AND PEDESTRIAN EASEMENT DATED FEBRUARY 16, 1979 FROM WEST LOOP HOTEL, LIMITED TO FIN PROPERTIES, LIMITED, FILED IN HCCF NO. G041313, BEING THE SAME PROPERTY EASEMENT CONVEYED TO PCCP FULLER 2425 WEST LOOP, LLC BY SPECIAL WARRANTY DEED WITH VENDOR'S LIEN RECORDED UNDER HARRIS COUNTY CLERK'S FILE NO. 20100450007, AND BEING MORE PARTICULARLY DESCRIBED BY METES AND ROUNDS AS FOLLOWS:

BEGINNING AT A FOUND 5/8 INCH IRON ROD IN TI-IE NORTHERLY RIGHT OF WAY LINE OF WESTHEIMER ROAD (ROW VARIES), BEING THE SOUTHEAST CORNER OF A 2.3468 ACRE PARCEL CONVEYED BY LINCOLN NATIONAL LIFE INSURANCE COMPANY TO RED LION HOTELS, INC. IN A DEED RECORDED IN HCCF NO. S056346 AND THE SOUTHWEST CORNER OF A 3.4385 ACRE PARCEL CONVEYED BY HARVEY R. HOUCK, JR., TO RESTPROP, LTD IN A DEED RECORDED IN HCCF NO. R228886;

THENCE, WESTERLY SOUTH 86 DEGREES 46 MINUTES 52 SECONDS WEST, 28.00 FEET ALONG THE NORTHERLY LINE OF WESTHEIMER ROAD TO A POINT;

THENCE, NORTHERLY 28.00 FEET WESTERLY OF AND PARALLEL TO THE EASTERLY LINE OF SAID 2.3468 ARE TRACT NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, 205.08 FEET TO A POINT ON THE SOUTHERLY LINE OF TRACT 1;

THENCE, EASTERLY NORTH 87 DEGREES 44 MINUTES 46 SECONDS EAST, 28.00 FEET ALONG THE SOUTHERLY LINE OF TRACT I TO A 1/2 INCH IRON ROD FOUND IN THE WESTERLY LINE OF A 3.4385 ACRE PARCEL OF LAND PRESENTLY OWNED BY RESTPROP, LTD AS RECORDED IN THE HCCF NO. R228886;

THENCE, SOUTHERLY SOUTH 02 DEGREES 23 MINUTES 52 SECONDS EAST, 204.61 FEET ALONG A COMMON LINE OF THE ABOVE INDICATED 3.4385 ACRE PARCEL TO THE EAST SAID THE PREVIOUSLY DESCRIBED 2.3468 ACRE PARCEL TO THE WEST, TO THE POINT OF BEGINNING, CONTAINING 0.1317 ACRES OR 5,735 SQUARE FEET (CALLED 5,740) OF LAND MORE OR LESS.

**Tract 5: Easement Tract; 5-Foot Storm Sewer Easement**

A 1,025 SQUARE FOOT TRACT OF LAND, BEING THAT SAME TRACT UN PROPERTIES, LIMITED, RECORDED IN HCCF NUMBER G041311, LOCATED IN THE WILLIAM WHITE SURVEY, ABSTRACT NUMBER 836, CITY OF HOUSTON, HARRIS COUNTY, TEXAS, BEING THE SAME EASEMENT CONVEYED TO PCCP FULLER 2425 WEST LOOP, LLC BY SPECIAL WARRANTY DEED WITH VENDOR'S LIEN RECORDED UNDER HARRIS COUNTY CLERK'S FILE NO. 20100450007, AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

COMMENCING AT A POINT IN THE NORTHERLY RIGHT OF WAY (ROW) OF WESTHEIMER ROAD (ROW VARIES), BEING THE SOUTHEAST CORNER OF A 2.3468 ACRE PARCEL CONVEYED BY LINCOLN NATIONAL LIFE INSURANCE COMPANY TO RED LION HOTELS, INC. IN A DEED RECORDED IN HCCF NO. 5056346 AND THE SOUTHWEST CORNER OF A 3.4385 ACRE PARCEL CONVEYED BY HARVEY R. HOUCK, JR. TO RESTPROP, LTD IN A DEED RECORDED IN HCCF NO. R228886;

THENCE ALONG THE NORTHERLY RIGHT OF WAY LINE OF WESTHEIMER ROAD, SOUTH 86 DEGREES 46 MINUTES 52 SECONDS WEST, A DISTANCE OF 16.00 FEET TO THE SOUTHEAST CORNER OF SAID EASEMENT AND THE HEREIN DESCRIBED TRACT;

THENCE CONTINUING ALONG THE NORTHERLY LINE OF WESTHEIMER ROAD, SOUTH 86 DEGREES 46 MINUTES 52 SECONDS WEST A DISTANCE OF 5.00 FEET, THE SOUTHWEST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE DEPARTING SAID WESTHEIMER ROAD, NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, A DISTANCE OF 204.96 FEET, TO A POINT IN THE SOUTHERLY LINE OF A 2.4462 ACRE TRACT CONVEYED BY DEED TO HE 2425 WEST LOOP, LP RECORDED UNDER HARRIS COUNTY CLERK'S FILE NO. 20070732472;

THENCE ALONG THE SOUTHERLY LINE OF SAID 2.4462 ACRE TRACT, NORTH 87 DEGREES 44 MINUTES 46 SECONDS EAST A DISTANCE OF 5.00 FEET TO THE NORTHEAST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE DEPARTING THE SOUTHERLY LINE OF SAID 2.4462 ACRE TRACT, SOUTH 02 DEGREES 23 MINUTES 52 SECONDS EAST, A DISTANCE OF 204.88 FEET TO THE POINT OF BEGINNING AND CONTAINING 1,025 SQUARE FEET OF LAND, MORE OR LESS.

**EXHIBIT B**

FORM OF DEED

AFTER RECORDING RETURN TO:

_____
_____
_____

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

**SPECIAL WARRANTY DEED**

| | | |
|---|---|---|
| STATE OF TEXAS | § | |
| | § | KNOW ALL MEN BY THESE PRESENTS: |
| COUNTY OF TRAVIS | § | |

That GALLERIA 2425 OWNER, LLC, a Delaware corporation ("Grantor"), by and through Christopher R. Murray, the chapter 11 trustee appointed in Case No. 23-34815-JPN in the U.S. Bankruptcy Court for the Southern District of Texas, Houston Division,  for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable consideration to it paid by NATIONAL BANK OF KUWAIT, S.A.K.P., NEW YORK BRANCH ("Grantee"), the receipt and sufficiency of which are hereby acknowledged and confessed by Grantor, has GRANTED, BARGAINED, SOLD and CONVEYED, and by these presents does hereby GRANT, BARGAIN, SELL and CONVEY unto Grantee the tracts of land lying and being situated in Harris County, Texas, as more particularly described on Exhibit "1" attached hereto and incorporated herein for all purposes (the "Land"), together with (a) all buildings, structures, fixtures and improvements situated on, in or under the Land (the "Improvements"), and (b) all of Grantor's right, title and interest in and to the appurtenances pertaining to the Land (hereinafter collectively referred to as the "Appurtenant Property"), including, but not limited to, all right, title and interest of Grantor in and to adjacent roads, rights-of-way, alleys, drainage facilities, easements and utility facilities and strips and gores between the described Land and abutting properties, if any.  The Land, Improvements, and Appurtenant Property are sometimes hereinafter referred to as the "Property".

This conveyance is made and accepted free and clear of all liens, claims, encumbrances, and interests pursuant to that certain "Sale Order" dated _____, 2024, and entered as Docket No. _____ in Case No. 23-34815-JPN in the U.S. Bankruptcy Court for the Southern District of Texas, Houston Division, and is subject to the exceptions set forth on Exhibit "2", attached hereto and made a part hereof for all purposes (the "Permitted Exceptions").

B-1

TO HAVE AND TO HOLD THE PROPERTY, together with all and singular the rights and appurtenances belonging in any way to the Property, subject to the provisions stated herein, to Grantee, Grantee's successors and assigns forever, and Grantor binds itself and its legal representatives and successors TO WARRANT AND FOREVER DEFEND all and singular the Property to Grantee and Grantee's successors and assigns against every person lawfully claiming or to claim all or any part of the Property by, through, or under Grantor, but not otherwise.

**AS A MATERIAL PART OF THE CONSIDERATION FOR THIS DEED, GRANTEE ACKNOWLEDGES AND AGREES THAT: (i) GRANTEE HAS CONDUCTED ITS OWN INDEPENDENT INVESTIGATION AND INSPECTION OF ALL ASPECTS OF THE PROPERTY, (ii) OTHER THAN AS EXPRESSLY SET OUT HEREIN OR IN THAT CERTAIN ASSET PURCHASE AGREEMENT DATED _____ ____, 2024, BY AND BETWEEN GRANTOR AND GRANTEE ("PURCHASE AGREEMENT"), GRANTEE IS NOT RELYING ON ANY REPRESENTATIONS OR STATEMENTS OF GRANTOR OR ITS AGENTS, (iii) GRANTEE IS RELYING ON SUCH INDEPENDENT INVESTIGATION AND INSPECTION AND IS NOT RELYING ON ANY INFORMATION PROVIDED BY GRANTOR, GRANTOR'S ENGINEERS, OR THE BROKERS IN DETERMINING WHETHER TO PURCHASE THE PROPERTY, (iv) CERTAIN INFORMATION PROVIDED BY GRANTOR TO GRANTEE WITH RESPECT TO THE PROPERTY HAS BEEN OBTAINED FROM A VARIETY OF SOURCES AND THAT GRANTOR HAS NOT MADE ANY INDEPENDENT INVESTIGATION OR VERIFICATION OF SUCH INFORMATION, (v) GRANTEE IS FULLY AND COMPLETELY SATISFIED THAT THE PROPERTY IS SATISFACTORY IN ALL RESPECTS FOR GRANTEE'S INTENDED USE AND (vi) GRANTEE HAS NO RECOURSE WHATSOEVER AGAINST GRANTOR OR THE BROKER IN CONNECTION WITH THE PROPERTY OTHER THAN FOR ANY VIOLATIONS AS TO THE WARRANTIES AND COVENANTS OF GRANTOR CONTAINED HEREIN OR IN THE PURCHASE AGREEMENT.**

**AS A MATERIAL PART OF THE CONSIDERATION FOR THIS DEED, GRANTEE ACKNOWLEDGES AND AGREES THAT: (i) EXCEPT FOR THE SPECIAL WARRANTY SET OUT HEREIN OR THE EXPRESS REPRESENTATIONS SET OUT IN THE PURCHASE AGREEMENT, GRANTOR HAS NOT MADE, DOES NOT MAKE, AND SPECIFICALLY DISCLAIMS ANY AND ALL REPRESENTATIONS, WARRANTIES, PROMISES, COVENANTS, AGREEMENTS, OR GUARANTIES OF ANY KIND OR CHARACTER WHATSOEVER, WHETHER EXPRESS OR IMPLIED, ORAL OR WRITTEN, PAST, PRESENT, OR FUTURE, OF, AS TO, CONCERNING OR WITH RESPECT TO THE PROPERTY, INCLUDING BUT NOT LIMITED TO: (A) THE NATURE, QUALITY, OR CONDITION OF THE PROPERTY, (B) THE INCOME TO BE DERIVED FROM THE PROPERTY; (C) THE SUITABILITY OF THE PROPERTY FOR ANY AND ALL ACTIVITIES AND USES WHICH GRANTEE MAY CONDUCT THEREON IN THE FUTURE; (D) THE COMPLIANCE OF OR BY THE PROPERTY OR ITS OPERATION WITH ANY LAWS, RULES, ORDINANCES OR REGULATIONS OF ANY APPLICABLE GOVERNMENTAL AUTHORITY OR BODY, INCLUDING, BUT NOT LIMITED TO, ANY STATE OR FEDERAL ENVIRONMENTAL LAW, RULE OR REGULATION; (E)THE HABITABILITY, MERCHANTABILITY, OR FITNESS OF THE PROPERTY FOR A PARTICULAR PURPOSE; OR (F) ANY OTHER MATTER**

WITH RESPECT TO THE PROPERTY (COLLECTIVELY, THE "<u>DISCLAIMED MATTERS</u>"). GRANTEE HEREBY WAIVES ANY SUCH OTHER REPRESENTATION, WARRANTY, PROMISES, COVENANTS, AGREEMENTS, OR GUARANTIES.

AS A MATERIAL PART OF THE CONSIDERATION FOR THIS DEED, GRANTEE ACKNOWLEDGES AND AGREES THAT EXCEPT FOR THE SPECIAL WARRANTY CONTAINED HEREIN OR AS EXPRESSLY SET OUT IN THE PURCHASE AGREEMENT, GRANTOR IS CONVEYING THE PROPERTY TO GRANTEE "AS IS", "WHERE IS", AND WITH ALL FAULTS AND SPECIFICALLY AND EXPRESSLY WITHOUT ANY WARRANTIES, REPRESENTATIONS, OR GUARANTEES, EITHER EXPRESS OR IMPLIED, OF ANY KIND, NATURE, OR TYPE WHATSOEVER FROM OR ON BEHALF OF THE GRANTOR.

WITHOUT IN ANY WAY LIMITING ANY PROVISION OF THE FOREGOING, GRANTEE SPECIFICALLY ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES, RELEASES AND DISCHARGES ANY CLAIM IT HAS, MIGHT HAVE HAD OR MAY HAVE AGAINST GRANTOR AND GRANTOR'S PARTNERS, OFFICERS AND AGENTS WITH RESPECT TO (i) THE DISCLAIMED MATTERS, (ii) THE CONDITION OF THE PROPERTY, EITHER PATENT OR LATENT, (iii) THE PAST, PRESENT OR FUTURE CONDITION OR COMPLIANCE OF THE PROPERTY WITH REGARD TO ANY ENVIRONMENTAL PROTECTION, POLLUTION CONTROL OR LAND USE LAWS, RULES, REGULATIONS, ORDERS OR REQUIREMENTS, INCLUDING, WITHOUT LIMITATION, THE COMPREHENSIVE ENVIRONMENTAL RESPONSE, COMPENSATION AND LIABILITY ACT OF 1980 (HEREIN CALLED "<u>CERCLA</u>"), AND (iv) ANY OTHER STATE OF FACTS THAT EXISTS WITH RESPECT TO THE PROPERTY; PROVIDED, HOWEVER, THE FOREGOING WAIVER, RELEASE AND DISCHARGE DOES NOT WAIVE, RELEASE, OR DISCHARGE ANY CLAIM GRANTEE MAY HAVE AGAINST GRANTOR UNDER THE SPECIAL WARRANTY SET FORTH IN THIS DEED OR FOR BREACH OF THE EXPRESS REPRESENTATIONS (DURING THE PERIOD FOR WHICH SUCH EXPRESS REPRESENTATIONS SURVIVE) SET FORTH IN THE PURCHASE AGREEMENT.

Current ad valorem taxes, assessments and fees relating to or pertaining to the Property, having been prorated to the date hereof, the payment thereof is hereby assumed by Grantee.

The mailing address of Grantee is set forth below:

_____

_____

[Signatures Appear on the Following Page]

IN WITNESS WHEREOF, Grantor has caused this Deed to be executed on this _____ day of _____, 2024.

<div style="margin-left: 40%;">

GRANTOR:

GALLERIA 2425 OWNER, LLC,
a Delaware corporation

By: _____
      Christopher R. Murray
      Chapter 11 Trustee

</div>

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF TRAVIS | § |

The foregoing was acknowledged before me on the _____ day of _____, 20__, by CHRISTOPHER R. MURRAY, Chapter 11 Trustee of Galleria 2425 Owner, LLC, in such capacity.

_____
Notary Public, State of Texas

EXHIBIT "1"

LEGAL DESCRIPTION

[To Be Inserted]

EXHIBIT "2"

PERMITTED EXCEPTIONS

[To Be Inserted]

# EXHIBIT C

## SELLER'S FIRPTA AFFIDAVIT - CERTIFICATION OF NON-FOREIGN STATUS

Section 1445 of the Internal Revenue Code provides that a transferee of a U.S. real property interest must withhold tax if the transferor is a foreign person. To inform the transferee that withholding of tax is not required upon the disposition of a U.S. real property interest by Christopher R. Murray in his capacity as the duly appointed Chapter 11 Trustee of Galleria 2425 Owner, LLC ("**Transferor**"), the undersigned hereby certifies the following on behalf of Transferor:

1.      Transferor is not a foreign corporation, foreign partnership, foreign trust and foreign estate (as those terms are defined in the Internal Revenue Code and Income Tax Regulations);

2.      Transferor's U.S. employer identification number (EIN) is [●]; and

3.      Transferor's office address is:

             [●]
             [●]
             [●]

Transferor understands that this certification may be disclosed to the Internal Revenue Service by transferee and that any false statement contained herein could be punished by fine, imprisonment or both.

Under penalties of perjury I declare that I have examined this certification and to the best of my knowledge and belief it is true, correct and complete, and I further declare that I have authority to sign the document on behalf of the Transferor.

                        Christopher R. Murray, in his capacity as the
                        Chapter 11 Trustee of Galleria 2425 Owner, LLC

                        By: _____
                        Name:  Christopher R. Murray
                        Title:   Chapter 11 Trustee

## EXHIBIT D

<u>BILL OF SALE</u>

For good and valuable consideration, the receipt of which is hereby acknowledged, Christopher R. Murray in his capacity as the duly appointed Chapter 11 Trustee of Galleria 2425 Owner, LLC, a Delaware limited liability company ("**<u>Seller</u>**"), does hereby sell, transfer, and convey to National Bank of Kuwait, S.A.K.P., New York Branch ("**<u>Buyer</u>**"): all personal property of Seller, if any, located on and used in connection with the operation of the improvements on the real property located at 2425 West Loop South, Houston, Texas 77027, as more particularly described on Exhibit A attached hereto.

Buyer accepts such personal property in its "AS-IS," "WHERE-IS" condition and "WITH ALL FAULTS". Seller specifically disclaims all express or implied warranties regarding the existence or condition of, or title to, such personal property, including without limitation the implied warranties of merchantability and suitability for a particular purpose.

Date: _____, 2024

| SELLER | BUYER |
|---|---|
| Christopher R. Murray as the Chapter 11 Trustee of Galleria 2425 Owner, LLC | National Bank of Kuwait, S.A.K.P., New York Branch |
| By: _____ | By: _____ |
| Name: Christopher Murray | Name: Michael C. Carter |
| Title:  Chapter 11 Trustee | Title:  Vice President |

EXHIBIT A TO BILL OF SALE

<u>IMPROVEMENTS</u>

[To Be Inserted]

# EXHIBIT E

## ASSIGNMENT AND ASSUMPTION

FOR VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, Christopher R. Murray in his capacity as the duly appointed Chapter 11 Trustee of Galleria 2425 Owner, LLC, a Delaware limited liability company (herein referred to as "**Assignor**"), hereby assigns, transfers and conveys to National Bank of Kuwait, S.A.K.P., New York Branch (herein referred to as "**Assignee**"), all leases (the "**Leases**") described on Schedule 1 attached and all contracts (the "**Contracts**") described on Schedule 2 attached affecting that certain real property in the City of Houston, Harris County, State of Texas (the "**Property**"), commonly known as 2425 West Loop South, Houston, Texas 77027 and more particularly described in <u>Exhibit A</u> attached hereto.

Assignee hereby assumes and agrees to keep, perform and fulfill all of Assignor's obligations under the Leases and under the Contracts which are required to be kept, performed and fulfilled by Assignor thereunder, effective from and after the date on which a deed of the Property from Assignor to Assignee is delivered (the "**Closing Date**").

The covenants and warranties contained herein shall survive the closing of the purchase and sale of the Property to which this Assignment relates, and such covenants and warranties shall not be deemed merged in the deed delivered by Assignor to Assignee.

This Assignment shall be binding on and inure to the benefit of the parties hereto, their heirs, executors, administrators, successors in interest and assigns.

IN WITNESS WHEREOF, the undersigned have executed the within instrument as of _____, 2024.

ASSIGNOR:

Christopher R. Murray as the Chapter 11 Trustee of Galleria 2425 Owner, LLC,

By: _____
Name: Christopher R. Murray
Title:   Chpater 11 Trustee

ASSIGNEE:

National Bank of Kuwait, S.A.K.P., New York Branch,

By: _____
Name: Michael C. Carter
Its:     Vice President

E-1

EXHIBIT A TO ASSIGNMENT AND ASSUMPTION

<u>LEGAL DESCRIPTION OF PROPERTY</u>

[To Be Inserted]

SCHEDULE 1 TO ASSIGNMENT AND ASSUMPTION

Leases

[To Be Inserted]

SCHEDULE 2 TO ASSIGNMENT AND ASSUMPTION

Service Contracts

[To Be Inserted]

SCHEDULE 3 TO ASSIGNMENT AND ASSUMPTION

<u>Permits</u>

[To Be Inserted]

# EXHIBIT F

<u>ASSIGNED CONTRACTS</u>

[To Be Inserted]

**EXHIBIT 3**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § | Chapter 11 |
|  | § |  |
| **GALLERIA 2425 OWNER LLC** | § | Case No. 23-34815 (JPN) |
|  | § |  |
| Debtor. | § |  |
|  | § |  |

## QB LOOP PROPERTY LP'S MOTION FOR ENTRY OF AN ORDER APPROVING THE ASSUMPTION AND ASSIGNMENT OF ADDITIONAL LEASES PURSUANT TO THE SALE ORDER

This Motion seeks an order that may adversely affect you. If you oppose the Motion, you should immediately contact the moving party to resolve the dispute. If you and the Moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the Court may consider evidence at the hearing and may decide the motion at the hearing.

Represented parties should act through their attorney.

<u>Expedited relief has been requested.</u> If the Court considers the motion on an expedited basis, you will have less than 21 days to answer. If you object to the requested relief or if you think that expedited consideration is not warranted, you should file an immediate response.

If expedited relief is not granted, a hearing has been set on this matter on August 14, 2023, at 11:00 a.m., prevailing central time.

Pursuant to General Order 2021-5, parties in interest may choose to attend the hearing in-person or remotely. Please consult General Order 2021-5 and Judge Norman's Court Procedures for more information.

Audio communication will be by use of the Court's regular dial-in number. The dial-in number is +1 (832) 917-1510. You will be responsible for your own

137989883v.1

**long-distance charges. You will be asked to key in the conference room number. Judge Norman's conference room number is 174086.**

**Parties may participate in electronic hearings by use of an internet connection. The internet site is https://gotomeet.me/JudgeNorman. Persons connecting by mobile device will need to download the free GoToMeeting application.**

**To the Honorable Jeffrey P. Norman,**
**United States Bankruptcy Judge:**

QB Loop Property LP (the "***QB Loop***"), hereby files this *Motion for Entry of an Order Approving the Assumption and Assignment of Additional Leases Pursuant to the Sale Order* (the "***Motion***"). QB Loop would respectfully show as follows:

### Background

1.     On April 29, 2024, the Court entered its *Order (I) Approving Procedures for the Sale of Property Free and Clear of All Liens, Claims and Encumbrances; (II) Scheduling an Auction; (III) Authorizing Entry Into the Stalking Horse Purchase Agreement; (IV) Approving Assumption and Assignment Procedures; (V) Approving Form of Notice; and (VI) Granting Related Relief* [ Docket No. 254] ("***Sale Procedures***").

2.     On May 2, 2024, Christopher Murry, Chapter 11 Trustee (the "***Trustee***") filed his *Notice of Assumption and Assignment Procedures* [ Docket No. 561] ("***Assumption Procedures***").

3.     On June 7, 2024, the Trustee filed the *Contract & Cure Schedule* [Docket No. 437]. The Contract & Cure Schedule included a Commercial Lease with 2425 West Loop (aka Metwell Design) ("***Metwell***") and a Commercial Lease with Jetall Companies, Inc. ("***Jetall***"). [Docket No. 437, p.2].

4.      On June 21, 2024, the Trustee conducted an auction (the "**Auction**") of the Property.[1]  [Docket No. 561].

5.      QB Loop was designated as the Successful Budder at the Auction.  [Docket No. 561].

6.      On July 1, 2024, Metwell filed a limited objection to the Contract & Cure Schedule. [Docket No. 584].  Jetall did not file an objection to the Contract & Cure Schedule.  [*See generally* Docket].

7.      On July 8, 2024, the Court held a sale hearing and entered an order approving the sale of the property to QB Loop [Docket No. 608] (the "**Sale Order**").  Exhibit A to the Sale Order is the Asset Purchase Agreement between the Trustee and QB Loop.  Exhibit E – Schedule 1 is the list of Leases to be assumed and assigned to QB Loop.  Neither of the commercial leases with Metwell or Jetall were included on Exhibit E to the APA.

## Motion

8.      QB Loop seeks to add (i) the Commercial Lease with Metwell and (ii) the Commercial Lease with Jetall (collectively, the "**Additional Leases**") as Designated Assigned Contracts under the Sale Order.

9.      Pursuant to the Sale Order, "any contracts with . . . 2425 West Loop, LLC [and] Jetall Companies, Inc. . . . shall not be assumed or assigned absent further order of the Court."  [Docket No. 608, ¶ 16].

10.      QB Loop hereby requests entry of an order adding the Additional Leases as Designated Assigned Contracts under the Sale Order and assuming and assigning such Additional

---

[1]  Capitalized terms not otherwise defined in this Motion shall have the meanings ascribed to them in the Bid Procedures Order at Docket No. 254.

Leases to QB Loop.

## Conference

11.     Pursuant to the Sale Order, "[QB Loop] may designate additional designated Assigned Contacts or remove any Designated Assigned Contracts up to thirty (30) days after the Closing in cooperation (a) with the Trustee if the Closing occurs prior to the effective date of a plan or reorganization or liquidation and (b) the plan proponent if the Closing occurs on or after the effective date of a plan of reorganization or liquidation."  [Docket No. 608, ¶ 16].

12.     As of the filing of this Motion, it does not appear that the effective date of the plan has occurred.

13.     Prior to filing this Motion, the undersigned counsel contacted counsel for the Trustee to determine if the Trustee agreed or had any opposition to the relief requested herein.  Counsel for the Trustee indicated that the Trustee was considering the request and has not yet taken a position.

**WHEREFORE,** QB Loop Property LP prays that the Court grant the relief requested in the Motion, and for any other relief QB Loop Property LP is entitled to, in law or equity.

Respectfully submitted,

*/s/ Simon R. Mayer*
Simon R. Mayer
Texas Bar No. 24060243
**LOCKE LORD LLP**
600 Travis St., Suite 2800
Houston, TX 77002
Telephone:  (713) 226-1507
simon.mayer@lockelord.com

*Attorney for QB Loop Property LP*

4

## Certificate of Service

      I certify that on July 10, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on those parties registered for such service, including counsel for the Debtor.

                                          */s/ Simon R. Mayer*
                                          Simon R. Mayer

5

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| GALLERIA 2425 OWNER LLC | § § | Case No. 23-34815 (JPN) |
| Debtor. | § § § | |

### ORDER GRANTING QB LOOP PROPERTY LP'S MOTION FOR ENTRY OF AN ORDER APPROVING THE ASSUMPTION AND ASSIGNMENT OF ADDITIONAL LEASES PURSUANT TO THE SALE ORDER
(Related to Docket No. ___)

CAME ON FOR CONSIDERATION the *Motion for Entry of an Order Approving the Assumption and Assignment of Additional Leases Pursuant to the Sale Order* (the "**Motion**") filed by QB Loop Property LP (the "**QB Loop**") and, after notice and hearing, finding that the Motion is meritorious, it is therefore

**ORDERED** that the Commercial Lease between the Debtor and 2425 West Loop (aka Metwell Design) identified on the Contract & Cure Schedule[1] is hereby designated as a Designated Assigned Contract under the Sale Order.  It is further

**ORDERED** that the Commercial Lease between the Debtor and 2425 West Loop (aka Metwell Design) as a Designated Assigned Contract is hereby assumed and assigned to QB Loop. It is further

**ORDERED** that the Commercial Lease between the Debtor and Jetall Companies, Inc. identified on the Contract & Cure Schedule is hereby designated as a Designated Assigned Contract under the Sale Order.  It is further

---

[1] Capitalized terms not otherwise defined in this Order shall have the meanings ascribed to them in the Motion.

**ORDERED** that the Commercial Lease between the Debtor and Jetall Companies, Inc. as a Designated Assigned Contract is hereby assumed and assigned to QB Loop.  And it is further

**ORDERED** that this Court retains jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

Signed:_____

_____
Jeffrey P. Norman
United States Bankruptcy Judge

137989883v.1

# **EXHIBIT 4**

United States Bankruptcy Court
Southern District of Texas

**ENTERED**
June 22, 2024
Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| IN RE: | § | |
|  | § | **CASE NO: 23-34815** |
| **GALLERIA 2425 OWNER, LLC,** | § | |
|  | § | |
| Debtor. | § | |
|  | § | **CHAPTER 11** |

### ORDER CONFIRMING CHAPTER 11 PLAN OF LIQUIDATION OF THE DEBTOR BY NATIONAL BANK OF KUWAIT, S.A.K.P. NEW YORK BRANCH

**BASED ON THE COURT'S MEMORANDUM OPINION, IT IS HEREBY ORDERED THAT:**

**A. Findings of Fact and Conclusions of Law** The findings of fact and conclusions of law set forth in the Court's Memorandum Opinion are hereby incorporated by reference as though fully set forth herein and constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014.

