**EXHIBIT 12**

```
                  THE UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF TEXAS
                          HOUSTON DIVISION

                            * * * * *

2425 WL, LLC                    *    CIVIL NO. 4:24-CV-2590
                                *    Houston, Texas
Vs.                             *
                                *    3:27 p.m. - 3:44 p.m.
NATIONAL BANK OF KUWAIT,        *
S.A.K.P., NEW YORK BRANCH       *    November 21, 2024

                            * * * * *
```

**TELEPHONIC MOTION HEARING**

BEFORE THE HONORABLE JUDGE KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

```
                            * * * * *
```

Proceedings recorded by computer stenography
Produced by computer-aided transcription

*EDWARD L. REED*
EdReedCR@aol.com
409-330-1605

```
 1  APPEARANCES:

 2  For the Plaintiff:

 3       MR. JOSEPH CARL CECERE
         Cecere, PC
 4       6035 McCommas Boulevard
         Dallas, TX 75206
 5
         MR. H. GRAY BURKS, IV
 6       Attorney at Law
         9601 Katy Freeway, Suite 450
 7       Houston, TX 77024

 8  For the Defendant:

 9       MR. ANDREW M. TROOP
         MR. CHARLES C. CONRAD
10       Pillsbury Winthrop Shaw Pittman, LLP
         31 West 52nd Street
11       New York, NY 10019

12  For the U.S. Trustee:

13       MR. R.J. SHANNON
         Shannon & Lee, LLP
14       2100 Travis
         Suite 1525
15       Houston, TX 77002

16  Case Manager:

17       ART RIVERA

18  Court Reporter:

19       EDWARD L. REED

20

21

22

23

24

25
```

Case 4:24-cv-04259 Document 15-13 Filed on 01/03/25 in TXSD Page 4 of 13
Case 24-03590 Document 153 Filed in TXSB on 12/25/24 Page 3 of 12

