# **<u>EXHIBIT 21</u>**

## THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| | ) | |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| GALLERIA 2425 OWNER, LLC, | ) | Case No. 23-34815 |
| | ) | |
| Debtor. | ) | |
| | ) | |

---

## MOTION FOR RECONSIDERATION AND
## RELIEF FROM JUDGMENT

---

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**THERE WILL BE A HEARING ON THIS MOTION ON OCTOBER 30, 2024 AT 11:00AM IN COURTROOM 403, 515 RUSK ST., HOUSTON, TEXAS 77002.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR RESPECTIVE ATTORNEYS.**

**To the Honorable Court:**

Pursuant to Fed. Bankr. R. 9023 and 9024, as well as Fed. R. Civ. P. 59(e), 60(a),

and 60(b), 2425 WL, LLC files this Motion for Reconsideration and Relief from Judgment and would respectfully show as follows:

## INTRODUCTION

On September 9, 2024, the Court entered an Order Disallowing Proof of Claim and Referral to United States Attorney (Dkt. No. 717). That order disallowed Proof of Claim 7 (as amended by Claim 7-2), in the amount of $22,968,231.58, which was filed by 2425 WL, LLC. In that order, the Court deemed the Promissory Note and Deed of Trust on which the claim was based to be "fraudulent." (Order at 1, attached as Exhibit A) The Order also refers the matter to the United States Attorney for investigation. (*Id.*) And the Order levies a number of personal accusations against Ali Choudhri, 2425 WL, LLC's manager, calling him a liar, a malingerer who faked a stroke, and a forger who made up the transaction at the core of this case. (*See* Op. 1-3)

Choudhri and 2425 WL, LLC seek reconsideration to set the record straight: Neither the Promissory Note nor the Deed of Trust underlying 2425 WL, LLC's claim are fictitious or fraudulent. The loan represented by these documents is entirely real—so real, in fact, that when Galleria Owner 2425, LLC became delinquent in making payments on that loan, Choudhri was forced to put its property into foreclosure. Choudhri himself is neither a "forger" nor a "liar," and he has no fear of testifying under oath before the Court. But his participation in this case has been hampered by a very real stroke—diagnosed by multiple physicians that were completely independent of Choudhri himself.

Choudhri respectfully submits that the Court's conclusions to the contrary are based on a misunderstanding of the facts. And invalidating 2425 WL, LLC's multi-million-dollar

claim serves solely to facilitate the Chapter 11 Trustee's misguided and self-serving effort to moot 2425 WL, LLC's appeal, which would lead to an unfortunate partisan miscarriage of justice.

In sum, disallowing a claim is one thing, but conclusively finding someone has committed "fraud" is an entirely different matter. Choudhri and 2425 WL welcome a re-examination on the merits – and welcome an opportunity to testify and answer any questions the Court may pose – as Choudhri seeks an opportunity to clear his good name. Upon closer examination, the Court will see that only has Choudhri committed no fraud and told no lies, but the claim is good and should not be disallowed. The Court should therefore grant this motion for reconsideration, vacate its order, and reinstate 2425 WL, LLC's claim.

## BACKGROUND

The transaction at the center of this bankruptcy—and at the center of 2425 WL, LLC's claim—began when Choudhri, who owns and controls 2425 WL, LLC, wanted to refinance the loan on the company's commercial building: One West Loop Plaza, designed and built by the world-renowned architect I.M. Pei. (Dkt. No. 635-9 at 8) Choudhri faced an unfortunate obstacle in this effort: lenders were reluctant to provide a loan to refinance the property due to a completely fictitious lien that had been placed on the property by Choudhri's purported wife Hira Azhar. (Affidavit of Ali Choudhri, Ex. 2 ¶ 2) That lien was eventually found to be "null and void." (Ex. 3 at 1 [Joint Motion to Compel] (noting that Azar had placed a Notice of Lis Pendens on "2425 West Loop South, Houston, Texas

3

77027); *see also* Ex. 3 at 1 [Ex a final judgment] (deeming all liens filed by Azar to be "null and void.")

