# **<u>EXHIBIT 24</u>**

# THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

|  |  |
|---|---|
| In re: | **Chapter 11** |
| **GALLERIA 2425 OWNER, LLC,** | **Case No. 23-34815** |
| Debtor. | |
| **2425 WL, LLC,** | |
| Appellant, | |
| v. | **Civil Action No. 4:24-cv-03834** |
| **Christopher Murray, Trustee,** | |
| , | |
| Appellee. | |

---

# APPELLANT'S BRIEF

---

J. Carl Cecere
State Bar No. 13268300
(admitted pro hac vice)
**Cecere PC**
6035 McCommas Blvd.
Dallas, TX 75206
Telephone: 469-600-9455
ccecere@cecerepc.com

*Counsel for Appellant 2425 WL, LLC*

# TABLE OF CONTENTS

Table of citations .......................................................................... iii

Jurisdictional statement ................................................................ vi

Issues presented ......................................................................... vii

Introduction ................................................................................1

Statement of the case ...................................................................2

Summary of the argument .............................................................7

Argument ...................................................................................8

I.    2425 WL's Motion for Reconsideration and appeal are both timely. ........... 8

II.    The Trustee's Effort to Disallow 2425 WL's claim was moot because 2425 WL's claim was already disallowed under the Bankruptcy Plan. ...... 10

III.    The Bankruptcy Court's decision to disallow 2425 WL, LLP's claim was based on a misimpression of the indisputable facts. ........................... 13

    A.    The Court misinterpreted the evidence that supporting the existence of 2425 WL's loan and the validity of the documents evincing it. ......................................................... 13

    B.    The Bankruptcy Court should not have credited the testimony of the Trustee's witnesses, or doubted the veracity of Ali Choudhri, 2425 WL, LLC's principal. ........................... 17

Prayer .....................................................................................24

Certificate of service ..................................................................25

Certificate of compliance with type-volume limit ...........................26

## TABLE OF CITATIONS

**Cases**

*Calderon v. Moore*,
  518 U.S. 149 (1996) ........................................................................11

*Chafin v. Chafin*,
  568 U.S. 165 (2013) ........................................................................11

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006) ........................................................................10

*In re Dean*,
  18 F.4th 842 (5th Cir. 2021).............................................................12

*Olson v. Schweiker*,
  663 F.2d 593, 596 (5th Cir. 1981)....................................................21

*Taylor v. City of Fort Lauderdale*,
  810 F.2d 1551 (11th Cir. 1987)........................................................11

*Truck Insurance Exchange v. Kaiser Gypsum Co.*,
  144 S. Ct. 1414 (2024) ....................................................................13

*United States v. Hark*,
  320 U.S. 531 (1944) ........................................................................10

*United States v. Lee*,
  501 F.2d 890 (D.C. Cir.1974) ..........................................................10

*United States v. Samango*,
  607 F.2d 877 (9th Cir. 1979).............................................................9

*United States v. Santia-Marniquez*,
  609 F.2d 1162 (5th Cir. 1980)...........................................................9

*United States v. St. Laurent*,
  521 F.2d 506 (1st Cir. 1975) ...........................................................10

**Constitutional Provision**

U.S. Const., art. III ..............................................................................10

**Statutes**

28 U.S.C. §
  152 ....................................................................................................14

  157(a)-(b) ...............................................................................................v

  158(a)(1) .................................................................................................v

  1331 .........................................................................................................v

  1334(a) ....................................................................................................v

Tex. Prop. Code § 5.079 ...........................................................................13

**Rules**

Fed. R. App. P. 4(a)(7) ...............................................................................9

Fed. R. Bankr. P.
  8002(a)(5)(a)(i) .......................................................................................9

  8002(a)(1) .................................................................................................8

  8002(b)(1) ...............................................................................................10

  8002(b)(1)(B)-(D) ........................................................................... 7, 8, 9

  8015(a)(7)(B)(i) .....................................................................................26

  8015(g) ...................................................................................................26

  9023(b) .................................................................................................7, 8

  9024 .........................................................................................................9

  9024(a) .....................................................................................................7

Fed. R. Civ. P.
  60 .............................................................................................................9

  60(c)(1) ....................................................................................................7

**Other Authorities:**

13A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE § 3533.2, at 241 (2d ed. 1984) ................................11

Elliot Axelrod, *The Doctrine of Implied Ratification—Application and Limitations*, 86 Okla L. Rev. 849, 849 (1983)..........................................................................16

RESTATEMENT (THIRD) OF AGENCY § 4.01(1) (Am. L. Inst. 2007) ........................16

v

## JURISDICTIONAL STATEMENT

This case arises from the Chapter 11 bankruptcy of Galleria 2425 Owner, L.L.C., which was filed on December 5, 2023. (ROA.000001.) The Bankruptcy Court had jurisdiction over the bankruptcy under 28 U.S.C. §§ 157(a)-(b), 1331, and 1334(a).

The Bankruptcy Court entered the order on appeal on September 9, 2024. (ROA.003719.) Appellant timely filed a motion for reconsideration of that ruling on September 23, 2024 (ROA.003821), which was denied on September 24, 2024 (ROA.004333). On October 7, 2024, Appellant timely appealed to this Court (Dkt. 1), which has jurisdiction over the appeal under 28 U.S.C. § 158(a)(1).

