# EXHIBIT 36

**Opinion issued July 17, 2025.**



In The

# Court of Appeals

### For The

# First District of Texas

———————————

### NO. 01-23-00727-CV

———————————

### NAISSANCE GALLERIA, LLC, Appellant

### V.

### AZEEMEH ZAHEER, Appellee

———————————

### On Appeal from the 80th District Court
### Harris County, Texas
### Trial Court Case No. 2023-43755

———————————

### MEMORANDUM OPINION

Naissance Galleria, LLC appeals from a temporary injunction in favor of

Azeemeh Zaheer arising from a dispute over the company's ownership.

In four issues, Naissance Galleria asserts that the trial court erred in denying its plea to the jurisdiction, denying its motion to disqualify opposing counsel, and granting the temporary injunction.

We affirm the trial court's orders denying the plea to the jurisdiction and granting the temporary injunction.

## Background

### The Parties' Pleadings

In its petition and emergency application for temporary restraining order, Naissance Galleria alleged that Zaheer had been the managing member of Naissance Galleria until July 3, 2020, when Naissance Galleria assigned all control to Ali Choudhri, the "current managing member," pursuant to an "Assignment of [Naissance Galleria] and Naissance Capital Real Estate, LTD" ("NCRE") (the "purported assignment"). Naissance Galleria attached as exhibit 1 to its petition a copy of the purported assignment, which it alleged had been signed by Zaheer.

According to Naissance Galleria, it had recently discovered that Zaheer was continuing to assert that she manages and has control over Naissance Galleria. For example, Zaheer, without authorization, had filed a lawsuit on behalf of Naissance Galleria against the National Bank of Kuwait.

Naissance Galleria asserted claims against Zaheer for conversion and fraud, and it sought to recover from Zaheer under theories of unjust enrichment and

promissory estoppel. Naissance Galleria also requested relief under the Declaratory Judgment Act. It asked the trial court to declare that Zaheer was not a manager or member of Naissance Galleria, had no interest in Naissance Galleria and no authority to act on its behalf, and had wrongfully exercised power over Naissance Galleria. And Naissance Galleria requested a temporary restraining order and temporary and permanent injunctive relief that the trial court restrain Zaheer from interfering with Naissance Galleria's business activities and from disposing, encumbering, or interfering with any of its assets.

Zaheer responded with a counterpetition and her own request for injunctive relief. She alleged the purported assignment was "forged and fraudulent" and that Choudhri had fabricated the purported assignment to avoid his obligation to repay Naissance Galleria a $16 million loan.

Zaheer denied that she signed the purported assignment. Zaheer observed that it bore "all the hallmarks of a forged document," including handwritten dates that did not match and two of her purported signatures, which also did not match. According to Zaheer, if she had actually signed and dated the document, "the handwriting and signatures should match."

Zaheer also pointed out that the effective date of the purported assignment was left blank and referenced an exhibit A (i.e., the "Amended and Restated Limited Liability Company Agreement of [Naissance Galleria] and [NCRE]"), yet there was

3

no exhibit A and no such amended and restated agreement. According to Zaheer, Naissance Galleria was "still governed by its Initial Limited Liability Company Agreement."

Zaheer asserted that Naissance Galleria was not entitled to injunctive relief based on a request for enforcement of a forged document; instead, she was entitled to injunctive relief to prevent Naissance Galleria from taking any action without her authorization. Zaheer also requested that the trial court enter a declaratory judgment that the purported assignment was a forged document and thus was void or voidable, and that any action taken by Naissance Galleria based on the purported assignment was also void.

**Temporary Injunction Hearing**

In the hearing on the parties' competing requests for temporary injunctive relief, Zaheer testified that she is the managing member of NCRE, which manages and controls Naissance Galleria. She is the sole owner of NCRE. Naissance Galleria is a "mezzanine lender."[1]

---

[1]   Texas law defines a "mezzanine real estate loan" as "a loan that is secured by a pledge of direct or indirect equity interests in an entity that owns real estate." TEX. INS. CODE § 425.1185. "Mezzanine capital" is "[c]apital consisting of unsecured, high-yielding loans that are subordinate to bank loans and secured loans but rank above equity," specifically, "a hybrid of debt and equity financing that gives the lender a right to convert debt into equity in the event of default." BLACK'S LAW DICTIONARY (12th ed. 2024) ("Capital").