**B. Eligibility for Relief** The Debtor was and is eligible for relief under section 109 of the Bankruptcy Code.

**C. Confirmation** The Plan is confirmed under section 1129 of the Bankruptcy Code. The Plan Supplement is incorporated by reference into, and is an integral part of, the Plan and this Confirmation Order, and is authorized and approved. NBK is authorized to implement and consummate the Plan, including taking all actions necessary or appropriate to effectuate the Plan, without further authorization except as may be required by the Plan or this Confirmation Order.

**D. Objections** All objections, responses, reservations, statements, and comments to the Plan, other than those resolved, adjourned, or withdrawn with prejudice prior to, or on the record at, the Confirmation Hearing, are overruled on the merits in all respects. All withdrawn objections, if any, are deemed withdrawn with prejudice. All objections to Confirmation not filed and served prior to the deadline for filing objections to the Plan set forth in the Confirmation Hearing Notice, if any, are deemed waived and will not be considered by the Court.

**E. Binding Effect** Effective as of entry of this Confirmation Order and subject to the occurrence of the Effective Date, the Plan, the Plan Supplement, and this Confirmation Order shall bind any Holder of a Claim or Interest and such Holder's respective successors and assigns, whether or not: (a) the Claim or Interest is impaired under the Plan; (b) such Holder has accepted the Plan; (c) such Holder has failed to vote to accept or reject the Plan or voted to reject the Plan; (d) such Holder is entitled to a distribution under the Plan; (e) such Holder will receive or retain any property or interests in property under the Plan; and (f) such Holder has filed a Proof of Claim in this Chapter 11 Case. The Plan, the Plan Supplement, and this Confirmation Order constitute

legal, valid, binding, and authorized obligations of the respective parties and shall be enforceable in accordance with their terms. Pursuant to section 1142(a) of the Bankruptcy Code, the Plan, the Plan Documents, and this Confirmation Order shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

**F. Plan Classification Controlling** The terms of the Plan shall govern the classification of Claims and Interests for purposes of distributions to be made thereunder. The classification set forth on the Ballots tendered to or returned by the Holders of Claims in connection with voting on the Plan: (a) were set forth thereon solely for the purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of Claims and Interests under the Plan for distribution purposes; (c) may not be relied upon by any Holder of a Claim or Interest as representing the actual classification of such Claim or Interest under the Plan for distribution purposes; and (d) shall not be binding on NBK or the Chapter 11 Trustee except for voting purposes.

**G. Allowance of Claims** As provided in Article VII of the Plan, no Claim is or shall be deemed Allowed until the later of the Claims Objection Deadline or the expiration of some other applicable period of limitation fixed by the Bankruptcy Code, Bankruptcy Rules, or Bankruptcy Court, unless otherwise ordered by a Final Order of the Bankruptcy Court or Allowed pursuant to the Plan.

**H. Effective Date** Except as otherwise provided herein, upon the occurrence of the Effective Date, the terms of the Plan, the Plan Supplement, and this Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Estate, the Liquidation Trust, and any and all Holders of Claims against or Interests in the Debtor (irrespective of whether their Claims or Interests are presumed to have accepted or deemed to have rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor.

**I. Distributions** All distributions pursuant to the Plan shall be made in accordance with Article VII of the Plan, and such methods of distribution are approved. The Distribution Agent shall have no duty or obligation to make distributions to any Holder of an Allowed Claim unless and until such Holder executes and delivers, in a form acceptable to the Distribution Agent, any and all documents applicable to such distributions in accordance with Article VI of the Plan.

**J. Retained Assets** Pursuant to Article VI of the Plan, except as otherwise provided in the Plan or in any contract, instrument, release, indenture or other agreement entered into in connection with the Plan, in accordance with Bankruptcy Code § 1123(b)(3), any claims, Causes of Action, defenses and counterclaims that the Debtor may hold against any Person, shall vest in the Liquidation Trust, and the Liquidation Trustee shall retain and may exclusively enforce any and all such claims, causes of action, defenses and counterclaims.

**K. Treatment of Executory Contracts and Unexpired Leases** Notwithstanding any provision in the Plan to the contrary, all Executory Contracts and Unexpired Leases are deemed rejected

unless (i) described in the Plan as to be assumed in connection with Confirmation, (ii) identified on the Schedule of Contracts/Leases, (iii) subject to a motion by the Chapter 11 Trustee to assume (or assume and assign) as of the Effective Date, and (iv) entered into in connection with the Plan. Entry of this Confirmation Order shall constitute a Court order approving the rejection of such executory contracts or unexpired leases, as applicable.

**L. Exemption From Transfer Taxes**  To the fullest extent applicable and permitted by section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of a security, or the making of delivery of an instrument of transfer, provided under the Plan, from the Estate to NBK or any other Person pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax or governmental assessment. The appropriate federal, state or local governmental officials or agents are directed to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the instruments or other documents as set forth in the Plan without the payment of any such tax or governmental assessment.

**M. Filing and Recording**  This Confirmation Order is, and shall be, binding upon and shall govern the acts of all persons or entities including all filing agents, filing officers, title agents, title companies, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required, by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any document or instrument.

Each and every foreign, federal, state, and local government agency is hereby directed to accept any and all documents and instruments necessary, useful, advisable, or appropriate (including financing statements under the applicable uniform commercial code) to effectuate, implement, and consummate the transactions under the Plan.

**N. Tax Withholding**  In accordance with the provisions of the Plan and subject to Article VII.G of the Plan, to the extent applicable, the Distribution Agent shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Distribution Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms the Distribution Agent believes is reasonable and appropriate.

**O. Discharge of Claims and Termination of Interests; Compromise and Settlement of Claims, Interests and Controversies**  Pursuant to section 1141(d) of the Bankruptcy Code and except as otherwise specifically provided in the Plan or this Confirmation Order, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations

3 / 7

of, rights against, and Interests in the Debtor or any of its assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not (i) a Proof of Claim based upon such debt or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (ii) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (iii) the Holder of such a Claim or Interest voted to accept or reject the Plan.

This Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date, and all actions taken to effectuate the Plan, including by any agent, shall be given the same effect as if such actions were performed under the applicable nonbankruptcy laws that govern the documents under which such agent was appointed. In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019 and without any further notice to or action, order, or approval of the Court, after the Effective Date, the Liquidation Trustee may compromise and settle Claims against, and Interests in, the Debtor and its Estate and Causes of Action against other Entities.

**P. Releases, Injunction, Exculpation and Related Provisions Under the Plan** Except to the extent modified by this Confirmation Order, the releases, injunctions, exculpations, and related provisions in Article IX of the Plan are incorporated herein in their entirety, are hereby approved and authorized in all respects, are so ordered, and shall be immediately effective on the Effective Date without further order of this Court or any other party.

The injunction provision in Article IX.E of the Plan will be immediately effective on the Effective Date and is (i) within the jurisdiction of this Court; (ii) necessary to preserve and enforce the exculpation provision in Article IX.C of the Plan, the Estate Release in Article IX.D of the Plan, and the compromises and settlements implemented under the Plan; and (iii) are narrowly tailored to achieve these purposes. Notwithstanding any provision in the Plan, including Article IX.C of the Plan and the definition of Exculpated Party contained in Article I.A.39 of the Plan, "Exculpated Parties" shall mean only the Chapter 11 Trustee and any Related Parties of the Chapter 11 Trustee.

**Q. Post-Confirmation Notice** In accordance with Bankruptcy Rules 2002 and 3020(c), no later than seven (7) days after the Effective Date, NBK shall cause a notice of Confirmation and occurrence of the Effective Date, substantially in the form attached as Exhibit B (the "Notice of Confirmation and Effective Date") to be served on all parties served with the Confirmation Hearing Notice by email or U.S. first-class mail, postage prepaid. The Notice of Confirmation and Effective Date will have the effect of an order of the Court, will constitute sufficient notice of entry of this Confirmation Order and occurrence of the Effective Date to filing and recording officers, and will be a recordable instrument notwithstanding any contrary provision of applicable nonbankruptcy law.

**R. Cancellation of Interests** Pursuant to Article III of the Plan, on the Effective Date, all Interests shall be deemed automatically cancelled and extinguished.

**S. Distribution Record Date** The record date for purposes of making distributions under the Plan on account of Allowed Claims shall be the Confirmation Date or such other date as is announced by the Chapter 11 Trustee, the Liqudiation Trustee or another designated party in a Final Order.

**T. Ad Valorem Taxes** Notwithstanding any provision in the Plan to the contrary, on the Effective Date, any claim held by a governmental unit and Caz Creek TX, LLC for *ad valorem* taxes shall be paid statutory interest accruing from the Petition Date until such taxes are paid in full; *provided*, that any and all *ad valorem* statutory tax liens held by a governmental unit and Caz Creek TX, LLC, whether for prepetition or postpetition tax years, shall be retained until the *ad valorem* taxes are paid in full.

**U. Post-Confirmation Sale of Property** Notwithstanding any provision in the Plan to the contrary, the Bankruptcy Court will consider approval of the sale of the Property post-confirmation and for the sake of a clean record, will enter a separate Final Order with respect to the sale at that time.

**V. Effect of Confirmation Order and Other Orders** Unless expressly provided for herein, nothing in the Plan or this Confirmation Order shall affect any orders entered in this Chapter 11 Case.

**W. Inconsistency** In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control (unless stated otherwise in the Plan Supplement or in this Confirmation Order). In the event of any inconsistency between any of the Plan, Plan Supplement, or the Disclosure Statement on the one hand, and this Confirmation Order on the other hand, this Confirmation Order shall control.

**X. Injunctions and Automatic Stay** Unless otherwise provided in the Plan or in this Confirmation Order, all injunctions or stays in effect in this Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Court, and extant on this Confirmation Date (excluding any injunctions or stays contained in the Plan or this Confirmation Order), shall remain in full force and effect through and including the Effective Date. All injunctions or stays contained in the Plan or this Confirmation Order shall remain in full force and effect in accordance with their terms.

**Y. Authorization to Consummate** NBK and to the extent required the Chapter 11 Trustee are authorized to consummate the Plan and finalize and implement the Plan at any time after the entry of this Confirmation Order subject to satisfaction or waiver of the conditions precedent to consummation set forth in Article VIII of the Plan.

5 / 7

**Z. Substantial Consummation** On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101(2) and 1127(b) of the Bankruptcy Code.

**AA. Severability** Except as set forth in Article VIII of the Plan, the provisions of the Plan, including its release, injunction, exculpation and compromise provisions are mutually dependent and nonseverable. This Confirmation Order constitutes a judicial determination and hereby provides that each term and provision of the Plan are: (i) valid and enforceable pursuant to their terms; (ii) integral to the Plan and may not be deleted or modified without NBK's consent; and (iii) nonseverable and mutually dependent.

**BB. Effect of Non-Occurrence of Effective Date** If the Effective Date does not occur, the Plan shall be null and void in all respects, and nothing contained in the Plan, the Disclosure Statement, or this Confirmation Order shall (i) constitute a waiver or release of any Claims by or Claims against or Interests in the Debtor; (ii) prejudice in any manner the rights of NBK, any Holders of Claims or Interests, or any other Entity; or (iii) constitute an admission, acknowledgment, offer, or undertaking by NBK, any Holders of Claims or Interests, or any other Entity in any respect.

**CC. Chapter 11 Trustee's Actions Post-Confirmation Through the Effective Date** Until the Effective Date, the Chapter 11 Trustee shall continue to manage the estate, subject to the Court's oversight as provided under the Bankruptcy Code, the Bankruptcy Rules, and this Confirmation Order and any order of the Court that is in full force and effect.

**DD. Reports** After the Effective Date, the Chapter 11 Trustee has no obligation to file with this Court or serve on any parties reports that the Estate was obligated to file under the Bankruptcy Code or a prior order of the Court, including monthly operating reports (except for any periods for which a monthly operating report was not filed before the Confirmation Date), ordinary course professional reports, and monthly or quarterly reports for Professionals; *provided*, *however*, that the Chapter 11 Trustee shall continue to comply with the U.S. Trustee's quarterly reporting requirements.

**EE. Conditions to Effective Date** The Plan shall not become effective unless and until the conditions in Article VIII.B of the Plan have been satisfied or waived pursuant to Article VIII.C of the Plan.

**FF. Waiver of Stay** Notwithstanding any Bankruptcy Rule (including Bankruptcy Rules 3020(e) and 6004(h)), this Confirmation Order is effective immediately and not subject to any stay, sufficient cause having been shown.

**GG. Modification of Plan Supplement** Subject to the terms of the Plan and this Confirmation Order, NBK is authorized to modify and amend the Plan Supplement through and including the Effective Date, and to take all actions necessary and appropriate to effectuate the transactions contemplated therein.

**HH. Post-Confirmation Modification of the Plan** Subject to the terms of the Plan and this Confirmation Order, NBK is authorized to amend or modify the Plan at any time prior to the

substantial consummation of the Plan without further order of this Court, but only in accordance with section 1127 of the Bankruptcy Code and Article XI.H of the Plan.

**II. No Waiver/References to and Omissions of Plan Provisions** References to articles, sections, documents and provisions of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan. The failure to include or to refer to any particular article, section, or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, document or provision nor constitute a waiver thereof, an such article, section, document or provision shall have the same validity, binding effect, and enforceability as every other article, section, document, or provision of the Plan, it being the intent of the Court that the Plan be confirmed in its entirety, except as expressly modified herein, and incorporated herein by this reference.

**JJ. Reservation of Rights** The filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by NBK with respect to the Plan shall not be deemed to be an admission or waiver of any rights of NBK, the Chapter 11 Trustee, the Liquidation Trustee, or any other Person with respect to Claims against and Interests in the Debtor.

**KK. Final Order** The provisions of Federal Rule of Civil Procedure 62, as applicable pursuant to Bankruptcy Rule 7062, and Bankruptcy Rule 3020(e) shall not apply to this Confirmation Order. The period in which an appeal with respect to this Confirmation Order must be filed shall commence immediately upon the entry of this Confirmation Order.

**LL. Retention of Jurisdiction** Notwithstanding the entry of this Confirmation Order, from and after the Effective Date, this Court shall retain exclusive jurisdiction over this Chapter 11 Case and all matters arising under, arising out of, or related to, this Chapter 11 Case, including all matters listed in Article XI of the Plan or addressed by this Confirmation Order, as well as for the purposes set forth in section 1142 of the Bankruptcy Code, to the fullest extent legally permissible.

Signed: June 22, 2024

Jeffrey P. Norman
United States Bankruptcy Judge

**THE SOLICITATION MATERIALS ACCOMPANYING THE PLAN OF LIQUIDATION HAVE NOT BEEN APPROVED BY THE BANKRUPTCY COURT AS CONTAINING "ADEQUATE INFORMATION" WITHIN THE MEANING OF 11 U.S.C. § 1125(a). NBK EXPECTS TO SEEK AN ORDER OF THE BANKRUPTCY COURT, AMONG OTHER THINGS: (1) APPROVING THE SOLICITATION OF VOTES AS HAVING BEEN IN COMPLIANCE WITH 11 U.S.C. § 1126(b); AND (2) CONFIRMING THE PLAN OF LIQUIDATION PURSUANT TO 11 U.S.C. § 1129.**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **GALLERIA 2425 Owner, LLC** | § | **Case No. 23-34815 (JPN)** |
| | § | |
| Debtor. | § | **Chapter 11** |
| | § | |
| | § | |

---

## CHAPTER 11 PLAN OF LIQUIDATION OF THE DEBTOR BY
## NATIONAL BANK OF KUWAIT S.A.K.P., NEW YORK BRANCH

**PILLSBURY WINTHROP
SHAW PITTMAN LLP**
Charles C. Conrad
Texas State Bar No. 24040721
Ryan Steinbrunner
Texas State Bar No. 24093201
609 Main Street Suite 2000
Houston, TX 77002
Phone: (713) 276-7600
Facsimile: (713) 276-7634
charles.conrad@pillsburylaw.com
ryan.steinbrunner@pillsburylaw.com

*Counsel for National Bank of Kuwait,
S.A.K.P., New York Branch*

**PILLSBURY WINTHROP
SHAW PITTMAN LLP**
Andrew M. Troop
Federal Bar No. MA547179
Patrick E. Fitzmaurice (admitted *pro hac vice*)
Kwame O. Akuffo (admitted *pro hac vice*)
31 West 52nd Street
New York, NY 10019
Phone: (212) 858-1000
Facsimile: (212) 858-1500
andrew.troop@pillsburylaw.com
patrick.fitzmaurice@pillsburylaw.com
kwame.akuffo@pillsburylaw.com

## INTRODUCTION

National Bank of Kuwait, S.A.K.P., New York Branch, proposes this Chapter 11 Plan of Liquidation pursuant to the provisions of the United States Bankruptcy Code for the resolution of Debtor's outstanding Claims and Interests. All Holders of Claims and Interests are encouraged to read the Plan and any exhibits or supplements attached hereto, or filed by NBK in conjunction with the Plan, in their entirety before voting to accept or reject the Plan.

As set forth more fully below, the Plan proposes that the Debtor's Property be sold through a public auction run by the Chapter 11 Trustee. Pursuant to the Purchase Agreement, NBK has agreed to purchase the Property through a credit bid in the amount of $18,600,000, subject to any higher and better offers that may be received; NBK reserves the right to increase its credit bid.

In general, the Plan provides that if NBK is the Successful Bidder, NBK will make a Cash contribution to the Estate in an amount sufficient to (i) satisfy in full Other Secured Claims and Other Priority Claims; (ii) pay 70% of the Trade General Unsecured Claims in Cash on or after the Effective Date; and (iii) fund the Liquidation Trust. If NBK is not the Successful Bidder, then the Plan provides that the foregoing sums will be paid out of the third-party Purchase Price with the balance being paid to NBK on account of its secured claim against the Debtor.

Capitalized terms not defined in this Introduction shall have the meanings ascribed to them in Article I of the Plan.

PLEASE READ THE PLAN CAREFULLY WITH RESPECT TO HOW YOUR RIGHTS MAY BE AFFECTED.

## ARTICLE I
## DEFINITIONS AND CONSTRUCTION OF TERMS

### A. Defined Terms

1. ***Action*** means Causes of Action and Avoidance Actions.

2. ***Administrative Claim*** means any Claim constituting a cost or expense of administration of the Chapter 11 Case under Bankruptcy Code section 503(b) and that is entitled to priority under Bankruptcy Code section 507(a), including, inter alia, any actual and necessary expenses of preserving the estate, and all fees and charges assessed against the bankruptcy estate under Chapter 123 of Title 28, United States Code.

3. ***Affiliate*** has the meaning set forth in Bankruptcy Code section 101(2).

4. ***Allowed*** means any Claim or Interest: (a) that has been listed in the Debtor's Schedules as liquidated in amount and not disputed or contingent and for which no contrary Proof of Claim has been filed or with respect to which no objection has been filed; (b) expressly allowed (i) by a stipulation with the Chapter 11 Trustee executed before the Confirmation Date and approved by the Court regarding the amount and nature of such Claim, (ii) by a stipulation with the Liquidation Trustee executed after the Confirmation Date and, if necessary, approved by the Court regarding the amount and nature of such Claim or (iii) in any contract or other agreement

entered into or assumed in connection with the Plan; (c) related to a rejected executory contract or unexpired lease that is (i) not a Disputed Claim or (ii) has been allowed by a Final Order; or (d) expressly allowed by a Final Order or pursuant to the Plan.

5. ***Allowed Claim*** means a Claim that is Allowed.

6. ***Auction*** means the sale of the Property that was held in accordance with the Sale and Bid Procedures.

7. ***Avoidance Actions*** means any and all Causes of Action which a trustee, debtor in possession, the Estate or other appropriate party in interest may assert under Bankruptcy Code sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553 (other than those which are released or dismissed as part of and pursuant to the Plan) or under other similar or related state or federal statutes or common law, including fraudulent conveyance laws.

8. ***Bankruptcy Code*** means Title 11 of the United States Code, as amended from time to time.

9. ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure, as amended from time to time and made applicable to the Chapter 11 Case.

10. ***Broker*** means JLL or other broker engaged by the Chapter 11 Trustee to market the Property.

11. ***Business Day*** means any day, other than a Saturday, Sunday, or a legal holiday, as defined in Bankruptcy Rule 9006(a).

12. ***Cash*** means the legal tender of the United States of America or the equivalent thereof, including bank deposits, checks, and cash equivalents, as applicable.

13. ***Cash Contribution*** means the Cash contribution set forth in Article VI(C).

14. ***Cause of Action*** means any and all actions, Claims, rights, defenses, third party claims, damages, executions, demands, crossclaims, counterclaims, suits, choses in action, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims whatsoever, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, Disputed, undisputed, secured or unsecured and whether asserted or assertable directly, indirectly or derivatively, at law, in equity or otherwise, including, but not limited to, the Avoidance Actions.

15. ***Chapter 11 Case*** means the chapter 11 case filed by the Debtor on the Petition Date.

16. ***Chapter 11 Trustee*** means Christopher R. Murray, solely in his capacity as such.

17. ***Claim*** has the meaning set forth in Bankruptcy Code section 101(5).

18. ***Claims Objection Deadline*** means the deadline for objecting to filed Proofs of Claims or scheduled claims, which shall be the sixtieth (60) day following the later of (a) the

Effective Date and (b) the date that a Proof of Claim is filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a holder of such Claim, as the same may be extended by time to time in accordance with Article VII(D).

19.   *Claimant* means the Holder of a Claim.

20.   *Class* means a category of Holders of Claims or Interests as classified in the Plan.

21.   *Confirmation Date* means the date on which the Court enters the Confirmation Order.

22.   *Confirmation Hearing* means the hearing at which the Court will consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

23.   *Confirmation Order* means the order of the Court confirming the Plan.

24.   *Court* means the United States Bankruptcy Court for the Southern District of Texas, Houston Division, or in the event such court ceases to exercise jurisdiction over the Chapter 11 Case, such court as may have jurisdiction with respect to the liquidation of Debtor under Chapter 11 of the Bankruptcy Code.

25.   *Cure Costs* means the payment of Cash by the Purchaser necessary to cure a default of an executory contract or unexpired lease pursuant to Bankruptcy Code section 365(b).

26.   *Debtor* means Galleria 2425 Owner, LLC.

27.   *Disallowed* means, with respect to any Claim or Interest, that such Claim or Interest: (a) has been withdrawn by agreement of the Debtor and the Holder thereof; (b) has been withdrawn by the Holder thereof; (c) has been disallowed by Final Order; or (d) specified in a provision of the Plan not to be Allowed.

28.   *Disallowed Claim* means a Claim, or any portion thereof, that is Disallowed.

29.   *Disclosure Statement* means the disclosure statement for the Plan, as the Disclosure Statement may be amended, supplemented or otherwise modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules and applicable law.

30.   *Disputed* means, with respect to any Claim or Interest, any Claim or Interest that is not yet Allowed.

31.   *Disputed Claim* means a Claim, or any portion thereof, that is Disputed. Under the Plan, a Claim that has been neither Allowed nor Disallowed shall be considered a Disputed Claim.

32.   *Distribution* means a distribution of Cash from the Liquidation Trustee on account of an Allowed Claim.

33.   *Distribution Account Claims* has the meaning set forth in Article VI(E).

34.     ***Distribution Agent*** means the Liquidation Trustee who shall make Distributions and transfers in accordance with the Plan.

35.     ***Effective Date*** means the first Business Day following the date on which all conditions to consummation set forth in Article VIII(B) have been satisfied or waived pursuant to Article VIII(C).

36.     ***Entity*** has the meaning set forth in Bankruptcy Code section 101(15).

37.     ***Estate*** means the estate of the Debtor as defined in section 541 of the Bankruptcy Code.

38.     ***Estate Assets*** means all legal or equitable interests as defined in Bankruptcy Code section 541 or the Plan belonging to the Estate.

39.     ***Exculpated Party*** means: (a) the Chapter 11 Trustee; (b) NBK; (c) the Liquidation Trustee; (d) the Distribution Agent; (e) the Purchaser; (f) each current and former Affiliate of each Entity in clause (a) through the following clause (g); and (g) each Related Party of each Entity in clause (a) through this clause (g).

40.     ***Final Decree*** means the decree contemplated under Bankruptcy Rule 3022.

41.     ***Final Order*** means an order or judgment of the Court as entered on the docket in the Chapter 11 Case, or other court of competent jurisdiction, the operation or effect of which has not been stayed, reversed or amended, and as to which order or judgment (or any reversal, modification or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending; *provided*, *however*, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be filed with respect to such order, shall not cause an order not to be a Final Order.

42.     ***General Unsecured Claim*** means an Unsecured Claim which is not entitled to priority under the Bankruptcy Code, including the NBK Deficiency Claim.

43.     ***Holder*** means a Person or an Entity holding a Claim against or an Interest in the Debtor.

44.     ***Impaired*** means, with respect to a Claim or Interest, or Class of Claims or Interests, "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

45.     ***Insider*** has the meaning set forth in section 101(31) of the Bankruptcy Code.

46.     ***Insider Claims*** means Claims that are held by Insiders. For the avoidance of doubt, the Insider Claims include the following:

| Reference | Claimant | C, D, UL | Est. Claim |
|---|---|---|---|
| POC No. 7 | 2425 WL, LLC | - | $22,968,231.58 |
| POC No. 21 | Ali Choudhri | - | $4,176,657.46 |
| POC No. 22 | Ali Choudhri | - | $1,844,500.45 |
| POC No. 20 | Jetall Companies Inc. | | $3,180,223.30 |
| POC No. 23 | Jetall Capital, LLC | - | $1,699,750.00 |
| | | TOTAL: | $33,869,362.79 |

47. **Interest** means any equity security (as defined in Bankruptcy Code section 101(16)) of Debtor, including, *inter alia*, any rights arising from the issued and outstanding membership interest or the right to purchase membership interest in Debtor.

48. **JLL** means Jones Lang LaSalle.

49. **Lien** has the meaning set forth in Bankruptcy Code section 101(37), and, with respect to any asset, includes, *inter alia*, any mortgage, lien, pledge, charge, security interest or other encumbrance of any kind, or any other type of preferential arrangement that has the practical effect of creating a security interest, in respect of such asset.

50. **Liquidation Trust** means the trust established under Article VI.

51. **Liquidation Trust Agreement** means the agreement to be executed among the Liquidation Trustee and the Chapter 11 Trustee establishing the Liquidation Trust.

52. **Liquidation Trust Assets** means any and all assets of the Liquidation Trust.

53. **Liquidation Trust Fund** means the Remaining Cash transferred to the Liquidation Trust and any other proceeds of the Liquidation Trust Assets.

54. **Liquidation Trustee** means the trustee of the Liquidation Trust.

55. **NBK** means National Bank of Kuwait, S.A.K.P., a banking corporation organized under the laws of Kuwait, acting through its New York branch.

56. **NBK Deficiency Claim** means the Claim of NBK set forth in Article III(B)(g).

57. **NBK Tax Claim** means the Claim of NBK in the aggregate amount of $1,696,384.85 for tax liens imposed against the Property for years 2019 and 2020 pursuant to the Texas Property Tax Code, which liens have been assigned to NBK under that certain confidential settlement agreement, dated August 22, 2022.

58. **Objection Deadline** means the deadline to object to any of: (a) the proposed Cure Costs set forth in the Schedule of Contracts/Leases; (b) the proposed assumption and assignment of any executory contract or unexpired lease; and (c) the proposed sale of the Property pursuant to

the Sale and Bid Procedures. The Objection Deadline shall be set forth in the notice of Auction (as defined in the Sale and Bid Procedures Final Order).

59.     ***Other Priority Claim*** means any Claim against the Debtor entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, excluding Administrative Claims, Professional Fee Claims, Priority Tax Claims or any Claim asserted by an Insider, Affiliate of the Debtor or Related Party to the Debtor.

60.     ***Other Secured Claim*** means any Secured Claim against the Debtor, including a Claim of a governmental unit for the payment of *ad valorem* real property taxes that is secured by property of the Estate. For avoidance of doubt, Other Secured Claim does not include the NBK Secured Claim or any Secured Claim asserted by an Insider.

61.     ***Other General Unsecured Claim*** means any Unsecured Claim against the Debtor that is not a Trade General Unsecured Claim, an Insider Claim, or a Subordinated Claim.

62.     ***Person*** has the meaning set forth in section 101(41) of the Bankruptcy Code.