3

```
 1                    P R O C E E D I N G S
 2                3:27 P.M. - NOVEMBER 21, 2024
 3            CASE MANAGER:  Any parties on the line?
 4            MR. SHANNON:  This is R.J. Shannon on behalf
 5  of the Trustee.  We're not a movant, but we are a
 6  related party in the case.
 7            THE COURT:  Okay, Keith Ellison here.
 8            MR. TROOP:  Your Honor, I'm Andrew Troop for
 9  the National Bank of Kuwait.
10            THE COURT:  Welcome.
11            MR. TROOP:  Thank you, Your Honor.
12            MR. SHANNON:  R.J. Shannon for the Trustee's
13  Office.
14            THE COURT:  Okay, sorry to interrupt.  Go
15  ahead.
16            MR. CECERE:  This is Joseph Carl Cecere for
17  2425 WL, LLC.
18            THE COURT:  Anybody else expected?
19            MR. TROOP:  This is Andrew Troop again.  My
20  partner, Charles Conrad, is in the room.
21            THE COURT:  Okay.  Anybody else?
22            MR. CECERE:  Your Honor, Gray Burks, who is a
23  substituted out counsel, but he filed a designation,
24  is going to be available, but I don't think he's joined
25  yet.
```

```
 1              THE COURT:  We'll wait for him.
 2         [Pause]
 3              Mr. Burks doesn't have anything to say
 4   about the disqualification issue, does he?
 5              MR. CECERE:  No, Your Honor, he does not.
 6              THE COURT:  Okay, then why don't we start on
 7   that issue and then he can join us later.
 8              I really don't -- I just got these two
 9   letters, one from each side, about disqualification.
10   If this is an issue, why wasn't a Motion to Disqualify
11   filed in this cases?
12              MR. CECERE:  Your Honor, we're planning on
13   filing a Motion to Disqualify.  We have been busy.  The
14   bank filed an action to evict one of my clients and
15   we've been consumed with that and other things, so we
16   just haven't gotten it on file yet.  But we do plan on
17   filing a motion for disqualification.  We did think,
18   however, given that the bank is going to go back to the
19   Justice of the Peace Court to get clarification on the
20   order, we thought it would be appropriate to wait until
21   that clarification was received because, by its terms,
22   the order does seem to extend the [?] and raise
23   substantial questions as to whether the --
24              THE COURT:  Secure?
25              MR. TROOP:  Yes, thank you, Your Honor.  The
```

```
 1  parties to this appeal are not the parties to this
 2  clarification order that was entered by the J.P. Court.
 3  I would also note, the ability to disqualify someone in
 4  federal court requires that a federal court adjudicate
 5  that issue and not rely on a state court judge.
 6              And thirdly, Your Honor, that
 7  disqualification order was entered three weeks ago.
 8         THE COURT:  I'm having trouble hearing you.
 9         MR. TROOP:  I'm sorry, that qualification
10  order was entered three weeks ago.
11         THE COURT:  That's what I noticed.
12         MR. TROOP:  Yes.  Mr. Cecere was not involved
13  in the eviction proceedings.  It does not relate to
14  his client, 2425 WL, which is the appellant in this
15  case.  It's a different entity that is represented by
16  different parties, and there is no excuse here for what
17  they intend to do.
18              And finally, Your Honor, I don't know on
19  what factual basis anyone would assert that Pillsbury
20  was a co-counsel in the J.P. action.  We did not appear
21  in that case and was not identified as co-counsel.
22              And I will say, clearly, Your Honor, I was
23  in the courtroom on the day that the disqualification
24  motion with respect to Jackson Walker was argued.  And
25  the underlying motion, I represent to you, was only
```

```
 1  against Jackson Walker.  There was no mention of
 2  Pillsbury at the hearing, there was no request made
 3  with respect to Pillsbury at the hearing, and the order
 4  which was submitted after the hearing is different
 5  from the relief that was requested in the order.  And
 6  Pillsbury never got served with anything, understanding
 7  we weren't counsel in the case.
 8              So, Your Honor, I don't think there is any
 9  reason for you to delay this.
10              I'm sorry, Your Honor, one final thing.
11  The issues in this appeal do not relate to the issue
12  of whether or not [someone] who is not a party to this
13  appeal can be dispossessed from the property which was
14  sold pursuant to a bankruptcy court order, which has
15  not been appealed, and the property was sold free and
16  clear of all liens, incumbrances, and other interests
17  in the property.  So, whatever issue we have here on
18  appeal by the appellant are divorced from that eviction
19  proceeding in every respect and should not delay the
20  appeal.
21          THE COURT:  This is Keith Ellison speaking.
22  I'm going to rule the issue of disqualification has
23  been waived for purposes of this hearing because of
24  this three-week delay in getting the papers to me.  I
25  can't possibly look into this question fully and fairly
```

```
 1  on this short notice, so I'm going to consider the
 2  issue of disqualification waived for lack of notice.
 3              Now we'll move to the Motion to Dismiss
 4  the appeal.  I have the papers, I've read the papers.
 5  Does the Appellee have anything it wishes to say in
 6  addition to what's in the papers?
 7          MR. TROOP:  Your Honor, the way you phrased
 8  the question, I would add to the papers only two things
 9  that I don't think that we've responded to what has
10  been filed by the Appellant.
11              The first argument responded to by the
12  Appellant is an argument we've made in this most recent
13  filing that because there are still subsequent events
14  occurring that we contend undercuts Appellant's
15  argument, that they shouldn't proceed with the appeal
16  because of the intention of the award was to get an
17  answer in time for secondary filing for the designation
18  of that as an issue.  And the standing issue
19  demonstrates that the Motion to Dismiss is premature.
20              I think for that, Your Honor, I would
21  respond with, no, that's exactly what it's all about.
22  The fact is that there are subsequent things happening.
23  Whatever metaphor they use, it just makes it stronger,
24  Your Honor, it doesn't make it --
25          THE COURT:  Okay, I understand that point.  Is
```

```
 1  that it?
 2          MR. TROOP:  Your Honor, let me just make sure
 3  as I'm looking through my notes, if you'll just give me
 4  30 seconds.
 5          THE COURT:  I thought your papers were
 6  complete.  You don't have to feel the need to say
 7  anything more.
 8          MR. TROOP:  Your Honor, thank you.
 9          THE COURT:  Okay, for the Appellant.
10          MR. CECERE:  Your Honor, thank you.  I want to
11  go through a few things mainly that are raised in their
12  reply brief just to make sure that they are clear.
13  And I'll try and be as brief as possible.
14              On standing, we cited numerous cases in
15  which parties had standing to challenge release or
16  exculpation provisions without being creditor.  We
17  think those stand for the proposition that whether or
18  not we have a good -- you know, whether or not our
19  claim is disallowed, that we can proceed with the
20  appeal and we have standing to appeal because we have
21  two independent grounds for standing.
22              Now, the bank says that we failed to
23  timely appeal the order disallowing our claims in the
24  Bankruptcy Court.  That is maybe one of the issues on
25  appeal, but is not correct.  You can see the appeal is
```