National Bank of Kuwait, S. A.K.P., New York Branch ("NBK" or "the Bank") was willing to finance the loan. But the parties had to find a way to free themselves of Azhar's meritless claims. The parties eventually agreed that Choudhri would create a new entity—Galleria 2425 Owner, LLC—that would not be burdened by the fictitious lien. The Bank would extend the loan to the new entity, which would use the loan to help finance a purchase of the property from 2425 WL, LLC. (Ex. 2 ¶3) As originally proposed, this transaction would involve NBK providing a $52 million first-priority mortgage loan to the buyer, and the buyer would come up with another $29.9 million, financed partially by a mezzanine loan from NBK's Geneva division on behalf of NBK's private banking clients. (Dkt. No. 635-9 at 10)

This original plan is reflected in a presentation that officials within NBK created as part of their internal approval process:

| Source of Funds | | | % | Uses of Funds | | |
|---|---|---|---|---|---|---|
| Senior Loan | $ | 51,675 | 63% | Purchase Price | $ | 79,500 |
| Cash Equity | $ | 29,905 | 37% | Reserves & Costs | $ | 2,080 |
| TOTAL | $ | 81,580 | | | $ | 81,580 |

(Dkt. No. 635-9 at 10) In that same presentation, the Bank recognized that Choudhri-owned entities would be on both sides of the transaction. Indeed, the Bank acknowledged that the cash that would go to purchasing the property—$79.5 million—was far "lower than" the property's appraised value of $96 million, because the transaction was an internal sale, and Choudhri's companies—which NBK collectively referred to as "Jetall"—would not only

4

be on the selling side of the transaction but also be "retain[ing] an ownership interest" in the entity that was formed to be the buyer. (*See id.*) Indeed, the Bank considered it a benefit that Choudhri would remain in the deal. (*Id.*)[1]

For a while, all went according to this plan as originally proposed. But a hiccup arose as closing approached. The new buyer, Galleria 2425 Owner, LLC, could not come up with its full $29.9 million contribution toward the $81 million purchase price; it was only able to come up with $16.1 million in mezzanine financing. (Buyer Signing Statement, Ex. 5 at 1 (reflecting "$16.1 mezzanine loan); Dkt. No. 692-12; Ex. 2 ¶4) That left a shortfall (after certain offsets) of $14.7 million. (Ex. 5 at 2).

But the parties could not simply reduce the purchase price to reflect this shortfall. The Bank's loan had already been approved at the $79.5 million purchase price and the seller had paid a title policy for $79.5 million. (Ex. 2 ¶ 5) So the parties had to come up with something that would cover the $14.7 million shortfall. Accordingly, the seller, 2425 WL, LLC, allowed the sale to be consummated while retaining a credit for the unpaid balance of the purchase price. (*Id.*)

The undisputed evidence in this case demonstrates the existence of this $14.7 million credit. The seller's closing statement reflects the "CREDIT" that 2425 WL, LLC, as "SELLER," extended to Galleria 2425 Owner LLC, as "BUYER"—

| 517. | | |
|------|-----------------------|----------------|
| 518. | SELLER CREDIT TO BUYER | $14,730,332.38 |
| 519. | | |

---

[1] As this Court is aware, it is not uncommon for a party – in this case Choudhri – to wear multiple "hats" in a transaction of financing. For instance, owners – as equity holders – often make loans to a company, which is not just perfectly permissible, but often required lest the business fail.

(Dkt No. 635-5 at 1) And it is clear that the buyer used this credit to finance the purchase prices, as reflected on the Buyer's Settlement Statement, which shows that the Buyer used "Cash From Borrower" in the amount of $14,730,332.38 (the same amount as the "SELLER CREDIT TO BUYER") to finance the transaction.

| 303. Cash From Borrower | $14,730,332.38 | 6 |
|---|---|---|

(Ex. 5 at 2)

And that is why 2425 WL, LLC as seller received only $13 million out of the deal.

| 603. Cash To Seller | $13,720,254.15 |
|---|---|

(Dkt. No. 625-5 at 1)

There is no question that the parties contemplated that this "credit" would be a loan because money extended on "credit" must be paid back. Indeed, that credit must be considered a loan as a matter of law, because any time the buyer falls short in providing the contract price, Texas law imposes an implied vendor's lien "for the amount of the unpaid contract price." Tex. Prop. Code § 5.079. And that lien remans in place until the contract price is repaid. *Id.*

The parties also treated that "credit" as a loan throughout the life of this case. This obligation is reflected in a Note and Deed of Trust executed by Galleria 2425 JV, LLC. And Choudhri himself always treated the loan as a real obligation that had to be paid back. So real, in fact, that he foreclosed on it when the buyer was not able to pay it back after the loan matured in 2021. (Ex. __ at 13 [Sept. 6, 2024 Hr'g Tr.]). Choudhri had the property posted for foreclosure on X date, 2021. (Dkt No. 635-6) And the foreclosure proceeded all

6

the way through a foreclosure sale, which was only halted after 2425 WL, LLC and the owner agreed to a forbearance.