## ISSUES PRESENTED

On September 9, 2024, the Bankruptcy Court entered an Order Disallowing Proof of Claim and Referral to United States Attorney (the "Disallowance Order"). (ROA.003719.) That order disallowed Proof of Claim 7 (the "Proof of Claim"), in the amount of $22,968,231.58, which was filed by 2425 WL, LLC—a claim that had already been disallowed in the Debtor's plan of reorganization. In the Disallowance Order, the Bankruptcy Court deemed the Promissory Note and Deed of Trust on which 2425 WL's claim was based to be "fraudulent." (ROA.003719.) In that same order, the Bankruptcy Court also referred the matter to the United States Attorney for investigation. (*Id*.)

This order gives rise to the following issues:

I.     Is the Disallowance Order rendered moot by the disallowance of the Proof of Claim in Galleria 2425 WL Owner, LLC's plan of reorganization?

II.    Is there any evidence to support the Bankruptcy Court's conclusion that 2425 WL's claim was fraudulent?

III.   Was it improper for the Bankruptcy Court to base its decision disallowing 2425 WL, LLC's Proof of Claim on the testimony of witnesses who were not disclosed until two days before the hearing?

**INTRODUCTION**

On September 9, 2024, the Bankruptcy Court entered an order disallowing a $22,968,231.58 secured claim filed by creditor 2425 WL, LLC in the bankruptcy of Galleria 2425 Owner, L.L.C. (the "Debtor"), deeming the Promissory Note and Deed of Trust on which that claim was based to be "fictitious" or "fraudulent." (ROA.003719.) The Bankruptcy Court did so even after that claim had already been disallowed in the Debtor's plan of liquidation (the "Plan"). (ROA.000450-51, 000457.) And to add insult to injury, the Bankruptcy Court determined that the matter should be referred to the United States Attorney for investigation.

The Bankruptcy Court should not have made any of these determinations. The confirmation of a bankruptcy plan disallowing 2425 WL's secured claim rendered the Trustee's separate effort to disallow that same claim moot. And there is no evidence that either the Promissory Note or the Deed of Trust underlying 2425 WL, LLC's claim is fictitious or fraudulent. The Bankruptcy Court's conclusions to the contrary are based on a misunderstanding of undisputable facts and reliance on incompetent testimony in conflict with the evidence in this case. The Bankruptcy Court's order invalidating 2425 WL, LLC's multi-million-dollar claim therefore ultimately served solely to facilitate the Chapter 11 Trustee's misguided, self-serving, and ultimately ineffective attempt to moot 2425 WL, LLC's appeal of the Plan's confirmation, which would lead to an unfortunate miscarriage of justice. The

1

Disallowance Order should therefore  be reversed.

## STATEMENT OF THE CASE

The transaction at the center of this bankruptcy—and at the center of 2425 WL, LLC's claim—began when Ali Choudhri, who owns and controls Appellant 2425 WL, LLC, wanted to refinance the loan on the company's commercial building: One West Loop Plaza, designed and built by the world-renowned architect I.M. Pei. (Bankr. Dkt. No. 635-9 at 8.) Choudhri faced an unfortunate obstacle in this effort: Lenders were reluctant to provide a loan to refinance the property due to a fictitious lien that had been placed on the property by Choudhri's purported wife Hira Azhar. (ROA.003823, 003846) (noting that Azar had placed a Notice of Lis Pendens on "2425 West Loop South, Houston, Texas  77027"). That lien was eventually found to be "null and void." (ROA.003823, 003847, 003853.)

The National Bank of Kuwait, S. A.K.P., New York Branch ("NBK" or "the Bank") was willing to finance the loan. But the parties had to find a way to free themselves from Azhar's meritless lien. The parties eventually agreed that Choudhri would create a new entity—the Debor, Galleria 2425 Owner, LLC—that would not be burdened by the fictitious lien. The Bank would extend the loan to the new entity, which would use the loan to help finance the purchase of the property from 2425 WL, LLC. (ROA.003824.) As originally proposed, this transaction would involve NBK providing a $52 million first-priority secured mortgage to the buyer, and the

2

buyer would come up with another $29.9 million, financed partially by a mezzanine

loan from NBK's Geneva division. (ROA.001448.) This original plan is reflected in

a presentation that officials within NBK created as part of their internal approval

process:

| Source of Funds | | | % | Uses of Funds | | |
|---|---|---|---|---|---|---|
| Senior Loan | $ | 51,675 | 63% | Purchase Price | $ | 79,500 |
| Cash Equity | $ | 29,905 | 37% | Reserves & Costs | $ | 2,080 |
| TOTAL | $ | 81,580 | | | $ | 81,580 |

(ROA.001448.) In that same presentation, the Bank recognized that Choudhri-

owned entities would be on both sides of the transaction. Indeed, the Bank

acknowledged that the cash that would go to purchasing the property—$79.5

million—was far "lower than" the property's appraised value of $96 million,

because the transaction was an internal sale, and Choudhri's companies (which the

Bank collectively referred to as "Jetall") would not only be on the selling side of the

transaction but also be "retain[ing] an ownership interest" in the entity that would

be the buyer. (*See id.*) Indeed, the Bank considered it a benefit that Choudhri would

remain in the deal. (*Id.*)

     For a while, all went according to this plan as originally proposed. But a

hiccup developed as closing approached. The buyer—the Debtor—could not come

up with its full $29.9 million contribution toward the $81 million purchase price; it

was only able to come up with $16.1 million in mezzanine financing. (ROA.003858)

(reflecting "$16.1 mezzanine loan); (Bankr. Dkt. No. 692-12.) That left a shortfall

(after certain offsets) of $14.7 million. (ROA.003859.)