Zaheer recounted that she first met Choudhri in 2018. She had had a personal relationship with him that was "on and off." Their business relationship was "still current"; she was his lender. Naissance Galleria had loaned $16.1 million to Galleria 2425 JVC, LLC, an entity in which Choudhri has an interest, possibly a controlling interest.

In July 2022, Galleria 2425 JVC, LLC defaulted on the note, and Zaheer sent a notice of default and demand for payment. Choudhri, in response, demanded that Zaheer "cease and desist" from acting on behalf of Naissance Galleria and NCRE, claiming that Zaheer had "irrevocably assigned" her authority to Choudhri and that Choudhri was the sole person authorized to act on behalf of NCRE and Naissance Galleria, as evidenced by the attached copy of the purported assignment.

Zaheer replied to Choudhri's cease-and-desist letter that the purported assignment was an "illegitimate document"; it was "falsified, altered, manipulated," and, as Choudhri knew, "a forgery." Zaheer denied that she had ever assigned any managing member rights of Naissance Galleria or NCRE to Choudhri. She noted that instead of a date, the purported assignment attached to the cease-and-desist letter stated, "July [blank], 2020," and that no exhibit A was attached to it. In contrast, the purported assignment attached to Naissance Galleria's petition and request for a temporary restraining order in this case did have an exhibit A attached. The first time

she saw the amended and restated agreement was when she was served with Naissance Galleria's petition.

Zaheer noted certain irregularities in the amended and restated agreement attached as exhibit A to the purported assignment. She referred to emails showing that an amended and restated company agreement for Naissance Galleria had been drafted, but that as of January 27, 2021, there was no final version. The latest draft that Zaheer had received showed that it was document number 63247781.4, showing that it was version 4. The one included with Naissance Galleria's petition and request for temporary restraining order, attached as exhibit A to the purported assignment, showed that it was document number 63247781.3, which she explained was version 3, the prior draft.

Zaheer also noted that the actual signature page would have had the same footer and document number as the rest of the document. But instead of being numbered like the preceding page (page 23), the last page of exhibit A filed with Naissance Galleria's petition was not numbered; instead, it had "C-1" at the bottom.

The initials on the first few pages looked "similar" to how Zaheer wrote her initials. But they were all different and she did not remember initialing that document at all. And the handwritten initials on the last page did not look like her initials. Zaheer believed it was a fabricated document.

Zaheer testified that the Bank of Kuwait was Naissance Galleria's senior lender, and Naissance Galleria owed it about $52 million. According to Zaheer, the ownership dispute was hampering her operation of Naissance Galleria and she was concerned that Naissance Galleria was incurring liabilities by doing business through Choudhri. She was also concerned that Galleria 2425 JVC, LLC would "magically wipe away" the $16 million debt it owed Naissance Galleria.

Choudhri testified that Naissance Galleria was one of two lenders that Galleria 2425 JVC, LLC used for the purchase of a building in Harris County, Texas. The transaction closed in May 2018.

According to Choudhri, he saw an original copy of the purported assignment on July 3, 2020, the day Zaheer signed it. They only signed one original document that day, and he did not have the original. He believed that it had been drafted by some attorneys who represent some of his companies. He emailed a copy of the purported assignment to his attorney "around the time" it was executed. He did not remember when, but sometime in the month of July 2020. Choudhri did not see Zaheer sign the amended and restated agreement, but in the email she sent to him with the document attached, she represented that she had signed it.

Choudhri acknowledged that the amended and restated agreement attached as exhibit A to the purported assignment provided that it "amends and restates, in its entirety, that certain Limited Liability Company Agreement of the Company dated

as of April 28th, 2018," even though that agreement was actually dated April 13, 2018.

Choudhri confirmed that he was the assignee in his individual capacity. As consideration for the assignment, Choudhri stated that it was "a swap of the mezzanine, of the—for the equity. It's—we're treating mezzanine and equity the same. The mezzanine entity was being treated the same as equity." Choudhri also noted that he had "claims against Zaheer and—and the mezzanine investors and the entity—when the loan and the operations—all of this was run by Zaheer, the borrowing entity and the lending entity." Choudhri stated that the terms were "spelled out in emails" with Zaheer "or investor representatives in Kuwait of what the exchange is for. It's to treat mezzanine and equity the same. And so whatever proceeds . . . that was the deal."