63.     ***Petition Date*** means December 5, 2023, the date of filing of the Chapter 11 Case.

64.     ***Plan*** means this Chapter 11 Plan of Liquidation with respect to the Debtor, as amended, modified, or supplemented from time to time, together with all addenda, exhibits, schedules, supplements or other attachments.

65.     ***Plan Supplement*** means any supplement to this Plan that is filed with the Court prior to the Confirmation Hearing.

66.     ***Purchaser*** means the buyer of the Property under the Purchase Agreement.

67.     ***Purchase Agreement*** means that certain Asset Purchase Agreement dated as of April 10, 2024, as it may be modified or amended, by and among the Chapter 11 Trustee, as seller, and NBK, as stalking horse bidder or other buyer, which provides for the sale of the Property, and any schedules, exhibits or other documents attached thereto or contemplated thereby, in each case as amended from time to time in accordance with their terms.

68.     ***Purchase Price*** has the meaning given to it in the Purchase Agreement.

69.     ***Priority Claim*** means any Claim entitled to priority in payment pursuant to Bankruptcy Code section 507(a), excluding Administrative Claims or Priority Tax Claims.

70.     ***Priority Tax Claim*** means any Claim entitled to priority in payment pursuant to Bankruptcy Code sections 502(i) and 507(a)(8).

71.     ***Property*** means that certain real property located at 2425 West Loop South, Houston, Texas 77027.

72.     ***Pro-Rata Share*** means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class.

73. **Professional** means any professional employed in the Chapter 11 Case pursuant to Bankruptcy Code sections 327, 328 or 1103 or any professional or other Entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to Bankruptcy Code section 503(b)(4).

74. **Professional Fee Claim** means a Claim by a Professional seeking an award by the Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under Bankruptcy Code sections 330 or 331.

75. **Proof of Claim** means a proof of Claim filed against the Debtor.

76. **Quarterly Fees** means fees payable to the U.S. Trustee.

77. **Related Party** means with respect to a Person, that Person's current and former, direct or indirect, directors, members, managers, officers, control persons, equity holders, partners, participants, managed accounts or funds, fund advisors or managers, investment managers, management companies, affiliates, predecessors, successors, assigns, subsidiaries, principals, employees, agents, trustees, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals and advisors, but does not include the Chapter 11 Trustee or Professionals employed by the Chapter 11 Trustee.

78. **Released Parties** means (a) the Chapter 11 Trustee; (b) NBK; (c) the Liquidation Trustee, and (d) each Related Party of each Entity in clause (a) through this clause (d). For avoidance of doubt, the Debtor, its current and former equity holders and their Affiliates and Related Parties are not Released Parties.

79. **Releasing Parties** means, collectively, and in each case solely in their capacity as such, each of the Released Parties.

80. **Remaining Cash** means the Cash transferred to the Liquidation Trust in accordance with Article VI(E).

81. **Sale** means the sale of the Property under the Sale and Bid Procedures.

82. **Sale and Bid Procedures** means the Final Order setting forth the requirements of a qualifying bidder and the manner in which bidding will occur at the Auction.

83. **Schedules** means, collectively, the (a) schedules of assets and liabilities and (b) statements of financial affairs filed pursuant to section 521 of the Bankruptcy Code filed at docket number 70 in the Chapter 11 Case.

84. **Schedule of Contracts/Leases** means the schedule of executory contracts and unexpired leases assumed by the Debtor and to be assigned to the Purchaser in connection with the Purchase Agreement, which schedule shall be an attachment to the Purchase Agreement.

85. **Secured Claim** means: (a) any Claim that is secured by a Lien on property in which the Estate has an interest, which Liens are valid, perfected and enforceable under applicable law or by reason of a Final Order, or that is subject to setoff under Bankruptcy Code section 553, to

the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to Bankruptcy Code section 506(a); and (b) any Claim which is Allowed under the Plan as a Secured Claim.

86.     **Subordinated Claims** means any Claim that is not a Class 1, 2, 3, 4, 5 or 6 Claim/that is the Other Secured Claims, Priority Claims, the NBK Tax Claim, NBK Secured Claim, Trade General Unsecured Claims and Other General Unsecured Claims.

87.     **Successful Bid** means the offer accepted for the Property in accordance with the Sale and Bid Procedures.

88.     **Successful Bidder** means the Qualifying Bidder who makes the Successful Bid.

89.     **Trade General Unsecured Claims** means any Claim against the Debtor for goods and repair, maintenance, and utility services provided to the Debtor prior to the Petition Date by a party other than the Debtor, an Affiliate of the Debtor, or a Related Party to the Debtor.  For the avoidance of doubt, the Trade General Unsecured Claims include the following (subject to being Allowed pursuant to the procedures set forth in this Plan):

| Reference | Claimant | C, D, UL | Est. Claim |
|-----------|----------|----------|------------|
| Sch. 3.2 | ADT | - | $1,487.00 |
| Sch. 3.4 | Ash Automated Control Systems, LLC | - | $1,548.31 |
| Sch. 3.5 | CFI Mechanical | - | $668.44 |
| POC No. 8 | Cirro Electric | - | $62,405.41 |
| Sch. 3.7 | City of Houston Water | - | $6,126.00 |
| Sch. 3.8 | CNA Insurance Co. | - | $0.00 |
| Sch. 3.9 | Comcast | - | $300.00 |
| Sch. 3.10 | Datawatch Systems | - | $22,900.00 |
| Sch. 3.11 | Environmental Coalition Inc. | D, UL | $800.00 |
| Sch. 3.12 | Ferguson Facilities Supplies | - | $2,001.00 |
| Sch. 3.13 | Firetron | - | $30,000.00 |
| Sch. 3.14 | First Insurance Funding | - | $5,507.36 |
| Sch. 3.17 | HNB Construction | D, UL | $84,853.00 |
| Sch. 3.19 | Kings 111 Emergency Communications | - | $315.00 |
| Sch. 3.21 | Logix Fiber Networks | - | $323.42 |
| Sch. 3.22 | Mueller Water Treatment | - | $950.00 |
| Sch. 3.23 | Nationwide Security | - | $32,549.70 |
| Sch. 3.25 | Smart Office Solutions | - | $1,877.00 |
| Sch. 3.26 | T&R Mechanical | - | $4,216.34 |

| Sch. 3.27 | TKE (TK Elevator Corporation) | - | $76,935.00 |
| Sch. 3.28 | Waste Management | - | $456.00 |
| Sch. 3.29 | Zindler Cleaning Service Co. | - | $4,221.00 |
| | | TOTAL: | $340,439.98 |

90.     ***Transferred Actions*** means all Actions of the Estate other than Causes of Action and Avoidance Actions released, enjoined or exculpated under the Plan. All such Transferred Actions will be transferred to the Liquidation Trust on the Effective Date.

91.     ***Unclaimed Property*** means any distribution of Cash or any other property made to the Holder of an Allowed Claim pursuant to the Plan that is returned to the Debtor, the Distribution Agent, or the Liquidation Trustee as undeliverable and no appropriate forwarding address is received prior to the date on which the Final Decree is entered in the Chapter 11 Case.

92.     ***Unimpaired*** means a Claim that is not Impaired within the meaning of Bankruptcy Code section 1124.

93.     ***Unsecured Claim*** means a Claim that is not a Secured Claim, other than Administrative Claims, Other Secured Claims, Priority Tax Claims, and Professional Fee Claims.

94.     ***U.S. Trustee*** means the United States Trustee for Region 7.

**B.     Exhibits and Schedules.**  All exhibits and schedules to the Plan are incorporated into and are a part of the Plan.

**C.     Rules of Interpretation and Construction.**  For purposes of the Plan, (a) any reference in the Plan to an existing document or exhibit filed or to be filed means that document or exhibit as it may have been or may be amended, modified, or supplemented; (b) unless otherwise specified, all references in the Plan to sections, articles, and exhibits are references to sections, articles, or exhibits to the Plan; (c) the words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan in its entirety and not to any particular portion of the Plan; (d) captions and headings contained in the Plan are inserted for convenience and reference only, and are not intended to be part of or to affect the interpretation of the Plan; (e) wherever appropriate from the context, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neutral gender shall include the masculine, feminine, and neutral gender; and (f) the rules of construction outlined in Bankruptcy Code section 102 and in the Bankruptcy Rules shall apply to the Plan. In addition, unless otherwise indicated herein, (i) all references to dollars are to United States dollars and (ii) all amounts set forth in the Plan, including, inter alia, with respect to shares, dollar amounts and percentages, shall be subject to rounding and other immaterial changes.

<div align="center">

**ARTICLE II**
**ADMINISTRATIVE AND PRIORITY CLAIMS**

</div>

**A.     Allowed Administrative Claims.** Except to the extent that a Holder of an Allowed Administrative Claim agrees to a different treatment, the Holders of Allowed Administrative

Claims will receive Cash equal to the unpaid portion of such Allowed Administrative Claim on the later of the (a) the Effective Date, (b) the date on which said Entity becomes a holder of such Allowed Administrative Claim, or (c) such date as such Entity may agree to with the Chapter 11 Trustee or Liquidation Trustee; *provided*, *however*, that Administrative Claims representing liabilities incurred in the ordinary course of business by the Estate or liabilities arising under other obligations incurred by the Estate whether or not incurred in the ordinary course of business, shall be paid by the Estate in accordance with the terms and subject to the conditions of any orders or agreements governing, instruments evidencing, or other documents relating to, such transactions.

      **B.**   **Administrative Claims Bar Date.** Notwithstanding Bankruptcy Code section 503(a), any person seeking payment of an asserted Administrative Claim under Bankruptcy Code section 503, other than a governmental unit seeking payment of an expense under sections 503(b)(1)(B) or (C), that was incurred on or before the Effective Date but which has not been paid as of the Effective Date, shall be required to file an application for the allowance of final payment of said claim on or before forty-five (45) calendar days after the Effective Date, and any such claim not filed by that date shall be forever barred and discharged. The provisions of this Article II shall apply to any Professional applying for the allowance and payment of a Professional Fee Claim.

      **C.**   **Allowed Priority Tax Claims.** Pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, unless otherwise agreed by the Holder of an Allowed Priority Tax Claim and the Chapter 11 Trustee or Liquidation Trustee, as applicable, each Holder of an Allowed Priority Tax Claim will, in full and final satisfaction of that portion of its Allowed Priority Tax Claim that is due and payable on the Effective Date, either (i) receive Cash equal to the amount of such Allowed Claim on or after the Effective Date or (ii) otherwise be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

<div align="center">

**ARTICLE III**
**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

</div>

      Except for the Claims addressed in Article II, all Claims and Interests are classified in the Classes set forth below in accordance with Bankruptcy Code section 1122. A Claim or an Interest is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

**A. Summary of Classification**

      Below is a summary of the classification of Claims against and Interests in the Debtor:

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 2 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 3 | NBK Tax Claim | Impaired | Deemed to Reject |
| 4 | NBK Secured Claim | Impaired | Entitled to Vote |
| 5(a) | Trade General Unsecured Claims | Impaired | Entitled to Vote |
| 5(b) | Other General Unsecured Claims | Impaired | Entitled to Vote |
| 6 | Insider Claims | Impaired | Deemed to Reject |
| 7 | Subordinated Claims | Impaired | Deemed to Reject |
| 8 | Interests | Impaired | Deemed to Reject |

**B. Treatment of Classes of Claims and Interests**

    **a.**     **Unclassified Claims.**  Administrative Claims and Priority Tax Claims are treated in accordance with Article II and Bankruptcy Code sections 1129(a)(9)(A) and 1129(a)(9)(C), respectively. Such Claims are Unimpaired under the Plan and, in accordance with section 1123(a)(1) of the Bankruptcy Code, are not designated as Classes of Claims for purposes of this Plan or sections 1123, 1124, 1126 and 1129 of the Bankruptcy Code.

    **b.**     **Class 1: Other Secured Claims.** On or after the Effective Date, each Holder of an Allowed Other Secured Claim shall receive Cash in an amount equal to the Allowed amount of such Claim or, at the discretion of the Liquidation Trustee, shall be given the property securing its claim in full satisfaction of that claim.

    **c.**     **Class 2: Other Priority Claims.**  On or after the Effective Date, each Holder of an Allowed Other Priority Claim shall receive Cash in an amount equal to the Allowed amount of such Claim.

    **d.**     **Class 3: NBK Tax Claim.**  The NBK Tax Claim shall be Allowed in an amount equal to $1,696,384.85. If NBK is not the Purchaser of the Property, on or after the Effective Date, NBK shall receive Cash in an amount equal to the Allowed amount of the NBK Tax Claim. NBK shall not receive a distribution on account of the NBK Tax Claim if it is the Purchaser of the Property.

    **e.**     **Class 4: NBK Secured Claim.**  The NBK Secured Claim shall be Allowed in an amount equal to: (a) $18,600,000 (which is the appraised value of the Property according to the most recent appraisal obtained by NBK); or (b) any other amount established at the Auction as determined by the Successful Bid. If NBK is not the Purchaser of the Property, on or after the Effective Date, NBK shall receive in full and final satisfaction of the NBK Secured Claim: (x) the Remaining Cash and (y) any excess proceeds after payment of the Distribution Account Claims. NBK shall not receive a distribution on account of the NBK Secured Claim if it is the Purchaser of the Property

    **f.**     **Class 5(a): Trade General Unsecured Claims.** Each Holder of a Trade General Unsecured Claim shall receive in full and final satisfaction of such Claim (x) Cash equal to 70% of the Allowed amount of such Claim, and (y) a *Pro-Rata* Share of the Liquidation Trust Assets.

    **g.**     **Class 5(b): Other General Unsecured Claims.** Each Holder of an Other General Unsecured Claim shall receive in full and final satisfaction of such Claim, a *Pro-Rata* Share of the Liquidation Trust Assets; *provided*, *however*, NBK shall be deemed to have an Other General Unsecured Claim equal to 90% of the Allowed amount of the NBK Deficiency Claim as determined by the Successful Bid and in accordance with section 506 of the Bankruptcy Code.  The NBK Deficiency Claim shall not be subject to objection, disallowance, offset, reduction or subordination.

    **h.**     **Class 6: Insider Claims.** On the Effective Date, all Insider Claims shall be canceled and extinguished. Holders of Class 6 Insider Claims shall not receive or retain any property under the Plan on account of such Claims.

**i.    Class 7: Subordinated Claims.** On the Effective Date, all Subordinated Claims shall be canceled and extinguished, and Holders of such Claims shall not receive or retain any property under the Plan on account of such Subordinated Claims against the Debtor.

**j.    Class 8: Interests.** On the Effective Date, all Interests in the Debtor shall be canceled and extinguished, and holders of such Interests shall not receive or retain any property under the Plan on account of such Interests in the Debtor.

<h1 style="text-align:center">ARTICLE IV<br>ACCEPTANCE OR REJECTION OF THE PLAN</h1>

**A.    Presumed Acceptance by Unimpaired Classes.** Holders of Claims in Classes 1 and 2 are Unimpaired under the Plan, and therefore are conclusively presumed to accept the Plan under section 1126(f) of the Bankruptcy Code.

**B.    Impaired Classes of Claims Entitled to Vote.** Holders of Claims in Classes 4, 5(a) and 5(b) are Impaired and are entitled to vote to accept or reject the Plan.

**C.    Classes Deemed to Reject the Plan.** Holders of Claims in Classes 3, 6 and 7 and Holders of Interests in Class 8 are not entitled to receive or retain any property under the Plan. Under Bankruptcy Code section 1126(g), Holders of Claims in Classes 6 and 7, and Holders of Interests in Class 8 are deemed to reject the Plan, and therefore their votes will not be solicited.

**D.    Acceptance of Impaired Class.** Pursuant to Bankruptcy Code section 1126(c), an Impaired Class of Claims shall have accepted the Plan if it is accepted by Holders of at least two-thirds (2/3) in dollar amount and one-half (1/2) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject this Plan.

**E.    Cramdown.** If all applicable requirements for confirmation of this Plan are met as set forth in Bankruptcy Code section 1129(a)(1) through (16) except subsection (a)(8) thereof, NBK intends to request confirmation of this Plan in accordance with Bankruptcy Code section 1129(b), notwithstanding the failure to satisfy the requirements of section 1129(a)(8).

<h1 style="text-align:center">ARTICLE V<br>EXECUTORY CONTRACTS AND LEASES</h1>

**A.    Executory Contracts and Unexpired Leases.** Except as otherwise provided herein, on the Effective Date, each executory contract and unexpired lease not previously rejected, assumed, or assumed and assigned shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such executory contract or unexpired lease: (i) is specifically described in the Plan as to be assumed in connection with confirmation of the Plan, (ii) is identified on the Schedule of Contracts/Leases; (iii) is subject to a motion filed by the Chapter 11 Trustee to assume (or assume and assign) such unexpired lease or executory contract as of the Effective Date; or (iv) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; *provided*, *however*, that NBK as plan proponent in cooperation with the Purchaser shall have the right to amend the Schedule of Contracts/Leases up to thirty days (30) after the Effective Date or by any other means approved by the Court or to

delete any executory contract or unexpired lease listed therein, thus providing for its rejection pursuant to this Article V or to add any executory contract or unexpired lease, thus providing for its assumption and assignment pursuant to this Article V and the terms of the Purchase Agreement. Such rejection or assumption and assignment shall be effective upon the filing and serving of a final version of the Schedule of Contracts/Leases, which final Contract/Lease Schedule shall be filed and served no later than thirty days (30) after the Effective Date.

**B.** **Assumption of Executory Contracts and Unexpired Leases.** Entry of the Confirmation Order shall constitute the approval, pursuant to Bankruptcy Code section 365(a), of the assumption of the executory contracts and unexpired leases assumed as of the Effective Date.

**C.** **Rejection Claims.** If the rejection of an executory contract or unexpired lease pursuant to the Plan results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Debtor or any property to be distributed under the Plan, unless a proof of claim is filed with the Court and served upon the Trustee or the Liquidation Trustee, as applicable, on or before the date that is thirty (30) calendar days after the Effective Date.

**D.** **Cure of Defaults for Assumed Contracts and Leases.** The cure of all defaults under executory contracts and unexpired leases to be assumed and assigned under the Purchase Agreement, including the resolution of all objections to the adequacy of assurance of future performance under such contracts and leases and as to the adequacy of amounts proposed to cure defaults under such contracts and leases filed by the Objection Deadline, if any, shall be governed by the terms and conditions of the Sale and Bid Procedures Final Order and other orders of the Court. All such Cure Costs shall be satisfied by the Purchaser.

## ARTICLE VI
## MEANS OF IMPLEMENTATION OF THE PLAN

**A.** **Sale of Property.** The Confirmation Order shall authorize the consummation of the Sale pursuant to Bankruptcy Code sections 363, 365, 1123(a)(5), 1123(b)(4), 1129(b)(2)(A), 1141(c) and 1146(a) under the terms and conditions of the Purchase Agreement free and clear of any Claims, Liens, Interests, encumbrances, executory contracts or unexpired leases of real or personal property other than Assumed Liabilities or Contracts as defined in the Purchase Agreement. Any Sale conducted via the Auction shall be conducted in accordance with applicable orders of the Court, including, without limitation, the Sale and Bid Procedures (prior to entry of the Confirmation Order). Upon Confirmation, the Chapter 11 Trustee shall be authorized and directed to take any action necessary to consummate the Sale.

**B.** **Management of Property.** Upon entry of the Confirmation Order, JLL shall continue to manage the Property and pay any expenses associated with the Property until such time as the Sale is consummated pursuant to the Purchase Agreement.

**C.** **Cash Contribution.** If NBK is the Successful Bidder, on or after the Effective Date, NBK shall contribute Cash to the Estate in the amounts necessary for the following (the "**Cash Contribution**"): (i) payment of the Distribution Account Claims in full; (ii) initial funding

14

of the Liquidation Trust in the amount of $150,000.00; and (iii) payment of $238,307.99 to Trade General Unsecured Claims, as provided for in Article III(B)(f).

**D.    Dissolution of Debtor.** The Debtor shall be dissolved effective upon filing a certificate of dissolution (or its equivalent) with the secretary of state or similar official jurisdiction of organization of the Debtor after the Effective Date. Any such certificates shall be executed for Debtor by the Liquidation Trustee. On the Effective Date, each of the managers and any other officers or directors of the Debtor shall be deemed to have resigned from all of their respective positions. No separate vote or authorization shall be required to cause or show the authority for the Debtor to be dissolved.

**E.    Distribution Account.** A Distribution Account shall be established to receive any proceeds of the Sale and/or Cash Contribution.  If NBK is not the Purchaser of the Property, on or after the Effective Date, the Distribution Agent shall receive the proceeds of the Sale and: (a) make distributions from the Distribution Account to Holders of Allowed Administrative Claims (including any commission for the Broker), Allowed Priority Tax Claims, Allowed Other Secured Claims, Allowed Other Priority Claims, the NBK Tax Claim, and the NBK Secured Claim in accordance with the Plan (collectively, the "**Distribution Account Claims**"); and (b) transfer the Remaining Cash to the Liquidation Trust; *provided*, *however*, if NBK is the Purchaser of the Property, the Distribution Agent shall receive the Cash Contribution and make distributions to all other Holders of the Distribution Account Claims, except the Holder of the NBK Tax Claim. The Liquidation Trustee shall be authorized to hold and control a Distribution Account for the purpose of administering and resolving Disputed Administrative Claims and distributing Cash to Holders of Administrative Claims if and when they become Allowed after the Administrative Claims bar date approved by the Court.

**F.    Liquidation Trust.** Except as otherwise provided for herein, the Liquidation Trust shall be established on the Effective Date and shall on or after the Effective Date receive: (a) the Liquidation Trust Fund; (b) the Transferred Actions; and (c) any other assets conveyed to the Liquidation Trust under the Plan, all of which assets shall vest in the Liquidation Trust on the Effective Date free and clear of all Claims, encumbrances and Interests in accordance with section 1141 of the Bankruptcy Code. The Liquidation Trust shall be the representative of the Estate pursuant to section 1123(b)(3) of the Bankruptcy Code.

**G.    Liquidation Trustee Powers and Duties.** The Liquidation Trustee shall administer the Liquidation Trust and its assets in accordance with this Plan and the Liquidation Trust Agreement, and shall be responsible for, among other things, as Distribution Agent, making distributions required under this Plan.  From and after the Effective Date and continuing through the date of entry of a Final Decree, the Liquidation Trustee shall: (a) have and be entitled to exercise all rights and powers of the Debtor and the Estate, including but not limited to those provided for in the Bankruptcy Code, including section 1107 thereof; (b) possess all rights and powers granted in the Liquidation Trust Agreement, including the authority to direct the affairs of, and dissolve, the Debtor (and all bylaws, articles or certificates of incorporation, and related corporate documents are deemed amended by this Plan to permit and authorize such appointment); (c) possess the rights of a party in interest pursuant to section 1109(b) of the Bankruptcy Code for all matters arising in, arising under, or related to the Chapter 11 Cases and, in connection therewith, shall (i) have the right to appear and be heard on matters brought before the Court or other courts,

(ii) be entitled to notice and opportunity for hearing on all such issues, (iii) participate in all matters brought before the Court, and (iv) receive notice of all applications, motions, and other papers and pleadings filed in the Court; (d) have the authority to act as and for the Debtor in all adversary proceedings and contested matters pending in the Court and in all actions and proceedings pending elsewhere; (e) have the power to prosecute, compromise and settle the Transferred Actions; (f) have the right to object to Claims; (g) have the authority to retain such personnel or professionals (including, without limitation, legal counsel, financial advisors or other agents) as it deems appropriate and compensate such personnel and professionals as it deems appropriate, all without prior notice to or approval of the Court; and (h) borrow money for such purposes as financing the costs of prosecuting the Transferred Actions, on terms and conditions it deems appropriate, upon Court approval after notice and hearing. Professionals and personnel retained or employed by the Liquidation Trust or the Liquidation Trustee need not be disinterested as that term is defined in the Bankruptcy Code.

**H.** **Dissolution of Liquidation Trust.** The Liquidation Trust shall be discharged or dissolved as set forth in the Liquidation Trust Agreement.

**I.** **Application of Sale Proceeds and Powers of Purchaser.** In accordance with the Plan and the Purchase Agreement, the Purchaser or the Chapter 11 Trustee, as applicable, shall, among other things: (a) deliver the proceeds of the Sale to the Distribution Agent to (i) satisfy Allowed Distribution Account Claims and (ii) fund the Liquidation Trust; (b) satisfy all costs to cure and provide adequate assurance of performance with respect to all executory contracts and unexpired leases assumed and assigned to Purchaser; and (c) direct the distribution of the Remaining Cash, if necessary.

**J.** **Transfer of Excluded Assets.** On the Effective Date, the Debtor or Chapter 11 Trustee, as applicable, shall transfer to the Liquidation Trust for Holders of Claims in Classes 4, 5(a) and 5(b), the Transferred Actions and those Excluded Assets (as defined in the Purchase Agreement) not otherwise provided in the Plan.

**K.** **Causes of Action and Avoidance Actions.** Other than Causes of Action and Avoidance Actions released, enjoined or exculpated under Article IX, all Causes of Action and Avoidance Actions shall automatically be transferred to and become property of the Liquidation Trust. Pursuant to section 1123(b)(3) of the Bankruptcy Code, the Liquidation Trustee (as a representative of the Estate) will have the right to retain, enforce and prosecute such Transferred Actions against any Person, Entity, Affiliate or Insider of the Debtor, that arose before the Effective Date. The Debtor shall provide to the Liquidation Trustee copies of all its books and records as may be necessary, in the Liquidation Trustee's reasonable discretion, to identify, analyze and prosecute such Transferred Actions.

### ARTICLE VII
### CLAIMS AND DISTRIBUTIONS

**A.** **Distribution Agent.** On the Effective Date, the Liquidation Trustee shall serve as Distribution Agent for all Distributions required under the Plan.

**B. Time and Manner of Distributions.** Except as set forth herein or ordered by the Court, on the Effective Date, the Liquidation Trustee shall establish deposit and reserve accounts for the Holders of Allowed Claims to make payments to such Holders in accordance with this Plan. All Distributions to be made or otherwise reserved pursuant to this Plan shall be held by the Liquidation Trust in trust in such accounts for Holders of Allowed Claims entitled to receive Distributions.

**C. Delivery of Distributions.** Distributions to be made to Holders of Allowed Claims shall be made at (a) the address of each Holder as set forth in the Schedules filed with the Court unless superseded by the address set forth on proof(s) of Claim filed by such Holder, or (b) the last known address of such Holder if no proof of Claim is filed and if the Chapter 11 Trustee or the Liquidation Trustee has been notified in writing of a change of address. If any Distribution is returned as undeliverable, the Liquidation Trust may, in its discretion, make such efforts to determine the current address of the Holder of the Claim or Interest with respect to which the Distribution was made as the Liquidation Trust deems appropriate, but no Distribution to any Holder shall be made unless and until the Liquidation Trust has determined the then-current address of the Holder, at which time the Distribution to such Holder shall be made to the Holder without interest. Amounts in respect of any undeliverable Distributions made through or by the Liquidation Trust shall be returned and held in trust by, the Liquidation Trust until such Distributions are claimed or are deemed to be Unclaimed Property under section 347(b) of the Bankruptcy Code or otherwise distributed as set forth herein.

**D. Claims Objection.** The Liquidation Trustee shall file, prosecute, litigate, settle or withdraw objections to any Claim. Objections to claims shall be filed by the Claims Objection Deadline unless extended by the Court or agreement with the holder of a Claim. No party in interest, including the Debtor, shall have the authority to file, prosecute, litigate, settle or withdraw objections to any Claim.

**E. Claims Estimation.** The Liquidation Trustee may request estimation or liquidation of any Disputed Claim that is contingent or unliquidated pursuant to Bankruptcy Code section 502(c); *provided*, *however*, that the Court shall determine (a) whether such Disputed Claim is subject to estimation pursuant to Bankruptcy Code section 502(c) and (b) the timing and procedures for such estimation proceedings, if any.

**F. Disputed Claims Reserves.** On and after the Effective Date, the Liquidation Trustee may establish and maintain reserves for all Disputed Claims. For purposes of establishing a reserve, Cash will be set aside in the applicable deposit account equal to the amount that would have been distributed to the Holders of Disputed Claims in such Class had their Disputed Claims been deemed Allowed Claims on the Effective Date, or such other amount as may be approved by the Court upon motion of the Liquidation Trustee. If any such Disputed Claim becomes an Allowed Claim by Final Order, the relevant portion of the Cash held in reserve therefor shall be distributed by the Liquidation Trustee to the Claimant. The balance of such Cash, if any, remaining after all Disputed Claims have been resolved, shall be distributed by the Liquidation Trustee to Holders of Allowed Claims in Classes 4, 5(a) and 5(b) on account of their *Pro-Rata* Share of such amount. No Distributions shall be made with respect to a Claim that is a Disputed Claim pending resolution of the dispute by Final Order.