1  now docketed in your court, 4:24-cv-03834, and we've
2  explained in Docket Entry 1-1 on page 3 how our appeal
3  is timely, and the Bankruptcy Court just mistook the
4  deadline, mistook when the order was entered and when
5  our motion was actually filed.  So we don't think that
6  it's an untimely appeal.  And again, that's an issue
7  that's kind of got to be resolved through the appellate
8  process here before we know whether or not our claim
9  really is or should be disallowed.
10            And I would make one other case about the
11 idea -- or make one more point about standing and our
12 ability to challenge the gatekeeping order.  That is
13 simply something that is not -- I'm sorry, I'm just
14 reviewing the rest of my notes.  I have challenges to
15 the gatekeeping order and I have challenges to the
16 injunction and the exculpation provisions.  We haven't
17 given up on any of those arguments.  We haven't given
18 up on our claim that -- or how our claim is treated.
19 We're keying on those things.  But what we're saying
20 here is we need a release of those independently and
21 see if there is a certain kind of relief that can be
22 awarded on each of those claims independently and even
23 if like reclassifying creditors would require
24 unscrambling the egg, as the bank says.  We
25 respectfully submit that several of them do not.

```
 1            The question, for example, is whether or
 2   not the relief or exculpation, the gatekeeping
 3   provisions, can be taken out of the plan without
 4   getting rid of it.  One of the things is time.  You
 5   know, recently we have the Highland Capital case, we
 6   have the [?] case, in which relief provisions were
 7   deemed invalid and there was challenges to equitable
 8   [?] there in the bank, and the plan's opponents in
 9   those cases said the same thing they're saying here,
10   which is, oh, that [?] entire bargain of the plan.  But
11   they were not being [?] because those releases could at
12   least be taken out of the plan and consequences of that
13   could be determined on remand for whether or not the
14   person wants to walk away from the bargain or would
15   want to proceed along the way.
16            And in that case and in that sense, this
17   is just a dispute between us and the bank, or at least
18   in the event the Trustee would be challenging the
19   exculpation of the Trustee.  Those are the claims that
20   are here.  Those don't involve anybody else, like
21   anywhere else.
22            THE COURT:  Thank you.
23            MR. CECERE:  May I address one more thing?
24            You know, in addition to what we said in
25   our papers, I did want to make one thing clear about
```

1  Mr. Burks' reasons for [?] and them trying to pass that
2  as being somehow kind of improper or strategious.  The
3  real question was the bank, in its papers, their plan
4  didn't go into effect until it was determined whether
5  they were going to be the winning bidder or not.  So
6  we didn't know until they won the auction or realize
7  that other entities did not win the auction.  Only at
8  that point did we know which plan was going to be
9  applicable, what plan provisions were going to be
10 subject to.  It was at that point that Mr. Burks
11 decided he wanted to wait until that happened to make
12 sure he understood the issues that were going to be
13 going on in that field.
14          And as I mentioned, I did have Mr. Burks
15 come today in case you wanted to talk about that
16 directly with him.
17          THE COURT:  No, that's not necessary.
18          MR. BURKS:  Yes, Your Honor.
19          THE COURT:  I made my living as a bankruptcy
20 lawyer before I took this job and that's where my board
21 certification is in, and I think this case points to
22 one of the ugliest aspects of bankruptcy procedure,
23 and that is the mootness doctrine.  But I do believe,
24 having refreshed myself on the Fifth Circuit
25 jurisprudence on mootness, I do believe this case is

1  moot and the appeal cannot proceed.  The bank has
2  already paid many creditors, including tax lien
3  creditors, and any chance of getting money back from
4  them is, I can guarantee, fruitless.  The case is too
5  far along to be unwound.  There is no attempt to stay
6  the effectiveness of the order, no appeals on that
7  denial of stay.  It's moot under Fifth Circuit law.
8              And I regret that because I think it is
9  an untoward aspect of bankruptcy jurisprudence.  I was
10 an appellant lawyer many times in my career, but the law
11 is unambiguous and my ruling is this case is dismissed.
12             Thank you very much.
13         MR. CECERE:  Thank you, Your Honor.
14         MR. TROOP:  Thank you, Your Honor.
15         **[3:44 p.m. - Proceedings adjourned]**
16
17                REPORTER'S CERTIFICATE
18
19 I certify that the foregoing is a correct transcript
20 from the record of proceedings in the above-entitled
21 cause.
22
23 /s/ Ed Reed                                    1-6-25
   Edward L. Reed                                 Date
24 Court Reporter
25