The Bank itself has likewise recognized the existence of the loan since it was created. The Bank did not challenge the loan's existence when 2425 WL, LLC posted the property for foreclosure on the basis of its junior secured interest. Nor did the Bank challenge the existence of the loan when 2425 WL, LLC used it as the basis to credit-bid at the foreclosure sale and purchase the sale. And indeed, the Bank did not challenge the existence of that loan in this case. And that is because the Bank recognized the loan to exist.

There was therefore no basis for the Court to disallow the claim asserted in bankruptcy for the unpaid balance of that loan—much less deem that loan to be fraudulent. Both 2425 WL, LLC and Choudhri respectfully submit that the Court erred in disallowing that claim. And they therefore ask that the Court reverse that decision on reconsideration.

## ARGUMENT

### I.      Legal Standard.

Under Fed. R. Civ. 59(e), which is made applicable in bankruptcy by Fed. R. Bankr. Proc. 9023, a party may file a motion to alter or amend a judgment no later than 28 days after entry of the judgment. Motions to alter or amend the judgment should be granted when there exists "a manifest error of law or fact," so as to enable the court to correct its own errors and thus avoid unnecessary appellate procedures. *Trevino v. City of Fort Worth*, 944 F.3d 567, 570 (5th Cir. 2019); *see also Kyle v. Texas*, No. 04-06-00762-CV, 2006 WL 3691204 (W.D. Tex. Oct. 31, 2006) (granting a motion to reconsider under FED. R. CIV. P.

7

59(e) and reversing previous denial of a motion to remand based on a manifest error of law)). A court has discretionary authority to amend its prior decision. *See Weber v. Roadway Exp., Inc*., 199 F.3d 270, 276 (5th Cir. 2000).

Fed. R. Civ. P. 60(a), made applicable in bankruptcy by Fed. R. Bankr. Proc. 9024, further provides that "[t]he court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice." And under Fed. R. Civ. P. 60(b), the Court may relieve a party from a final judgment for a variety of reasons, including "mistake, inadvertence, surprise, or excusable neglect," or "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1) & (6). Rule 60(b)'s standards are to be "liberally construed in order to achieve substantial justice," *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 402 (5th Cir. 1981), and they "vest[] power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." *Klapprott v. United States*, 335 U.S. 601, 614-15 (1949). District courts therefore have "great latitude" in deciding whether to vacate orders or judgments under Rule 60(b). *Bakery Machinery & Fabrication, Inc. v. Traditional Baking, Inc*., 570 F.3d 845, 848 (7th Cir. 2009).

## II.  The Court should vacate its Order Disallowing Proof of Claim and reinstate Claim 7.

The Court should employ the standards of Rules 59(e), 60(a), and 60(b), and vacate its Order Disallowing Proof of Claim, because that decision was the result of multiple factual and legal mistakes.

### A. The Court's decision to disallow 2425 WL, LLP's claim was based on a misimpression of the facts.

The Court disallowed the claim at issue in this case because it deemed the Promissory Note and Deed of Trust submitted to support that claim to be "fake" or fraudulent." (Order at 1) That conclusion results from an unfortunate misimpression of the evidence in this case.

Courts generally—but bankruptcy courts in particular as courts of equity—seek to get to the merits of a matter, especially so if the Court thinks "fraud" may have been committed. Applied here, when the Court looks to the *substance* of what transpired, not only was there no fraud, but 2425's claim should be allowed. The *sine quo non* of the transaction is actually remarkably straightforward

### 1. The Court misinterpreted the evidence that supporting the existence of 2425 WL, LLP's loan and the validity of the documents evincing it.

There is nothing fraudulent about the Promissory Note, the Deed of Trust, or the underlying loan they represent. That loan arose as a matter of law under Tex. Prop. Code § 5.079 when Galleria 2425 Owner, LLC was unable to pay the balance of the contract price to purchase One West Loop Plaza. That loan is also substantiated by documents outside the Note and Deed of Trust themselves—including both the buyer's and seller's versions of the settlement statement issued at closing. And the loan has been repeatedly acknowledged to be valid by the Bank when they approved the closing statement, and when they acknowledged 100% of the cash from the buyer came from the Seller. The buyer contributed zero cash in the transaction; all the cash came from the Seller.