But the parties could not simply reduce the purchase price to reflect this shortfall. The Bank's loan had already been approved at the $79.5 million purchase price and the seller had paid a title policy for $79.5 million. (ROA.003825.) So the parties had to come up with something that would cover the $14.7 million shortfall. Accordingly, the seller, 2425 WL, LLC, allowed the sale to be consummated while retaining a credit for the unpaid balance of the purchase price. (*Id.*)

The undisputed evidence in this case demonstrates the existence of this $14.7 million credit. The seller's closing statement reflects the "CREDIT" that 2425 WL, LLC, as "SELLER," extended to Galleria 2425 Owner LLC, as "BUYER"—

| 518 | SELLER CREDIT TO BUYER | $14,730,332.38 |
|-----|------------------------|----------------|

(ROA.001410.) And it is clear that the buyer used this credit to finance the purchase price, as reflected on the Buyer's Settlement Statement, which shows that the Buyer used "Cash From Borrower" in the amount of $14,730,332.38 (the same amount as the "SELLER CREDIT TO BUYER") to finance the transaction.

| 303. Cash From Borrower | $14,730,332.38 | 6 |
|-------------------------|----------------|---|

(ROA.003858.)

That is why 2425 WL, LLC as seller received only $13 million out of the deal.

| 603. Cash To Seller | $13,720,254.15 |
|---------------------|----------------|

(ROA.001410.) There is no question that the parties contemplated that this "credit" would be a loan. After all, money extended on "credit" must be paid back. Indeed,

that credit must be considered a loan as a matter of law, because any time the buyer falls short in providing the contract price, Texas law imposes an implied vendor's lien "for the amount of the unpaid contract price." Tex. Prop. Code § 5.079. And that lien will remain in place until the contract price is repaid. *Id.*

The parties also treated that "credit" as a loan throughout the life of this case. This obligation is reflected in a Note and Deed of Trust executed by Galleria 2425 JV, LLC. (ROA.001392-1400.) And Choudhri himself always treated the loan as a real obligation that had to be paid back. So real, in fact, that he foreclosed on that loan when the buyer was unable to pay it back after the loan matured in 2021. (ROA.003734.) Choudhri had the property posted for foreclosure. (ROA.001could418.) And the foreclosure proceeded all the way through a foreclosure sale, which was halted only after 2425 WL, LLC and the owner agreed to a forbearance.

The Bank itself has likewise recognized the existence of the loan. The Bank did not challenge the loan's existence when 2425 WL, LLC posted the property for foreclosure on the basis of its junior secured interest. Nor did the Bank challenge the existence of the loan when 2425 WL, LLC used it as the basis to credit-bid at the foreclosure sale. And indeed, the Bank did not challenge the existence of that loan in this case. And that is because the Bank recognized the loan to exist.

Yet the Trustee sought to disallow 2425 WL's claim (ROA.000111), and

persisted even after the bankruptcy court confirmed the Bank's Plan, which invalidated 2525 WL's claim as an "insider" claim—providing that 2425 WL "shall not receive or retain any property" on account of its claim. (ROA.000450-51, 000457, 003711-12.)

The Bankruptcy Court agreed with the Trustee and entered the Disallowance Order, which disallowed 2425 WL's secured claim, because the court deemed the Promissory Note and Deed of Trust submitted to support that claim to be "fraudulent." (ROA.003719.) The Bankruptcy Court then did one better, concluding that Choudhri should be referred to the United States Attorney for investigation. (*Id*.)

The Bankruptcy Court upheld these determinations on reconsideration. The Bankruptcy Court deemed the motion for reconsideration untimely—mistakenly assuming that it should have been filed on "September 20" (14 days after the hearing on the Trustee's motion to disallow 2425 WL's claims), rather than on September 24, which was 14 days after the order disallowing the claim was actually entered. (ROA.004333.) But the Bankruptcy Court then went on went on to consider and reject the evidence and arguments raised in the motion for reconsideration. (*Id*.)

The Bankruptcy Court concluded that the confirmation of the Plan disallowing 2425 WL's claim did not render the Trustee's motion to disallow the same claim moot because the Trustee's motion raised "issues of claim validity" that were "substantially different than those raised by plan confirmation" and "it is

6

possible that Plan confirmation may be reversed and the claim would therefore not be disallowed." (ROA.004334.) The Bankruptcy Court otherwise reaffirmed the conclusions in its original Disallowance Order. (ROA.004333-35.)