Choudhri acknowledged that he did not loan any money, individually, to Naissance Galleria. Naissance Galleria had loaned money to one of his entities. Choudhri agreed that before July 3, 2020, NCRE was not indebted to him, personally, for anything. He also confirmed that he did not pay Zaheer cash or individually forgo any debt as consideration for the assignment. He referred to emails that he had received from Zaheer "where she wanted me to step into the mezzanine entity" because of issues with the Bank of Kuwait and other economic issues occurring around that time.

Choudhri was presented with a Harris County court record from a temporary injunction proceeding in another case involving one of his entities. There, the trial court found that Choudhri had "arranged the unauthorized filing of a bankruptcy petition" for the entity and, with another individual, "purport[ed] to conduct what they called a 'disposition'" of the entity "through what they call a 'public auction,'" and "intend[ed] to file another bankruptcy petition" for the entity. The court found that the documents "asserted" by him were "invalid, probably fraudulent."

Christopher Wyatt, a former chief operating officer for one of Choudhri's entities, testified that he had spoken with Choudhri about Choudhri's desire to have Zaheer "sign over" Naissance Galleria. According to Wyatt, Choudhri had a plan to take over Naissance Galleria.

In text messages Wyatt received from Choudhri in July 2020, Choudhri stated that Zaheer couldn't "handle the pressure" and was "being stubborn as hell." Choudhri also noted that "[m]y mom says. '[w]e must do what we must do to protect the asset.'"

On July 3, 2020, Wyatt let Zaheer in the building and brought her to Choudhri's office. At about 10:52 a.m., Choudhri texted Wyatt with a request that he print out a document for Zaheer "to sign for [Choudhri's] being manager." At about 11:07 a.m., Choudhri texted Wyatt again asking where the document was and saying that he would "prefer to have [Zaheer] sign it now" before he had to go to

another meeting. Wyatt thought that he printed out the document but did not give it to Choudhri until after 11:10 a.m. Wyatt testified that this was probably a one-page document.

Wyatt stated his reasons for believing that the purported assignment was a fraudulent document. First, Wyatt had worked for a bank for about 14 years and was familiar with Zaheer's signature, having seen it "a number of times." The signatures on the purported assignment "didn't match her signature" and "did not look accurate." He also confirmed that he had "never seen" "whatever exhibit A" was.

Second, Wyatt testified to his experience with some of Choudhri's business practices. Choudhri had backdated documents in other transactions, he would "go back a year and a half, two years later and backdate the document and then present it to the court." Also, Choudhri had previously asked Wyatt to go into somebody else's email address and read their emails, and he knew of instances where people had complained that Choudhri had hacked their emails, including personal email accounts.

On cross-examination, when Wyatt was presented with a copy of a nondisclosure agreement, he stated that he did not recall having signed any agreement with Choudhri's entity, his former employer. He didn't think that he signed the agreement, noting that the handwritten dates were not in the same

10

handwriting and they were not his handwriting. Wyatt remarked, "[q]uite frankly, I'm not sure I signed this document at all."

Following the hearing, the trial court granted Zaheer's request for temporary injunctive relief and ordered that Naissance Galleria "be enjoined from taking any action, operation, and decisions in the course of its business unless specifically authorized by [Zaheer]." The trial court also denied, without a hearing, Naissance Galleria's plea to the jurisdiction and motion to disqualify opposing counsel.

## Order Denying Motion to Disqualify Counsel

In its first issue, Naissance Galleria attempts to appeal from the trial court's order denying its motion to disqualify Zaheer's counsel without a hearing.

Generally, we have jurisdiction over an appeal from an interlocutory order only if a statute makes the order appealable. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001); *Ahmed v. Shimi Ventures, L.P.*, 99 S.W.3d 682, 688 (Tex. App.—Houston [1st Dist.] 2003, no pet.).