**G.** **Withholding Taxes.** Any federal, state, or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from Distributions hereunder. All Persons holding Claims shall have an affirmative duty and be required to provide any information necessary to effect the withholding of such taxes, including its federal tax identification number or social security number.

**H.** **Setoffs.** Except as otherwise provided for herein, the Liquidation Trustee may, but shall not be required to, set off against any Claim and the Distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that the Debtor or its Estate may have against the Holder of such Claim, but neither the failure to do so nor the allowance of a Claim hereunder shall constitute a waiver or release by the Debtor, the Liquidation Trustee or the Estate of any Claim they may have against such Creditor; *provided* that such right of setoff shall be subject to this Article VII and in no event shall the Debtor or the Liquidation Trustee set off, or be permitted to set off, against any Claims Allowed under this Plan.

**I.** **Unclaimed Distributions.** All property distributed on account of Claims must be claimed prior to the date on which the Court enters the Final Decree. All Unclaimed Property will be retained by and will vest in the Liquidation Trust for distribution to Holders of Allowed Claims in Classes 4, 5(a) and 5(b). Pursuant to section 1143 of the Bankruptcy Code, all Claims in respect of Unclaimed Property shall be deemed Disallowed and the Holder of any Claim Disallowed in accordance with this Article VII(I) will be forever barred, expunged, estopped and enjoined from asserting such Claim in any manner against the Debtor, the Distribution Agent, the Liquidation Trustee, NBK, or the Purchaser, or their respective assets.

**J.** **De Minimis Distribution.** No Cash payment of less than twenty-five ($25.00) dollars shall be made to any Holder of an Allowed Claim on account of such Allowed Claim.

**K.** **Satisfaction of Claims**. Except as otherwise provided in the Plan, any distributions and deliveries to be made on account of Allowed Claims under the Plan shall be in complete and final satisfaction, settlement, and discharge of and exchange for such Allowed Claims.

**L.** **No Fractional Distributions.** Cash distributions of fractions of dollars will not be made; rather, whenever any payment of a fraction of a dollar would be called for, the actual payment made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down. To the extent that Cash remains undistributed as a result of the rounding of such fraction to the nearest whole cent, such Cash shall be treated as Unclaimed Property pursuant to Article VII(I).

## ARTICLE VIII
## CONDITIONS TO CONSUMMATION OF THE PLAN

**A.** **Confirmation Order.** The Confirmation Order shall not be entered until the Court enters an order approving the Sale of the Property in accordance with the Sale and Bid Procedures, and the Plan Supplement and all of the schedules, documents, and exhibits contained therein, and all other schedules, documents, supplements and exhibits to the Plan, if any, shall have been filed.

**B.** **Conditions to the Effective Date.** The Plan shall not be consummated, and the Effective Date shall not occur, until the following conditions have occurred or been waived (if waivable):

    **a.** the Confirmation Order shall have been entered and shall not be stayed, vacated, or otherwise rendered ineffective by order of a court of competent jurisdiction;

    **b.** all conditions precedent under the Purchase Agreement shall have been satisfied;

    **c.** the transactions contemplated in the Purchase Agreement shall have been consummated;

    **d.** the Liquidation Trustee shall have been appointed, the Liquidation Trust Agreement shall have been executed, and the Liquidation Trust shall have received the Liquidation Trust Fund; and

    **e.** no order of a court shall have been entered and shall remain in effect restraining NBK from consummating the Plan, or if it is the Successful Bidder, taking title to the Property directly or through a designee.

**C.** **Waiver of Conditions.** Each of the conditions set forth in Article VIII(B) may be waived at any time by the Successful Bidder, without notice, leave or order of the Court or any further action other than proceeding to confirm or consummate the Plan. The Successful Bidder's failure to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

**D.** **Effect of Failure of Conditions; Order Denying Confirmation.** If one or more of the conditions specified in Article VIII(B) have not been satisfied (or waived) or if the Allowed NBK Secured Claim has not been paid in full where NBK is not the Successful Bidder, upon notification submitted by the Chapter 11 Trustee to the Court: (a) the Confirmation Order shall be vacated, (b) no Distributions under the Plan shall be made, (c) Estate Assets shall revest in the Estate, and (d) all Holders of Claims and Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred; (e) the Purchase Agreement shall become null and void; and (f) the Estate's obligations with respect to the Claims and Interests shall be as if the Confirmation Order had not been entered.

**ARTICLE IX**
**EFFECT OF CONFIRMATION**

**A.** **Discharge.** Pursuant to section 1141(d)(3) of the Bankruptcy Code, confirmation of the Plan will not discharge Claims against the Debtor.

**B.** **Compromise and Settlement of Claims and Interests.** Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to this Plan, the provisions of this Plan, including the settlement of all Claims, Interests, or controversies among the Debtor, the Estate and NBK, shall constitute an integrated and global good faith compromise of all Claims, Interests and controversies relating to the contractual, legal and subordination rights that a Holder of a Claim or Interest may have

with respect to any Allowed Claim or Allowed Interest, or any distribution to be made on account of such Allowed Claim or Allowed Interest or any distribution to be made on account of such Allowed Claim or Allowed Interest. The entry of the Confirmation Order shall constitute the Court's integrated and global approval of the compromise or settlement of all such Claims, Interests and controversies, as well as a finding by the Court that such compromise or settlement is in the best interest of the Debtor, its Estate and Holders of Claims and Interests and is fair, equitable and is within the range of reasonableness. Subject to the provisions of this Plan governing distributions, all distributions made to holders of Allowed Claims and Allowed Interests in any Class are intended to be and shall be final.

**C.     Exculpation. Except as otherwise provided in the Plan, to the maximum extent permitted by the Bankruptcy Code and applicable law, no Exculpated Party shall have or incur any liability to any Person, including, any Holder of a Claim or Interest or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys or affiliates or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, filing, negotiating, prosecuting, administering, formulating, implementing, soliciting support or acceptance of, confirming or consummating this Plan, the Purchase Agreement, or the property to be distributed under this Plan, including all activities leading to the promulgation and Confirmation of the Plan, the Disclosure Statement (including any information provided or statement made in the Disclosure Statement or omitted therefrom), or any contract, instrument, release or other agreement or document created in connection with or related to the Plan or the administration of the Debtor or this Chapter 11 Case; *provided, however,* that the foregoing exculpation shall not apply to any act of gross negligence or willful misconduct.**

**D.     Estate Releases. Except as otherwise provided in the Plan or the Confirmation Order, on the Effective Date, and for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtor and this Estate will be deemed to have forever released, waived and discharged the Released Parties from any and all Actions, Claims, obligations, suits, judgments, damages, demands, debts, rights, and liabilities, whether for tort, contract, violations of federal or state securities laws, or otherwise, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or part on any act, omission, transaction, event or other occurrence, including actions in connection with indebtedness for money borrowed by the Debtor, taking place on or prior to the Effective Date in any way relating to the Debtor, the Chapter 11 Case, or the Plan. This release does not release any Action, Claim, obligation, suit, judgment, damages, demands, debts, rights, and liabilities of a Released Party arising under or pursuant to the Plan or Purchase Agreement, and the contracts, instruments, releases and other agreements delivered in connection with the Plan or Purchase Agreement, which may be enforced only by the Chapter 11 Trustee, NBK, the Purchaser, the Distribution Agent or the Liquidation Agent, as applicable.**

**E.     Injunction. Except as otherwise provided herein, on the Effective Date, the Confirmation Order shall constitute an injunction permanently enjoining any Person (excluding the Liquidation Trustee) that has held, currently holds or may hold a Claim,**

Action or liability that is released pursuant to Article IX(D) from enforcing or attempting to enforce any such Claim, Action or liability against any Released Party or any of their respective Property; *provided*, *further*, that no Person who has held, holds, or may hold Claims, Interests, or Action may commence or pursue a Claim or Action, as applicable, of any kind in any way related to the Debtor against any Released Party that arose before the Petition Date or arose or arises from or is related to the Chapter 11 Case, the negotiation of the Plan, the administration of the Plan or property to be distributed under the Plan, the wind down of the Debtor's business, the administration of the Liquidation Trust, or the transactions in furtherance of the foregoing without the Court (i) first determining, after notice and a hearing, that such claim or cause of action represents a colorable claim of any kind, including, negligence, bad faith, criminal misconduct, willful misconduct, fraud, or gross negligence against a Released Party that such person has standing and is otherwise entitled to assert such claim or cause of action and (ii) specifically authorizing such Releasing Party to bring such claim or cause of action against any such Released Party.

      **F.**    <u>**Duration of Injunctions and Stays**</u>.  Unless otherwise provided in this Plan, in the Confirmation Order, or in a Final Order of the Court, all injunctions and stays entered during the Chapter 11 Case and in existence on the Confirmation Date shall remain in full force and effect in accordance with their terms; and (ii) the automatic stay arising under Bankruptcy Code section 362 shall remain in full force and effect subject to Bankruptcy Code Section 362(c).

<div align="center">

**ARTICLE X**
<u>**RETENTION OF JURISDICTION**</u>

</div>

The Court shall retain jurisdiction of all matters arising under, or related to, these proceedings, including, but not limited to:

    **a.**   ensuring that the Plan is carried out;

    **b.**   considering any modification of the Plan under Bankruptcy Code section 1127;

    **c.**   hearing and determining all controversies, suits, and disputes that may arise in connection with the interpretation of the Plan;

    **d.**   hearing and determining all objections to claims, controversies, suits, and disputes that may be pending as of or initiated after the Effective Date;

    **e.**   hearing and determining all claims, controversies, suits, and disputes against the Debtor or that may arise in connection with the interpretation of the Plan;

    **f.**   hearing and determining all requests for compensation and/or reimbursement of expenses that may be made for fees/expenses incurred before the Effective Date;

    **g.**   enforcing any Final Order, the Confirmation Order, the Final Decree, and all injunctions contained in those orders;

    **h.**   entering an order concluding and terminating this Chapter 11 Case;

**i.** correcting any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order;

**j.** determining all questions and disputes regarding title to the Property and any other assets of Debtor;

**k.** enter a Final Decree in the Chapter 11 Case according to Bankruptcy Rule 3022;

**l.** enforcing the provisions set forth in the Plan, the Confirmation Order, any Final Decree, and any Final Order that provides for the adjudication of any issue by the Court; and

**m.** entering and implementing such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated.

## ARTICLE XI
## MISCELLANEOUS PROVISIONS

**A.** **Additional Documents/Execution of Documents Generally.** On or before substantial consummation of the Plan, the Chapter 11 Trustee or NBK shall issue, execute, deliver, and file with the Court or record any agreements and other documents consistent with, and take any action as may be necessary or appropriate to effectuate, consummate and further evidence the terms and conditions of the Plan. The Chapter 11 Trustee has the authority, and the Confirmation Order shall constitute conclusive authority, of the Chapter 11 Trustee to act for, and in the name of the Debtor, and any document executed by the Chapter 11 Trustee in connection with the Plan or Sale shall be accepted by any recording office and shall be recorded and published on receipt.

**B.** **Binding Effect.** This Plan shall be binding upon and inure to the benefit of the Debtor, NBK, the Estate, the Liquidation Trustee, the Liquidation Trust, the Distribution Agent, the Purchaser, any Holder of any Claim or Interest treated herein or any Person named or referred to in the Plan, and each of their respective heirs, executors, administrators, representatives, predecessors, successors, assigns, agents, officers and directors, and, to the fullest extent permitted under the Bankruptcy Code and other applicable law, each other Person affected by the Plan.

**C.** **Entire Agreement.** The Plan (and all exhibits thereto and the Plan Supplement) sets forth the entire agreement and undertakings relating to the subject matter hereof and supersedes all prior discussions and documents. The Debtor shall not be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for herein or as may hereafter be agreed to by the parties in writing.

**D.** **Final Order.** Except as otherwise provided in the Plan, any requirement in the Plan for a Final Order may be waived: (a) by the Purchaser, in its sole discretion, provided, however, that in the event the Debtor determines in good faith that any such waiver would constitute a breach of the Chapter 11 Trustee's fiduciary duties, NBK may seek to prevent any such waiver by seeking an order of the Court on an expedited basis; or (b) after the Effective Date, by the Liquidation

Trustee upon written notice to the Court. No such waiver shall prejudice the right of any party in interest to seek a stay pending appeal of any order that is not a Final Order.

      **E.**    **Governing Law.** Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan shall be governed and construed and enforced in accordance with the laws of the State of New York.

      **F.**    **No Admissions or Waivers.** Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed an admission or waiver by the Debtor with respect to any matter set forth herein, including, without limitation, liability on any Claim or Interest or the propriety of any classification of any Claim or Interest.

      **G.**    **Notices.** Any notice required or permitted to be provided under this Plan to the Debtor, or any request for information with respect to the Plan, shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery or (c) reputable overnight delivery service, freight prepaid, to be addressed as follows:

| Chapter 11 Trustee | Counsel to Chapter 11 Trustee |
|---|---|
| Christopher R. Murray<br>**Jones Murray LLP**<br>602 Sawyer Street, Suite 400<br>Houston, TX 77007 | R. J. Shannon<br>Kyung S. Lee<br>**Shannon & Lee LLP**<br>2100 Travis Street, Suite 1525<br>Houston, TX 77002 |
| **NBK** | **Counsel to NBK** |
| Marwan Isbaih<br>Michael C. Carter<br>**National Bank of Kuwait,**<br>**S.A.K.P., New York Branch**<br>299 Park Avenue<br>New York, NY 10171 | **Pillsbury Winthrop Shaw Pittman LLP**<br>Charles C. Conrad<br>Ryan Steinbrunner<br>609 Main Street Suite 2000<br>Houston, TX 77002<br>-----------------------<br>Andrew M. Troop<br>Patrick E. Fitzmaurice<br>Kwame O. Akuffo<br>31 West 52nd Street<br>New York, NY 10019 |

      **H.**    **Plan Modification.** NBK may amend or modify the Plan in accordance with Bankruptcy Code section 1127 or as permitted at any time prior to the Confirmation Date.

      **I.**    **Post-Confirmation Operating Reports.** The Liquidation Trustee shall file quarterly operating reports as required by the U.S. Trustee until such time as a Final Decree or other order is entered under section 350(a) of the Bankruptcy Code closing the Chapter 11 Case.

      **J.**    **Quarterly Fees.** Quarterly Fees due shall be paid on or after the Effective Date.

      **K.**    **Severability.** Should the Court determine, prior to the Confirmation Date, that any provision of the Plan is either illegal on its face or illegal as applied to any Claim or Interest, such

provision shall be unenforceable as to all Holders of Claims or Interests or to the specific Holder of such Claim or Interest, as the case may be, as to which such provision is illegal. Unless otherwise determined by the Court, such a determination of unenforceability shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

**L.** **Section 1146 Exemption.** To the fullest extent permitted under Bankruptcy Code section 1146(a), the execution, delivery or recording of an instrument of transfer under the Plan, or the revesting, transfer or sale of any real or other property of or to the Debtor shall not be taxed under any state or local law imposing a stamp tax, transfer tax or similar tax or fee. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, mortgage recording tax, intangible tax or similar tax.

**M.** **Solicitation.** NBK (and each of its respective Affiliates, officers, directors, employees, consultants, agents, advisors, members, attorneys, accountants, financial advisors, other representatives and Professionals) has, and upon Confirmation of the Plan, shall be deemed to have, solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code.

**N.** **Withdrawal of the Plan.** NBK shall reserve the right, at any time prior to Confirmation of the Plan, to withdraw the Plan. If the Plan is withdrawn, the Plan shall be null and void and have no force and effect. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Person or to prejudice the rights of the Debtor or any Person in any further proceedings involving the Debtor.

NBK requests Confirmation of the Plan under section 1129(a) or section 1129(b) of the Bankruptcy Code.

Dated: April 10, 2024

> **NATIONAL BANK OF KUWAIT, S.A.K.P., NEW YORK BRANCH**
>
> By: _____
> Name: Michael C. Carter
> Title: Vice President

**Exhibit B**

Notice of Confirmation and Effective Date

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 23-34815 (JPN)** |
| **GALLERIA 2425 Owner, LLC** | § | |
| | § | **Chapter 11** |
| **Debtor.** | § | |

## NOTICE OF CONFIRMATION AND EFFECTIVE DATE OF CHAPTER 11 PLAN OF LIQUIDATION OF THE DEBTOR BY NATIONAL BANK OF KUWAIT S.A.K.P., NEW YORK BRANCH

**PLEASE TAKE NOTICE OF THE FOLLOWING**:

1. **Entry of Confirmation Order**. On June [●], 2024, the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court") entered an order [ECF No. [●]] (the "Confirmation Order") confirming the National Bank of Kuwait S.A.K.P., New York Branch's ("NBK") *Chapter 11 Plan of Liqudiation of the Debtor by National Bank of Kuwait, S.AK.P., New York Branch* [ECF No. [●]] attached as Exhibit A to the Confirmation Order (together with all exhibits thereto, and as may be amended, modified or supplemented, the "Plan") in the chapter 11 case of the above-captioned debtor (the "Debtor").

2. **Effective Date of the Plan**. The Effective Date of the Plan was [●] **[●], 2024**.

3. **Substantial Consummation of Plan**. NBK gives notice that the Plan has been substantially consummated.

4. **Release, Exculpation, and Injunction**. Pursuant to the Confirmation Order, the release, injunction, and exculpation provisions in the Article IX of the Plan are now in full force and effect.

5. **Administrative Claim Bar Date**. As provided for in Article II.B of the Plan and in the Confirmation Order, all requests for payment of an Administrative Claim must be filed with the Bankruptcy Court and served on NBK, the Chapter 11 Trustee, the Liquidation Trustee and the U.S. Trustee no later than [●] [●], 2024 (the date that is 45 days after the Effective Date).

6. **Deadline to File Professional Fee Claims**. As provided for in the Article II.B of the Plan and in the Confirmation Order, all final applications for payment of Professional Fee Claims must be filed with the Bankruptcy Court and served on NBK, the Liquidation Trustee, and the U.S. Trustee no later than 4:00 p.m. (prevailing Central Time) on [●] [●], 2024 (the date that is 45 days after the Effective Date),  unless otherwise ordered by the Bankruptcy Court or such later date is agreed to by the Liquidation Trustee.

7.      __Deadline to File Rejection Damages Claims__.  Except as set forth in Article V of the Plan, [all Executory Contracts and Unexpired Leases that __are not__ listed in the Schedule of Contracts and Leases attached to [●] [ECF No. [●]] have been rejected as of the Effective Date. As provided for in Article [●] of the Plan and in the Confirmation Order, unless otherwise provided by a Bankruptcy Court order, any proofs of claim asserting rejection damages claims pursuant to the Plan must be filed within [●].

8.      __Inquiries by Interested Parties__.  Copies of all pleadings (including the Confirmation Order, to which the Plan is attached as Exhibit A) may be examined for a fee via PACER by visiting http://ecf.txsb.uscourts.gov, or for free at during regular business hours at the office of the Clerk of the Bankruptcy Court, United States Bankruptcy Court for the Southern District of Texas, Bob Casey United States Courthouse, 515 Rusk, Houston, TX 77002.

DATED: [●] [●], 2024                     **PILLSBURY WINTHROP SHAW PITTMAN LLP**

                                         _/s/ Draft_
                                         Charles C. Conrad
                                         Texas State Bar No. 24040721
                                         Ryan Steinbrunner
                                         Texas State Bar No. 24093201
                                         609 Main Street Suite 2000
                                         Houston, TX 77002
                                         Telephone: (713) 276-7600
                                         Facsimile: (713) 276-7634
                                         charles.conrad@pillsburylaw.com
                                         ryan.steinbrunner@pillsburylaw.com

                                                -    _and_    -

                                         Andrew M. Troop (Bar No. MA547179)
                                         Patrick E. Fitzmaurice*
                                         Kwame O. Akuffo*
                                         31 West 52nd Street
                                         New York, NY 10019-6131
                                         Telephone: (212) 858-1000
                                         Facsimile: (212) 858-1500
                                         andrew.troop@pillsburylaw.com
                                         patrick.fitzmaurice@pillsburylaw.com
                                         kwame.akuffo@pillsburylaw.com

                                         *Admitted _pro hac vice_

                                         **_Counsel for National Bank of Kuwait, S.A.K.P., New York Branch_**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 23-34815** |
| **GALLERIA 2425 OWNER, LLC,** | § | |
| | § | |
| Debtor. | § | |
| | § | **CHAPTER 11** |

### ORDER CONFIRMING CHAPTER 11 PLAN OF LIQUIDATION OF THE DEBTOR BY NATIONAL BANK OF KUWAIT, S.A.K.P. NEW YORK BRANCH

**BASED ON THE COURT'S MEMORANDUM OPINION, IT IS HEREBY ORDERED THAT:**

**A. Findings of Fact and Conclusions of Law** The findings of fact and conclusions of law set forth in the Court's Memorandum Opinion are hereby incorporated by reference as though fully set forth herein and constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014.

**B. Eligibility for Relief** The Debtor was and is eligible for relief under section 109 of the Bankruptcy Code.

**C. Confirmation** The Plan is confirmed under section 1129 of the Bankruptcy Code. The Plan Supplement is incorporated by reference into, and is an integral part of, the Plan and this Confirmation Order, and is authorized and approved. NBK is authorized to implement and consummate the Plan, including taking all actions necessary or appropriate to effectuate the Plan, without further authorization except as may be required by the Plan or this Confirmation Order.

**D. Objections** All objections, responses, reservations, statements, and comments to the Plan, other than those resolved, adjourned, or withdrawn with prejudice prior to, or on the record at, the Confirmation Hearing, are overruled on the merits in all respects. All withdrawn objections, if any, are deemed withdrawn with prejudice. All objections to Confirmation not filed and served prior to the deadline for filing objections to the Plan set forth in the Confirmation Hearing Notice, if any, are deemed waived and will not be considered by the Court.

**E. Binding Effect** Effective as of entry of this Confirmation Order and subject to the occurrence of the Effective Date, the Plan, the Plan Supplement, and this Confirmation Order shall bind any Holder of a Claim or Interest and such Holder's respective successors and assigns, whether or not: (a) the Claim or Interest is impaired under the Plan; (b) such Holder has accepted the Plan; (c) such Holder has failed to vote to accept or reject the Plan or voted to reject the Plan; (d) such Holder is entitled to a distribution under the Plan; (e) such Holder will receive or retain any property or interests in property under the Plan; and (f) such Holder has filed a Proof of Claim in this Chapter 11 Case. The Plan, the Plan Supplement, and this Confirmation Order constitute legal, valid,

binding, and authorized obligations of the respective parties and shall be enforceable in accordance with their terms. Pursuant to section 1142(a) of the Bankruptcy Code, the Plan, the Plan Documents, and this Confirmation Order shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

**F. Plan Classification Controlling** The terms of the Plan shall govern the classification of Claims and Interests for purposes of distributions to be made thereunder. The classification set forth on the Ballots tendered to or returned by the Holders of Claims in connection with voting on the Plan: (a) were set forth thereon solely for the purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of Claims and Interests under the Plan for distribution purposes; (c) may not be relied upon by any Holder of a Claim or Interest as representing the actual classification of such Claim or Interest under the Plan for distribution purposes; and (d) shall not be binding on NBK or the Chapter 11 Trustee except for voting purposes.

**G. Allowance of Claims** As provided in Article VII of the Plan, no Claim is or shall be deemed Allowed until the later of the Claims Objection Deadline or the expiration of some other applicable period of limitation fixed by the Bankruptcy Code, Bankruptcy Rules, or Bankruptcy Court, unless otherwise ordered by a Final Order of the Bankruptcy Court or Allowed pursuant to the Plan.

**H. Effective Date** Except as otherwise provided herein, upon the occurrence of the Effective Date, the terms of the Plan, the Plan Supplement, and this Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Estate, the Liquidation Trust, and any and all Holders of Claims against or Interests in the Debtor (irrespective of whether their Claims or Interests are presumed to have accepted or deemed to have rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor.

**I. Distributions** All distributions pursuant to the Plan shall be made in accordance with Article VII of the Plan, and such methods of distribution are approved. The Distribution Agent shall have no duty or obligation to make distributions to any Holder of an Allowed Claim unless and until such Holder executes and delivers, in a form acceptable to the Distribution Agent, any and all documents applicable to such distributions in accordance with Article VI of the Plan.

**J. Retained Assets** Pursuant to Article VI of the Plan, except as otherwise provided in the Plan or in any contract, instrument, release, indenture or other agreement entered into in connection with the Plan, in accordance with Bankruptcy Code § 1123(b)(3), any claims, Causes of Action, defenses and counterclaims that the Debtor may hold against any Person, shall vest in the Liquidation Trust, and the Liquidation Trustee shall retain and may exclusively enforce any and all such claims, causes of action, defenses and counterclaims.

**K. Treatment of Executory Contracts and Unexpired Leases** Notwithstanding any provision in the Plan to the contrary, all Executory Contracts and Unexpired Leases are deemed rejected unless (i) described in the Plan as to be assumed in connection with Confirmation, (ii) identified on the Schedule of Contracts/Leases, (iii) subject to a motion by the Chapter 11 Trustee to assume

2 / 7

(or assume and assign) as of the Effective Date, and (iv) entered into in connection with the Plan. Entry of this Confirmation Order shall constitute a Court order approving the rejection of such executory contracts or unexpired leases, as applicable.

**L. Exemption From Transfer Taxes**  To the fullest extent applicable and permitted by section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of a security, or the making of delivery of an instrument of transfer, provided under the Plan, from the Estate to NBK or any other Person pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax or governmental assessment. The appropriate federal, state or local governmental officials or agents are directed to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the instruments or other documents as set forth in the Plan without the payment of any such tax or governmental assessment.

**M. Filing and Recording**  This Confirmation Order is, and shall be, binding upon and shall govern the acts of all persons or entities including all filing agents, filing officers, title agents, title companies, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required, by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any document or instrument.

Each and every foreign, federal, state, and local government agency is hereby directed to accept any and all documents and instruments necessary, useful, advisable, or appropriate (including financing statements under the applicable uniform commercial code) to effectuate, implement, and consummate the transactions under the Plan.

**N. Tax Withholding**  In accordance with the provisions of the Plan and subject to Article VII.G of the Plan, to the extent applicable, the Distribution Agent shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Distribution Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms the Distribution Agent believes is reasonable and appropriate.

**O. Discharge of Claims and Termination of Interests; Compromise and Settlement of Claims, Interests and Controversies**  Pursuant to section 1141(d) of the Bankruptcy Code and except as otherwise specifically provided in the Plan or this Confirmation Order, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in the Debtor or any of its assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests,

including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not (i) a Proof of Claim based upon such debt or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (ii) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (iii) the Holder of such a Claim or Interest voted to accept or reject the Plan.

This Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date, and all actions taken to effectuate the Plan, including by any agent, shall be given the same effect as if such actions were performed under the applicable nonbankruptcy laws that govern the documents under which such agent was appointed. In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019 and without any further notice to or action, order, or approval of the Court, after the Effective Date, the Liquidation Trustee may compromise and settle Claims against, and Interests in, the Debtor and its Estate and Causes of Action against other Entities.

**P. Releases, Injunction, Exculpation and Related Provisions Under the Plan** Except to the extent modified by this Confirmation Order, the releases, injunctions, exculpations, and related provisions in Article IX of the Plan are incorporated herein in their entirety, are hereby approved and authorized in all respects, are so ordered, and shall be immediately effective on the Effective Date without further order of this Court or any other party.

The injunction provision in Article IX.E of the Plan will be immediately effective on the Effective Date and is (i) within the jurisdiction of this Court; (ii) necessary to preserve and enforce the exculpation provision in Article IX.C of the Plan, the Estate Release in Article IX.D of the Plan, and the compromises and settlements implemented under the Plan; and (iii) are narrowly tailored to achieve these purposes. Notwithstanding any provision in the Plan, including Article IX.C of the Plan and the definition of Exculpated Party contained in Article I.A.39 of the Plan, "Exculpated Parties" shall mean only the Chapter 11 Trustee and any Related Parties of the Chapter 11 Trustee.

**Q. Post-Confirmation Notice** In accordance with Bankruptcy Rules 2002 and 3020(c), no later than seven (7) days after the Effective Date, NBK shall cause a notice of Confirmation and occurrence of the Effective Date, substantially in the form attached as Exhibit B (the "Notice of Confirmation and Effective Date") to be served on all parties served with the Confirmation Hearing Notice by email or U.S. first-class mail, postage prepaid. The Notice of Confirmation and Effective Date will have the effect of an order of the Court, will constitute sufficient notice of entry of this Confirmation Order and occurrence of the Effective Date to filing and recording officers, and will be a recordable instrument notwithstanding any contrary provision of applicable nonbankruptcy law.

**R. Cancellation of Interests** Pursuant to Article III of the Plan, on the Effective Date, all Interests shall be deemed automatically cancelled and extinguished.