The Court evinced concern that the Promissory Note and Deed of Trust reflecting

the loan were not recorded until 2021, while the loan itself arose in 2018. (Order at 1) It is hard to understand how these documents—which were created, at the latest, years before Galleria 2425 Owner, LLC went into bankruptcy, could constitute part of a scheme to "present[] a false claim" in that bankruptcy. (Order 1 & n.1) (quoting 28 U.S.C. § 152)  And in any event, the mere passage of time between when the loan arose and these documents were recorded is no indication that the loan itself was fraudulent or even suspicious. Even if these documents were not executed until 2021, they merely memorialized and formalized a loan that has been acknowledged to exist since 2018—and an implied obligation that the Buyer assumed in 2018 under the Property Code when it failed to deliver the full contract price at closing. Memorializing the loan after the fact does not constitute fraud. It merely reflected recognition of the underlying economic reality that occurred years before.

While it certainly would have been better for Galleria 2425 Owner, LLC to have filed the Promissory Note and Deed of Trust closer in time to the closing of the Bank's loan, its failure to do so was hardly surprising. Since the obligation was owed by one entity owned and controlled by Choudhri to another, Choudhri had no necessity to document the loan until it matured and had to be enforced. That explains why Galleria 2425 Owner, LLC's recordkeeping was perhaps less formal than it should have been. But any bookkeeping errors that occurred in creating the Promissory Note and the Deed of Trust cannot negate the very real loan transaction they evince and represent. And any negligence that occurred in documenting that loan certainly cannot provide grounds for disallowing 2425 WL, LLC's claim based on that loan. Neither delay nor negligence constitutes fraud.

Nor, for that matter, does it matter that the Promissory Note and Deed of Trust were

10

executed by Choudhri as managing member of Galleria 2425 Owner, LLC, rather than Azeemeh Zaheer, even though she was managing member of Naissance Capital Real Estate, LLC the entity that controlled Galleria 2425 Owner, LLC in 2018 when the loan arose. (Order at 2) All admit that after 2021, Choudhri became the managing member of the property owner of the property. (*See* Dkt No. 729 at 33) He therefore had complete authority to execute documents on its behalf at the time the Note and Deed of Trust were recorded—and to correct the previous failure to execute these documents back in 2018. Nor does it matter that the documents were not executed by Saheer, when she was in charge of Naissance Capital. (Dkt No. 729 at 33) Choudhri owned Naissance Capital. (Ex. 2 ¶ 6) Zaheer was his agent. (*Id.*) That gave Choudhri the complete authority to direct Zaheer to create these documents and to dismiss Zaheer if she refused.

In any event, if there was any error in the execution of the Promissory Note or the Deed of Trust, Choudhri had the power to ratify the validity of those documents in spite of those errors. And he did so. (Ex. 2 ¶ 6) It is undisputed that Choudhri owned and controlled Galleria 2425 Owner, LLC—and thus controlled the entity on behalf of which those documents were executed as principal. Under the doctrine of ratification, a principal can become bound by a contract that was made in its name but without its authority. RESTATEMENT (THIRD) OF AGENCY § 4.01(1) (Am. L. Inst. 2007). One form of ratification occurs when he principal manifests an intention to be legally bound by a previously unauthorized action. *See id*. So Choudhri's act of signing the Promissory Note ratified the loan. Moreover, ratification does not always require formal action—it can be inferred from simple silence. Elliot Axelrod, *The Doctrine of Implied Ratification—Application and*

*Limitations*, 86 Okla L. Rev. 849, 849 (1983). And Choudhri certainly ratified the validity of the Promissory Note and the Deed of Trust when he allowed the loan reflected in those documents to be foreclosed. Accordingly those documents are as enforceable as if they had been executed in 2018 by Zaheer.

There is likewise no reason to believe that either the Promissory Note or the Deed of Trust are lacking in "consideration." (Order at 2) The consideration on both ends of those documents is clear: Executing the Note allowed Galleria 2425 Owner, LLC to purchase the property despite being short of the cash needed for the transaction, and it provided terms for repayment of the implied obligation it had undertaken as the result of that shortfall—allowing the maturity of that debt to be delayed until 2021 after it had not been repaid for three years. (*See* Dkt. No. 635-3) Accordingly, there is absolutely no evidence to question the validity or enforceability of the Promissory Note, the Deed of Trust, or the loan they evince.