## SUMMARY OF THE ARGUMENT

Both 2425 WL, LLC and Choudhri respectfully submit that the Bankruptcy Court erred in disallowing 2425 WL's claim. 2425 WL's motion for reconsideration was timely filed, because under Fed. R. Bankr. P. 9023(b) and Fed. R. Civ. P. 60(c)(1) (made applicable in bankruptcy under Fed. R. Bankr. P. 9024(a)), the deadline for determining the time to seek reconsideration does not run from the date a *hearing* is held on a motion—even when the court indicates how it will rule at the hearing—but upon "entry" of a written order on the motion. That means both the motion—and this appeal—are timely under Rule 8002(b)(1)(A)-(D).

The Disallowance Order is moot, however, because once the Bankruptcy Court disallowed 2425 WL's claim in the Plan, it could no longer grant any effective relief on the Trustee's identical demand to disallow that claim. That renders the Bankruptcy Court's order disallowing the claim a legal nullity.

Finally, the Bankruptcy Court's order disallowing 2425 WL's claim fails on the merits, because the Bankruptcy Court's determination that 2425 WL's Promissory Note and Deed of Trust were fraudulent was based on an unfortunate misimpression of the facts and credibility determinations that were clearly

7

erroneous. There was therefore no basis for the Bankruptcy Court to disallow the claim asserted in bankruptcy for the unpaid balance of that loan—much less deem that loan to be fraudulent. Both 2425 WL, LLC and Choudhri respectfully submit that the Court erred in disallowing that claim. That determination should therefore be reversed.

**ARGUMENT**

## I.    2425 WL's Motion for Reconsideration and appeal are both timely.

As an initial matter, this appeal is timely pursuant to Fed. R. Bankr. P. 8002(a)(1) & 8002(b)(1)(B)-(D) because the Appellant timely filed a motion for reconsideration and relief from judgment on September 23, 2024 (ROA.003821), 14 days after the Disallowance Order was entered (ROA.003719). That motion for reconsideration was denied by order entered on September 24, 2024. (*See* ROA.004333.) And 2425 WL timely filed its notice of appeal within 14 days from the entry of that order. (Dkt. 1.)

While the Bankruptcy Court concluded that the motion for reconsideration was untimely (ROA.004333), that conclusion was incorrect. The Bankruptcy Court concluded that the deadline for 2425 WL to file a motion for reconsideration ran from the date of the "evidentiary hearing" conducted on "September 6, 2024" (*id*.), but the order itself was not entered on September 6. Instead, it was entered on September 9, 2024. (*See* ROA.003719.) And the deadline for filing a motion for new trial or to alter or amend the judgment under Bankruptcy Rule 9023 runs from the

date the judgment is "entered." Fed. R. Bankr. P. 9023(b). A motion for relief from judgment under Fed. R. Civ. P. 60 (made applicable in bankruptcy under Fed. R. Bankr. P. 9024) can be filed up to a year after "entry" of the order or judgment at issue. Fed. R. Civ. P. 60(c)(1). And both motions extend the time to file a notice of appeal under Bankruptcy Rule 8002—although a motion for relief from judgment only does so if it is filed within 14 days after the judgment is "entered." Fed. R. Bankr. P. 8002(b)(1)(B)-(D).

It is thus "entry" of a judgment or order that triggers the deadline to file a motion for reconsideration under Rules 9023 and 9024. And it is "entry" of an order denying that motion that triggers the deadline to file a notice of appeal. "Entry" of an order or judgment under Rule 8002 (like "entry" of an order under Fed. R. App. P. 4(a)(7)) occurs when the order is "placed on the docket. *Id*. 8002(a)(5)(a)(i). Accordingly, "entry" can occur only after a "written order" is signed and placed on the docket, not after a hearing or even a court's "oral pronouncement of decision." *United States v. Santia-Marniquez*, 609 F.2d 1162 (5th Cir. 1980) (per curiam) (on petition for rehearing) (holding that notice of appeal was timely when filed within 30 days of "written ruling" rather than "oral ruling"); *United States v. Samango*, 607 F.2d 877, 880 (9th Cir. 1979) (finding appeal filed within 30 days of entry of written order timely even though it was filed more than 30 days after court's oral pronouncement of decision). When a "judge enters a formal order

within the [reconsideration] period, the date of the order is, for appeal purposes, presumptively controlling over a previous oral indication." *United States v. St. Laurent*, 521 F.2d 506, 511 (1st Cir. 1975); *see also United States v. Lee*, 501 F.2d 890, 891, n. 1 (D.C. Cir.1974); *United States v. Hark*, 320 U.S. 531, 535 (1944).

Furthermore, Appellant's motion for reconsideration was not filed on "September 24, 2024," as the Bankruptcy Court believed (ROA.004333), but rather on September 23, 2024 (s*ee* ROA.000075, 003821). And that means the motion was timely filed pursuant to Rule 8002(b)(1). The Bankruptcy Court erred as a matter of law in concluding otherwise.

## II. The Trustee's Effort to Disallow 2425 WL's claim was moot because 2425 WL's claim was already disallowed under the Bankruptcy Plan.