Texas Civil Practice and Remedies Code section 51.014(a)(4) allows a party to appeal from an interlocutory appeal that grants or refuses a temporary injunction. TEX. CIV. PRAC. & REM. CODE § 51.014(a)(4); *Myrtle Consulting Grp., LLC v. Resulting Partners*, Inc., No. 01-20-00095-CV, 2021 WL 2231248, at *5 (Tex. App.—Houston [1st Dist.] June 3, 2021, no pet.). We strictly construe the scope of our jurisdiction over interlocutory orders in section 51.014 "because the Legislature

11

intended it to be a narrow exception to the general rule that only final judgments are appealable." *Ahmed v. Shimi Ventures, L.P.*, 99 S.W.3d 682, 688 (Tex. App.—Houston [1st Dist.] 2003, no pet.).

In *Eichelberger v. Hayton*, 814 S.W.2d 179, 182 (Tex. App.—Houston [1st Dist.] 1991, writ denied), we addressed the appellant's contention that the appellee had not fulfilled the statutory requirements for an injunction. *Id.* But we refused to consider the appellant's challenge to the portion of the trial court's injunction that compelled the appellant to produce certain documents, concluding that our jurisdiction did not extend to that issue. *Id.*; *see Myrtle Consulting Grp.*, 2021 WL 2231248, at *5. Likewise here, no statute authorizes an appeal from an interlocutory order denying a motion to disqualify an attorney. *Hermida-Lara v. Rosas*, No. 01-13-00639-CV, 2013 WL 5434678, at *1 (Tex. App.—Houston [1st Dist. Sept. 26, 2013, no pet.).

The trial court's order denying Naissance Galleria's motion to disqualify Zaheer's counsel is a non-appealable interlocutory order; thus, we lack jurisdiction to review it.

## Standing

In its second issue, Naissance Galleria argues that the trial court erred in denying its plea to the jurisdiction because Zaheer, individually, lacked standing to bring causes of action that belonged to NCRE. A party's standing to sue is inherent

in the concept of subject-matter jurisdiction, which "is essential to a court's authority to decide a case." *Meyers v. JDC/Firethorne, Ltd.*, 548 S.W.3d 477, 484 (Tex. 2018); *see Linegar v. DLA Piper LLP (US)*, 495 S.W.3d 276, 279 (Tex. 2016). "[W]e have an obligation to examine our jurisdiction any time it is in doubt." *Pike v. Texas EMC Mgmt., LLC*, 610 S.W.3d 763, 774 (Tex. 2020)

"[A] partner or other stakeholder in a business organization has constitutional standing to sue for an alleged loss in the value of its interest in the organization." *Id.* at 778. As the sole owner and managing member of NCRE, which, according to Zaheer, manages and controls Naissance Galleria, Zaheer has demonstrated that she is arguably a stakeholder in Naissance Galleria and thus has standing to sue.

Naissance Galleria's complaint is not that Zaheer lacks standing, but that she lacks capacity. A plaintiff lacks capacity when she "is not entitled to recover in the capacity in which [s]he sues." TEX. R. CIV. P. 93(2);[2] *see also Nootsie, Ltd. v. Williamson Cnty. Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996) ("A plaintiff has standing when it is personally aggrieved, regardless of whether it is acting with legal authority; a party has capacity when it has the legal authority to act, regardless of whether it has a justiciable interest in the controversy"), *quoted in Pike*, 610

---

[2]     If the party challenging capacity does not raise the challenge in a verified denial as required by Rule 93, the party waives the right to complain about the issue. *Nasr v. Owubu*, No. 01-20-00631-CV, 2022 WL 3649347, at *7 (Tex. App.—Houston [1st Dist.] Aug. 25, 2022, no pet.) (mem. op.); *Landry's Seafood House-Addison, Inc. v. Snadon*, 233 S.W.3d 430, 434 (Tex. App.—Dallas 2007, pet. denied).

S.W.3d at 775. Whether Zaheer has capacity depends on how the primary issue in the underlying lawsuit—who owns Naissance Galleria—is resolved on the merits.

We hold that the trial court did not err in denying the plea to the jurisdiction.

We overrule Naissance Galleria's second issue.

## Temporary Injunction

In its third and fourth issues, Naissance Galleria asserts that the trial court erred in granting Zaheer the temporary injunction.

## A.    Applicable law and standard of review

"A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits." *Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 555 (Tex. 2016) (quoting *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002)). The "status quo" is the "last, actual, peaceable, non-contested status which preceded the pending controversy." *Id.* (quoting *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004) (orig. proceeding)).