4 / 7

**S. Distribution Record Date** The record date for purposes of making distributions under the Plan on account of Allowed Claims shall be the Confirmation Date or such other date as is announced by the Chapter 11 Trustee, the Liquidation Trustee or another designated party in a Final Order.

**T. Ad Valorem Taxes** Notwithstanding any provision in the Plan to the contrary, on the Effective Date, any claim held by a governmental unit and Caz Creek TX, LLC for *ad valorem* taxes shall be paid statutory interest accruing from the Petition Date until such taxes are paid in full; *provided*, that any and all *ad valorem* statutory tax liens held by a governmental unit and Caz Creek TX, LLC, whether for prepetition or postpetition tax years, shall be retained until the *ad valorem* taxes are paid in full.

**U. Post-Confirmation Sale of Property** Notwithstanding any provision in the Plan to the contrary, the Bankruptcy Court will consider approval of the sale of the Property post-confirmation and for the sake of a clean record, will enter a separate Final Order with respect to the sale at that time.

**V. Effect of Confirmation Order and Other Orders** Unless expressly provided for herein, nothing in the Plan or this Confirmation Order shall affect any orders entered in this Chapter 11 Case.

**W. Inconsistency** In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control (unless stated otherwise in the Plan Supplement or in this Confirmation Order). In the event of any inconsistency between any of the Plan, Plan Supplement, or the Disclosure Statement on the one hand, and this Confirmation Order on the other hand, this Confirmation Order shall control.

**X. Injunctions and Automatic Stay** Unless otherwise provided in the Plan or in this Confirmation Order, all injunctions or stays in effect in this Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Court, and extant on this Confirmation Date (excluding any injunctions or stays contained in the Plan or this Confirmation Order), shall remain in full force and effect through and including the Effective Date. All injunctions or stays contained in the Plan or this Confirmation Order shall remain in full force and effect in accordance with their terms.

**Y. Authorization to Consummate** NBK and to the extent required the Chapter 11 Trustee are authorized to consummate the Plan and finalize and implement the Plan at any time after the entry of this Confirmation Order subject to satisfaction or waiver of the conditions precedent to consummation set forth in Article VIII of the Plan.

**Z. Substantial Consummation** On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101(2) and 1127(b) of the Bankruptcy Code.

**AA. Severability** Except as set forth in Article VIII of the Plan, the provisions of the Plan, including its release, injunction, exculpation and compromise provisions are mutually dependent and nonseverable. This Confirmation Order constitutes a judicial determination and hereby provides that each term and provision of the Plan are: (i) valid and enforceable pursuant to their

terms; (ii) integral to the Plan and may not be deleted or modified without NBK's consent; and (iii) nonseverable and mutually dependent.

**BB. Effect of Non-Occurrence of Effective Date** If the Effective Date does not occur, the Plan shall be null and void in all respects, and nothing contained in the Plan, the Disclosure Statement, or this Confirmation Order shall (i) constitute a waiver or release of any Claims by or Claims against or Interests in the Debtor; (ii) prejudice in any manner the rights of NBK, any Holders of Claims or Interests, or any other Entity; or (iii) constitute an admission, acknowledgment, offer, or undertaking by NBK, any Holders of Claims or Interests, or any other Entity in any respect.

**CC. Chapter 11 Trustee's Actions Post-Confirmation Through the Effective Date** Until the Effective Date, the Chapter 11 Trustee shall continue to manage the estate, subject to the Court's oversight as provided under the Bankruptcy Code, the Bankruptcy Rules, and this Confirmation Order and any order of the Court that is in full force and effect.

**DD. Reports** After the Effective Date, the Chapter 11 Trustee has no obligation to file with this Court or serve on any parties reports that the Estate was obligated to file under the Bankruptcy Code or a prior order of the Court, including monthly operating reports (except for any periods for which a monthly operating report was not filed before the Confirmation Date), ordinary course professional reports, and monthly or quarterly reports for Professionals; *provided*, *however*, that the Chapter 11 Trustee shall continue to comply with the U.S. Trustee's quarterly reporting requirements.

**EE. Conditions to Effective Date** The Plan shall not become effective unless and until the conditions in Article VIII.B of the Plan have been satisfied or waived pursuant to Article VIII.C of the Plan.

**FF. Waiver of Stay** Notwithstanding any Bankruptcy Rule (including Bankruptcy Rules 3020(e) and 6004(h)), this Confirmation Order is effective immediately and not subject to any stay, sufficient cause having been shown.

**GG. Modification of Plan Supplement** Subject to the terms of the Plan and this Confirmation Order, NBK is authorized to modify and amend the Plan Supplement through and including the Effective Date, and to take all actions necessary and appropriate to effectuate the transactions contemplated therein.

**HH. Post-Confirmation Modification of the Plan** Subject to the terms of the Plan and this Confirmation Order, NBK is authorized to amend or modify the Plan at any time prior to the substantial consummation of the Plan without further order of this Court, but only in accordance with section 1127 of the Bankruptcy Code and Article XI.H of the Plan.

**II. No Waiver/References to and Omissions of Plan Provisions** References to articles, sections, documents and provisions of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan. The failure to include or to refer to any particular article, section, or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, document or provision nor constitute

a waiver thereof, an such article, section, document or provision shall have the same validity, binding effect, and enforceability as every other article, section, document, or provision of the Plan, it being the intent of the Court that the Plan be confirmed in its entirety, except as expressly modified herein, and incorporated herein by this reference.

**JJ. Reservation of Rights** The filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by NBK with respect to the Plan shall not be deemed to be an admission or waiver of any rights of NBK, the Chapter 11 Trustee, the Liquidation Trustee, or any other Person with respect to Claims against and Interests in the Debtor.

**KK. Final Order** The provisions of Federal Rule of Civil Procedure 62, as applicable pursuant to Bankruptcy Rule 7062, and Bankruptcy Rule 3020(e) shall not apply to this Confirmation Order. The period in which an appeal with respect to this Confirmation Order must be filed shall commence immediately upon the entry of this Confirmation Order.

**LL. Retention of Jurisdiction**  Notwithstanding the entry of this Confirmation Order, from and after the Effective Date, this Court shall retain exclusive jurisdiction over this Chapter 11 Case and all matters arising under, arising out of, or related to, this Chapter 11 Case, including all matters listed in Article XI of the Plan or addressed by this Confirmation Order, as well as for the purposes set forth in section 1142 of the Bankruptcy Code, to the fullest extent legally permissible.

**MM. Sonder USA, Inc. claim** The estate's claims against Sonder USA, Inc. was sold to 2425 WL LLC or another entity designated by Ali Choudhri by order entered on May 15, 2024 (ECF No. 337), and those claims are no longer property of the estate.

# EXHIBIT 5

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| GALLERIA 2425 OWNER, LLC, | ) |  |
|  | ) | Case No. 23-34815 |
| Debtor. | ) |  |
|  | ) |  |

## NOTICE OF FAILURE TO CLOSE UNDER SUCCESSFUL BID

(Relating to ECF No. 608)

PLEASE TAKE NOTICE that August 8, 2024, was the "Outside Closing Date" under the Asset Purchase Agreement (the "APA") between Christopher R. Murray, in his capacity as the chapter 11 trustee (the "Trustee"), and QB Loop Property LP ("QB Loop").

PLEASE TAKE FURTHER NOTICE that the closing of the sale contemplated by the APA did not occur on August 8, 2024.

PLEASE TAKE FURTHER NOTICE that Article XIV(1) of the APA provides that the APA shall terminate except for Article XIV and the closing thereunder shall not occur if any one or more of the conditions precedent set forth in Article VI(3) or Article VI(4) is not satisfied at or prior to the Outside Closing Date.

PLEASE TAKE FURTHER NOTICE that one or more of the conditions set forth in Article VI(3) or Article VI(4) did not occur and the APA is therefore terminated except for the surviving provisions of Article XIV.

PLEASE TAKE FURTHER NOTICE that the Trustee reserves all rights under Article XIV and with respect to the Good Faith Deposit.

*[Remainder of Page Intentionally Left Blank]*

Dated: August 9, 2024                    Respectfully submitted,

                                         SHANNON & LEE LLP

                                         */s/R. J. Shannon*
                                         Kyung S. Lee (TBA No. 12128400)
                                         R. J. Shannon (TBA No. 24108062)
                                         2100 Travis Street, STE 1525
                                         Houston, TX 77002
                                         Telephone: (713) 714-5770
                                         Email: klee@shannonleellp.com
                                                 rshannon@shannonleellp.com

                                         *Counsel to the Chapter 11 Trustee*


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served (a) via the Court's CM/ECF system on all parties registered to receive such service and (b) via U.S.P.S. first class mail on the parties in the attached service list.

                                         */s/ R. J. Shannon*

2

Label Matrix for local noticing
0541-4
Case 23-34815
Southern District of Texas
Houston
Fri Aug  9 09:26:48 CDT 2024

2425 WL, LLC
2425 West Loop South 11th floor
Houston, TX 77027-4304

Arin-Air Inc.
c/o Smith & Cerasuolo, LLP
7500 San Felipe, Suite 777
Houston, TX 77063-1709

CC2 TX, LLC
c/o Howard Marc Spector
Spector & Cox, PLLC
12770 Coit Road Suite 850
Dallas, TX 75251-1364

City of Houston
Linebarger Goggan Blair & Sampson LLP
c/o Tara L. Grundemeier
PO Box 3064
Houston, TX 77253-3064

Galleria 2425 Owner, LLC
1001 West Loop South 700
Houston, TX 77027-9084

(p)HARRIS COUNTY ATTORNEY'S OFFICE
P O BOX 2928
HOUSTON TX 77252-2928

Hayward PLLC
c/o Melissa Hayward
10501 N. Central Expy., Ste. 106
Dallas, TX 75231-2203

Houston Community College System
Linebarger Goggan Blair & Sampson LLP
c/o Tara L. Grundemeier
PO Box 3064
Houston, TX 77253-3064

Houston ISD
Linebarger Goggan Blair & Sampson LLP
c/o Tara L. Grundemeier
PO Box 3064
Houston, TX 77253-3064

Jetall Capital, LLC
1001 West Loop South, Suite 700
Houston, TX 77027-9033

Jetall Companies, Inc.
1001 W. Loop South
Suite 700
Houston, TX 77027-9033

National Bank of Kuwait, S.A.K.P., New York

Shannon & Lee LLP
2100 Travis Street STE 1525
Houston, TX 77002-8783

4
United States Bankruptcy Court
PO Box 61010
Houston, TX 77208-1010

2425 WL, LLC
13498 Pond Springs Rd.
Austin, TX 78729-4422

2425 West Loop, LLC
2000 Hughes Landing Blvd., Suite 815
The Woodlands, Texas 77380-4142

ADT
PO Box 382109
Pittsburgh, PA 15251-8109

Ali Choudhry
1001 West Loop South 700
Houston, TX 77027-9084

Arin-Air, Inc.
5710 Brittmoore Rd. #13
Houston, TX 77041-5627

Ash Automated Control Systems, LLC
PO Box 1113
Fulshear, TX 77441-2013

CC2 TX, LLC
14800 Landmark Blvd., Suite 400
Dallas, TX 75254-7598

CFI Mechanical, Inc
6109 Brittmoore Rd
Houston, TX 77041-5610

CNA Insurance Co
PO Box 74007619
Chicago, IL 60674-7619

Caz Creek Lending
118 Vintage Park Blvd No. W
Houston, TX 77070-4095

Cirro Electric
PO Box 60004
Dallas, TX 75266

City of Houston
PO Box 1560
Houston, TX 77251-1560

City of Houston
c/o Tara L. Grundemeier
Linebarger Goggan Blair & Sampson LLP
PO Box 3064
Houston, TX 77253-3064

Cleaning Advanced Systems, Inc. (CAS&q
110 Cypress Station Suite #111
Houston, TX 77090-1626

Comcast
PO Box 60533
City of Industry, CA 91716-0533

Datawatch Systems
4520 East West Highway 200
Bethesda, MD 20814-3382

Environmental Coalition Inc
PO Box 1568
Stafford, TX 77497-1568

Ferguson Facilities Supplies
PO Box 200184
San Antonio, TX 78220-0184


Firetron
PO Box 1604
Stafford, TX 77497-1604

(p)FIRST INSURANCE FUNDING
450 SKOKIE BLVD SUITE 1000
NORTHBROOK IL 60062-7917

Gulfstream Legal Group
1300 Texas St
Houston, TX 77002-3509


H.N.B. Construction, LLC
c/o Malcolm D. Dishongh
PO Box 2347
Humble, TX 77347-2347

HNB Construction, LLC
521 Woodhaven
Ingleside, TX 78362-4678

Hayward PLLC
c/o Melissa S. Hayward
10501 N. Central Expy., Ste. 106
Dallas, TX 75231-2203


Houston Community College System
c/o Tara L. Grundemeier
Linebarger Goggan Blair & Sampson LLP
PO Box 3064
Houston, TX 77253-3064

Houston ISD
c/o Tara L. Grundemeier
Linebarger Goggan Blair & Sampson LLP
PO Box 3064
Houston, TX 77253-3064

Jetall Companies, Inc
1001 West Loop South Ste 700
Houston, TX 77027-9033


Kings 111 Emergency Communications
751 Canyon Drive, Suite 100
Coppell, TX 75019-3857

Lexitas
PO Box Box 734298 Dept 2012
Dallas, TX 75373-4298

Lloyd E. Kelley
2726 Bissonnet Suite 240
Houston, TX 77005-1352


Logix Fiber Networks
PO Box 734120
Dallas, TX 75373-4120

MacGeorge Law Firm
2921 E 17th St Blgd D Suite 6
Austin, TX 78702-1572

Mueller Water Treatment
1500 Sherwood Forest Dr.
Houston, TX 77043-3899


Naissance Galleria, LLC
c/o Law Office of Nima Taherian
701 N. Post Oak Rd. Ste 216
Houston, TX 77024-3868

National Bank of Kuwait
299 Park Ave. 17th Floor
New York, NY 10171-0023

Nationwide Security
2425 W Loop S 300
Houston, TX 77027-4205


Nichamoff Law Firm
2444 Times Blvd 270
Houston, TX 77005-3253

Rodney L. Drinnon
2000 West Loop S, Ste. 1850,
Houston, Texas 77027-3744

TKE
3100 Interstate North Cir SE  500
Atlanta, GA 30339-2296


U.S. Trustee's Office
515 Rusk, Suite 3516
Houston, Texas 77002-2604

US Retailers LLC d/b/a Cirro Energy
Attention: Bankruptcy Department
PO Box 3606
Houston, TX 77253-3606

US Trustee
Office of the US Trustee
515 Rusk Ave
Ste 3516
Houston, TX 77002-2604


Waste Management
PO Box 660345
Dallas, TX 75266-0345

Zindler Cleaning Service Co
2450 Fondren 113
Houston, TX 77063-2314

Ali Choudhri
24256 West Loop South
11th Floor
Houston, TX 77027

| | | |
|---|---|---|
| Azeemeh Zaheer<br>c/o<br>David Tang<br>6711 Stella Link<br>#343<br>West University Place, TX 77005 | Christopher R Murray<br>Jones Murray LLP<br>602 Sawyer St<br>Ste 400<br>Houston, TX 77007-7510 | James Q. Pope<br>The Pope Law Firm<br>6161 Savoy Drive<br>Ste 1125<br>Houston, TX 77036-3343 |
| Jeffrey W Steidley<br>Steidley Law Firm<br>3000 Weslayan<br>Ste 200<br>Houston, TX 77027-5741 | Reese W Baker<br>Baker & Associates<br>950 Echo Lane<br>Suite 300<br>Houston, TX 77024-2824 | Rodney Drinnon<br>McCathern Houston<br>2000 W Loop S<br>Ste. 1850<br>Houston, TX 77027-3744 |

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

| | | |
|---|---|---|
| Harris County, ATTN: Property Tax Division<br>Harris County Attorney's Office<br>P.O. Box 2928<br>Houston, TX 77252-2928 United States | First Insurance Funding<br>450 Skokie Blvd<br>Northbrook, IL 60062 | (d)Harris County Tax Assessor<br>PO Box 4622<br>Houston, TX 77210 |
| (d)Harris County, et al<br>PO Box 2928<br>Houston, TX 77252 | | |

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

| | | |
|---|---|---|
| (u)2425 West Loop, LLC | (u)Landry's Inc. | (u)QB Loop Property LP |
| (u)RGN-MCA Houston LII, LLC | (u)RGN-MCA Houston LIII, LLC | (u)Sonder USA Inc. |
| (d)Arin-Air, LLC<br>5710 Brittmoore Rd. #13<br>Houston, TX 77041-5627 | (du)Sonder USA Inc. | (u)Jack Rose |

End of Label Matrix
Mailable recipients    65
Bypassed recipients     9
Total                  74

**EXHIBIT 6**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CIVIL ACTION NO. 4:24-cv-02590 |
| GALLERIA 2425 OWNER, LLC, | § | |
| DEBTOR | § | BANKRUPTCY CASE NO. 23-34815 |
| | § | |
| 2425 WL, LLC, | § | |
| APPELLANT | § | |

## APPELLANT'S STATEMENT OF THE ISSUES ON APPEAL
## AND DESIGNATION OF RECORD ON APPEAL

Having timely filed its *Notice of Appeal of Order Confirming Plan to District Court* (Docket No. 603), 2425 WL, LLC ("Appellant") respectfully files its Statement of the Issues on Appeal, and Designation of Record on Appeal pursuant to Federal Rule of Bankruptcy Procedure 8009(a)(1).

### <u>Statement of the Issues</u>

Appellant designates the following issues on appeal:

1. Whether the Bankruptcy Court committed error in finding and concluding that the Chapter 11 plan propounded by a secured creditor, National Bank of Kuwait, S.A.K.P. New York Branch ("NBK") complied with all of the mandatory requirements for confirmation set forth in Bankruptcy Code Section 1129, and did not violate any of the provisions of Bankruptcy Code Section 1123 – specifically the provisions of:

   - Section 1129(a)(10) (regarding at least one creditor with an unimpaired allowed claim accepting the plan);

- Section 1129(a)(1) & (a)(3) (regarding the plan voting & balloting, the Plan's Exculpation Clause, the Estate Releases Clause, the Injunction on causes of actions by creditors against third party non-debtors clause, and applying a "Gate Keeper" Provision to third party creditors);

- Section 1129(a)(8) and 1129(b)(1) (unfair discrimination and not fair and equitable as to 2425 WL, LLC);

- Section 1122 (regarding claims classification); and

- Section 1123(a)(4) (regarding claims discrimination).

**Designation of Record on Appeal**

Appellant designates the following items to be included in the record on appeal:

| Item No. | Docket No. in 23-34815 | Document | Date Filed/Signed |
|---|---|---|---|
| 1 | n/a | A complete copy of the Bankruptcy Court's Docket Report for Case No. 23-34815 | n/a |
| 2 | ECF No. 603 | Notice of Appeal of Order Confirming Plan to District Court filed by Appellant, 2425 WL, LLC | 07/06/2024 |
| 3 | ECF No. 566 | Order Confirming Chapter 11 Plan of Liquidation of the Debtor By National Bank of Kuwait, S.A.K.P. New York Branch | 06/22/2024 |
| 4 | ECF No. 565 | Memorandum Opinion (Findings of Fact and Conclusions at Law for Order Confirming Chapter 11 Plan) | 06/22/2024 |
| 5 | ECF No. 570 | Transcript of June 19, 2024 Hearing on Plan Confirmation | 06/25/2024 |
| 6 | ECF No. 194 | Chapter 11 Plan of Liquidation of the Debtor By National Bank of Kuwait, S.A.K.P. New York Branch | 04/10/2024 |
| 7 | ECF No. 409 | Objection to Confirmation of Plan filed by Debtor | 06/03/2024 |
| 8 | ECF No. 401 | Objection to Confirmation of Plan filed by 2425 WL, LLC | 06/03/2024 |
| 9 | ECF No. 526 | Supplemental Objection to Plan filed by 2425 WL, LLC | 06/16/2024 |

| 10 | ECF No. 529 | Response to Objection to Confirmation filed by National Bank of Kuwait, S.A.K.P. New York Branch | 06/16/2024 |
| 11 | ECF No. 499-2 | Proof of Claim No. 13 filed by National Bank of Kuwait ($3,864,455.06) | 06/13/2024 |
| 12 | ECF No. 499-3 | Proof of Claim No. 14 filed by National Bank of Kuwait ($67,153,854.15) | 06/13/2024 |
| 13 | ECF No. 499-4 | Amended Objections to Claims No. 13 & 14 of National Bank of Kuwait (ECF No. 284) | 06/13/2024 |
| 14 | ECF No. 499-6 | Second Amended Original Petition in Case No. 2024-27168 styled *Ali Choudhri v. National Bank of Kuwait, S.A.K.P. New York Branch* | 06/13/2024 |
| 15 | ECF No.499-7 | First Amended Complaint for Equitable Subordination and Damages in Adversary No. 24-3043 styled *2425 WL, LLC v. National Bank of Kuwait, S.A.K.P. New York Branch* | 06/13/2024 |
| 16 | ECF No. 499-8 | Amended Petition in Case No. 2023-22748 styled *Galleria 2425 Owner, LLC v. National Bank of Kuwait, S.A.K.P. New York Branch* | 06/13/2024 |
| 17 | ECF No. 499-10 | Original Complaint in Case No. 23-60036, initiating Adversary No. 23-06009 styled *Galleria 2425 Owner, LLC, Naissance Galleria, LLC, and Ali Choudhri v. National Bank of Kuwait, S.A.K.P. New York Branch* | 06/13/2024 |
| 18 | ECF No. 499-12 | Excerpt of Schedule A/B | 06/13/2024 |

Respectfully submitted,

Date: August 9, 2024

*/s/ H. Gray Burks, IV*
H. Gray Burks, IV
State Bar No. 03418320
BurksBaker, PLLC
950 Echo Ln, Suite 300
Houston, TX 77024
Telephone: (713) 897-1297
Facsimile: (713) 869-9100
Email: gray.burks@burksbaker.net
*Attorneys for 2425 WL, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 9, 2024 a true and correct copy of the foregoing document was served on the parties listed below, via electronic delivery through the Court's CM/ECF system:

Jeannie Lee Andresen on behalf of Creditor City of Houston
houston_bankruptcy@lgbs.com, chymel@dorelaw.com

Jeannie Lee Andresen on behalf of Creditor Houston Community College System
houston_bankruptcy@lgbs.com, chymel@dorelaw.com

Jeannie Lee Andresen on behalf of Creditor Houston ISD
houston_bankruptcy@lgbs.com, chymel@dorelaw.com

Reese W Baker on behalf of Attorney Jack Rose
courtdocs@bakerassociates.net,
i.go@bakerassociates.net;igotnotices@gmail.com;courtdocsrbaker@gmail.com;reese.baker
@bakerassociates.net;bakernotices@gmail.com;baker5151calendar@gmail.com;staff@baker
associates.net;bakerassociates@jubileebk.net

Reese W Baker on behalf of Debtor Galleria 2425 Owner, LLC
courtdocs@bakerassociates.net,
i.go@bakerassociates.net;igotnotices@gmail.com;courtdocsrbaker@gmail.com;reese.baker
@bakerassociates.net;bakernotices@gmail.com;baker5151calendar@gmail.com;staff@baker
associates.net;bakerassociates@jubileebk.net

Gary F Cerasuolo on behalf of Creditor Arin-Air Inc.
gary.cerasuolo@sbcglobal.net

Charles Clayton Conrad on behalf of Creditor National Bank of Kuwait, S.A.K.P., New York
Branch
charles.conrad@pillsburylaw.com,
nancy.jones@pillsburylaw.com;docket@pillsburylaw.com

Rodney Lee Drinnon on behalf of Creditor Rodney Drinnon
rdrinnon@mccathernlaw.com,
eutermohlen@mccathernlaw.com;snunez@mccathernlaw.com;dclark@mccathernlaw.com;dc
hester@mccathernlaw.com

Rodney Lee Drinnon on behalf of Defendant Azeemeh Zaheer
rdrinnon@mccathernlaw.com,
eutermohlen@mccathernlaw.com;snunez@mccathernlaw.com;dclark@mccathernlaw.com;dc
hester@mccathernlaw.com

Susan R. Fuertes on behalf of Creditor Harris County, ATTN: Property Tax Division
susan.fuertes@harriscountytx.gov,
vriana.portillo@harriscountytx.gov;Jo.Falcon@harriscountytx.gov

Tara L Grundemeier on behalf of Creditor City of Houston
houston_bankruptcy@lgbs.com

Tara L Grundemeier on behalf of Creditor Houston Community College System
houston_bankruptcy@lgbs.com

Tara L Grundemeier on behalf of Creditor Houston ISD
houston_bankruptcy@lgbs.com

Melissa S Hayward on behalf of Creditor Hayward PLLC
MHayward@HaywardFirm.com, Mholmes@HaywardFirm.com

Patrick L Hughes on behalf of Interested Party Landry's Inc.
hughesp@haynesboone.com,
kenneth.rusinko@haynesboone.com;patrick.hughes@haynesboone.com;jodi.valencia@hayne
sboone.com

Kyung Shik Lee on behalf of Plaintiff Christopher Murray
kslee50@gmail.com, Courtnotices@kasowitz.com

Lloyd A. Lim on behalf of Creditor Sonder USA Inc.
lloyd.lim@keanmiller.com,
rachel.kubanda@keanmiller.com;teresa.miller@keanmiller.com;mack.wilson@keanmiller.co
m;michelle.friery@keanmiller.com

Jennifer Lea MacGeorge on behalf of Creditor Jetall Companies, Inc.
jmac@jlm-law.com

Jennifer Lea MacGeorge on behalf of Plaintiff Naissance Galleria, LLC
jmac@jlm-law.com

James Robert MacNaughton on behalf of Creditor 2425 West Loop, LLC
robert@porterpowers.com

Simon Richard Mayer on behalf of Interested Party QB Loop Property LP
simon.mayer@lockelord.com, Autodocket@lockelord.com

Christopher R Murray
chris@jonesmurray.com, crm@trustesolutions.net

Christopher R Murray on behalf of Trustee Christopher R Murray
chris@jonesmurray.com, crm@trustesolutions.net, 9799263420@filings.docketbird.com

D. Hunter Polvi on behalf of Plaintiff Naissance Galleria, LLC
polvih@passmanjones.com

James Q. Pope on behalf of Debtor Galleria 2425 Owner, LLC

ecf@thepopelawfirm.com, jpope@jubileebk.net

Stephen Wayne Sather on behalf of Creditor 2425 WL, LLC
ssather@bn-lawyers.com, plevine@bn-lawyers.com;cchristensen@bn-lawyers.com;kparsley@bn-lawyers.com;mcalderon@bn-lawyers.com

Stephen Wayne Sather on behalf of Creditor 2425 West Loop, LLC
ssather@bn-lawyers.com, plevine@bn-lawyers.com;cchristensen@bn-lawyers.com;kparsley@bn-lawyers.com;mcalderon@bn-lawyers.com

R. J. Shannon on behalf of Trustee Christopher R Murray
rshannon@shannonleellp.com,
rshannon@shannonleellp.com;7044075420@filings.docketbird.com

Michelle E Shriro on behalf of Creditor RGN-MCA Houston LIII, LLC
mshriro@singerlevick.com, scotton@singerlevick.com;tguillory@singerlevick.com

Mark Edwin Smith on behalf of Creditor 2425 WL, LLC
msmith@porterhedges.com

Howard Marc Spector on behalf of Creditor CC2 TX, LLC
hspector@spectorcox.com,
sshank@spectorcox.com;ahawkins@spectorcox.com;slthorn@spectorcox.com;sarah@spectorcox.com;hspector@ecf.courtdrive.com;sarah@spectorcox.com;sarah@spectorcox.com;hspector@ecf.courtdrive.com

Jeffrey W Steidley on behalf of Debtor Galleria 2425 Owner, LLC
Jeff@texlaw.us

Jeffrey W Steidley on behalf of Plaintiff Ali Choudhri
Jeff@texlaw.us

Ryan Steinbrunner on behalf of Creditor National Bank of Kuwait, S.A.K.P., New York Branch
ryan.steinbrunner@pillsburylaw.com

David Neal Stern on behalf of Creditor 2425 WL, LLC
dstern@bn-lawyers.com, plevine@bn-lawyers.com;cchristensen@bn-lawyers.com;mcalderon@bn-lawyers.com

David W Tang on behalf of Defendant Azeemeh Zaheer
airtang@gmail.com

Andrew M. Troop on behalf of Creditor National Bank of Kuwait, S.A.K.P., New York Branch
andrew.troop@pillsburylaw.com, nydocket@pillsburylaw.com

US Trustee
USTPRegion07.HU.ECF@USDOJ.GOV

Jana Smith Whitworth on behalf of U.S. Trustee US Trustee
jana.whitworth@usdoj.gov

Broocks Wilson on behalf of Creditor Sonder USA Inc.
mack.wilson@keanmiller.com

And on August 9, 2024 by deposit in the United States Mail, first class postage prepaid to:

Galleria 2425 Owner, LLC
1001 West Loop South 700
Houston, TX 77027
*Debtor*

*/s/ H. Gray Burks, IV*
H. Gray Burks, IV

**EXHIBIT 7**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS

In re:                                        §

Galleria 2425 Owner LLC                       §                Civil Action No   4:24-cv-02590

        Debtor                                §
                                              §         Bankruptcy Case No  23-BK-34815
                                              §
        Appellant                             §
2425 WL, LLC

# Notice of Filing of an Appeal

1.  A notice of appeal to the district court was filed before the bankruptcy court on  July 6, 2024

2.  This appeal has been assigned to United States District Judge Keith P Ellison

3.  The appeal has been docketed as 4:24-cv-02590

4.  Motions affecting this appeal, or the judgment or order from which this appeal is taken must
    be filed in accordance with Fed. R. Bankr. P. 8006, 8007, 8008 and 8009(e).