> ### 2. The Court should not have credited the testimony of the Trustee's witnesses, or doubted the veracity of Ali Choudhri, 2425 WL, LLC's principal.

Indeed, the only testimony that the Trustee offered to question the existence of the loan or the validity of 2425 WL, LLC's claims is incredible, incompetent, and in fatal conflict with the undisputed documentary evidence in this case.

At the hearing on the Trustee's motion to disallow 2425 WL, LLC's claim, the Trustee offered the testimony of two witnesses in support of that motion: Azeemeh Zaheer and Chris Wyatt. But while the Court found both of these witnesses "to be incredibly competent" and entirely adopted their version of events, the truth is that they are *anything*

*but* competent. (Op. 2) Wyatt is a well-known hired gun who engages in corporate espionage for a living and who regularly ends up on the wrong end of the law. Indeed, Wyatt has admitted to going to work at companies and then stealing computers from his employers in order to turn over the secrets they contain to competitors. (Ex. 6 [Petition]; Ex. 7 [Agreed Judgment]). Wyatt has been convicted at least four times of committing felony burglary and criminal trespass. (Ex. 11) [Wyatt Verified Background Search]). Zaheer is a disgruntled former employee of Choudhri's company—and Choudhri's ex-girlfriend. (Ex. 2 ¶ 7)

Both Zaheer and Wyatt had a motivation to lie in this case is absolutely clear: They are acting in concert with Choudhri's disgruntled business partner, Osama Abdullatif, who has repeatedly tried to seize Choudhri's business interests by brute force and fraud. Witnesses have seen Abdullatif communicating frequently with Wyatt. (Ex. 8 [Declaration of Quanell X Farrakhan No. 1]) There is evidence that Wyatt has stolen computer hard drives from Choudhri's companies to give to Abdullatif. (Ex. 8 & 9 at 1 [Quanell X Farrakhan Aff. No. 2]) Indeed, Abdullatif has even arranged for Wyatt to accuse Choudhri in a murder-for-hire plot to kill Abdullatif himself, which authorities dismissed as "a hoax." (Ex. 9) And Omar Khawaja, an attorney and close business associate of Abdullatif, admits to representing Abdullatif, Wyatt, and Zaheer in furtherance of Abdullatif's efforts to seize all of Choudhri's business interests through litigation—under their theory: "If [Ali] own[s] it, we own it." (Ex. 13 [Khawaja Depo.] at 23: 30: 17-21;163:8-165:2; 194:3-6) Indeed, it was Khawaja that also represented Choudhri's ex-wife in her frivolous effort to file lis pendens claims on all of Choudhri's properties as part of Abdualtif's vendetta against

Choudhri. (Ex. 14 [Engagement Agreement]) Accordingly, Wyatt and Zaheer are not credible witnesses—they are instruments in a personal vendetta against Choudhri. .

Yet Choudhri and 2425 WL, LLP were not afforded a proper opportunity to challenge these witnesses' credibility at the June 6, 2024 Hearing on the Trustee's motion to disallow Claim 7, because they received barely any notice that these witnesses would be testifying at the September 6 hearing. Neither person was listed among the Trustee's witnesses until they appeared in an exhibit and witness list that the Trustee turned over a mere two days before the hearing. (*See* Dkt No. 635; *see also* Dkt. No. 729 at 21, 60) Accordingly, neither Choudhri nor 2425 WL, LLP had an opportunity to raise the numerous issues with the Trustee's reliance on their testimony. And the Court's decision to allow their testimony despite that late notice separately constitutes reversable error.