The Court also erred as a matter of law by misinterpreting the force of its own previous order confirming the Plan and that order's effect on the court's power to rule on the Trustee's motion. The Plan that the Court confirmed in this case has already disallowed 2425 WL's claim against the Debtor as an "insider" claim—providing that 2425 WL "shall not receive or retain any property" on account of its claim. (ROA.000450-51, 000457, 003711-12,) That means there was no pending claim for the Court to disallow, and the Trustee's further effort to disallow 2425 WL's claim was rendered ineffective and moot.

The doctrine of mootness arises from Article III of the Constitution, which provides federal courts with jurisdiction over a matter only if there is a live "case"

or "controversy." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). "Accordingly, to invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Chafin v. Chafin*, 568 U.S. 165, 171–72 (2013). This case-or-controversy requirement persists "through all stages of federal judicial proceedings." *Id.* at 172.

If an intervening event renders the court unable to grant the litigant "any effectual relief whatever," the case is moot. *Calderon v. Moore*, 518 U.S. 149, 150 (1996). Accordingly, the Trustee's motion to disallow 2425 WL's claim became moot once the Bankruptcy Court disallowed 2425 WL's claim in confirming the Plan, because once the Plan disallowed 2425 WL's claim, the Bankruptcy Court could no longer grant any effectual relief on the Trustee's identical demand for disallowance of the same claim.

Where "full relief is accorded by [a] tribunal," then a subsequent "proceeding seeking the same relief is moot." 13A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE § 3533.2, at 241 (2d ed. 1984). For instance, a request for preliminary injunction is rendered moot when a permanent injunction is entered. *Taylor v. City of Fort Lauderdale,* 810 F.2d 1551, 1555-56, 1558 (11th Cir. 1987) (preliminary injunction against city's discriminatory permitting scheme was moot after court awarded "primary relief sought," a

11

permanent injunction). And just as a court cannot enjoin an action that is already enjoined, a court cannot disallow a claim that has already been disallowed. Accordingly, the Bankruptcy Court could not grant the Trustee's motion disallowing 2425 WL's claim—even to bolster the decision with additional theories that might ensure its survival in the event the Plan's confirmation was overturned.

Indeed, the only real purpose behind the Trustee's attempt to disallow 2425 WL's already-disallowed claim was to moot 2425 WL's pending appeal of the order confirming the plan. And indeed, since the Bankruptcy Court entered the Order Disallowing Proof of Claim, the Bank has already raised that order in this Court as a basis to dismiss 2425's appeal and deny it any right to challenge the Plan's confirmation. (*See* Case No. 4:24-cv-01746 [Dkt. 22]) The purpose behind that effort is as pernicious as it is transparent: The Plan releases 2425 WL's claims against the Trustee, the Bank, and  others. And as a recipient of those releases, both the Trustee and the Bank do not wish to see their validity threatened. So they are trying to deny 2425 WL, LLC standing to pursue an appeal to challenge those releases.

That effort will be fruitless. Even if Claim 7 is disallowed, 2425 WL will retain standing to challenge the Plan's confirmation, because 2425 WL has challenged the provisions of the Plan releasing claims that 2425 WL possesses against other non-debtors. The fact that the Plan thereby denies 2425 WL any right of monetary recovery on those claims constitutes a "pecuniary" injury that is

sufficient to convey standing. *In re Dean*, 18 F.4th 842, 844 (5th Cir. 2021). *Cf.*
*Truck Insurance Exchange v. Kaiser Gypsum Co.*, 144 S. Ct. 1414, 1424 (2024).
(Plan's provisions creating and governing the trust "directly and adversely affected"
the insurer's pecuniary interests in a manner sufficient to convey standing, even
though the insurer was not a creditor). Yet even though this effort will not have its
intended effect, the Trustee's pursuit of it is unjust, and it should not be sanctioned
by this Court.

## III. The Bankruptcy Court's decision to disallow 2425 WL, LLP's claim was based on a misimpression of the indisputable facts.

The Bankruptcy Court's decision to disallow 2425 WL's claim must also be
reversed. The Bankruptcy Court disallowed the claim at issue in this case because it
deemed the Promissory Note and Deed of Trust submitted to support that claim to
be "fraudulent." (ROA.003719.) But that conclusion was based on a misimpression
of the indisputable facts.

### A. The Court misinterpreted the evidence that supporting the existence of 2425 WL's loan and the validity of the documents evincing it.

There is nothing fraudulent about the Promissory Note, the Deed of Trust, or
the underlying loan they represent. That loan arose as a matter of law under Tex.
Prop. Code § 5.079 when Galleria 2425 Owner, LLC was unable to pay the balance
of the contract price to purchase One West Loop Plaza. That loan is also
substantiated by documents outside the Note and Deed of Trust themselves—

13

including both the buyer's and seller's versions of the settlement statement issued at closing. And the loan has been repeatedly acknowledged to be valid by the Bank when it approved the closing statement, and when it acknowledged that a portion of the cash for the transaction came from the Seller.