A temporary injunction is an extraordinary remedy and does not issue as a matter of right. *Efremov v. GeoSteering, LLC*, No. 01-16-00358-CV, 2017 WL 976072, at *2 (Tex. App.—Houston [1st Dist.] Mar. 14, 2017, pet. denied) (mem. op.) (citing *TMC Worldwide, L.P. v. Gray*, 178 S.W.3d 29, 36 (Tex. App.—Houston [1st Dist.] 2005, no pet.)). To obtain a temporary injunction, the applicant must plead and prove: 1) a cause of action against the defendant; 2) a probable right to the relief

14

sought; and 3) a probable, imminent, and irreparable injury in the interim. *Butnaru*, 84 S.W.3d at 204; *Regal Ent. Grp. v. iPic-Gold Class Ent., LLC*, 507 S.W.3d 337, 345 (Tex. App.—Houston [1st Dist.] 2016, no pet.). "An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard." *Butnaru*, 84 S.W.3d at 204. The applicant need not establish that she will prevail at trial, only that she is entitled have the status quo of the suit's subject matter preserved pending trial on the merits. *Green Acquisitions, Inc. v. Everlasting Green, LLC*, No. 01-21-00257-CV, 2022 WL 2919936, at *3 (Tex. App.—Houston [1st Dist.] July 26, 2022, no pet.) (mem. op.) (quoting *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978)).

The trial court has broad discretion in determining whether an applicant satisfied all requirements for a temporary injunction. *Rios v. Frias*, No. 01-24-00142-CV, 2024 WL 4594836, at *5 (Tex. App.—Houston [1st Dist.] Oct. 29, 2024, no pet.) (mem. op.); *Allied Home Mortg. Cap. Corp. v. Fowler*, No. 14-10-00992-CV, 2011 WL 2367086, at *5 (Tex. App.—Houston [14th Dist.] June 9, 2011, no pet.) (mem. op.). For this reason, we will overturn a trial court's ruling on an application for temporary injunction only if it amounts to an abuse of discretion. *See Henry v. Cox*, 520 S.W.3d 28, 33 (Tex. 2017); *Butnaru*, 84 S.W.3d at 204. A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to guiding rules or principles, or misapplies the law to established

facts. *Taylor v. Vela*, No. 01-17-00370-CV, 2018 WL 828224, at *2 (Tex. App.—Houston [1st Dist.] Feb. 13, 2018, no pet.) (mem. op.). We review the evidence before the trial court in the light most favorable to its ruling, drawing all legitimate inferences from the evidence and deferring to the trial court's resolution of conflicting evidence and its determination of the witnesses' credibility. *See Green Acquisitions*, 2022 WL 2919936, at *3;[3] *Carpenter v. Daspit Law Firm, PLLC*, No. 01-22-00282-CV, 2023 WL 3956861, at *8 (Tex. App.—Houston [1st Dist.] June 13, 2023, no pet.) (mem. op.).

## B.   The trial court acted within its discretion in granting Zaheer's request for a temporary injunction.

Naissance Galleria asserts that the evidence does not support the trial court's findings that Zaheer satisfied all three requirements for a temporary injunction. We consider each in turn.

---

[3]   Naissance Galleria frames its issues as factual sufficiency challenges, asserting that the evidence is insufficient to support the temporary injunction and the "overwhelming great weight and preponderance of the evidence" shows that neither the purported assignment nor the amended and restated agreement was a forgery. The issue of evidentiary sufficiency is subsumed in the abuse-of-discretion standard of review. *See, e.g.*, *Syed v. Masihuddin*, 521 S.W.3d 840, 847 (Tex. App.—Houston [1st Dist.] 2017, no pet.) ("Under an abuse of discretion standard, legal and factual insufficiency are not independent grounds for asserting error, but are relevant factors in assessing whether a trial court abused its discretion.").