5.  Within 14 days after the notice of appeal was filed, the appellant must file a designation of the
    record. *See* Fed. R. Bankr. P. 8009. Within 14 days after being served with the appellant's
    designation, appellees may file additional designations.

6.  Designations of the record must be filed with the bankruptcy court. Do not file copies of
    designated items that are already on file with the bankruptcy court. Parties must electronically
    file copies of admitted trial exhibits they designate for inclusion in the record.


Date July 11, 2024

                                        Nathan Ochsner, Clerk of Court
                                        H. Lerma
                                        Deputy Clerk

# **EXHIBIT 8**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 23-34815 (JPN)** |
| **GALLERIA 2425 Owner, LLC** | § | |
| | § | **Chapter 11** |
| Debtor. | § | |
| | § | |

## NOTICE OF CONFIRMATION AND EFFECTIVE DATE OF CHAPTER 11 PLAN OF LIQUIDATION OF THE DEBTOR BY NATIONAL BANK OF KUWAIT S.A.K.P., NEW YORK BRANCH

**PLEASE TAKE NOTICE OF THE FOLLOWING**:

1.     **Entry of Confirmation Order**.  On June 22, 2024, the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court") entered an order [ECF No. 566] (the "Confirmation Order") confirming the *Chapter 11 Plan of Liquidation of the Debtor* [ECF No. 194] (the "Plan") proposed by the National Bank of Kuwait S.A.K.P., New York Branch's ("NBK").  Attached as Exhibit A is a copy of the Confirmation Order and the Plan. [1]

2.     **Effective Date of the Plan**.  The Effective Date of the Plan is **August 21, 2024**.

3.     **Substantial Consummation of Plan**.  The Plan has been substantially consummated.

4.     **Release, Exculpation, and Injunction**.  Pursuant to the Confirmation Order, the release, injunction, and exculpation provisions in Article IX of the Plan are now in full force and effect

5.     **Gatekeeping**.  Pursuant to the Confirmation Order and the gatekeeping injunction in Article IX.E of the Plan, before you initiate or continue any claim or action against a released party under the plan that relates in any way to the Debtor or to the chapter 11 case, you must first obtain approval from the Bankruptcy Court and show that you have standing to pursue the claim or action and the claim or action is colorable.

6.     **Administrative Claim Bar Date**.  As provided in Article II.B of the Plan and in the Confirmation Order, all requests for payment of an Administrative Claim must be filed with the Bankruptcy Court and served on NBK, the Liquidation Trustee and the U.S. Trustee no later than **October 6, 2024** (the date that is 45 days after the Effective Date).

---

[1]  Capitalized terms used but not defined in this notice have the meaning ascribed to them in the Plan.

7.      **Deadline to File Professional Fee Claims**.  As provided in the Article II.B of the Plan and in the Confirmation Order, all final applications for payment of Professional Fee Claims must be filed with the Bankruptcy Court and served on NBK, the Liquidation Trustee, and the U.S. Trustee no later than 5:00 p.m. (prevailing Central Time) on **October 6, 2024** (the date that is 45 days after the Effective Date), unless otherwise ordered by the Bankruptcy Court or such later date is agreed to by the Liquidation Trustee.

8.      **Deadline to File Rejection Damages Claims**.  Pursuant to the Confirmation Order, all executory contracts and unexpired leases of the Debtor are rejected as of the Effective Date. As provided in Article V.C of the Plan, any proofs of claim asserting rejection damages pursuant to the Plan must be filed by **September 20, 2024** (the date that is 30 days after the Effective Date).

9.      **Inquiries by Interested Parties**. Copies of all pleadings (including the Confirmation Order, to which the Plan is attached as Exhibit A) can be reviewed for a fee by visiting http://ecf.txsb.uscourts.gov, or for free at during regular business hours at the office of the Clerk of the Bankruptcy Court, United States Bankruptcy Court for the Southern District of Texas, Houston Division, Bob Casey United States Courthouse, 515 Rusk, Houston, TX 77002.

DATED: August 21, 2024

**PILLSBURY WINTHROP SHAW PITTMAN LLP**

*/s/ Andrew M. Troop*
Charles C. Conrad
Texas State Bar No. 24040721
Ryan Steinbrunner
Texas State Bar No. 24093201
609 Main Street Suite 2000
Houston, TX 77002
Telephone: (713) 276-7600
Facsimile: (713) 276-7634
charles.conrad@pillsburylaw.com
ryan.steinbrunner@pillsburylaw.com

-    *and*    -

Andrew M. Troop (Bar No. MA547179)
Patrick E. Fitzmaurice*
Kwame O. Akuffo*
31 West 52nd Street
New York, NY 10019-6131
Telephone: (212) 858-1000
Facsimile: (212) 858-1500
andrew.troop@pillsburylaw.com
patrick.fitzmaurice@pillsburylaw.com
kwame.akuffo@pillsburylaw.com

*Admitted *pro hac vice*

***Counsel for National Bank of Kuwait, S.A.K.P., New York Branch***

## CERTIFICATE OF SERVICE

The undersigned certifies that on August 21, 2024, a true and correct copy of this document was served via the Court's CM/ECF system on the Chapter 11 Trustee, the Debtor's counsel of record and all others who are deemed to have consented to ECF electronic service, and also by mailing, first class, postage prepaid, to each of the parties on the attached mailing matrix on August 22, 2024.

*/s/ Andrew M. Troop*
Andrew M. Troop

**EXHIBIT 9**

**THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 23-34815 |
| GALLERIA 2425 OWNER, LLC | § | |
| | § | Chapter 11 |
| Debtor. | § | |

---

**REPORT OF SALE**

---

1.      On or about August 20, 2024, the undersigned chapter 11 trustee in this case sold certain real property located at 2425 West Loop South in Houston, Texas, to Houston 2425 Galleria, LLC, as designee and assignee of National Bank of Kuwait, S.A.K.P., for $27 million.

2.      The sale was authorized by this Court's order dated July 8, 2024. DE 608.

3.      The sale closed on August 20, 2024.

4.      The closing included a credit bid of $27 million as well as cash payments for distribution according to the confirmed plan, DE 566, as reflected in the attached statement.

Dated: August 21, 2024

Respectfully submitted,

*/s/ Christopher Murray*
602 Sawyer, Suite 400
Houston, TX 77007
Telephone: (832) 529-3027
Facsimile: (832) 529-3393
chris@jonesmurray.com

*Chapter 11 Trustee*



**Chicago Title and Trust Company**
10 South LaSalle Street, Suite 3100
Chicago, IL 60603
3122232279

**Disbursement Statement**

| | |
|---|---|
| **Settlement Date:** | August 20, 2024 |
| **Disbursement Date:** | August 20, 2024 |
| **Order Number:** | ███████ |
| **Escrow Officer:** | Raquel Gonzalez |
| **Escrow Officer Email:** | ███████████████ |
| **Buyer:** | Houston 2425 Galleria LLC, a Delaware limited liability company |
| **Seller:** | Galleria 2425 Owner, LLC, a Delaware limited liability company, by and through Christopher R. Murray, the chapter 11 trustee appointed in Case No. 23-34815-JPN in the U.S. Bankruptcy Court for the Southern District of Texas, Houston Division |
| **Property:** | 2425 West Loop South<br>Houston, TX 77027<br>Harris County |

| | Buyer | | Seller | |
|---|---|---|---|---|
| | Debit | Credit | Debit | Credit |
| **Total Consideration** | | | | |
| 1. Incoming Buyer Funds | | 4,510,862.80 | | |
| **Title/Escrow Charges $93,031.00** | | | | |
| 2. Owner's Policy Premium | 87,035.00 | | | |
| 3. Escrow Closing Fee (includes Gap Coverage) | 4,500.00 | | | |
| 4. Real Estate Tax Payment Service Fee | 150.00 | | | |
| 5. Out-of-Pocket Fees (Tax Certificate, Overnights, Coordination, etc.) | 425.00 | | | |
| 6. Recording & Service Fees | 921.00 | | | |
| **Other Charges** | | | | |
| 7. Commission and Marketing Reimbursement to Strategic Auction Solutions, LLC (dba Hilco Real Estate Auctions) Invoice PROJ-01997 | 140,000.00 | | | |
| 8. City of Houston RE Taxes 2022 and 2023 to Ann Harris Bennett, Tax Assessor Collector *DUE 8/2024* | 427,856.20 | | | |
| 9. Houston I.S.D. RE Taxes 2022 and 2023 to Ann Harris Bennett, Tax Assessor Collector *DUE 8/2024* | 787,656.62 | | | |
| 10. Houston Comm. Coll. System RE Taxes 2022 and 2023 to Ann Harris Bennett, Tax Assessor Collector *DUE 8/2024* | 85,803.84 | | | |
| 11. Harris County Taxing Authorities to Harris County Tax Office *DUE 8/2024* | 587,709.00 | | | |
| 12. Lien Payoff- CC2 TX, LLC to CC2 Holdings, LLC *AS OF 8/14/24- PLUS 7 DAYS PER DIEM* | 916,117.73 | | | |

**Disbursement Statement**

| | Buyer | | Seller | |
|---|---|---|---|---|
| | Debit | Credit | Debit | Credit |
| **Other Charges (continued)** | | | | |
| 13.  Amount to Trustee under Confirmed Plan to Galleria 2425 Owner, LLC Debtor Christopher R. Murray, Trustee | 1,472,688.41 | | | |
| **Subtotals** | 4,510,862.80 | 4,510,862.80 | 0.00 | 0.00 |
| **Balance Due FROM Buyer** | | **0.00** | | |
| **Balance Due TO Seller** | | | **0.00** | |
| **Totals** | 4,510,862.80 | 4,510,862.80 | 0.00 | 0.00 |

**See signature page to follow**

Case 4:24-cv-00825 Document 15-1 Filed on 03/07/24 in TXSD Page 222 of 236

**EXHIBIT 10**

**THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 23-34815 |
| GALLERIA 2425 OWNER, LLC | § | |
| | § | Chapter 11 |
| Debtor. | § | |

---

**REPORT OF SALE**

---

1.      On or about August 20, 2024, the undersigned chapter 11 trustee in this case sold certain real property located at 2425 West Loop South in Houston, Texas, to Houston 2425 Galleria, LLC, as designee and assignee of National Bank of Kuwait, S.A.K.P., for $27 million.

2.      The sale was authorized by this Court's order dated July 8, 2024. DE 608.

3.      The sale closed on August 20, 2024.

4.      The closing included a credit bid of $27 million as well as cash payments for distribution according to the confirmed plan, DE 566, as reflected in the attached statement.

Dated: August 21, 2024                    Respectfully submitted,

                                        */s/ Christopher Murray*
                                        602 Sawyer, Suite 400
                                        Houston, TX 77007
                                        Telephone: (832) 529-3027
                                        Facsimile: (832) 529-3393
                                        chris@jonesmurray.com

                                        *Chapter 11 Trustee*



**Chicago Title and Trust Company**
10 South LaSalle Street, Suite 3100
Chicago, IL 60603
3122232279

**Disbursement Statement**

| | |
|---|---|
| **Settlement Date:** | August 20, 2024 |
| **Disbursement Date:** | August 20, 2024 |
| **Order Number:** | ▮▮▮▮▮ |
| **Escrow Officer:** | Raquel Gonzalez |
| **Escrow Officer Email:** | ▮▮▮▮▮▮▮▮▮▮▮ |
| **Buyer:** | Houston 2425 Galleria LLC, a Delaware limited liability company |
| **Seller:** | Galleria 2425 Owner, LLC, a Delaware limited liability company, by and through Christopher R. Murray, the chapter 11 trustee appointed in Case No. 23-34815-JPN in the U.S. Bankruptcy Court for the Southern District of Texas, Houston Division |
| **Property:** | 2425 West Loop South<br>Houston, TX 77027<br>Harris County |

| | Buyer | | Seller | |
|---|---|---|---|---|
| | Debit | Credit | Debit | Credit |
| **Total Consideration** | | | | |
| 1.  Incoming Buyer Funds | | 4,510,862.80 | | |
| **Title/Escrow Charges $93,031.00** | | | | |
| 2.  Owner's Policy Premium | 87,035.00 | | | |
| 3.  Escrow Closing Fee (includes Gap Coverage) | 4,500.00 | | | |
| 4.  Real Estate Tax Payment Service Fee | 150.00 | | | |
| 5.  Out-of-Pocket Fees (Tax Certificate, Overnights, Coordination, etc.) | 425.00 | | | |
| 6.  Recording & Service Fees | 921.00 | | | |
| **Other Charges** | | | | |
| 7.  Commission and Marketing Reimbursement to Strategic Auction Solutions, LLC (dba Hilco Real Estate Auctions) Invoice PROJ-01997 | 140,000.00 | | | |
| 8.  City of Houston RE Taxes 2022 and 2023 to Ann Harris Bennett, Tax Assessor Collector *DUE 8/2024* | 427,856.20 | | | |
| 9.  Houston I.S.D. RE Taxes 2022 and 2023 to Ann Harris Bennett, Tax Assessor Collector *DUE 8/2024* | 787,656.62 | | | |
| 10.  Houston Comm. Coll. System RE Taxes 2022 and 2023 to Ann Harris Bennett, Tax Assessor Collector *DUE 8/2024* | 85,803.84 | | | |
| 11.  Harris County Taxing Authorities to Harris County Tax Office *DUE 8/2024* | 587,709.00 | | | |
| 12.  Lien Payoff- CC2 TX, LLC to CC2 Holdings, LLC *AS OF 8/14/24- PLUS 7 DAYS PER DIEM* | 916,117.73 | | | |

**Disbursement Statement**

| | Buyer | | Seller | |
|---|---|---|---|---|
| | Debit | Credit | Debit | Credit |
| **Other Charges (continued)** | | | | |
| 13.  Amount to Trustee under Confirmed Plan to Galleria 2425 Owner, LLC Debtor Christopher R. Murray, Trustee | 1,472,688.41 | | | |
| **Subtotals** | 4,510,862.80 | 4,510,862.80 | 0.00 | 0.00 |
| **Balance Due FROM Buyer** | | **0.00** | | |
| **Balance Due TO Seller** | | | **0.00** | |
| **Totals** | 4,510,862.80 | 4,510,862.80 | 0.00 | 0.00 |

**See signature page to follow**

# EXHIBIT 11

United States Bankruptcy Court
Southern District of Texas

**ENTERED**

June 22, 2024

Nathan Ochsner, Clerk

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 23-34815** |
| **GALLERIA 2425 OWNER, LLC,** | § | |
| | § | |
| Debtor. | § | |
| | § | **CHAPTER 11** |

## <u>MEMORANDUM OPINION</u>

Before the Court is a Chapter 11 Plan of Liquidation (ECF No. 194), filed by National Bank of Kuwait S.A.K.P., New York Branch, ("NBK") Galleria 2425 Owner, LLC (the "Debtor's") largest secured creditor. These parties have been involved in litigation for several years and the confirmation of the Chapter 11 Plan was hotly contested. The plan has drawn several objections and responses as follows:

An Objection to Confirmation has been filed by City of Houston, Houston Community College System and Houston ISD (ECF No. 286). The objection was withdrawn on June 18, 2024 (ECF No. 547).

An Objection to Confirmation was filed by 2425 WL, LLC on June 3, 2024 (ECF No. 401). A Supplemental Objection was then filed on June 16, 2024, by 2425 WL, LLC,[1] and a response was filed by NBK on June 16, 2024.[2]

An Objection to Confirmation was filed by the debtor, Galleria 2425 Owner, LLC on June 3, 2024 (ECF No. 409).

Arin-Air filed its objection to confirmation on June 3, 2024 (ECF No. 410). The objection was not withdrawn, but Arin Air failed to appear to prosecute its objection at the confirmation hearing. Accordingly, the objection is overruled for want of prosecution.

An Objection to Confirmation was also filed by CC2 TX, LLC (ECF No. 454), which was withdrawn on June 17, 2024 (ECF No. 532).

On June 14, 2024, NBK filed a Notice of Plan Supplement to Chapter 11 Plan (ECF No. 516), and 2425 WL, LLC filed a Supplemental Response on June 16, 2024 (ECF No. 526), which drew a response from NBK (ECF No. 529).

---

[1] ECF No. 526.
[2] ECF No. 529.

In its Brief filed on June 14, 2024,[3] NBK advised that there was also an informal objection by the United States Trustee, and by tax lienholders. NBK revised the proposed confirmation order to satisfy these objections.

NBK is seeking confirmation of its plan and requesting that the remaining objection filed by 2425 WL, LLC be overruled. Hearing was held on June 19, 2024. NBK appeared through its corporate representative Michael C. Carter, a Vice Present of NBK who signed the proposed plan and its counsel, Charles Conrad, Andrew Troop, Patrick Fitzmaurice and Kwame Akuffo. The Chapter 11 Trustee, Christopher Murray appeared with his counsel, R.J. Shannon. The objecting parties are all controlled by Ali Choudhri, who also directed the multiple lawyers appearing for his entities in this case. Debtor appeared through its counsel Reese Baker. 2425 WL, LLC appeared through its counsel Gray Burks and Stephen Sather. Ali Choudhri also appeared pro se. The entities are interrelated as follows.

2425 WL, LLC was the owner of the Property in 2018. Galleria 2425 Owner, LLC was formed in 2018. It is 100% owned by Galleria 2425 JV, LLC, which was also formed in 2018. Galleria 2425 JV is owned 97.77% by Galleria West Loop Investments, LLC and 1.23 % by Naissance Capital Real Estate, LLC. Ali Choudhri is the Managing Member of Galleria West Loop Investments II, LLC, Galleria 2425 JV, LLC, and Galleria 2425 Owner, LLC as well as the 100% owner of 2425 WL.

Ali Choudhri has been represented by various counsel at times in this case but appeared pro se at this hearing.

For the following reasons, the Chapter 11 Plan is confirmed. The Court will enter a separate confirmation order.

## PROCEDURAL BACKGROUND AND RELATED LITIGATION

This Chapter 11 case was filed on December 5, 2023, by Galleria 2425 Owner, LLC. Galleria 2425 Owner, LLC and its parent, Galleria 2425 JV, LLC, were both formed on or about April 8, 2018. This case is a single asset real estate case for an office building locates at 2425 W. Loop South, Houston, Texas. This is the second bankruptcy case filed by this Debtor within a year. The previous case[4] was dismissed by the Honorable Christopher M. Lopez on November 1, 2023, for cause on the Court's own motion. An adversary was filed related to that case by the Debtor, its principal, Ali Choudhri ("Choudhri") and Naissance Galleria, LLC against NBK, alleging breach of a Confidential Settlement Agreement ("CSA"), tortious interference with contract, tortious interference with business relations, fraud and fraudulent inducement/lender liability, fraudulent conveyance, estoppel, breach of good faith and fair dealing, and unjust enrichment.[5] This case is still pending.

---

[3] ECF No. 514
[4] Case No. 23-60036
[5] Case No. 23-06009, ECF No. 1.

The Debtor filed a state court action on December 18, 2023[6] then immediately removed it to this Court under Adversary No. 23-34815. The removed case asserts the same causes of action as those in Adversary 23-06009, plus causes of action for conspiracy and federal misrepresentation of services and unfair competition under the Lanham Act. That case remains pending.

On February 9, 2024, this Court appointed Christopher R. Murray ("Murray") to serve as the Chapter 11 Trustee with the duties specified in 11 U.S.C. § 1106(a).[7] This appointment became effective on February 13, 2024 with the notice of the required bond.[8] Upon Murray's appointment, the Debtor's exclusive right to propose a plan terminated, and any party in interest could file and prosecute confirmation of a Chapter 11 plan.[9]

An adversary case related to this bankruptcy was filed by 2425 WL, LLC against NBK on March 22, 2024[10] alleging that NBK's allowed claim should be equitably subordinated to 2425 WL, LLC's allowed claim pursuant to 11 U.S.C. § 510(c) quoting language from that section "under principles of equitable subordination, subordinate for purpose of distribution all or part of an allowed claim to all or part of another allowed claim." There is also a cause of action for fraud in the adversary. That case remains pending, although a motion to dismiss has been filed by NBK.

On April 10, 2024, NBK filed a Disclosure Statement and the Chapter 11 Plan of Liquidation of the Debtor.[11] The same date NBK filed the Motion for Entry of Order (I) Conditionally Approving Disclosure Statement; (II) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation, (III) Establishing Plan and Disclosure Statement Objection and Reply Deadlines and Related Procedures, (IV) Approving the Solicitation Procedures, (V) Approving the Combined Hearing Notice, and (VI) Granting Related Relief.[12] The Court entered an order on May 3, 2024, approving the disclosure statement and setting NBK's proposed plan for confirmation for June 7, 2024.[13] The order also required the plan proponent to send out a copy of the plan, the disclosure statement and the ballot form be sent out to creditors, equity security holders, and other parties in interest. NBK filed a notice that it complied with this provision of the order.[14]

Choudhri has also filed another state court case[15] that was removed to this Court on June 7, 2024, as Case No. 24-03120, alleging breach of the CSA and requesting a declaratory judgment. A motion to remand is pending in that case.

---

[6] Cause No. 2023-22748, *Galleria 2425 Owner, LLC v. National Bank of Kuwait,* In the 215th Judicial District Court, Harris County, Texas.
[7] ECF No. 116.
[8] ECF No. 121.
[9] 11 U.S.C. § 1121(c)(1).
[10] Case No. 24-03043
[11] ECF Nos. 194 and 195.
[12] ECF No. 196).
[13] ECF No. 276.
[14] ECF No. 290.
[15] Cause No. 2024-27168, *Ali Choudhri v. National Bank of Kuwait, S.A.K.P., New York Branch*, in the 129th Judicial District Court, Harris County, Texas.

Competing plans have been filed by the Debtor, 2425 WL, LLC and Choudhri in this case. Debtor filed its Chapter 11 Plan on January 30, 2024.[16] The Court abated any rulings on matters that were filed prior to February 1, 2024 until after the appointment of a Chapter 11 Trustee.[17] Debtor filed an amended plan on April 1, 2024.[18] Thereafter, 2425 WL, LLC joined the Debtor and they filed a Second Amended Plan on April 29, 2024.[19] The Debtor and 2425 WL, LLC then filed three more amended plans,[20] prior to withdrawing the Fifth Amended Plan prior to its scheduled confirmation hearing of June 17, 2024.[21]

The hearing on the confirmation hearing of NBK's Chapter 11 Plan was continued to June 17, 2024, on June 10, 2024. On June 14, 2024, the Court entered an order stating that confirmation would resume on June 19, 2024, if not reached on June 17, 2024.

In addition, this case has generated three appeals to the United States District Court for the Southern District of Texas. 2425 WL, LLC filed a notice of appeal of orders at ECF Nos. 187 & 223.[22] Sonder USA, Inc. appealed the order at ECF No. 210.[23] The Debtor has appealed the orders at ECF Nos. 276 and 359.[24]

## FACTS

The Debtor's relationship with NBK originated on May 23, 2018, when NBK loaned the Debtor $51,675,000.00 to acquire the Property. The loan was secured by the Property, as well as other things including an assignment of rents.[25] This was an interest only loan with a maturity date of May 23, 2023. It is undisputed that the Debtor failed to make payments on the Note sometime in mid-2020, and a notice of default was sent to the Debtor by NBK in 2021 when the interest reserve was depleted. The default was not cured and NBK attempted to proceed with a foreclosure sale of the Property. Suit was filed in 2021 by the Debtor[26] to stop the foreclosure sale. As part of the temporary injunction entered in that case, the Debtor was required to post bond in the amount of $400,000.00 plus make payments including $80,000.00 monthly payments on which the debtor defaulted. The parties entered into a settlement agreement on August 22, 2022, which included a provision to dismiss this suit with prejudice.[27]

The following provisions of the CSA were discussed at the confirmation hearing:

---

[16] ECF No. 95
[17] ECF No. 102.
[18] ECF No. 163.
[19] ECF No. 252.
[20] Third Amended Plan at ECF No. 302, the Fourth Amended Plan at ECF No. 365 and the Fifth Amended Plan at ECF No. 377.
[21] ECF No. 474.
[22] ECF No. 287.
[23] ECF No. 387.
[24] ECF No. 423.
[25] Proof of Claim No. 14-1 includes a copy of a Loan Agreement, a Promissory Note, a Deed of Trust, Assignment of Leases and Rents and Profits, Security Agreement and Fixture Filing
[26] Cause No. 2021-63370, *Galleria 2425 Owner, LLC v. National Bank of Kuwait, S.A.K.P., a New York Branch, et al;* in the 281st Judicial District Court, Harris County, Texas.
[27] ECF No. 508-7

(a) Acknowledgement of the Indebtedness. As of the Effective Date, Choudhri, Galleria and Naissance acknowledge and agree that NBK is owed $60,212,816.90 under the Loan Documents, **without defenses, setoffs, claims, counterclaims or deductions of any nature whatsoever, all of which are hereby expressly waived;**

(b) Acknowledgment of Existing Defaults. Galleria, Choudhri and Naissance further acknowledges and agrees that: (i) an Event of Default exists under the Loan Documents, (ii) any cure period with respect thereto has expired, (iii) all principal, interest, fees, costs and other charges due under the Loan Documents are fully accelerated and immediately due and owing to NBK **without defenses, setoffs, claims or counterclaims or deductions of any nature whatsoever all of which are hereby expressly waived**, and (iv) that each of Galleria, Choudhri and Naissance waives the right to all notices (including but not limited to notice of default, notice of intent to accelerate, notice of acceleration, and notice of foreclosure) each may otherwise be entitled to under the Loan Documents or otherwise. Galleria, Choudhri and Naissance further acknowledge and agree that all conditions precedent for NBK to post the Property for foreclosure have been fully satisfied;

(d) Settlement Payment. On or before the Payment Date (as defined below), Galleria will pay or cause to be paid to NBK the total sum of $27,000,000 as a settlement for all amounts owed under the Loan Documents, as follows: (i) within five (5) days of the Effective Date, Galleria agrees to request the Court to transfer the amount deposited into the registry of the Court by Choudhri, currently EIGHT HUNDRED AND ONE THOUSAND FIVE HUNDRED AND NINE AND 42/100 US DOLLARS ($801,509.42) (such amount, including any increases thereto or income thereon, the "Down Payment") directly to NBK. To the extent that a Settlement Default (as defined below) occurs, then NBK shall be entitled to retain the Down Payment as liquidated damages and, in addition, shall be entitled to pursue all of its rights and remedies under this Agreement, the Loan Documents or otherwise at law or in equity. If necessary, NBK agrees to join in Galleria's request to the Court where the Lawsuit is pending seeking disbursement of the funds constituting the Down Payment that is currently on file with the registry of the court in the Lawsuit; (ii) within two hundred ten (210) days of the Effective Date (such date, the "Payment Date") Galleria agrees to pay, or cause to be paid to NBK the balance by wire transfer in immediately available funds (the "Settlement Payment"), except to the extent that the Purchase Option is exercised pursuant to Section 3.1(h); and (iii) contemporaneously with NBK's receipt of the Settlement Payment set forth in Section 3.1(d)(ii), NBK will file a release of its lien and deliver proof of such release to Galleria's attorneys establishing that no NBK liens exist or have not been otherwise released by NBK.

The CSA also gives NBK the right to pursue foreclosure of the Property in the event of a Settlement Default.