Moreover, the testimony that both witnesses gave at the hearing was completely incompetent and in conflict with the undisputed facts. Wyatt admitted that he had "no personal knowledge of what happened at the time of the transaction" in 2018, when 2425 WL, LLP's supposedly fictitious loan arose because Wyatt did not start working for Choudhri's companies until October of 2020. (Dkt. No. 729 at 69And as a result, Wyatt admitted that he was "not sure" what the $14.7 million seller-to-buyer "credit" listed on the Settlement Statements issued for the 2018 transaction even referred to. (*Id*. at 71)

Zaheer's testimony was no better. She insisted—bizarrely—that this $14.7 million credit was actually an amount that Choudhri *received* from the transaction as seller and that it resulted from the amount that was left over *after* "the 51.6 million" provided by the Bank "plus the 16.1 million" in mezzanine financing. (Dkt. No. 729 at 47) But the $14.7 million

14

credit represented a *shortfall*, not a *surplus*. The $51.6 million provided by the Bank and the $16.1 million mezzanine financing only amounted to $67.7 million—well short of the $81 million purchase price. That is why the $14.7 million credit was necessary. That is also why the credit flows from the "SELLER" to "BUYER" rather than representing any payment by *buyer* to *seller*. And that is why the credit was necessary to fund the remainder of the purchase price. There is no source of funding to make up for this shortfall *other* than the credit provided by the seller. And there is no way the amount of the credit—which represents the balance that the buyer *was unable* to pay—could result in a cash *payment* to the seller.

Zaheer's own confusion about the nature of the $14.7 million credit seems to have confused the Court as well. The Court called it "fanciful" for 2425 WL, LLC to contend that the seller "who received over $13 million in cash" out of a transaction "after payment of all outstanding debts and credits" would still have an additional claim against the debtor "for $14 million dollars plus accumulated interest." (Order at 2) But that contention is anything but fanciful. First of all, there is nothing to suggest the seller received the $13 million "after payment of all outstanding debts and credits." At the very least, the Bank's senior loan and the mezzanine financing were both "outstanding" at that time. And the $14.7 million credit was too. Second, the reason that 2425 WL, LLC received both a lump sum of cash and the right to collect *more* cash is obvious: The lump sum covered a portion of the contract balance, and the "credit" gave 2425 WL, LLC  to recover the balance that remained *after* that lump sum was paid.

In sum, even as Wyatt and Zaheer insist 2425 WL, LLC provided no loan to the

debtor in this case, they cannot adequately explain what this $14.7 million credit was meant to represent—because they cannot overcome the fact that it represents a loan. And the Court could not overcome that fact either. Accordingly, neither the Trustee nor the Court have offered any reason to disregard the undisputed evidence demonstrating the Bank's recognition of the loan or the documents evincing its existence. And that means the evidence conclusively demonstrates the validity of 2425 WL, LLC's claim in this case.

Furthermore, even as the Court has uncritically given dispositive weight to the incompetent, and biased testimony of known frauds and criminals, it has levied serious accusations at Mr. Choudhri about his "truth and veracity," despite the fact that Mr. Choudhri, has given the Court no reason to do so. The Court criticized Choudhri for failing to appear at the hearing—deeming his assertion "that he was ill" to be entirely "fals[e]." (Order at 3)

But Choudhri has absolutely no fear of testifying under oath or answering questions from the Court. He welcomes it. He did not appear because he was seriously ill—as he has been throughout the confirmation of the plan in this case and the hearing on the motion to disallow 2425 WL, LLC's claim. On June 3 of this year, Choudhri was diagnosed with a "stroke." (Ex. 15 at 1 [Methodist Medical Records]) And the radiologist who made that diagnosis is entirely independent of Choudhri. Indeed, Choudhri has never even met the doctor who diagnosed him, because he made that diagnosis solely by reviewing a CT scan

of Choudhri's brain. (*Id*.) [2]

Shortly after this diagnosis, Choudhri appeared telephonically at a hearing before Judge Isgur, because that hearing could result in the foreclosure upon one of his most valuable properties. (Ex. 2 ¶10) And the stress of that telephonic appearance was so severe that Choudhri the next day, after a video deposition, he collapsed. (*Id*.) The day after that hearing, Choudhri's doctor ordered that he "shall not participate in any stressful interactions and not return to work" for at least "a month"—until July 7. (Ex. 16 [physician records]).

Yet as the Court explained during the Confirmation Hearing in this case, the Court decided to disregard the opinions of disinterested medical experts because Judge Isgur told the Court that Choudhri didn't at that point in time appear to have any sort of problems at all the June 6 hearing in his courtroom, despite the fact that Judge Isgur never personally saw Choudhri during his telephonic appearance, and Choudhri was definitely having problems. (Ex. 12 at 14 [Credit Bidding Transcript]) Mr. Choudhri respectfully submits that the Court should not second-guess the opinions of medical experts based on reports from other bankruptcy judges who did not personally observe his condition.