The Bankruptcy Court deemed the loan to be fraudulent out of concern that the Promissory Note and Deed of Trust reflecting the loan were not recorded until 2021, while the loan itself arose in 2018. (ROA.003719.) But it is impossible for these documents—which were created, at the latest, *years* before Galleria 2425 Owner, LLC went into bankruptcy—to constitute part of a scheme to "present[] a false claim" in that bankruptcy. (ROA.003719 & n.1) (quoting 28 U.S.C. § 152.) And in any event, the mere passage of time between when the loan arose and these documents were recorded is no indication that the loan itself was fraudulent or even suspicious. Even if these documents were not executed until 2021, they merely memorialized and formalized a loan that existed as a matter of law and had been acknowledged to exist since 2018—and an implied obligation that the Buyer assumed in 2018 under the Property Code when it failed to deliver the full contract price at closing. Memorializing the loan after the fact did not constitute fraud. It merely reflected recognition of the underlying economic reality that occurred years before.

While it certainly would have been better for Galleria 2425 Owner, LLC to

have filed the Promissory Note and Deed of Trust closer in time to the closing of the Bank's loan, its failure to do so was hardly surprising. Since the obligation was owed by one entity owned and controlled by Choudhri to another, Choudhri had no need to document the loan until it matured and had to be enforced. That explains why Galleria 2425 Owner, LLC's recordkeeping was perhaps less formal than it should have been. But any bookkeeping errors that occurred in creating the Promissory Note and the Deed of Trust cannot negate the very real loan transaction they evince and represent. And any negligence that occurred in documenting that loan certainly cannot provide grounds for disallowing 2425 WL, LLC's claim based on that loan. Neither delay nor negligence constitutes fraud. Nor, for that matter, does it matter that the Promissory Note and Deed of Trust were executed by Choudhri as managing member of Galleria 2425 Owner, LLC, rather than Azeemeh Zaheer, even though she was managing member of Naissance Capital Real Estate, LLC, the entity that controlled Galleria 2425 Owner, LLC in 2018, at the time the loan arose. (ROA.003720.) All admit that after 2021, Choudhri gained control over the debtor the property. (*See* ROA.000115; ROA.003754.) Choudhri therefore had complete authority to execute documents on its behalf at the time the Note and Deed of Trust were recorded—and to correct the previous failure to execute these documents back in 2018.

Nor does it matter that the documents were not executed by Zaheer at the time

she was in charge of Naissance Capital. (ROA.003720, 3754) Choudhri owned Naissance Capital. (ROA.003831.) Zaheer was his agent. (*Id*.) That gave Choudhri the complete authority to direct Zaheer to create these documents and to dismiss Zaheer if she refused. In any event, if there was any error in the execution of the Promissory Note or the Deed of Trust, Choudhri had the power to ratify the validity of those documents in spite of those errors. And he did so. It is undisputed that before the bankruptcy, Choudhri owned and controlled Galleria 2425 Owner, LLC—and thus controlled the entity on behalf of which those documents were executed as principal. Under the doctrine of ratification, a principal can become bound by a contract that was made in its name but without its authority. RESTATEMENT (THIRD) OF AGENCY § 4.01(1) (Am. L. Inst. 2007). One form of ratification occurs when the principal manifests an intention to be legally bound by a previously unauthorized action. *See id*. So Choudhri's act of signing and recording the Promissory Note ratified the loan.

Moreover, ratification does not always require formal action—it can be inferred from simple silence. Elliot Axelrod, *The Doctrine of Implied Ratification— Application and Limitations*, 86 Okla L. Rev. 849, 849 (1983). And Choudhri certainly ratified the validity of the Promissory Note and the Deed of Trust when he allowed the loan reflected in those documents to be foreclosed. Accordingly, those documents are as enforceable as if they had been executed in 2018 by Zaheer.

16

There is likewise no reason to believe that either the Promissory Note or the Deed of Trust are lacking in "consideration." (ROA.003720.) The consideration on both ends of those documents is clear: Executing the Note allowed Galleria 2425 Owner, LLC to purchase the property despite being short of the cash needed for the transaction, and it provided terms for repayment of the implied obligation it had undertaken as the result of that shortfall—allowing the maturity of that debt to be delayed until 2021 after it had not been repaid for three years. (*See* ROA.001392.) Accordingly, there is absolutely no evidence to question the validity or enforceability of the Promissory Note, the Deed of Trust, or the loan they evince.

**B.    The Bankruptcy Court should not have credited the testimony of the Trustee's witnesses, or doubted the veracity of Ali Choudhri, 2425 WL, LLC's principal.**

Indeed, the only testimony that the Trustee offered to question the existence of the loan or the validity of 2425 WL, LLC's claim is incredible, incompetent, and in fatal conflict with the documentary evidence in this case.

At the hearing on the Trustee's motion to disallow 2425 WL, LLC's claim, the Trustee offered testimony from two witnesses: Azeemeh Zaheer and Chris Wyatt. But while the Bankruptcy Court found both of these witnesses "to be incredibly competent" and entirely adopted their version of events, the truth is that they are *anything but* competent. (ROA.003720.) Wyatt is a well-known hired gun who engages in corporate espionage for a living and who regularly ends up on the

wrong end of the law. Indeed, Wyatt has admitted to going to work at companies and then stealing computers from his employers in order to turn over the secrets they contain to competitors. (ROA.003862-72, ROA.003874-76.) Wyatt has been convicted at least four times of committing felony burglary and criminal trespass. (ROA.003898-3904). Zaheer is a disgruntled former employee of Choudhri's company—and Choudhri's ex-girlfriend. (ROA.003833.)