### 1.    Zaheer alleged a cause of action against Naissance Galleria.

The Texas Rules of Civil Procedure require that "[a]n original pleading which sets forth a claim for relief . . . shall contain . . . a short statement of the cause of action sufficient to give fair notice of the claim involved . . . ." TEX. R. CIV. P. 47. "A petition is sufficient if it gives fair and adequate notice of the facts upon which the pleader bases his claim." *DeRoeck v. DHM Ventures, LLC*, 556 S.W.3d 831, 835 (Tex. 2018). "The key inquiry is whether the opposing party 'can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant.'" *Id.* (quoting *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896 (Tex. 2000)). We liberally construe pleadings in the pleader's favor unless the opposing party specially excepts to the pleading. *Horizon/CMS Healthcare Corp.*, 34 S.W.3d at 897. Naissance Galleria did not specially except to Zaheer's counterpetition. *See* TEX. R. CIV. P. 91; *see Parker v. Barefield*, 206 S.W.3d 119, 120 (Tex. 2006).

In her petition, Zaheer sought injunctive relief to prevent Naissance Galleria from taking any action without her authorization and asked the trial court to enter a declaratory judgment that the purported assignment was a forged document and thus was void or voidable, and that any action taken by Naissance Galleria based on the purported assignment was also void. These allegations are enough to have put Naissance Galleria on notice of the basic issues of the controversy. *See Brumley v.*

*McDuff*, 616 S.W.3d 826, 831 (Tex. 2021) ("A plaintiff sufficiently pleads a cause of action when the elements of the claim and the relief sought may be discerned from the pleadings alone.").

### 2.  The evidence shows Zaheer has a probable right to the relief sought.

Naissance Galleria asserts that "the great and overwhelming weight and preponderance is against" Zaheer's position that her signature and initials on the purported assignment and amended and restated agreement are forgeries and the documents are void. But Naissance Galleria does not confront any of the trial court's detailed findings of fact in support of its decision. Instead, its argument implies that Zaheer's testimony at the temporary injunction hearing was false and Choudhri's was true. This argument ignores our standard of review, which requires that we defer to the trial court as sole judge of the witnesses' credibility and review the evidence in the light most favorable to its ruling. *See Green Acquisitions*, 2022 WL 2919936, at *3; *Carpenter*, 2023 WL 3956861, at *8.

As Naissance Galleria succinctly states in its appellant's brief, Zaheer "says she did not sign it." Choudhri "says she did." Because "the trial court functions as the fact finder in a temporary injunction hearing, an abuse of discretion does not exist where the trial court bases its decision on conflicting evidence." *Sharma v. Vinmar Int'l, Ltd.*, 231 S.W.3d 405, 419 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

### 2. Zaheer satisfied her burden of proving that she would suffer a probable, imminent, and irreparable injury before her claims could be finally resolved.

In challenging this element, Naissance Galleria again fails to address the trial court's findings. In support of its finding of probable, imminent, and irreparable injury, the trial court found that:

- The purported assignment could be a forged document, and Zaheer presented some evidence to sustain a declaratory judgment that the Choudhri presented a forged document;

- Choudhri testified that he would continue to hold himself out as Naissance Galleria's manager and operate and make decisions for it;

- Choudhri admitted that as purported manager for Naissance Galleria, he could forgive the $16 million mezzanine loan to his company; and

- Choudhri testified that he would stop representing himself as Naissance Galleria's manager only if a court ordered him to do so.

The trial court also found that the purported assignment had "materially and substantially interfered" with Zaheer's ability to operate Naissance Galleria and cited specific examples of transactions thwarted because of the ownership dispute.

Choudhri asserts that Zaheer's allegation in her counterpetition that Choudhri committed the fraud "to avoid repaying a $16 million loan" is a judicial admission that she has an adequate remedy at law. A judicial admission, which is an assertion of fact that is conclusively established in live pleadings, "must be a clear, deliberate, and unequivocal statement." *Horizon/CMS Healthcare Corp.*, 34 S.W.3d at 905. We do not read Zaheer's attribution of a financial motive to Choudhri in her pleadings

19

as an admission that she could be adequately compensated in damages or that the value of Naissance Galleria is equal to the amount due on the loan.

We hold that the trial court did not err in granting Zaheer the temporary injunction.

We overrule Naissance Galleria's third and fourth issues.

## Conclusion

We affirm the trial court's orders denying the plea to the jurisdiction and granting the temporary injunction.


Clint Morgan
Justice

Panel consists of Justices Guerra, Caughey, and Morgan.