The Settlement Payment was not made within 210 days, and NBK again advised the Debtor of a default, and that it would proceed with a foreclosure sale set for May 2, 2023. Thereafter, the

debtor instituted new State Court litigation to enjoin the foreclosure sale. A temporary restraining order was entered, and that case was transferred to the 281st Judicial Court, where the prior case was still pending due to an existing counterclaim, although the claims on behalf of the Debtor had been dismissed pursuant to the CSA. NBK then filed a motion to lift the temporary injunction. Hearing was held on the motion on April 12, 2023[28] The Debtor requested additional time to fund the Settlement Payment at that hearing.[29]

Pertinent portions from the transcript of that hearing are:

MR. WETWISKA:[30] He wouldn't tell them. So, yes, there are two things. Yes, time, 60 to 90 days. Okay? If you want to kick them out after that, then kick them out.[31]

MR. WETWISKA: Your Honor, all of those reasons are critical to just getting this done and keeping this building in the shape it's in. And the reason for the 60 to 90, that gives me the cover -- **the ability to recover from the breach that occurred,** because as soon as Mr. Caldwell backed out, we then moved on, and we are now in negotiations. Like I said, we can talk about it. I can tell the court who they are. I've disclosed it to NBK and made them aware. And they're very serious people working with very serious banks. 60 to 90 days, that's it. If you want to kick them out after that time, kick them out.[32] (emphasis added.).

MR. CONRAD:[33] All those claims, by the way, I think it was inappropriate for him to bring them up as an argument in this case. Those have been dismissed with prejudice. Those were the claims of, like, not approving leases, as he was saying. That was his excuse or reason for, "This is why I need more time. This is why I haven't paid.

THE COURT: No, I get that; but I'm just saying that Caldwell can very well say that he learned about it from NBK. But, I mean, what evidence do we have that he actually -- Let me ask you this. If Caldwell actually found out about it from a third party, then they wouldn't be in breach of the settlement agreement, would they?[34]

THE COURT: -- was that -- I get that Mr. Choudhri wants to keep the property. Right? I have a problem with him continuing to kick it down the can [sic] without paying.[35]

---

[28] Cause No. 2021-63370, *Galleria 2425 Owner, LLC v. National Bank of Kuwait, SAKP, New York Branch, a Banking Corporation Organized under the laws of Kuwait, Acting through its New York Branch, and George M. Lee*, in the 281st Judicial District Court, Harris County Texas, ECF No. 498-1.
[29] ECF No. 498-1, page 22.
[30] Mr. Wetwiska is counsel for the debtor.
[31] ECF No. 498-1, page 44
[32] ECF No. 498-1, page 45.
[33] Mr. Conrad is counsel for NBK.
[34] ECF No. 498-1, page 61
[35] ECF No. 498-1, page 63

6 / 18

THE COURT: So do with that whatever you want to do with; but I'm just saying you've made representations to me that if I scour the petition -- I don't see it.[36]

THE COURT: You can foreclose the first Tuesday in July, so they're getting kind of 60 days from your original –

THE COURT: No. Here's what I'm going to hold Mr. Wetwiska to. Mr. Wetwiska represented to this court that if he had 60 to 90 days, whatever happens after that, y'all can foreclose. I'm going to hold him to that. **You're getting 60 days. If you don't -- there are no more excuses.**[37]

The Court went on to tell the parties numerous times that NBK could foreclose on July 3, 2023,[38] unless the Debtor paid the Settlement Amount. The Court further advised the parties that he would not allow any further temporary restraining orders. Only two of the $80,000.00 payments were made thereafter. As the Settlement Payment was not made, the Property was posted for the July 2023 sale, and the Debtor filed a Chapter 11 bankruptcy, Case No. 23-60036 on July 5, 2023, which stopped the foreclosure sale. This first bankruptcy was dismissed, the Property was then again scheduled for foreclosure and on the eve of the foreclosure sale, this second bankruptcy case was filed.

## JURISDICTION

This Court has jurisdiction to consider this matter under 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE CHAPTER 11 PLAN[39]

NBK's Chapter 11 Plan is a liquidating plan that provides for a Liquidating Trust, a Liquidation Trustee, the sale of the Property, the payment of administrative claims in full, the payment of priority tax claims in full, partial payment of unsecured creditors and no payments to insiders or subordinated claims. Some of the provisions of the Chapter 11 plan are contingent on whether or not NBK ultimately purchases the Property.

### Classes of creditors, impairments and voting

Administrative claims and priority tax claims are treated in accordance with 11 U.S.C. § 1129(a)(9)(A) and (C) and are unimpaired. There are eight separate classes of claims, with two sub classes in Class 5.

Class 1 is Other Secured Claims, which is any secured claim against the Debtor that is secured by property of the Estate. It does not include NBK or any secured claim asserted by an

---

[36] ECF No. 498-1, page 73
[37] ECF No. 498-1, page 76
[38] Foreclosure was actually scheduled for July 5th, as the first Tuesday was July 4th in 2023.
[39] All capitalized terms are defined in the Plan at ECF No. 194.

Insider. The Class will receive cash in an amount equal to its secured claim, or at the discretion of the Liquidation Trustee, the property securing its claim in full satisfaction of its debt. It is unimpaired.

Class 2 is Other Priority Claims, claims under 11 U.S.C. 507(a), but does not include any administrative claims, professional fee claims, priority tax claims or any claim asserted by an insider. The class will receive cash in an amount equal to its claim. It is unimpaired.

Class 3 is the NBK Tax Claim, and it will receive $1,696,384.85 if it is not the purchaser of the Property. If it is the purchaser of the Property, it will not receive a distribution. It is impaired.

Class 4 is the NBK Secured Claim, and it will receive $18,600,000.00 or any amount established at the Auction as determined by the successful bid. If NBK is not the purchaser of the property, NBK shall receive in full and final satisfaction of its claim, the Remaining Cash and any excess proceeds after payment of the Distribution Account Claims. NBK shall not receive a distribution if it is the purchaser of the Property. It is impaired. NBK accepts the plan.

Class 5(a) is Trade General Unsecured Claims shall receive in full and final satisfaction of such claim cash equal to 70% of the allowed amount of such claim and a pro-rata share of the Liquidation Trust Assets. It is impaired. NBK's representative testified that these creditors performed work on the Property, and that is why there were separately classified.

Class 5(b) is the Other General Unsecured Claims, and it shall receive in full and final satisfaction of such Claim a pro rata share of the Liquidation Trust Assets; provided that NBK has an Other General Unsecured Claim of 90% of the allowed amount of the NBK Deficiency Claim as determined by the Successful Bid and in accordance with Section 506. The NBK Deficiency Claim is not subject to objection, disallowance, offset, reduction or subordination. It is impaired. NBK accepts the plan.

Class 6 are Insider Claims consisting of the claims of 2425 WL (POC No.7), Ali Choudhri (POC 21), Ali Choudhri (POC 22), Jetall Companies Inc. (POC No. 20) and Jetall Capital, LLC (POC No. 23), and their claims are all extinguished on the Effective Date, and they shall not receive or retain any property under the plan. It is impaired and deemed rejected under Section 1126(g). Class 6 rejects the plan.

Class 7 are Subordinated Claims, claims which are not in any of Classes 1-6 and their claims are all extinguished on the Effective Date, and they shall not receive or retain any property under the plan. It is impaired, and deemed rejected under Section 1126(g)

Class 8 are Interests, which includes any equity security, including any rights arising from the issued and outstanding membership interest or the right to purchase membership interest in Debtor. These claims are all extinguished on the Effective Date, and they shall not receive or retain any property under the plan. It is impaired and deemed rejected under Section 1126(g).

**Executory Contracts**

8 / 18

Executory contracts shall be deemed rejected on the Effective Date unless previously assumed. The plan further provides that any Purchaser shall have the right to amend the Schedule of Contracts/Leases up to thirty days after the Effective Date or to reject any executory contract. If an executory contract or lease is deemed rejected, and there are damages due to the rejection, the Plan provides that the party has thirty days to file a proof of claim and serve that proof of claim on the Chapter 11 Trustee or Liquidation Trustee for those damages. If no proof of claim is filed, the claims are forever barred.

### Implementation of the Plan

The plan provides for the sale of the Property free and clear of liens, claims, Interests, encumbrances, executory contracts, unexpired leases of real or personal property as defined in the Purchas Agreement. The Property will continue to be managed by Jones Lang LaSalle until the Sale is consummated pursuant to the Purchase Agreement. NBK shall contribute case to the Plan if it is the successful purchaser of the Property to pay the Distribution Account Claims in full; initial funding of the Liquidation Trust in the amount of $150,000.00 and payment of $238,307.99 to the Trade General Secured Claims in Class 5(a). The Debtor will then be dissolved, and a Liquidation Trust established.

### Testimony at the hearing on confirmation

The Plan proponent, Michael C. Carter appeared and testified regarding the underlying default of the Loan Agreement with the Debtor, the various litigation between the parties, the provisions of the Plan, especially regarding the various classes, how they were determined, that all leases would be rejected if NBK is the successful buyer of the Property, the releases in the Plan, that the Plan does not provide for any attorneys' fees or expenses of NBK, and that the Plan met the requirements of Sections 1122, 1123 and 1129 for confirmation.

The Chapter 11 Trustee also testified in support of confirmation. It was his testimony that he believed that the Plan was in the best interest of unsecured creditors and the estate, and that it was more likely to be confirmed than the compete plan that had been recently withdrawn. One of the critical aspects that he found was the feasibility of the Plan. In order to determine whether it was feasible, he looked at whether there would be sufficient funds for administrative claims, the final cash collateral order, the recovery to unsecured creditors, whether causes of action were preserved or not and the confirmability of the Plan. He testified that he had reviewed the competing plan of 2425 WL, LLC and the Debtor, and found that it was not feasible, there was a lack of funding and NBK's position as the largest secured creditor.

Murray also testified to the time he spent in investigating claims against NBK, as the Debtor repeatedly stated that these were extremely valuable claims that the Plan was releasing. Murray stated he probably spent at least twelve hours in his investigation. He spoke to Chourdhri, regarding the Debtor's claims, and the Debtor's state court attorneys, Jerry Alexander and James Wetwiska about the state court litigation. He also spoke to representatives of NBK, Paul Caldwell, Azeemeh Zaheer, and Zaheer's counsel, as well as his own counsel. Murray had requested documents from the Debtor pursuant to a request for production but did not receive any documents.

9 / 18

He did receive some informal production from both of the state court attorneys, Alexander and Wetwiska.

It was Murray's opinion that the CSA was likely enforceable and found no factual support or any evidence that NBK had breached the CSA prior to the Debtor's breach. He further testified that it was his opinion that he could not rely on the veracity of Choudhri. It was also his opinion that the Plan contains a compromise of the estate's claims against NBK, that it provides a higher benefit to the estate than pursuing any of the potential claims. He testified that he currently has an objection to the proof of claim of 2425 WL, LLC (POC No. 7) and to the claim of Ali Choudhri (POC No. 21), and the two claims by Jetall Companies, Inc.[40] (POC Nos. 23 and 24).

Lastly, Murray testified that there were two qualified bidders and that an auction of the Property would take place on Friday, June 21, 2024 at 1:00 p.m. He stated further that the solicitation package and completed ballots were received.

One of the Property's tenants, Allen Hollimon, testified that he had received the solicitation package sent by NBK.

Choudhri testified regarding his equity interest in the Debtor and 2425 WL, LLC, as well as the fact that the Debtor did not own any furniture in the Property. He testified that he had purchased the Sonder USA, Inc. claim from the estate,[41] and that Plan could not release that claim. The parties stipulated that the Sonder claim was no longer property of the estate and that the Plan does not address that claim.

The United States Trustee's counsel also appeared and announced that the United States Trustee did not oppose confirmation of the Plan with its suggested language entered into the revised Plan Confirmation Order.

### WRITTEN OBJECTIONS TO CONFIRMATION OF THE CHAPTER 11 PLAN

2425 WL, LLC has filed objections to the Plan[42] stating that the exculpation provisions violate Fifth Circuit law, the plan violates Section 1122 by classifying dissimilar claims in a single class, specifying Class 6, the Plan discriminates by providing different treatment to creditors within a class without the consent of the class members, specifying Class 5(b), the Plan denies the claims of insiders without due process, the injunctive language in the Plan is too broad, the Plan fails to provide adequate means for its implementation as required by Section 1123(a)(5), the Plan has not been proposed in good faith, the Plan fails to identify the Liquidation Trustee, the Plan does not satisfy the cramdown provisions of Section 1129(a)(8) and 1129(b), the Plan unfairly discriminates, the Plan is not fair and equitable, and that the Plan was solicited without adequate information.

---

[40] Jetall Capital Companies, Inc. is also one of Choudhri's entities and he signed both proofs of claim.
[41] ECF No. 337.
[42] ECF No. 401.

The Debtor's Objection[43] also states that there was inadequate information provided for a number of the provisions in the Plan, it further objects for the same reasons as 2425 WL, LLC. The Court will therefore address these objections jointly as the "Objection."

In response to the Objection, NBK points out that it has made changes to the Plan and proposed confirmation order as a result of negotiations with the United States Trustee and other objecting creditors. The first change included the exculpation provisions at Article IX(C) of the Plan. The new language states that "Notwithstanding any provision in the Plan, including Article IX.C of the Plan and the definition of Exculpated Party contained in Article I.A.39 of the Plan, "Exculpated Parties" shall mean only the Chapter 11 Trustee and any Related Parties of the Chapter 11 Trustee."[44] The proposed confirmation order has been amended to include post petition statutory interest on the tax lien claims through the date of payment.

Furthermore, the Liquidation Trustee has now been identified as the Chapter 11 Trustee.

The Court agrees with NBK's response that Class 6 does not contain dissimilar claims, even though some are secured and some are unsecured as all the claims have been asserted by insiders. Moreover, it is not clear that 2425 WL has a secured claim, as the documents attached to Claim 7 are suspect. There was no Note, there was no consideration according to the testimony, only a credit, and the purported Deed of Trust has a date on it stating May 23, 2018, yet the blank notary block has 2021 and it was not filed in the real property records until May 11, 2021. There is also a pending objection to the claim by the Chapter 11 Trustee. Even if it is allowed, it would be junior to NBK's claim and therefore unsecured. The Objection that the Plan unfairly discriminates is overruled.

The Objection states that there is broad injunctive language, where the gatekeeping provision means that no party holding a claim in this case can ever sue NBK for any claim that arose preconfirmation without permission from this Court. The Plan at Article IX(E) contains injunctive language, but the gate keeper provision does not bar third parties from bringing their claims against NBK. Instead, it provides that the Court will (i) determine whether any party seeking to bring a claim against a released party had a "colorable claim" that is not an estate claim, (ii) authorize the party to bring the claim and (iii) adjudicate the claim if the bankruptcy court had jurisdiction over the merit. As pointed out by NBK, NBK only receives a release if the claim or cause of action belongs to and is released under the Plan by the Estate (so-called "derivative claims"). In other words, no non-debtor party is releasing its direct and independent claims, if any, against NBK. This gate keeper provision is consistent with Fifth Circuit law,[45] and the Court overrules the Objection.

The Objection regarding good faith due to the sales process and credit bidding are overruled as the Court has already addressed and allowed credit bidding.[46] The Objection

---

[43] ECF No. 409.

[44] ECF No. 514-4

[45] *In re Highland Cap. Mgmt., L.P.*, 48 F.4th 419, 439 (5th Cir. 2022) ("Courts have long recognized bankruptcy courts can perform a gatekeeping function" and "[w]e affirm the inclusion of the injunction and the gatekeeper provisions in the Plan.").

[46] ECF No.

regarding whether the Plan is fair and equitable is also overruled based on the testimony of the parties at the confirmation hearing regarding the potential litigation claims and the minimal value of those claims.

The Objections to Confirmation of the Plan filed by 2425 WL, LLC (ECF Nos. 401 and 526) and the Debtor (ECF No. 409) are overruled. The objecting creditor has properly filed its proof of claim. However, Murray has filed an objection to it at ECF No. 402. The claimant is defined as an insider and is treated in Class 6 of the Plan.

All other objections have been withdrawn.

## FINDINGS

Based on the record before the Court in this Chapter 11 Case, NBK and each of its respective agents, representatives, members, principals, officers, directors, employees, advisors, and attorneys have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and therefore are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code because they have complied with the applicable provisions of the Confirmation Hearing Order, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules in connection with all of their respective activities arising out of or relating to (i) the execution and implementation of the Plan (as further amended, modified or supplemented), (iii) their participation in this Chapter 11 Case, and (iv) the activities described in section 1125 of the Bankruptcy Code.

11 U.S.C. § 1129(a)(1) The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code.

11 U.S.C. § 1122. The Plan satisfies section 1122 of the Bankruptcy Code because it provides for the separate classification of Claims and Interests, and each Claim and Interest in each Class is substantially similar to other Claims and Interests in such Class. The classification of Claims and Interests under the Plan is fair, reasonable, and appropriate and was not done for any improper purpose. Valid business, legal, and factual reasons exist for separately classifying the various Classes of Claims and Interests under the Plan. The classification complies with applicable law and applicable provisions of the Bankruptcy Code.

11 U.S.C. §§ 1123(a)(1)-(3). The Plan satisfies section 1123(a)(1)-(3) of because Article III of the Plan designates eight Classes of Claims and Interests, specifies the Classes of Claims and Interests that are unimpaired, and specifies the treatment of Claims and Interests that are impaired.

11 U.S.C. § 1123(a)(4). The Plan satisfies section 1123(a)(4) of the Bankruptcy Code because Article III of the Plan provides for the same treatment of all Claims and Interests within each Class.

11 U.S.C. § 1123(a)(5). The Plan and the various documents and agreements set forth in the Plan Supplement and described in the Plan provide adequate and proper means for the Plan's implementation. The Chapter 11 Trustee will serve as the Liquidation Trustee. Accordingly, the Plan satisfies section 1123(a)(5) of the Bankruptcy Code.

11 U.S.C. § 1123(a)(6). Section 1123(a)(6) of the Bankruptcy Code does not apply because no equity securities will be issued under the Plan.

12 / 18

11 U.S.C. § 1123(a)(7). The Plan satisfies section 1123(a)(7) of the Bankruptcy Code because the Plan Supplement discloses who will serve as the Liquidation Trustee, and the manner and selection of the trustee is consistent with the Bankruptcy Code and the interests of all creditors and with public policy.

11 U.S.C. § 1123(b). The additional provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code and, therefore, are consistent with section 1123(b) of the Bankruptcy Code.

11 U.S.C. § 1123(b)(1). As contemplated by section 1123(b)(1) of the Bankruptcy Code, pursuant to the Plan, Class 1 and Class 2 are unimpaired, and Classes 3, 4, 5(a), 5(b), 6, 7 and 8 are impaired.

11 U.S.C. § 1123(b)(2). Article V of the Plan provides for the automatic rejection of certain Executory Contracts and Unexpired Leases pursuant to sections 365 and 1123 of the Bankruptcy Code or the designation for assumption/assignment (and cure) of any Executory Contracts and Unexpired Leases on the Schedule of Contracts/Leases.

11 U.S.C. §§ 1123(b)(3)(A)-(B). Pursuant to sections 1123(b)(3)(A)-(B) of the Bankruptcy Code, Article IX.C and D of the Plan provide for the release and exculpation of certain Claims and Causes of Action owned by the Estate. Article VI.K of the Plan transfers the Causes of Action and Avoidance Actions that have not been released into the Liquidation Trust and allows the Liquidation Trustee to commence, pursue and settle the transferred Causes of Action and Avoidance Actions for the benefit of unsecured creditors.

11 U.S.C. § 1123(b)(5)-(6). The Plan's other provisions are appropriate and consistent with the Bankruptcy Code, including provisions relating to: (i) distributions to Holder of Claims, (ii) resolution of Disputed Claims and Interests, (iii) allowance of Claims, (iv) releases by the Estate of the Released Parties, (v) exculpation of certain parties, (vii) the injunction of certain Claims and Causes of Action to implement the discharge, release and exculpation provisions, and (viii) retention of this Court's jurisdiction. The Plan therefore satisfies the requirements of sections 1123(b)(5) and (6) of the Bankruptcy Code.

11 U.S.C. § 1123(d). Article V of the Plan and this Confirmation Order provide for the cure and assumption or rejection of the Debtor's executory contracts and unexpired leases. If NBK is the Successful Bidder, all executory contracts and unexpired leases will be deemed rejected. If a party other than NBK is the Successful Bidder, that party will determine which executory contracts and unexpired leases will be assumed or rejected. The Court finds that although no evidence was adduced at the hearing regarding the rejection of current leases, and potential damages for those rejections, the Chapter 11 Plan does have provisions that provide for these executory contracts in Article V.

11 U.S.C. § 1129(a)(2)

NBK has complied with the applicable provisions of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126, and 1128, and Bankruptcy Rules 3016, 3017, and 3018, except as otherwise provided or permitted by orders of the Court, as required by section 1129(a)(2) of the Bankruptcy Code. Specifically:

NBK is a proper proponent of the Plan because it is a creditor and party in interest, and it proposed the Plan after the Debtor's exclusive period to propose and confirm a plan terminated as a result of the Chapter 11 Trustee's appointment pursuant to section 1121(c) of the Bankruptcy Code; and

NBK has complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Confirmation Hearing Order in transmitting the Confirmation Materials and related notices and in soliciting and tabulating the votes on the Plan.

11 U.S.C. § 1129(a)(3)

The Plan has been proposed in good faith by NBK and not by any means forbidden by law. The Court has examined the totality of the circumstances surrounding the formulation of the Plan and the evidence submitted in connection with the Confirmation Hearing and the Carter Declaration. The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Estate and to effectuate a distribution to creditors. Thus, the Plan has been proposed in good faith, as such term is used in section 1129(a)(3) of the Bankruptcy Code.

11 U.S.C. § 1129(a)(4)

Any payment made or to be made under the Plan for services or for costs and expenses in, or in connection with, this Chapter 11 Case, or in connection with the Plan and incident to this Chapter 11 Case, has been or will be disclosed to the Court, and any such payment made before Confirmation is reasonable or is subject to the Court's approval as reasonable if it is to be fixed after Confirmation, thereby satisfying section 1129(a)(4) of the Bankruptcy Code. For avoidance of doubt, except as provided for in the Plan regarding NBK's Allowed Claims in Classes 3, 4 and 5(b), NBK's costs and expenses incurred in connection with this Chapter 11 Case or proposing the Plan will not be paid from the Estate. 11 U.S.C. § 1129(a)(5)

The Plan satisfies section 1129(a)(5) of the Bankruptcy Code because NBK has disclosed the identity of the Liquidation Trustee (the current Chapter 11 Trustee) who will administer the Liquidation Trust and its assets and is empowered to exercise all rights and powers of the Estate. On the Effective Date, all current director and officer positions of the Debtor and the Chapter 11 Trustee's position shall be eliminated and the rights, powers, and duties of Chapter 11 Trustee with respect to the Estate shall vest in the Liquidation Trustee.

11 U.S.C. § 1129(a)(6)

Section 1129(a)(6) of the Bankruptcy Code does not apply to this Chapter 11 Case.

11 U.S.C. § 1129(a)(7)

As set forth in the Liquidation Analysis in the Plan Supplement, each Holder of an Impaired Claim or Interest has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Estate were to liquidate under chapter 7 of the Bankruptcy Code on such date. Accordingly, the Plan satisfies the "best interest of the creditors" test under section 1129(a)(7) of the Bankruptcy Code.

11 U.S.C. § 1129(a)(8)

14 / 18

Section 1129(a)(8) of the Bankruptcy Code is satisfied as NBK as the plan proponent and holder of a Class 3 Claim. Holders of Claims in Class 1 and Class 2 are unimpaired by the Plan pursuant to section 1124 of the Bankruptcy Code, and are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. No Holder of a Claim in Class 5(a) voted with respect to the Plan and so Class 5(a) is disregarded for voting purposes under applicable law. Holders of Claims and Interests in Classes 3, 6, 7 and 8 are impaired and receiving nothing under the Plan; thus, these Classes are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code (together, "Rejecting Classes"). Holder of Claims in Classes 4 and 5(b) are impaired and voted to accept the Plan.

11 U.S.C. § 1129(a)(9)

The treatment of Administrative Claims, Professional Fee Claims, Priority Tax Claims, and Other Priority Claims pursuant to Article II of the Plan satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

11 U.S.C. § 1129(a)(10)

The Plan satisfies section 1129(a)(10) of the Bankruptcy Code because at least one Class of Claims that is impaired under the Plan has voted to accept the Plan, excluding any acceptances of the Plan by an insider.

11 U.S.C. § 1129(a)(11)

NBK has met its burden of proving the elements of Section 1129 of the Bankruptcy Code by a preponderance of the evidence, which is the applicable standard. The information contained in the Plan Supplement, the Confirmation Brief, and the Carter Declaration, together with the testimony proffered and other testimony adduced at the Confirmation Hearing, establish that the Plan is feasible and that the Liquidation Trustee will have sufficient resources to meet post-confirmation obligations under the Plan. The feasibility standard of section 1129(a)(11) of the Bankruptcy Code is therefore satisfied.

11 U.S.C. § 1129(a)(12)

The Plan satisfies section 1129(a)(12) of the Bankruptcy Code because Article XI.J of the Plan provides that all Quarterly Fees, i.e., fees payable pursuant to 28 U.S.C. § 1930(a)(6), together with any interest thereon pursuant to 31 U.S.C. § 3717, shall be paid by the Liquidation Trustee for each quarter until this Chapter 11 Case is converted to a chapter 7 case of the Bankruptcy Code, dismissed, or closed, whichever is earlier. Notwithstanding any provision in the Plan to the contrary, all Quarterly Fees due and payable prior to the Effective Date shall be paid in full on the Effective Date or promptly thereafter by the Liquidation Trustee.

11 U.S.C. §§ 1129(a)(13)-(16)

Sections 1129(a)(13), 1129(a)(14), 1129(a)(15) and 1129(a)(16) of the Bankruptcy Code do not apply to this Chapter 11 Case because the Debtor has no employees to which it owes retiree benefits, does not owe domestic support obligations, is not an individual, and is a moneyed, business, or commercial corporation. See ECF No. 72-8 at 22:24-25 ("The Debtor itself does not have employees.").

15 / 18

11 U.S.C. § 1129(b)

Notwithstanding that the Plan meets the requirements for confirmation under section 1129(a), the Plan can be confirmed under section 1129(b) because NBK demonstrated in the Confirmation Brief and at the Confirmation Hearing that the Plan does not discriminate unfairly and is fair and equitable with respect to the Rejecting Classes. Upon Confirmation and the occurrence of the Effective Date, the Plan shall be binding upon the members of all Classes.

11 U.S.C. § 1129(d)

The principal purpose of the Plan is not to avoid taxes or the application of section 5 of the Securities Act of 1933, and there has been no filing by any governmental unit asserting any such attempted avoidance. Therefore, the Plan satisfies section 1129(d) of the Bankruptcy Code.

11 U.S.C. § 1129(e)

Section 1129(e) of the Bankruptcy Code does not apply because this Chapter 11 Case is not a small business case, as that term is defined in the Bankruptcy Code.

## EVIDENTIARY ELEMENTS AND ADDITIONAL FACT FINDINGS

The Chapter 11 Debtor, its principle and NBK have been involved in a long running dispute regarding the singe asset real estate the subject of this Chapter 11. The Court notes that as argued by NBK and agreed to by this Court, this second bankruptcy case needs to come to a conclusion. The Court holds that there are no viable alternatives before this Court other than confirmation of the NBK Chapter 11 Plan.[47]

As shown by the record, the Debtor and its principal have attempted and to this point been very successful in delaying NBK from exercising its rights under its loan documents, deed of trust and the Confidential Settlement Agreement. The Debtor and its principal Choudhri have been involved in a long running scheme to postpone a real estate foreclosure.

This Court has spent over two days June 17 and 19, 2024, hearing specific evidence regarding the disputes between the Debtor, its principal and the NBK. The Court has previously found that the disputes raised by the Debtor, primarily the Debtor's principal, who is also the principal of the other objecting creditor, to be dubious and of limited value that includes primarily nuisance litigation to avoid foreclosure of the subject real estate. The Court finds that is has evaluated the claims raised by the Debtor and its principal based on the evidence presented in this case, especially the documentary evidence. The Courts evaluation finds these claims are not viable.

The Courts evaluation has been bolstered and supported by the testimony of the Trustee who on June 19, 2024 testified that he was in support of the Plan, that he had done extensive investigation into the purported claims against NBK, that he had thoroughly reviewed the Plan and its provisions, that he believed the Plan was in the best interest of the creditors and the estate, that Choudhri had attempted to purchase claims against NBK for $700,000.00, which negated the Debtor's position that the claims were in the tens of millions, and that he had made a well thought out business decision not to pursue those claims. The Court notes that the offer made by Choudhri,

---

[47] While the Court could convert this case to Chapter 7, the Court holds that creditors would be detrimentally affected by conversion and not receive as much as they will under the confirmed Chapter 11 Plan.

in effect tendering a photocopy of a check to the Chapter 11 Trustee for $700,000.00 occurred on June 14, 2024, only three days before the scheduled confirmation hearing. Additionally, the original check was not shown to the Trustee until June 19, 2024, the date the confirmation hearing concluded. Again, evidencing the continuing overall delay by the debtor and Choudhri.