The Court also appears to have based its opinions about Choudhri's "truth and veracity" on other episodes from the Court's "long history" with Choudhri. (Order at 2-3) And that "long history" is likely to include observations that the Court made about

---

[2] This poses another example of an area the Court need not go to in determining whether a claim is valid, but is an area it *must* go to if it is to conclude fraud was committed.

Choudhri's litigation in other cases. But these other cases provide no grounds to doubt Choudhri's truthfulness. The vast majority of his legal cases have been necessary to combat the scorched-earth campaign of fraud that Osama Abdullatif has waged against Choudhri's businesses and his character. The fraudulent blanket lis pendens' filed by Mr Abdullatif and related parties on nearly 100% of Choudhri's properties, preventing him from refinancing or selling said properties. And the remainder have been garden-variety disputes of the sort that everyone engaged in the business of real estate will eventually experience. None of this evidence provides any reason to doubt Choudhri's veracity, much less suggests that he has committed fraud. Accordingly, it is not enough for the Court to merely reinstate 2425 WL, LLC's claim in this case, it should withdraw any suggestion that Choudhri should be prosecuted for fraud.

Candidly, the reason Choudhri did not appear to defend the claim it was "just money," less important than his health. But if he at all suspected that his reputation and entire life's work were at issue—not to mention a criminal referral—he obviously would have appeared.

### B. The Court also erred as a matter of law by rendering a moot decision to invalidate a claim that was already invalidated under the Plan.

The Court also erred as a matter of law by misinterpreting the force and effect of its own previous orders. The Plan that the Court confirmed in this case has already disallowed the claims that 2425 WL, LLC has asserted against the Debtor, including Claim 7. (Ex. __ at __ [Plan]) That means there was no pending claim for the Court to disallow. The Order Disallowing Proof of Claim is therefore entirely moot—a legal nullity.

18

The only real purpose behind the Trustee's attempt to disallow 2425 WL, LLC's already-disallowed claim is to moot 2425 WL, LLC's pending appeal of the order confirming the plan. And indeed, since the Court entered the Order Disallowing Proof of Claim, the Trustee has already raised that order in the district court as a basis to dismiss 2425's appeal and deny it any right to challenge the Plan's confirmation. (*See* Case No. 4:24-cv-01746 [Dkt. 22]) And the Trustee's purpose in that effort is as pernicious as it is transparent: The Plan releases 2425 WL, LLC's claims against the Trustee, the Bank, and others. And as a recipient of those releases, the Trustee does not wish to see their validity threatened. So it is trying to deny 2425 WL, LLC standing to pursue an appeal to challenge those releases.

That effort will be fruitless. Even if Claim 7 is disallowed, 2425 WL, LLC will retain standing to challenge the Plan's confirmation, because 2425 WL, LLC has challenged the provisions of the Plan releasing claims that 2425 WL, LLC possesses against other non-debtors. The fact that the Plan thereby denies 2425 WL, LLC any right of monetary recovery on those claims constitutes a "pecuniary" injury that is sufficient to convey standing. (*See* Case No. 4:24-cv-01746 [Dkt. 22] at 6) Yet even though this effort will not have its intended effect, the Trustee's pursuit of it is unjust, and it should not be approved by this Court.

## CONCLUSION

For these reasons, Defendants' Motion for Reconsideration and for Relief from Judgment should be granted, the Order Disallowing Proof of Claim and Referral to United States Attorney should be vacated, the referral to the United States Attorney should be

withdrawn, and Claim 7 belonging to 2425 WL, LLC should be allowed.

Respectfully submitted,

*/s/ J. Carl Cecere*

J. Carl Cecere
State Bar No. 13268300
(pro hac vice admission pending)
**Cecere PC**
6035 McCommas Blvd.
Dallas, TX 75206
Telephone: 469-600-9455

*Attorneys for 2425 WL, LLC and
Ali Choudhri*

*/s/Stephen W. Sather*
Stephen W. Sather
State Bar No. 17657520
Barron & Newburger, P.C.
7320 N. MoPac Expwy., Suite 400
Austin, TX 78731
Attorney for 2425 WL, LLC

### CERTIFICATE OF SERVICE

The undersigned certifies that on this 23rd day of September, 2024, a true and correct copy of the foregoing was served in accordance with the CM/ECF e-filing system.

*/s/ J. Carl Cecere*

**J. Carl Cecere**