Both Zaheer and Wyatt had a clear motivation to lie: They are acting in concert with Choudhri's disgruntled business partner, Osama Abdullatif, who has repeatedly tried to seize Choudhri's business interests by brute force and fraud. Witnesses have seen Abdullatif communicating frequently with Wyatt. (ROA.003880.) There is evidence that Wyatt has stolen computer hard drives from Choudhri's companies to give to Abdullatif. (ROA.003880, 003882.) Indeed, Abdullatif has even arranged for Wyatt to accuse Choudhri in a murder-for-hire plot to kill Abdullatif himself, which authorities dismissed as "a hoax." (ROA.003882.) And Omar Khawaja, an attorney and close business associate of Abdullatif, admits to representing Abdullatif, Wyatt, and Zaheer in furtherance of Abdullatif's efforts to seize all of Choudhri's business interests through litigation. Indeed, it was Khawaja that also represented Choudhri's ex-wife in her frivolous effort to file lis pendens claims on all of Choudhri's properties as part of Abdualtif's vendetta against Choudhri. (ROA.004313.) Accordingly, Wyatt and Zaheer are not credible

18

witnesses—they are instruments in a personal vendetta against Choudhri.

Yet Choudhri and 2425 WL were not afforded a proper opportunity to challenge these witnesses' credibility at the June 6, 2024 Hearing on the Trustee's motion to disallow Claim 7, because they received barely any notice that these witnesses would be testifying at the September 6 hearing. Neither witness was disclosed until they appeared in an exhibit and witness list that the Trustee turned over a mere two days before the hearing. (*See* ROA.001343; *see also* ROA.003742, 003781.) Accordingly, neither Choudhri nor 2425 WL had an opportunity to develop the numerous issues with the Trustee's reliance on their testimony. And the Bankruptcy Court's decision to allow their testimony despite that late notice separately constitutes reversable error.

Moreover, the testimony that both witnesses gave at the hearing was completely incompetent and in conflict with the undisputed facts. Wyatt admitted that he had "no personal knowledge of what happened at the time of the transaction" in 2018, when 2425 WL's supposedly fictitious loan arose, because Wyatt did not start working for Choudhri's companies until October 2020. (ROA.003790.) And as a result, Wyatt admitted that he was "not sure" what the $14.7 million seller-to-buyer "credit" listed on the Settlement Statements issued for the 2018 transaction even referred to. (ROA.003792.)

Zaheer's testimony was no better. She insisted—bizarrely—that this $14.7

million credit was actually an amount that Choudhri *received* from the transaction as seller and that it resulted from the amount that was left over *after* "the 51.6 million" provided by the Bank "plus the 16.1 million" in mezzanine financing. (ROA.00468.) But the $14.7 million credit represented a *shortfall*, not a *surplus.* The $51.6 million provided by the Bank and the $16.1 million mezzanine financing only amounted to $67.7 million—well short of the $81 million purchase price. That is why the $14.7 million credit was necessary. That is also why the closing statements reflect that the credit flows from the "SELLER" to "BUYER" rather than representing any payment by *buyer* to *seller*. And that is why the credit was necessary to fund the remainder of the purchase price. There is no source of funding to make up for this shortfall *other* than the credit provided by the seller. And there is no way the amount of the credit—which represents the balance that the buyer *was unable* to pay—could result in a cash *payment* to the seller.

Zaheer's own confusion about the nature of the $14.7 million credit seems to have confused the Bankruptcy Court as well. The Bankruptcy Court called it "fanciful" for 2425 WL, LLC to contend that the seller "who received over $13 million in cash" out of a transaction "after payment of all outstanding debts and credits" would still have an additional claim against the debtor "for $14 million dollars plus accumulated interest." (ROA.003720.) But that contention is anything but fanciful.

First of all, there is nothing to suggest the seller received the $13 million "after payment of all outstanding debts and credits." At the very least, the Bank's senior loan and the mezzanine financing were both "outstanding" at that time. And the $14.7 million credit was too. Second, the reason that 2425 WL, LLC received both a lump sum of cash and a loan giving it the right to collect *more* cash is obvious: The lump sum covered a portion of the contract balance, and the "credit" gave 2425 WL, LLC to recover the balance that remained *after* that lump sum was paid.

In sum, even as Wyatt and Zaheer insist 2425 WL provided no loan to the Debtor in this case, they cannot adequately explain what this $14.7 million credit was meant to represent—because they cannot overcome the fact that it represents a loan. And the Bankruptcy Court could not overcome that fact either. Accordingly, neither the Trustee nor the Bankruptcy Court have offered any reason to disregard the undisputed evidence demonstrating the Bank's recognition of the loan or the documents evincing its existence. And that means the evidence conclusively demonstrates the validity of 2425 WL, LLC's claim in this case. The Bankruptcy Court's conclusion to the contrary results from an unfortunate "misinterpretation of the evidence" in this case and credibility determinations that lack a basis in fact, making them clearly erroneous. *Olson v. Schweiker*, 663 F.2d 593, 596 (5th Cir. 1981).