The Court additionally stresses that the Debtor's principal has a large litigation history, not only in this case but various bankruptcy cases scattered throughout the Southern District of Texas.[48]

The Debtor's principal strongly feels that he is a victim of unusual circumstance[49], COVID[50] but mostly the actions of NBK. He strongly complains that the actions of NBK have caused him to default, face foreclosure and that it should pay for its actions [whatever they may be]. However, this totally ignores two distinct facts (1) that the Debtor via his principal has never been able to pay the original note, or his Confidential Settlement Payment or his extended Confidential Settlement Payment which was a sizable discount on the original amount of the Note; (2) the record in this case does not support his sizable but implausible claims. The Court notes two specific allegations. First, the allegation that NBK faces a large lender liability claim based on the CSA and second, that NBK breached that agreement first and therefore the Debtor's breach of the CSA by not paying over $26 million dollars was somehow acceptable. The Court invites the parties to examine the record to find any evidence that either of these facts are true. Yes, the Debtor had lawyers testify that the Debtor had claims but they never explained how or why these claims arose, just that they existed. Additionally, the Court notes that the Chapter 11 Trustee interviewed these attorneys and discounted their claims. Their testimony was incomplete and not believable given the lack of documentary evidence. Just because a lawyer tells this Court or any Court that its client or potential client has a great claim for damages does not make it so or the presentation of evidence in hearings would become superfluous.

This Court having spent considerable time attempting to evaluate the actions and testimony of Ali Choudhri in this case both as a witness and as a pro se litigant[51] The Court, based on this analysis, holds that Choudhri must at times believe what he is telling the Court. Unfortunately, what he has told the Court, often in broad terms, is not supported by rational facts or any

---

[48] Case No. 18-20459 2500 West Loop, Inc., Adversary Case No. 18-2180 *Abdullatif et al v. Jetall Companies, Inc. et al*, Adversary Case No 19-0219 *BDFI LLC et al v. Mokaram-Latif West Loop, Ltd. et al* ; Case No. 22-32998 Houston Real Estate Properties, Adversary Case No. 22-03298 *Abdullatif et al v. Choudhri et al*, Adversary Case No. 23-03141 *Quinlan et al v. Jetall Companies, et al;* Adversary Case No. 03190 *Abdullatif et al v. Choudhri*, Adversary Case No. 03191 *Abdullatif et al v. Choudhri*; Adversary Case No. 03193 *Abdullatif v. Choudhri*; Adversary Case No. 03194 *Abdullatif et al v. Choudhri*; Adversary Case No. 23-03196 *Mokaram Latif West Loop Ltd. v. Choudhri*; Case No. 23-60036 Galleria 2425 Owner LLC, Adversary Case No. 23-06009 *Galleria 2425 Owner, LLC et al v. National Bank of Kuwait, S.A.K.P., New York Branch*; Case No. 23-34815 Galleria 2425 Owner, LLC, Adversary Case No. 24-03120 *Choudhri v. National Bank of Kuwait, S.A.K.P., New York Branch;* Case No. 24-32143 Galleria west Loop Investments, LLC; Case No. 13- 03266 *West Loop Hospitality, LLC et al v. Houston Galleria Lodging Associates, LLC et al*, Case No. 18-00318 *Choudhri v. Wallace et al*; Case No. 18- 02696 *Lee v. BDFI, LLC et al*; Case No. 19-00480 *In re Briar Building Houston LLC*; Case No. 23-03466 *In re Houston Real Estate Properties, LLC*, Case No. 22-00905 *Steadfast 829 Holdings, Inc. v. Ali Choudhri, et al*; Case No. 23-01742 *Choudhri v. Dolcefino et al;* Case No. 24-00404 *829 Yale Holdings, Inc. v. Ali Choudhri, et al;*

[49] One of the debtor's primary tenants was Stage Stores, who filed bankruptcy, liquidated and vacated his building.

[50] COVID has and continues to negatively affect office building occupancy.

[51] The debtor's principal effectively had counsel at the hearing. There were three attorney's present at the hearings on June 17 and 19, 2024 representing the debtor and 2425 WL, LLC both of whom are controlled by Ali Choudhri.

documentary evidence. It additionally often is totally untrue. The Chapter 11 Trustee found that Choudhri's veracity was troubling, the Court strongly agrees with this assessment. Based on the testimony of the Chapter 11 Trustee the Court believes that, in part, Choudhri's reputation in the community for a lack of veracity has damaged his ability to conduct business as a real estate developer. The Court can only look to repeated promises of payment to NBK, that were repeatedly broken to make such a holding.

Lastly, the Court must comment on Choudhri's claims that the process of confirming this Chapter 11 Plan has been unfair, rushed, not transparent, that he and the debtor have not been afforded due process or that this Court is prejudiced against him personally. This debtor has been in two bankruptcies. The first was filed on July 5, 2023, and the second will conclude with the confirmation of the plan in this case. This is a span of almost a year, and his ongoing litigation with NBK spans multiple years. During that time the debtor and Choudhri have failed to propose a viable plan of reorganization for the debtor because they are incapable of proposing one. Additionally, they have been unable to pay what they have promised on multiple occasions. The claims that this process have been rushed or lack due process given the timeline are not credible. That this Court is simply doing what it is constitutionally tasked to do and that Choudhri is by appearance very unhappy with the results does not give rise to his numerous false claims of denial of procedural due process.

## CONCLUSION

For the reasons stated herein, the Court confirms the Plan and will enter a separate Confirmation Order.

**SO ORDERED.**

SIGNED 06/22/2024

_____
Jeffrey Norman
United States Bankruptcy Judge

**EXHIBIT 12**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 23-34815-jln** |
| **GALLERIA 2425 OWNER, LLC** | § | |
| | § | **CHAPTER 11** |
| **DEBTOR.** | § | |

_____

| | | |
|---|---|---|
| **2425 WL, LLC** | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **ADV. NO. 24-3043-jpn** |
| | § | |
| **NATIONAL BANK OF KUWAIT,** | § | |
| **S.A.K.P, NEW YORK BRANCH** | § | |
| **Defendant** | § | |

## RESPONSE TO DEFENDANT NATIONAL BANK OF KUWAIT, S.A.K.P., NEW YORK BRANCH'S MOTION TO DISMISS AMENDED COMPLAINT FOR EQUITABLE SUBORDINATION AND DAMAGES

COMES NOW 2425 WL, LLC, Plaintiff, and files this Response to National Bank of Kuwait, S.A.K.P., New York Branch's ("NBK") Motion to Dismiss Amended Complaint for Equitable Subordination and Damages.

1.    Defendant makes the following arguments in its Motion to Dismiss and in a Supplement:

    a.    2425 WL did not plead that 2425 WL sustained any actual harm;

    b.    2425 WL failed to articulate any specific representations made to it that it contends were false or how such representations were reasonably relied upon; and

    c.    Plaintiff's claims were the same as those rejected by the Court in connection with the Motion to Deny Credit Bidding.

2.    Because this is a Motion to Dismiss under Fed.R.Bankr.P. 7012(b)(6), the Court must accept the well pleaded allegations as true.

1

3.     The Court cited *SI Restructuring, Inc. v. Faulkner (In re SI Restructuring, Inc.)*, 532 F. 3d 355 (5th Cir. 2008) for the proposition that "equitable subordination is remedial, not penal, and in the absence of actual harm, equitable subordination is inappropriate." However, the *S.I. Restructuring* case did not delve into what constituted "actual harm." Equitable subordination is premised upon there being a lien or claim which can be subordinated to another lien or claim. If the lien or claim had been extinguished, there would be no lien or claim to be equitably subordinated. Thus, harm need not be complete and devastating as suggested by NBK. In para. 61, Plaintiff alleged:

> Once Plaintiff parted with title pursuant to NBK's scheme, Plaintiff has been subject to present and prospective harms from the actions of NBK. The present harms consist of having to incur expense and appear in bankruptcy proceedings to counteract NBK's efforts to obtain the property for itself. Plaintiff has also suffered present harm in that the value of the collateral upon which it holds a second lien has been depressed. While the full consequences of holding a lien upon a devalued building have not been felt yet, the fact that the value of the property securing the claim has been valued at only $18.6 million is a real and present harm. That harm will be fully manifested if NBK's plan is confirmed and NBK acquires the property for a credit bid.

These allegations are more than sufficient to establish harm.

4.     Next Defendant claims that Plaintiff has failed to allege a false representation. In para. 65, Plaintiff alleges that Defendant NBK persuaded Plaintiff to convey its real property by representing Plaintiff deal with the lis pendens against its real property when in fact it sought to take the property for itself. In para. 73, Plaintiff alleged that NBK has embarked upon a scheme to cause Plaintiff to transfer its property in return for a second lien and then actively interfered with the property to cause Plaintiff to face losing its interest. The representation is clearly stated that NBK told Plaintiff that if it conveyed its property to a new entity, NBK would help it when in fact NBK sought to harm Plaintiff.

5.     Next Defendant claims that either the Plan or the Order Denying Motion to Prohibit Credit Bidding are preclusive with respect to the claims asserted by 2425 WL.

Defendant claims that the claims asserted by Plaintiff are "identical" to those asserted by the Debtor but does not perform any analysis. One significant difference between the claims asserted by Plaintiff and those asserted by the Debtor is that the Debtor was a party to a settlement agreement in August 2022 which released claims prior to that date while Plaintiff was not. Additionally, to the extent that Defendant is claiming that the Plan operated as a third party release, extinguishing Plaintiff's claims for equitable subordination, such a claim is barred by the recent opinion in *Harrington v. Purdue Pharma*, No. 23-124 (6/27/24).

BARRON & NEWBURGER, P.C.

Dated: July 8, 2024

_/s/Stephen W. Sather_____
STEPHEN W. SATHER
TEXAS BAR NO.: 17657520
7320 N. MOPAC EXPRESSWAY, # 400
AUSTIN, TX 78701
Email: ssather@bn-lawyers.com
PH 512-649-3243

### CERTIFICATE OF SERVICE

By my signature below, I hereby certify that a true and correct copy of this Jury Demand was served on National Bank of Kuwait, S.A.K.P., New York Branch by serving its attorney of record, Charles Conrad, by email to Charles.conrad@pillsburylaw.com on this 8th day of July 2024.

*/s/Stephen W. Sather*

**EXHIBIT 13**

# UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| GALLERIA 2425 OWNER, LLC | § | Case No. 23-34815 (JPN) |
| | § | |
| Debtor | § | |
| | § | |
| ALI CHOUDHRI | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | ADV. PROC. 24-03120 |
| | § | |
| NATIONAL BANK OF KUWAIT, | § | JURY TRIAL DEMANDED |
| S.A.K.P., NEW YORK BRANCH, | § | |
| *Defendants.* | § | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS THIRD AMENDED COMPLAINT

COMES NOW Plaintiff ALI CHOUDHRI, and submits his response to Defendant's Motion to Dismiss Third Amended Complaint and in support respectfully shows:

Response to Motion to Dismiss[1]

A. The "service of process" complaint is meritless on its face

The initial assertion in the Motion to Dismiss deals with NBK's assertion that a defect in service of process compels dismissal.[2] In its Motion to Dismiss, however, the bank also asserts a challenge to the substantive allegations in the complaint.[3] This is a general appearance. In addition, service either has been, or will be, effected[4] pursuant to the rules.[5]

B. The "Failure to State a Claim" motion should be denied.

---

[1] Plaintiff continues to assert that the removal was untimely and improper. Obviously if the Court ultimately agrees, this Motion becomes moot.

[2] Doc. 10, page 7.

[3] Doc. 10, pages 9-10.

[4] Attached to this Response are the results of efforts in this regard and declaration of process server.

[5] *See e.g., Freight Terminals, Inc. v. Ryder Sys., Inc.*, 461 F.2d 1046, 1052 (5th Cir.1972) (noting that although the district court looks to state law to see that proper service was made before removal, the plaintiff has an opportunity to cure service after removal because of 28 U.S.C. § 1448).

**Standard of Review**

The portion of the Motion to Dismiss made under Rule 12(b)(6) globally addresses what documents the Court must look to when evaluating the complaint, but then ignores the very standard of review that the law provides. It also ignores governing precedent concerning the assertion of affirmative defenses in a 12(b)(6) motion. When precedent is appropriately followed, the Motion to Dismiss must be denied.

When evaluating the challenged pleading the court is required to "accept all well-pleaded facts as true, drawing all reasonable inferences in the nonmoving party's favor." *Mayfield v. Currie,* 976 F.3d 482, 485 (5th Cir. 2020) (citation omitted). Courts consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference[6] in the pleadings and matters of which the judge may take judicial notice." [7] *Allen v. Hays,* 65 F.4th 736 (5th Cir. 2023) citing  2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.34[2], at 12-94 (3d ed. 2022). Documents central to the issues in the complaint and referenced by the complaint are also to be considered.[8] *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC,* 594 F.3d 383, 387 (5th Cir. 2010).

NBK premises its attack on the allegations in the complaint thusly: "The Complaint primarily asserts that Mr. Choudhri is entitled to the Tax Liens because of NBK's alleged breach of the Settlement Agreement."[9] This is fundamentally wrong, even if one ignores the obligation to draw all reasonable inferences in Plaintiff's favor. NBK then asserts an affirmative defense of

---

[6] The factual allegations in the state court proceeding were incorporated by reference in the challenged pleadings, and the plaintiff made the appropriate request that this Court take judicial notice of those state court pleadings. See, e.g., footnote 6, at paragraph 35.

[7] Plaintiff requests that the Court take judicial notice of the Order granting a Temporary Injunction against NBK in state court, and the transcript of proceedings that led to the issuance of the order. Copies are attached to this Response.

[8] In this case that would include at least the CSA between the parties, and the proceedings in the 281st State District Court including but not limited to the sixth amended petition with is attached as an exhibit.

[9] Doc. 10, page 9.

claim preclusion, which is not permitted in a Motion to Dismiss, except under circumstances not present here.

### Affirmative Defenses Do Not Appear on the Face of the Complaint

A dismissal under Rule 12(b)(6) can be based on an affirmative defense only if the defense appears on the face of the complaint. *Basic Cap. Mgmt. v. Dynex Cap., Inc.*, 976 F.3d 585, 588 (5th Cir. 2020). In such a case the pleadings in the complaint must reveal "beyond doubt" that no set of facts can be proven to overcome the defense or otherwise entitle the Plaintiff to relief. *Garrett v. Commonwealth Mortg. Corp.*, 938 F.2d 591, 594 (5th Cir. 1991).

Initially it is apparent that to press its case of res judicata, NBK must rely on matters outside the "face of the complaint." The proceedings upon which NBK relies to assert "beyond doubt" the alleged claim preclusion are openly made by reference to proceedings in this Court, but are found nowhere in the complaint. That alone condemns the Rule 12(b)(6) motion based on affirmative defenses.

In addition, though, the underlying claims are not barred by res judicata on their face. The cause of action for breach of contract accrues at the time of breach, and the damages here – the value of the real property interest not returned is fixed at that time. Similarly, the cause of action for conversion accrues at the time of conversion, and the damages for conversion are the value of the property converted at that time. So, too for the other causes of action in the complaint. There is no final judgment entered in any court that has adjudicated the state law claims between the parties that arose and were complete prior to the time of this bankruptcy.

The complaint alleges that NBK owes the plaintiff money. What NBK did with the property it wrongfully held is of no moment. If NBK kept the liens, sold the liens, donated the liens to charity, or used them in a deal, the monetary damages due the Plaintiff -- if he is successful

-- remain unchanged.  Under Plaintiff's pleadings, NBK owes to the Plaintiff the value of the tax liens and has since the breach of contract or tort occurred – irrespective of actions taken by third parties.  The only court that has taken extensive evidence on the claims ruled in favor of Plaintiff.

NBK cites to the Credit Bid Order as evidence of res judicata, but this Court expressly denied a determination on the merits of these claims, recognizing that "NBK is a liquid institution and that any possible claims against it for money damages, by any party, if awarded will be paid."[10] NBK cites to Proof of Claim 21 as support for its claim preclusion defense, but this Court in that Order expressly noted that the order entered was without prejudice to "the rights of Ali Choudhri to pursue any causes of action he may have against the National Bank of Kuwait, S.A.K.P, New York Branch."[11]  Unable to point to any final judgment entered by this Court regarding the claims that appear in the complaint under scrutiny, NBK can hardly effectively claim the benefit of res judicata even if one were to consider them properly in a Rule 12(b)(6)  motion.  The elements of the affirmative defense of res judicata[12] or collateral estoppel[13] do not appear on the face of the complaint "beyond doubt."

### The Complaint and the State Court Papers Establish "Plausible" Claims Upon Which Relief Can Be Granted

The 281st District Court entered an order granting a temporary injunction,[14] finding that it was likely that Galleria would prevail on its claim of breach of contract against NBK.[15] So it is

---

[10] Doc. 535, page 4.

[11] Doc. 640, page 2.

[12] Res judicata requires proof of the following elements: (i) a prior final judgment on the merits by a court of competent jurisdiction; (ii) identity of parties or those in privity with them; and (iii) a second action based on the same claims that were raised or could have been raised in the first action. *Amstadt v. U.S. Brass Corp.,* 919 S.W.2d 644, 652 (Tex.1996).

[13] The party asserting collateral estoppel must prove that (i) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (ii) those facts were essential to the judgment in the first action; and (iii) the parties were cast as adversaries in the first action. "*Reynolds v. Quantlab Trading Partners US, LP,* 608 S.W.3d 549, 557 (Tex. App.-Houston [14th Dist.] 2020, no pet.)."

[14] Attached as an exhibit hereto.

[15] To obtain the temporary injunction, the applicant had to plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable

abundantly clear that the State Court did grant relief on the basis of misconduct of NBK. The pleadings in the 281st not only stated a plausible claim, but stated a claim concerning which relief was in fact granted. NBK does not dispute the factual allegations in State Court and did not appeal the Temporary Injunction.[16] NBK does not dispute the history between NBK and Plaintiff that predates the CSA, as enumerated in the state court pleadings. Nor does NBK dispute the substantial allegations against it or breach of the CSA that appear in the current complaint and the state court pleadings. NBK does not deal with several pages of state court pleadings that address breach of confidentiality, interference with business relations, fraud, and other alleged breaches of the CSA. All of these state plausible claims against NBK.

In the overall context of the complaint, it is clear that the fate of the Tax Liens in the event of a breach of the contract between NBK and Galleria is nowhere found. A construction of the contract that allows NBK to keep the tax liens if it is the one that breaches the contract, or frustrates performance by Galleria, is either nonsensical or void as against public policy. One court has already determined that it is likely that NBK will behave badly. The state court pleadings offer abundant allegations of wrongdoing that satisfies any Rule 12(b)(6) burden as it relates to stating a claim.[17] The factual allegations alleged, and the pleadings and proof offered in the State Court proceedings show as a matter of law that the allegations of misconduct on the part of NBK are "plausible."

The breach of contract allegations present a variety of potential avenues of relief for the

---

injury in the interim. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002).

[16] See TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(4) (West Supp. 2023) (authorizing interlocutory appeal of temporary injunction)."

[17] Plaintiff requests that the court take judicial notice of the state court petition referenced in the complaint, as well as of the orders from that court from which no appeal was taken. A court must take judicial notice if a party requests it and the court is supplied with the necessary information. FED. R. EVID. 201(c)(2). The "necessary information" is supplied herewith as exhibits.

Plaintiff[18]. Initially it is important to correct some factual inaccuracies posited by NBK in its attack on the complaint. First of all, NBK asserts that the CSA states that NBK was required to return the tax liens to the Plaintiff "only if" the payment from Galleria was received on time. This is false.[19] In fact, and the complaint addresses this, the contract is silent on what happens if the transaction is not completed for whatever reason. Under the bizarre interpretation offered by NBK, it could affirmatively sabotage the completion of the contract by Galleria, and still retain the tax liens.

In addition, NBK asserts that Plaintiff "breached" the contract, which is another outright false statement. Plaintiff was never obligated under the contract to do anything. He had no duty or obligation subject to breach. It is unclear on this record what persons or group of people or entities were involved in the attempted rehabilitation of Galleria throughout this drama, but it was Galleria, and only Galleria, that had the obligation to make or cause to be made any payment.

Viewing the pleadings from this court, the pleadings and testimony in the state court, and the order entered in the state court, in the most favorable light to the Plaintiff, NBK prevented performance by Galleria, and thus frustrated the return of the tax liens to the Plaintiff. That alone defeats the Motion to Dismiss. It is important here to note that some of the causes of action asserted in the complaint are equitable in nature, so the actions of NBK need not rise to the level of material breach, but only be enough for a fact finder to determine that it is unfair or unjust for NBK to keep the tax liens.

Of course, Plaintiff asserts that the contract itself requires the return of the tax liens, since

---

[18] In the sixth amended petition, a history of allegedly poor behavior is listed in paras. 22-25. Numerous particulars concerning the breach of the CSA appear in paras. 68, 71, 75, 76, 78, 82, 87, 99, and 100.

[19] The absence of the phrase "only if" is important because NBK, represented by a renowned law firm, did not include that in the contract. Texas courts will not rewrite the contract or supply missing terms under the "guise of interpretation." *Am. Mfrs. Mut. Ins. Co. v. Schaefer,* 124 S.W.3d 154, 157 (Tex. 2003).

Plaintiff had no obligation under the contract, and therefore could not be subject to any penalty for "breach" of the contract. The tax liens are not part of the consideration for the deal, since the amount to be paid by Galleria is unchanged by the ownership of the liens. The tax liens are not "liquidated damages" because there is a liquidated damages clause in the contract that does not mention the tax liens. If the tax liens are liquidated damages, then the pleadings assert they are an unenforceable penalty, yet another vehicle by which the value of the tax liens must be paid to the Plaintiff.

Another possibility under Texas law is that the failure of the contract to address the fate of the tax liens renders the contract ambiguous. Plaintiff has plead this in the alternative, and Texas law provides support for this contention as well.

In Phonetec,[20] a case with surprising similarity to the one at issue here, the Court of Appeals considered a contract in which $250,000 was paid in advance, and that amount was to be repaid to the customer by using an agreed upon reduction formula.[21] The contract contained an early termination clause, which was exercised, and the customer asked for its money back. Phonetec argued that the only way the customer could recoup its money was by performing the contract, but the Court disagreed;

> We agree with Phonetec that, so long as the contract remained in force, the deposit could only be recouped through reduced charges, but we cannot agree that this forecloses any other treatment of the deposit following an agreed early termination.

---

[20] *StarCom Commc'ns, LLC v. Phonetec, LP,* No. 11-07-00305-CV, 2009 WL 1653059, at *1 (Tex. App.-Eastland June 11, 2009, no pet.) (mem. op.),

[21] Prior to the start of any custom programming for Purchaser, Purchaser agrees to pay Phonetec a $100,000 deposit plus the cost of the custom programming. At such time as the programming is finished and performing to Purchaser's satisfaction and prior to any new End User activations, Purchaser agrees to pay Phonetec an additional $150,000 deposit. The total deposit amount shall equal $250,000 and shall be recouped at a rate of $3.00 per active prorated subscriber per month. The method to be used for Purchaser's recoupment of the $250,000 deposit shall be for Phonetec to reduce the unlimited nights and weekends MRC [monthly recurring charge] by $3.00 per End User per month for the first 83,333 active, prorated End User months. This shall be equivalent to a $3.00 per month per prorated active End User credit off the unlimited nights and weekends MRC until such time as the $250,000 deposit amount has been recouped
*Starcom Comms. v. Phonetec,* No. 11-07-00305-CV, (Tex. App. Jun. 11, 2009).

The contract simply fails to address the deposit following an agreed early termination. This absence makes the agreement ambiguous because it is impossible to determine the parties' intentions from the four corners of the agreement. [22]

The case was remanded for evidentiary treatment of the dispute.[23] The pleadings before this Court assert ambiguity in the alternative, which also states a claim upon which relief could be granted.

Finally, at the risk of beating a dead horse further, the complaint alleges in the alternative a series of causes of action that lie in equity. For example, rescission is a remedy that lies if a contract, even a valid one, must be set aside due to fraud, mistake,[24] or other reasons to avoid unjust enrichment. *Martin v. Cadle Co.*, 133 S.W.3d 897, 903 (Tex.App,--Dallas, pet. denied). It has been said that this cause of action is not premised on wrongdoing, but instead applies where equity and good conscience require restitution. *Nivens v. City of League City,* 245 S.w.3d 470, 474, n.2 (Tex.App.—Houston [1st Dist.] 2007, pet. denied). So, even conduct short of a material breach may be enough to support this pleaded cause of action.

The motion to dismiss should be denied.

### **Motion for Leave to Amend**

In the unlikely event that this court determines that the factual predicate for plaintiff's action is not overwhelmingly established by the pleadings in this case and the state court documents applicable to this motion, plaintiff requests leave to amend the pleadings in this court

---

[22] Interestingly, both parties claimed in the trial court and in the court of appeals that the agreement was unambiguous. *See Sage St. Assocs. v. Northdale Constr. Co.,* 863 S.W.2d 438, 445 (Tex. 1993) (explaining that court may conclude that contract is ambiguous even in absence of pleading by either party); see also "[W]hen a contract is ambiguous, the trier of fact must resolve the factual issue of intent ....' *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 181 (5th Cir. 2007)."

[23] More recently and in a similar vein, the Court in *Prince Wateba,* 02-23-00085-CV (Tex.App. Oct. 05, 2023.) dealt with a Rescission Agreement that did not mention a previously paid amount of $431,675 and returned the case to the trial court for evidentiary clarification of the parties' intent.

[24] This too has been pleaded.

8

to set out more fully the acts or omissions complained of in one place.  Motions to amend shall be freely given and[25] plaintiff will only need a brief amount of time to amend his pleadings. No prejudice would accrue to the defendant who has not yet answered.

### Conclusion

The complaint about deficient service of process is mooted by the general appearance of NBK, and Plaintiff has taken steps post removal to effectuate service out of an abundance of caution, pursuant to the rules.  The affirmative defense of claim preclusion is unavailable in this Rule 12(b)(6) motion, but even if properly before the court is deficient on its face.

On the pleadings before this Court one trial court has entered an order granting relief against NBK, to which no appeal was taken.  In addition to the previous adjudication by the trial court, there are abundant facts before this Court in pleadings, and in a transcript of proceedings, that establish wrongdoing of NBK and the inadequacy of this Rule 12(b)(6) motion.  It should be denied.  In the event the court entertains any question concerning the sufficiency of the current complaint, plaintiff moves for leave to amend.

### PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED Plaintiff prays that this Court remand this case to the 129th District Court of Harris County, Texas, that this Court deny the Motion To Dismiss, and grant this party such other and further relief to which he may show himself justly entitled.

---

[25] Fed.R.Civ.P.15(a)

Respectfully Submitted,

**THE STEIDLEY LAW FIRM**

*By Jeffrey W. Steidley*
JEFFREY W. STEIDLEY
State Bar No. 19126300
Federal Bar No. 5609
jeff@texlaw.us
3701 Kirby Drive, Suite 1196
Houston, Texas 77098
(713) 523-9595 (telephone)
(713) 523-0578 (facsimile)

**ATTORNEY FOR PLAINTIFF**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I have served all counsel of record electronically or by other manner authorized by Fed. R. Civ. P. 5(b)(2) on this the 12TH day of August, 2024, as indicated below:

Charles C. Conrad                    ***VIA ECF***
State Bar No. 24040721
Elizabeth Klingensmith
State Bar No. 24046496
Ryan Steinbrunner
State Bar No. 24093201
PILLSBURY WINTHROP SHAW PITTMAN LLP
609 Main Street Suite 2000
Houston, TX 77002
Telephone: (713) 276-7600
Facsimile: (713) 276-7634
charles.conrad@pillsburylaw.com
liz.klingensmith@pillsburylaw.com
ryan.steinbrunner@pillsburylaw.com

**Attorneys for National Bank of Kuwait,**
**S.A.K.P., New York Branch**

*By Jeffrey W. Steidley*
    Jeffrey W. Steidley

**Exhibit B**

Proposed Order

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | Case No. 23-34815 (JPN) |
| GALLERIA 2425 OWNER, LLC | § | |
| | § | Chapter 11 |
| Debtor. | § | |
| 2425 WL, LLC | § | |
| | § | |
| Appellant | § | Civil Action No. 4:24-cv-02590 |
| | § | |
| v. | § | |
| | § | |
| NATIONAL BANK OF KUWAIT, | § | |
| S.A.K.P., NEW YORK BRANCH; | § | |
| CHRISTOPHER R. MURRAY, | § | |
| CHAPTER 11 TRUSTEE | § | |
| | § | |
| Appellees. | § | |

## ORDER DISMISSING APPEAL

Before the Court is the *Motion to Dismiss Appeal* (the "Motion") filed by the National Bank of Kuwait, S.A.K.P., New York Branch. After due consideration of the Motion, responses, and arguments of counsel, it is hereby **ORDERED** that:

1. The Motion is **GRANTED**.

2. This Appeal is dismissed with prejudice.

Signed: _____, 2024.

_____
Honorable Keith P. Ellison
United States District Court Judge