Furthermore, even as the Bankruptcy Court uncritically gave dispositive

weight to the incompetent, and biased testimony of known frauds and criminals, it has levied serious accusations at Mr. Choudhri about his "truth and veracity," despite the fact that Mr. Choudhri, has given the Bankruptcy Court no reason to do so. The Bankruptcy Court criticized Choudhri for failing to appear at the hearing—deeming his assertion "that he was ill" to be entirely "fals[e]." (ROA.003721)

But Choudhri had no fear of testifying under oath or answering questions from the Bankruptcy Court. He did not appear because he was seriously ill—as he has been throughout the confirmation of the Plan in this case and the hearing on the motion to disallow 2425 WL's claim. On June 3 of this year, Choudhri was diagnosed with a "stroke." (ROA.004322.) The radiologist who made that diagnosis is entirely independent of Choudhri. Indeed, Choudhri has never even met the doctor who diagnosed him, because he made that diagnosis solely by reviewing a CT scan of Choudhri's brain. (*Id.*)

Shortly after this diagnosis, Choudhri appeared telephonically at a hearing before Judge Isgur, because that hearing could result in the foreclosure upon one of his most valuable properties. (ROA.003837.) And the stress of that telephonic appearance was so severe for Choudhri that, the next day, after a video deposition, he collapsed. (*Id.*) The day after that hearing, Choudhri's doctor ordered that he "shall not participate in any stressful interactions and not return to work" for at least "a month"—until July 7. (ROA.004331.) Yet as the Bankruptcy Court explained

during the Confirmation Hearing in this case, the Court decided to disregard the opinions of disinterested medical experts because Judge Isgur told the Bankruptcy Court that Choudhri didn't at that point in time appear to have any sort of problems at all the June 6 hearing in his courtroom, despite the fact that Judge Isgur never personally saw Choudhri during his telephonic appearance, and Choudhri was definitely having problems. (ROA.003919.) Mr. Choudhri respectfully submits that the Bankruptcy Court should not have second-guessed the opinions of medical experts based on reports from other bankruptcy judges who did not personally observe his condition.

The Bankruptcy Court also appeared to have based its opinions about Choudhri's "truth and veracity" on other episodes from the Court's "long history" with Choudhri, including Choudhri litigation in other cases. (ROA.003720-21.) But these other cases provide no grounds to doubt Choudhri's truthfulness. The vast majority of his legal cases have been necessary to combat the scorched-earth campaign of fraud that Osama Abdullatif has waged against Choudhri's businesses and his character. And the remainder have been garden-variety disputes of the sort that everyone engaged in the business of real estate will eventually experience. None of this evidence provides any reason to doubt Choudhri's veracity, much less suggests that he has committed fraud. Accordingly, it is not enough for the Court to merely reinstate 2425 WL's claim in this case, it should withdraw any suggestion

23

that Choudhri should be prosecuted for fraud.

Candidly, the reason Choudhri did not appear to defend the claim it was "just money," less important than his health. But if he suspected that his reputation and entire life's work were at issue—not to mention a criminal referral—he obviously would have appeared.

## PRAYER

For these reasons, Appellant Ali Choudhri respectfully requests that the Court vacate the Bankruptcy Court's order on the Trustee's Motion to Disallow Claim of 2425 WL, LLC and withdraw the reference to the United States Attorney.

Respectfully submitted,

/s/ J. Carl Cecere

J. Carl Cecere
State Bar No. 13268300
(admitted pro hac vice)
**Cecere PC**
6035 McCommas Blvd.
Dallas, TX 75206
Telephone: 469-600-9455
ccecere@cecerepc.com

*Counsel for Appellant Ali Choudhri*

## CERTIFICATE OF SERVICE

The undersigned certifies that on July 23, 2025, a true and correct copy of the foregoing was served via the Court's CM/ECF system to all parties who are deemed to have consented to ECF electronic service, and via email to those listed below.

Christopher R Murray
Jones Murray LLP
602 Sawyer St
Ste 400
Houston, TX 77007
832-529-1999
Fax : 832-529-3393
chris@jonesmurray.com

R. J. Shannon
Shannon & Lee LLP
2100 Travis Street, STE 1525
Houston, TX 77002
713-714-5770
rshannon@shannonleellp.com

*/s/ J. Carl Cecere*
J. Carl Cecere

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

*Certificate of Compliance with Type-Volume Limit,*
*Typeface Requirements, and Type-Style Requirements*

1. This brief complies with the type-volume limit of Fed. R. Bankr. P. 8015(a)(7)(B)(i) because, excluding the parts of the brief exempted by Fed. R. Bankr. 8015(g), it contains 5,997 words.

2. This brief complies with the typeface and type-style requirements of Fed. R. Bankr. P. 8015(a)(5) because: it has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14-point Times New Roman (and 14 poin for footnotes).

Dated: July 23, 2025

                                       */s/ J. Carl Cecere*
                                       J. Carl Cecere

                                       *Attorney of Record for Appellant*